JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

SALVATORE SYLVESTER, ALICIA EDWARDS-GUTZMAN, and EUNICE HILL, on behalf of themselves, and all others similarly situated,

**(b)** County of Residence of First Listed Plaintiff   Lackawanna Co., PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jonathan Shub, Esquire, Kevin Laukaitis, EsquireKOHN, SWIFT & GRAF, P.C.1600 Market Street, Suite 2500,Philadelphia, PA 19103-7225, (215) 238-1700
See also addendum attached

## DEFENDANTS

Depositors Insurance Company, Nationwide Property & Casualty Insurance Company and Nationwide Mutual Insurance Company

County of Residence of First Listed Defendant   Polk Co., Iowa
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Pamela A. Carlos, Esquire, Bennett, Bricklin & Saltzburg, LLC, Centre Square/West Tower 1500 Market Street, 32nd Floor, Philadelphia, PA 19102 (215) 561-4300

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

|   |   |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                     *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332, 1441 and 1446
Brief description of cause:
Class Action Fairness Act of 2005

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** Over $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes   ☐ No

## VIII. RELATED CASE(S)

**IF ANY**

*(See instructions)*

DATE 03/06/20       SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

JS 44 Reverse (Rev. 06/17)

**ADDENDUM PLAINTIFF'S COUNSEL LIST**

Scott Edelsberg, Esq. (pro hac vice to be filed)
EDELSBERG LAW, PA
20900 NE 30th Avenue, #417
Aventura, FL 33180
scott@edelsberglaw.com
utanski@edelsberglaw.com
(305) 975-3320

Edmund A. Normand (pro hac vice to be filed)
Jacob L. Phillips (pro hac vice to be filed)
NORMAND PLLC
3165 McCrory Place, Suite 175
Orlando, FL 32803
Ed@NormandPLLC.com
(407) 603-6031

Rachel Dapeer, Esq. (pro hac vice to be filed)
DAPEER LAW, P.A.
300 S. Biscayne Blvd, #2704
Miami, FL 33131
rachel@dapeer.com
(305) 610-5223

Andrew J. Shamis (pro hac vice to be filed)
SHAMIS & GENTILE, P.A.
14 NE 1st Ave., Suite 1205
Miami, FL 33132
efilings@shamisgentile.com
(305) 479-2299

**ADDENDUM DEFENSE COUNSEL LIST**

Mark L. Hanover (*pro hac vice* application to be submitted)
Kathleen V. Kinsella (*pro hac vice* application to be submitted)
DENTONS US LLP
233 South Wacker Drive
Suite 5900
Chicago, Illinois 60606
Telephone:  (312) 876-8000
Email:  mark.hanover@dentons.com
kathleen.kinsella@dentons.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 1544 Summit Lake Road, Clarks Summit, Pa 18411 _____

Address of Defendant: _____ 1100 Locust Street, Des Moines, Iowa 50391 _____

Place of Accident, Incident or Transaction: _____ 1100 Locust Street, Des Moines, Iowa 50391 _____

---

*RELATED CASE, IF ANY:*

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 03/06/2020          *Attorney-at-Law / Pro Se Plaintiff*          56396 *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

*A. Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
*(Please specify):* _____

*B. Diversity Jurisdiction Cases:*

☑ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
*(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Pamela A. Carlos _____, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 03/06/2020          *Attorney-at-Law / Pro Se Plaintiff*          56396 *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

APPENDIX I

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

SALVATORE SYLVESTER, ALICIA
EDWARDS-GUTZMAN, and EUNICE
HILL, on behalf of themselves, and all others
similarly situated,                                :  NO:

    v.                       :

DEPOSITORS INSURANCE COMPANY,
NATIONWIDE PROPERTY & CASUALTY
INSURANCE COMPANY,
and NATIONWIDE MUTUAL INSURANCE
COMPANY                                             :

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a)  Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.    (  )

(b)  Social Security – Cases requesting review of a decision of the Secretary of Health
  and Human Services denying plaintiff Social Security Benefits    (  )

(c)  Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. (  )

(d)  Asbestos – Cases involving claims for personal injury or property damage from
  exposure to asbestos.    (  )

(e)  Special Management – Cases that do not fall into tracks (a) through (d) that are
  commonly referred to as complex and that need special or intense management by
  the court.  (See reverse side of this form for a detailed explanation of special
  management cases.)    (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (X)

__03/06/2020__     _(signature)_
**Date**      **PAMELA A. CARLOS**
      **Attorneys for Defendant**

__(215) 561-4300__    __(215) 561-6661__    __carlos@bbs-law.com__
**Telephone**     **FAX Number**     **E-Mail Address**

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SALVATORE SYLVESTER, ALICIA EDWARDS-GUTZMAN, and EUNICE HILL, on behalf of themselves, and all others similarly situated,<br><br>    v.<br><br>DEPOSITORS INSURANCE COMPANY, NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY, and NATIONWIDE MUTUAL INSURANCE COMPANY | :<br>:<br>:<br>:<br>:<br>:<br>:   Case No.<br>:<br>:<br>:<br>:<br>:<br>: |

## NOTICE OF REMOVAL

Depositors Insurance Company, Nationwide Property & Casualty Insurance Company, and Nationwide Mutual Insurance Company (together, "Nationwide Defendants") hereby remove to this Court the Pennsylvania state court action described below pursuant to the Class Action Fairness Act of 2005 ("CAFA").

## I.    BACKGROUND

1.    On December 20, 2019, Salvatore Sylvester, Alicia Edwards-Gutzman, and Eunice Hill ("Plaintiffs") filed this putative class action against Defendants Depositors Insurance Company, Nationwide Property & Casualty Insurance Company, and Nationwide Mutual Insurance Company in the Court of Common Pleas of Philadelphia County, Pennsylvania, captioned *Salvatore Sylvester, Alicia Edwards-Gutzman, and Eunice Hill, on behalf of themselves, and all others similarly situated, v. Depositors Insurance Company, Nationwide Property & Casualty Insurance Company, and Nationwide Mutual Insurance Company*, Case No. 2019 03184. The suit alleges that the Nationwide Defendants do not include certain enumerated fees (title fees, title lien fees, registration transfer fees, county fees, Safety Inspection Sticker fees, Emissions Inspection Sticker fees) (together, "Title and Regulatory Fees") in actual cash value payments for

first-party, private passenger, total loss vehicle claims. *See* Compl. ¶¶ 1, 3, 4, 20, 29, 38, 40, 50, 80. By purportedly not including these amounts in its actual cash value payments, Plaintiffs contend that the Nationwide Defendants are liable for breach of contract. *See id.* at ¶¶ 4, 22, 31, 40, 42, 50, 72-82. Plaintiffs seek alleged compensatory damages, *id.* at p. 14, as well as injunctive relief "to stop these repeated and continued violations" of policy terms. *Id.* at ¶ 72.

2.      Under 28 U.S.C. §§ 1441(a), 1446, and 1453, the Complaint is removable to this Court because the Nationwide Defendants have satisfied the procedural requirements for removal, and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).

3.      In accordance with 28 U.S.C. § 1446(d), promptly after filing this Notice of Removal, the Nationwide Defendants shall give written notice to Plaintiffs and to the Court of Common Pleas of Philadelphia County, Pennsylvania, of its filing of this Notice of Removal.

## II.   THE NATIONWIDE DEFENDANTS HAVE SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL

4.      On February 7, 2020, Defendant Depositors Insurance Company was served with the Complaint, Summons, and Notice. Defendants Nationwide Property & Casualty Insurance Company and Nationwide Mutual Insurance Company were served on February 10, 2020. This Notice of Removal has been filed within 30 days of either date, and is therefore timely under 28 U.S.C. § 1446(b).

5.      Venue is proper in this Court because it corresponds to the district and division where this litigation was filed, *i.e.*, the Court of Common Pleas of Philadelphia County, Pennsylvania, is located in the Eastern District of Pennsylvania. *See* 28 U.S.C. § 1441(a).

6.      As required under 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served upon the Nationwide Defendants are attached hereto. *See* Ex. 1.

## III.   THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION UNDER CAFA.

7.    Under CAFA, this Court has diversity jurisdiction over the putative class action because:  (1) the putative class exceeds 100 members; (2) at least one member of the proposed class has a different citizenship from the Nationwide Defendants; (3) the amount in controversy exceeds $5 million in the aggregate for the entire class, exclusive of interest and costs; and (4) the exceptions to CAFA do not apply here.  *See* 28 U.S.C. § 1332(d).

### A.    The Putative Class Size Exceeds 100.

8.    Under CAFA, the proposed class must consist of at least 100 persons.  *See* 28 U.S.C. § 1332(d)(5).  The Complaint seeks to certify a class under Pennsylvania Rules of Civil Procedure 1702, 1708, and 1709.  Plaintiffs define the putative class as:

> All insureds, under any Pennsylvania policy issued by Depositors Insurance Company, Nationwide Property & Casualty Company or Nationwide Mutual Insurance Company covering a vehicle with private-passenger auto physical damage coverage for comprehensive or collision loss, who made a first-party claim for total loss, where such vehicle was declared a total loss and adjusted as a total loss, where the total loss payment included no amount (or a prorated amount) for state and local regulatory fees imposed by the Commonwealth of Pennsylvania within four years prior to the date on which this lawsuit was filed through the date of any certification order.

Compl. ¶ 54.  Plaintiffs allege that they "believe that the class of persons affected by Defendants' unlawful practice consists of thousands of individuals …." *Id.* at ¶ 65.  Accordingly, this matter satisfies CAFA's requirement that the putative class size exceeds 100.

### B.    There is Minimal Diversity Sufficient to Establish CAFA Jurisdiction.

9.    Under CAFA there must also be minimal diversity, which exists where at least one putative class member is a citizen of a different state than any defendant.  *See* 28 U.S.C. § 1332(d)(2).

10.    The Complaint alleges that Nationwide Property & Casualty Insurance Company and Nationwide Mutual Insurance Company are corporations "located in the State of Ohio, incorporated in Ohio and with its principal place of business in Ohio." Compl. ¶ 9. Indeed, as a matter of public record, those Defendants are incorporated in Ohio, and have their principal places

of business in Ohio, and are thus citizens of Ohio for diversity purposes.  *See* 28 U.S.C. § 1332(c)(1).  Additionally, the Complaint alleges that Depositors Insurance Company is a corporation "located in the State of Iowa, incorporated in Iowa, and with its principal place of business in Iowa." Compl. ¶ 10.  As a matter of public record, Depositors is incorporated in and has its principle place of business in Iowa, and is thus a citizen of Iowa for diversity purposes.  *See* 28 U.S.C. § 1332(c)(1).

11.     Plaintiffs are citizens of Pennsylvania.  *See* Compl. ¶¶ 6-8.

12.     Thus, CAFA's requirement of minimal diversity is satisfied here.  *See* 28 U.S.C. § 1332(d)(2)(A).

### C.     The $5 Million Amount in Controversy Requirement is Met.

13.     Under CAFA, the aggregate amount in controversy must exceed $5 million for the entire putative class, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d)(2).

*14.*     "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).  "[W]hen relevant facts are not in dispute or findings have been made, the legal-certainty test applies.... Under the legal-certainty test, federal jurisdiction exists unless it appears, to a legal certainty, that the plaintiff was never entitled to recover the jurisdictional amount." *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 151 (3d Cir. 2009) (internal punctuation and citation omitted).   Where a defendant calculates the amount in controversy on allegations made in the complaint, the "posture of the case is one where the relevant facts are not expressly in dispute between the parties." *Frederico v. Home Depot*, 507 F.3d 188, 198 (3d Cir. 2007) (finding amount in controversy met where it did not appear to a legal certainty that plaintiff cannot recover the jurisdictional amount of $5 million).  However, in cases "where disputes over factual matters are involved, the *McNutt* preponderance of the evidence

standard is appropriate for resolving the dispute." *Id.* at 194 (3d Cir. 2007) (citing *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178 (1936)).

15.    In analyzing the amount in controversy, "[t]he general federal rule is to decide the amount in controversy from the complaint itself." *Angus v. Shiley Inc.*, 989 F.2d 142, 145 (3d Cir. 1993). However, where the complaint "does not limit its request for damages to a precise monetary amount, the district court [can] properly ma[k]e an independent appraisal of the value of the claim." *Id.* at 146 "[T]he amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated." *Id.* "The parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Earnshaw v. Chesapeake Appalachia, L.L.C.*, No. 3:19-CV-1479, 2019 WL 6839305, at *2 (M.D. Pa. Dec. 16, 2019) (quoting *Ibarra v. Manheim Invests., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015)). *See also Chrin v. Ibrix, Inc.*, 293 F. App'x 125, 127-28 (3d Cir. 2008) (upholding district court's finding that defendant carried burden of proving jurisdictional amount based on affidavit); *Jesmar Energy, Inc. v. Range Res.-Appalachia, LLC*, No. CV 17-928, 2017 WL 4572526, at *6 (W.D. Pa. Oct. 13, 2017) ("Having reviewed the Notice of Removal, contrary to Jesmar's contention, the Court finds that Range's Notice of Removal, which incorporates the statements contained in Sarah Black's affidavit, is not conclusory in nature and includes a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.").

16.    The amount in controversy must be determined "without consideration of [plaintiff's] success on the merits," and "[o]nce that determination is made and the federal court is seized of jurisdiction, the court's power is not conditional on a later award of at least that amount." *McNulty v. Travel Park*, 853 F. Supp. 144, 146 (E.D. Pa. 1994).

**Compensatory Damages.**

17.     According to the Complaint, Plaintiffs seek "an award of compensatory damages for the Class in amounts owed by Defendants." Compl. p. 14. Specifically, Plaintiffs allege Title and Regulatory Fees totaling $104.57. *Id.* at ¶ 41 ("Pennsylvania imposes fees on such transactions, including a title fee of $55.00, a title lien fee of $26.00 (if a lien is recorded with the transfer of title), a passenger vehicle registration transfer fee of $9.00, county fees up to $5.00, PA State Safety Certificate of Inspection Program Certificate Fee ("Safety Inspection Sticker") of $8.00, and a PA Emission Inspection Program Management Fee ("Emissions Inspection Sticker") of $1.57.").

18.     Upon information and belief, the Nationwide Defendants have had approximately 30,500 first-party personal total loss vehicle claims in the State of Pennsylvania over the past four years. *Id.* ¶ 4.

*19.*     Applying the alleged $104.57 for the Title and Regulatory Fees to the approximately 30,500 first-party personal total loss vehicle claims yields approximately $3,189,385 (30,500 claims x $104.57 per claim). *See Lewis v. Ford Motor Co.*, 610 F. Supp. 2d 476, 486 (W.D. Pa. 2009) ("If the dollar amount per claim is apparent from the complaint or can be determined from the proffered evidence, the number of class members will determine the amount in controversy through the operation of simple multiplication." (internal punctuation and citation omitted)).

**Value of Injunctive Relief.**

20.     It is well-established law in the Third Circuit that the amount in controversy includes the value of injunctive relief. *Barbiero v. Kaufman*, 580 F. App'x 107, 110 (3d Cir. 2014) ("Where, as here, a plaintiff seeks injunctive relief, the amount in controversy is measured by the

value of the right sought to be protected by the equitable relief." (internal punctuation and citation omitted)); *Martin v. Delaware Title Loans, Inc.*, No. CIV.A. 08-3322, 2008 WL 4443021, at *2–3 (E.D. Pa. Oct. 1, 2008) (including injunctive relief to determine amount in controversy where complaint sought defendant "remove its liens from the titles of all Pennsylvania car owners"). *See also Jesmar Energy*, 2017 WL 4572526, at *7 ("The Court finds that the object of Jesmar's litigation . . . includes both past and future payments under the Assignment."); *Lewis*, 610 F. Supp. 2d at 485–86 (finding value of injunctive relief in class action was $250 per vehicle where "the ultimate object of the litigation is a vehicle in which the Oscillation Defect and any related damage have been eliminated").

21.     Plaintiffs explicitly seek injunctive relief:   "Defendants' breach of the policy provisions requiring them to pay ACV on total loss claims is a continuing breach and violation of policy terms. *Injunctive relief is necessary to stop these repeated and continued violations, which are likely to continue, repeat, and cause damages to the Class in the future.*" Compl. ¶ 72 (emphasis added). *See also* Compl. ¶ 82 ("As a result of said breaches, Plaintiffs and the class members are entitled to sums representing the benefits owed for the full ACV payment … as well as costs, prejudgment and post judgment interest, *injunctive relief* and other relief as is appropriate." (emphasis added)).

22.     Prior to the implementation of CAFA in 2005, the Third Circuit specified that the value of injunctive relief must be measured only from the plaintiff's point of view, because a "defendant viewpoint" would violate the prohibition against aggregation of putative class claims to satisfy the jurisdictional amount. *See, e.g., Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1050 (3d Cir. 1993) ("In a diversity-based class action seeking primarily money damages, allowing the amount in controversy to be measured by the defendant's cost would eviscerate [the] holding

[in *Snyder v. Harris*, 394 U.S. 332 (1969)] that the claims of class members may not be aggregated in order to meet the jurisdictional threshold.").

23.     However, CAFA now *requires* the aggregation of putative class claims.  *See* 28 U.S.C. § 1332(d)(6) ("In any class action, *the claims of the individual class members shall be aggregated* to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." (emphasis added)).  Thus, anti-aggregation cases like *Packard* are no longer applicable.  Indeed, at least two post-CAFA cases in the Eastern District of Pennsylvania implicitly considered the value of injunctive relief from the defendant's viewpoint when calculating the amount in controversy.  *See Excel Pharmacy Servs., LLC v. Liberty Mut. Ins. Co.*, 389 F. Supp. 3d 289, 292–93 (E.D. Pa. 2019) (Rufe, J.) ("Although Excel argues that only declaratory relief is sought, a declaratory judgment in favor of the proposed class would presumably have the effect of requiring Defendants to reimburse the class members indefinitely at higher rates than have been paid in the past. Therefore, Excel cannot show that the value of the object of the litigation is less than five million dollars."); *Martin*, 2008 WL 4443021, at *2 (finding that although plaintiff in individual suit sought compensatory damages amounting only to $3,570, the amount in controversy was satisfied where "Plaintiff's Original Complaint unmistakably requests a Court Order that 'Delaware Title remove its liens from the titles of all Pennsylvania car owners'…. As a result, Defendants' allegation that the amount in controversy is $1,714,509.00 was based on the value of the relief that Plaintiff expressly sought[.]").  *See also Khan v. Bank of Am. Home Loan Servicing L.P.*, No. CIV. 12-117, 2012 WL 1898619, at *2 (D.N.J. May 23, 2012) (including amount defendant stood to lose on equitable claim in calculating amount in controversy); *Lewis*, 610 F. Supp. 2d at 485 n.6 (including cost to defendant of complying with injunction in calculating amount in controversy and finding plaintiff's argument that injunctive relief should be measured from their point of view to be unpersuasive).

24.     Other post-CAFA cases also support a "defendant viewpoint" for valuing injunctive relief. *See, e.g., Keeling v. Esurance Ins. Co.*, 660 F.3d 273 (7th Cir. 2011); *Valdez v. Metro. Prop. & Cas. Ins. Co.*, 867 F. Supp. 2d 1143, 1182 (D.N.M. 2012) (finding "[a]nother cost that the federal courts have held that the insurer Defendants can use to reach the jurisdictional amount is the expected claims under the underinsured motorist coverage that the Defendants would be obligated to provide" under an injunction requiring insurers to provide additional coverage); *Rasberry v. Capitol Cty. Mut. Fire. Ins. Co.*, 609 F. Supp. 2d 594, 601 (E.D. Tex. 2009) (calculating amount in controversy for injunctive relief by estimating value of potential future claims); *Cox v. Allstate Ins. Co.*, No. CIV-07-1449-L, 2008 WL 2167027, at *2 (W.D. Okla. May 22, 2008) (in determining the amount in controversy, "[t]he court cannot focus solely on the amount of monetary relief sought by plaintiffs, but must also consider the cost to defendants of the equitable remedies").

25.     In *Keeling*, defendant Esurance had issued more than 50,000 automobile insurance policies containing a disputed clause. *Keeling*, 660 F.3d at 274. During the five-year limitations period before the suit began, Esurance had collected a net premium of $613,894 on the relevant coverages, and had paid no claims. The district court treated this amount as "the principal amount in controversy (the class wants the money repaid)," and found the "prospective relief would be costless to Esurance, because that relief would require changing only a few words on a printed form." *Id.* But the Seventh Circuit reversed the district court and determined the amount in controversy requirement had been satisfied. *Id.* The Seventh Circuit found the requested injunctive relief required far more than reprinting forms: "this suit is about money, not ink." *Id.* Thus, the value of the injunctive relief was based *not* on the cost of reprinting policy forms, but rather on the prospective loss of premiums or increase in claims payments that would be incurred if the plaintiff were to prevail:

If the class is right and Esurance must either stop charging a premium or change the terms so that policyholders receive indemnity more frequently, it will suffer a financial loss. Suppose it were to comply with an injunction by eliminating this coverage and its premium. Its current profit on this coverage in Illinois is about $125,000 a year. The present value of foregoing this stream of profits is about $1.5 million. (That is the present value of $125,000 a year for 20 years, discounted at 5% per year.) The alternative means of complying with an injunction would be to change the policy's terms so that it paid more claims; that form of compliance would have an uncertain cost—presumably something less than $1.5 million (Esurance would not knowingly offer a coverage on which it loses money), but still far from trivial. The cost of prospective relief cannot be ignored in the calculation of the amount in controversy.

*Id.* Accordingly, even though the compensatory damages amounted to only approximately $600,000, the cost of the injunctive relief—projected 20 years into the future—plus the potential for punitive damages, brought the amount-in-controversy above CAFA's $5 million requirement.

26.    Here, the injunctive relief sought by Plaintiffs would be a change in the adjustment practices of the Nationwide Defendants, requiring them to include Title and Regulatory Fees in future first-party personal total loss vehicle claims payments in Pennsylvania. If the Court were to grant judgment for such injunctive relief, then compliance would require the Nationwide Defendants to pay $104.57 per total loss claim not only for the retroactive class period, but also on a prospective basis going forward.

27.    As set forth in the attached Declaration of James G. Burkert (Technical Director, Material Damage Claims at Nationwide Mutual Insurance Company) (Ex. 2), the Nationwide Defendants have had approximately 30,500 first-party personal total loss vehicle claims in the State of Pennsylvania four-year putative class period. *Id.* ¶ 4. That amounts to an average of 7,625 claims per year. If the Nationwide Defendants were required to pay Title and Regulatory Fees in the amount of $104.57 per first-party personal total loss vehicle claim in Pennsylvania for just an additional three-year period going forward (which is a small fraction of the *20-year* period approved by the Seventh Circuit in *Keeling*) then the cost would be approximately $2,392,039 (7,625 claims x $104.57 x 3 years).

28.     Accordingly, the total amount in controversy, including both compensatory and injunctive relief, is *at least* $5,581,424 (*i.e.,* $3,189,385 + $2,392,039).  If the full 20-year period of *Keeling* is considered, then the amount in controversy would be $19,136,310 (*i.e.,* $3,189,385 + (7,625 x $104.57 x 20)).[1]

29.     Accordingly, the total amount of alleged damages exceeds CAFA's $5 million jurisdictional threshold.

### D.     The Exceptions to CAFA Do Not Apply.

30.     CAFA provides two mandatory exceptions to the application of federal jurisdiction, and one discretionary exception.  *See* 28 U.S.C. § 1332(d)(3)-(4).  The exceptions require the presence of a nondiverse in-state defendant.  28 U.S.C. § 1332(d)(3)-(4) (requiring either "significant relief" to be sought from an in-state defendant (local controversy exception) or requiring the "primary defendant" to be an in-state one (home state exception)).  Here, none of the Nationwide Defendants are in-state defendants.  Rather, they are foreign insurers.  Depositors Insurance Company is a citizen of the State of Iowa, and Nationwide Property & Casualty Insurance Company and Nationwide Mutual Insurance Company are citizens of the State of Ohio.  *See* Compl. ¶¶ 9-10.  Therefore, the exceptions to CAFA are not applicable to this matter.[2]

---

[1] The *Keeling* decision applied a 5% present value discount to the calculation, and if such a discount were applied here, then the result would still land well-above the minimum threshold of $5 million.  Applying a 5% discount to yearly payments of approximately $797,346 (7,625 claims x $104.57) for a three-year period results in a present value of approximately $2,171,372.  The total amount in controversy would then amount to approximately $5,360,757 (*i.e.,* $3,189,385 + $2,171,372).  If the full 20-year period of *Keeling* is considered, then the present value of the injunctive relief would be $9,936,697 (applying a 5% discount to yearly payments of approximately $797,346 for 20 years).  The total amount in controversy would then amount to approximately $13,126,082 (*i.e.,* $3,189,385 + $9,936,697).

[2] The exceptions to CAFA would also fail for other reasons, and the Nationwide Defendants reserve the right to raise all defenses in the event that Plaintiffs attempt to satisfy their burden of asserting the CAFA exceptions.

31.    Accordingly, because the Nationwide Defendants have demonstrated that all prerequisites for CAFA jurisdiction have been met and none of the exceptions apply, this matter is properly removable.

**WHEREFORE,** the Nationwide Defendants respectfully requests that this Court assume full jurisdiction over this action.

Respectfully submitted,
BENNETT, BRICKLIN & SALTZBURG LLC

BY: _____
PAMELA A. CARLOS, ESQUIRE
Centre Square, West Tower
1500 Market Street, 32nd Floor
Philadelphia, PA 19102
Telephone: (215) 561-4300
Facsimile (215) 561-6661
Emailcarlos@bbs-law.com

DENTONS US LLP

By: _____
MARK . HANOVER, ESQUIRE
(*pro hac vice* application to Be submitted)
KATHLEEN V. KINSELLA, ESQUIRE
(*pro hac vice* application to be submitted)
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Telephone:  (312) 876-8000
Email:  mark.hanover@dentons.com
          kathleen.kinsella@dentons.com

*Attorneys for Defendants Depositors*
*Insurance Company, Nationwide Property &*
*Casualty Insurance Company, and*
*Nationwide Mutual Insurance Company*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SALVATORE SYLVESTER, ALICIA EDWARDS-GUTZMAN, and EUNICE HILL, on behalf of themselves, and all others similarly situated, | : : : : : | |
| v. | : : | Case No. |
| DEPOSITORS INSURANCE COMPANY, NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY, and NATIONWIDE MUTUAL INSURANCE COMPANY | : : : : : | |

## <u>NOTICE TO PLAINTIFFS</u>

TO:

Jonathan Shub
Kevin Laukaitis
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103-7225
jshub@kohnswift.com
klaukaitis@kohnswift.com

Edmund A. Normand (pro hac vice to be filed)
Jacob L. Phillips (pro hac vice to be filed)
NORMAND PLLC
3165 McCrory Place, Suite 175
Orlando, FL 32803
Ed@NormandPLLC.com

Scott Edelsberg, Esq. (pro hac vice to be filed)
EDELSBERG LAW, PA
20900 NE 30th Avenue, #417
Aventura, FL 33180
scott@edelsberglaw.com
utanski@edelsberglaw.com

Andrew J. Shamis (pro hac vice to be filed)
SHAMIS & GENTILE, P.A.
14 NE 1st Ave., Suite 1205
Miami, FL 33132
efilings@shamisgentile.com

Rachel Dapeer, Esq. (pro hac vice to be filed)
DAPEER LAW, P.A.
300 S. Biscayne Blvd, #2704
Miami, FL 33131
rachel@dapeer.com

Please take notice that defendants, Depositors Insurance Company, Nationwide Property & Casualty Insurance Company, and Nationwide Mutual Insurance Company, by its attorneys Bennett, Bricklin & Saltzburg, LLC have filed a Notice of Removal in the United States District Court for the Eastern District of Pennsylvania regarding an action previously pending in the Court of Common Pleas of Philadelphia County, December Term No. 3184, captioned <u>Salvatore Sylvester, Alicia Edwards-Gutzman, and Eunice Hill, on behalf of themselves, and all others similarly situated, v. Depositors Insurance Company, Nationwide Property & Casualty Insurance Company, and Nationwide Mutual Insurance Company.</u>

BENNETT, BRICKLIN & SALTZBURG LLC

BY: _____

PAMELA A. CARLOS, ESQUIRE
Centre Square, West Tower
1500 Market Street, 32nd Floor
Philadelphia, PA 19102
Telephone: (215) 561-4300
Facsimile (215) 561-6661
Email carlos@bbs-law.com

DENTONS US LLP

By: _____

MARK . HANOVER, ESQUIRE
 (*pro hac vice* application to Be submitted)
KATHLEEN V. KINSELLA, ESQUIRE
(*pro hac vice* application to be submitted)
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Telephone:  (312) 876-8000
Email:  mark.hanover@dentons.com
          kathleen.kinsella@dentons.com

*Attorneys for Defendants Depositors Insurance Company, Nationwide Property & Casualty Insurance Company, and Nationwide Mutual Insurance Company*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SALVATORE SYLVESTER, ALICIA EDWARDS-GUTZMAN, and EUNICE HILL, on behalf of themselves, and all others similarly situated, | : : : : : | |
| v. | : : | Case No. |
| DEPOSITORS INSURANCE COMPANY, NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY, and NATIONWIDE MUTUAL INSURANCE COMPANY | : : : : : | |

### PROOF OF FILING

COMMONWEALTH OF PENNSYLVANIA          :

COUNTY OF PHILADELPHIA                :

Pamela A. Carlos, Esquire, being duly sworn according to law, deposes and says that she is a member in the law firm of Bennett, Bricklin & Saltzburg, LLC, attorneys for defendants, Depositors Insurance Company, Nationwide Property & Casualty Insurance Company, and Nationwide Mutual Insurance Company and that she did direct the filing with the Court of Common Pleas of Philadelphia County a copy of the Notice of Removal attached hereto, said filing being made electronically on March 6, 2020.

Respectfully submitted,
BENNETT, BRICKLIN & SALTZBURG LLC

BY: _____

PAMELA A. CARLOS, ESQUIRE
Centre Square, West Tower
1500 Market Street, 32nd Floor
Philadelphia, PA 19102
Telephone: (215) 561-4300
Facsimile (215) 561-6661
Emailcarlos@bbs-law.com

DENTONS US LLP

By:  _____/s/_____

MARK . HANOVER, ESQUIRE
 (*pro hac vice* application to Be submitted)
KATHLEEN V. KINSELLA, ESQUIRE
(*pro hac vice* application to be submitted)
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Telephone:  (312) 876-8000
Email:  mark.hanover@dentons.com
           kathleen.kinsella@dentons.com

*Attorneys for Defendants Depositors
Insurance Company, Nationwide Property &
Casualty Insurance Company, and
Nationwide Mutual Insurance Company*

Sworn to and subscribed
before me this 6ᵗʰ day
of March, , 2020

_____
NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
DENISE M. PATSCH, Notary Public
City of Philadelphia, Phila. County
My Commission Expires October 24, 2021

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SALVATORE SYLVESTER, ALICIA :
EDWARDS-GUTZMAN, and EUNICE HILL, :
on behalf of themselves, and all others :
similarly situated, :
 :
   v. :  Case No.
 :
DEPOSITORS INSURANCE COMPANY, :
NATIONWIDE PROPERTY & CASUALTY :
INSURANCE COMPANY, :
and NATIONWIDE MUTUAL INSURANCE :
COMPANY :

### PROOF OF SERVICE

Pamela A. Carlos, Esquire, after being first duly sworn upon oath, deposes and says that she is a member in the law firm of Bennett, Bricklin & Saltzburg, LLC, attorneys for the defendants, Depositors Insurance Company, Nationwide Property & Casualty Insurance Company, and Nationwide Mutual Insurance Company , that she did serve this 6th day of March, 2020 the aforementioned Notice to Plaintiffs upon the individuals named below via email and electronic service through the Court of Common Pleas of Philadelphia County.

Jonathan Shub
Kevin Laukaitis
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103-7225
jshub@kohnswift.com
klaukaitis@kohnswift.com

Edmund A. Normand (pro hac vice to be filed)
Jacob L. Phillips (pro hac vice to be filed)
NORMAND PLLC
3165 McCrory Place, Suite 175
Orlando, FL 32803
Ed@NormandPLLC.com

Scott Edelsberg, Esq. (pro hac vice to be filed)
EDELSBERG LAW, PA
20900 NE 30th Avenue, #417
Aventura, FL 33180
scott@edelsberglaw.com
utanski@edelsberglaw.com

Andrew J. Shamis (pro hac vice to be filed)
SHAMIS & GENTILE, P.A.
14 NE 1st Ave., Suite 1205
Miami, FL 33132
efilings@shamisgentile.com

Rachel Dapeer, Esq. (pro hac vice to be filed)
DAPEER LAW, P.A.
300 S. Biscayne Blvd, #2704
Miami, FL 33131
rachel@dapeer.com

                                    BENNETT, BRICKLIN & SALTZBURG LLC

                    BY:     _____
                            PAMELA A. CARLOS, ESQUIRE
                            Centre Square, West Tower
                            1500 Market Street, 32nd Floor
                            Philadelphia, PA 19102
                            Telephone: (215) 561-4300
                            Facsimile (215) 561-6661
                            Emailcarlos@bbs-law.com

                            DENTONS US LLP

                    By:     _____
                            MARK . HANOVER, ESQUIRE
                             (pro hac vice application to Be submitted)
                            KATHLEEN V. KINSELLA, ESQUIRE
                            (pro hac vice application to be submitted)
                            233 South Wacker Drive, Suite 5900
                            Chicago, Illinois 60606
                            Telephone:  (312) 876-8000
                            Email:  mark.hanover@dentons.com
                                    kathleen.kinsella@dentons.com

                            Attorneys for Defendants Depositors
                            Insurance Company, Nationwide Property &
                            Casualty Insurance Company, and
                            Nationwide Mutual Insurance Company

Sworn to and subscribed
before me this 6th day
of March, 2020
_____
NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
DENISE M. PATSCH, Notary Public
City of Philadelphia, Phila. County
My Commission Expires October 24, 2021

EXHIBIT 1



# Notice of Service of Process

**null / ALL**
**Transmittal Number: 21198904**
**Date Processed: 02/28/2020**

| | |
|---|---|
| Primary Contact: | SOP Team nwsop@nationwide.com<br>Nationwide Mutual Insurance Company<br>Three Nationwide Plaza<br>Columbus, OH 43215 |
| Electronic copy provided to: | Ashley Roberts |

| | |
|---|---|
| **Entity:** | Nationwide Property And Casualty Insurance Company<br>Entity ID Number  3286574 |
| **Entity Served:** | Nationwide Property & Casualty Insurance Company |
| **Title of Action:** | Sylvester vs. Depositors Insurance Company |
| **Matter Name/ID:** | Salvatore Sylvester  vs. Depositors Insurance Company (10011807) |
| **Document(s) Type:** | Order |
| **Nature of Action:** | Class Action |
| **Court/Agency:** | Philadelphia County Court of Common Pleas, PA |
| **Case/Reference No:** | 2019 03184 |
| **Jurisdiction Served:** | Ohio |
| **Date Served on CSC:** | 02/28/2020 |
| **Answer or Appearance Due:** | 03/26/2020 |
| **Originally Served On:** | Nationwide Property & Casualty Insurance Company |
| **How Served:** | Client Direct |
| Sender Information: | Clerk of Court<br>N/A |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

L00338295039022820

NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY
ONE NATIONWIDE PLAZA
COLUMBUS, OH 43215


SYLVESTER ETAL VS DEPOSITORS INSURANCE COMPANY ETA
191203184

zlrordr 8/09

L00338295040022820

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
### FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
### CIVIL TRIAL DIVISION

| | |
|---|---|
| SYLVESTER ETAL | December Term 2019 |
| VS | No. 03184 |
| DEPOSITORS INSURANCE COMPANY ETA | **DOCKETED**<br>FEB 2 1 2020<br>R. POSTELL<br>COMMERCE PROGRAM |

### *CLASS ACTION INITIATION ORDER*

*AND NOW*, Friday, February 21, 2020, Plaintiff having commenced a Class Action

which has been assigned to the Honorable GARY GLAZER, it is hereby *ORDERED* as follows:

1.  All parties are directed to appear at a Case Management Conference scheduled on 26-

    MAR-2020 at 09:30 AM in Room 531, City Hall, Philadelphia, PA.

2.  All parties shall be prepared to discuss the following issues: substance of plaintiff's

    claims; any discovery needed; and Certification as a Class Action.

3.  Plaintiff's counsel shall serve a copy of this Order upon all unrepresented parties and

    any attorney entering an appearance subsequent to the date of issuance of this Order.

*BY THE COURT:*

*GARY GLAZER, J.*
*TEAM LEADER*
*CLASS ACTION PROGRAM*

RCP45806RCP45806Il (Rev 2/21/10)

Sylvester Etal Vs Depos-CLCDS



19120318400013



## Notice of Language Rights

Language Access Coordinator
Land Title Building, 2nd Floor, 100 South Broad Street, Philadelphia, PA, 19110
215-683-8000;languageaccesscoordinator@courts.phila.gov

**English:** You have the right to an interpreter at no cost to you. To request an interpreter, please inform court staff using the contact information provided at the top of this notice.

**Spanish/Español:** Usted tiene derecho a un intérprete libre de costo. Para solicitar un intérprete favor de informárselo al personal judicial utilizando la información provista en la parte superior de este aviso.

**Mandarin/Cantonese Simplified Chinese/普通话/粤语简体中文:** 您有权获得免费的口译员服务。若您要口译员，请使用本通知上方提供的联系信息通知法院工作人员

**Russian/Русский:** У вас есть право на бесплатные услуги переводчика. Заявка на переводчика подается в суд по адресу, телефону или эл. почте, указанным выше в заголовке этого уведомления.

**Portuguese/Português:** Você tem direito a um intérprete gratuitamente. Para solicitar um intérprete, informe à nossa equipe usando os dados de contato mostrados na parte superior deste aviso.

**Haitian Creole/Kreyòl Ayisyen:** Ou gen dwa reserva sèvis yon entèprèt gratis. Pou mande pou yon entèprèt, tanpri fè manm pèsonèl tribinal la konnen lè ou sèvi avèk enfòmasyon an yo te bay ou nan tèt avi sa a.

L00338290110289

AN-2

AARHNSMP 43215



FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
COURT OF COMMON PLEAS
COMMERCE PROGRAM
521 CITY HALL
PHILADELPHIA, PA 19107

FIRST CLASS MAIL
PRSRT
US POSTAGE $000.46°
ZIP 19107
041L122042258
02/24/2020



# Notice of Service of Process

**null / ALL**
**Transmittal Number: 21198941**
**Date Processed: 02/28/2020**

| | |
|---|---|
| Primary Contact: | SOP Team nwsop@nationwide.com |
| | Nationwide Mutual Insurance Company |
| | Three Nationwide Plaza |
| | Columbus, OH 43215 |

| | |
|---|---|
| Electronic copy provided to: | Ashley Roberts |

| | |
|---|---|
| Entity: | Nationwide Mutual Insurance Company |
| | Entity ID Number  3277054 |
| Entity Served: | Nationwide Mutual Insurance Company |
| Title of Action: | Sylvester vs. Depositors Insurance Company |
| Matter Name/ID: | Salvatore Sylvester  vs. Depositors Insurance Company (10011807) |
| Document(s) Type: | Order |
| Nature of Action: | Class Action |
| Court/Agency: | Philadelphia County Court of Common Pleas, PA |
| Case/Reference No: | 2019-03184 |
| Jurisdiction Served: | Ohio |
| Date Served on CSC: | 02/28/2020 |
| Answer or Appearance Due: | 03/26/2020 |
| Originally Served On: | Nationwide Mutual Insurance Company |
| How Served: | Client Direct |
| Sender Information: | Clerk of Court |
| | N/A |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

L00338295043022820

NATIONWIDE MUTUAL INSURANCE COMPANY
ONE NATIONWIDE PLAZA
COLUMBUS, OH 43215


SYLVESTER ETAL VS DEPOSITORS INSURANCE COMPANY ETA
191203184

zlrordr 8/09

L00338295044022820

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CIVIL TRIAL DIVISION**

| | |
|---|---|
| SYLVESTER ETAL | December Term 2019 |
| VS | No. 03184 |
| DEPOSITORS INSURANCE COMPANY ETA | **DOCKETED**<br><br>FEB 2 1 2020<br><br>R. POSTELL<br>COMMERCE PROGRAM |

## *CLASS ACTION INITIATION ORDER*

*AND NOW*, Friday, February 21, 2020, Plaintiff having commenced a Class Action

which has been assigned to the Honorable GARY GLAZER, it is hereby *ORDERED* as follows:

1.  All parties are directed to appear at a Case Management Conference scheduled on 26-
    MAR-2020 at 09:30 AM in Room 531, City Hall, Philadelphia, PA.

2.  All parties shall be prepared to discuss the following issues: substance of plaintiff's
    claims; any discovery needed; and Certification as a Class Action.

3.  Plaintiff's counsel shall serve a copy of this Order upon all unrepresented parties and
    any attorney entering an appearance subsequent to the date of issuance of this Order.

*BY THE COURT:*

*GARY GLAZER, J.*
*TEAM LEADER*
*CLASS ACTION PROGRAM*

RCP45800RCP45800\ (Rev 2/21/19)

Sylvester Etal Vs Depos-CLCDS



19120318400013



## Notice of Language Rights

Language Access Coordinator
Land Title Building, 2nd Floor, 100 South Broad Street, Philadelphia, PA, 19110
215-683-8000;languageaccesscoordinator@courts.phila.gov

**English:** You have the right to an interpreter at no cost to you. To request an interpreter, please inform court staff using the contact information provided at the top of this notice.

**Spanish/Español:** Usted tiene derecho a un intérprete libre de costo. Para solicitar un intérprete favor de informárselo al personal judicial utilizando la información provista en la parte superior de este aviso.

**Mandarin/Cantonese Simplified Chinese/普通话/粤语简体中文:** 您有权获得免费的口译员服务。若需要口译员，请使用本通知上方提供的联系信息通知法院工作人员。

**Russian/Русский:** У вас есть право на бесплатные услуги переводчика. Заявка на переводчика подается в суд по адресу, телефону или эл. почте, указанным выше в заголовке этого уведомления.

**Portuguese/Português:** Você tem direito a um intérprete gratuitamente. Para solicitar um intérprete, informe à nossa equipe usando os dados de contato mostrados na parte superior deste aviso.

**Haitian Creole/Kreyòl Ayisyen:** Ou gen dwa resevwa sèvis yon entèprèt gratis. Pou mande pou yon entèprèt, tanpri fè manm pèsonèl tribinal la konnen lè ou sèvi avèk enfòmasyon an yo te bay ou nan tèt avi sa a.

AN-2



FIRST ICL MAILEDO196 D32669 03259O

COMMSHIP 43215

L00338295092502830

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
COURT OF COMMON PLEAS
COMMERCE PROGRAM
521 CITY HALL
PHILADELPHIA, PA 19107

US POSTAGE
FIRST-CLASS MAIL
PRSRT
02/04/2020
$000.46⁰
ZIP 19107
041L122004258



# Notice of Service of Process

null / ALL
**Transmittal Number: 21091333**
**Date Processed: 02/07/2020**

| | |
|---|---|
| **Primary Contact:** | SOP Team nwsop@nationwide.com<br>Nationwide Mutual Insurance Company<br>Three Nationwide Plaza<br>Columbus, OH 43215 |
| **Electronic copy provided to:** | Ashley Roberts |
| **Entity:** | Depositors Insurance Company<br>Entity ID Number  0149484 |
| **Entity Served:** | Depositors Insurance Company |
| **Title of Action:** | Salvatore Sylvester, Alicia Edwards-Gutzman, and Eunice Hill, on behalf of Themselves, and All Others Similarly Situated vs. Depositors Insurance Company, Nationwide Property & Casualty Insurance Company,  and Nationwide Mutual Insurance Company |
| **Matter Name/ID:** | Salvatore Sylvester, Alicia Edwards-Gutzman, and Eunice Hill, on behalf of Themselves, and All Others Similarly Situated vs. Depositors Insurance Company, Nationwide Property & Casualty Insurance Company,  and Nationwide Mutual Insurance Company (10003220) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Philadelphia County Court of Common Pleas, PA |
| **Case/Reference No:** | 191203189 |
| **Jurisdiction Served:** | Iowa |
| **Date Served on CSC:** | 02/07/2020 |
| **Answer or Appearance Due:** | Other/NA |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Kohn, Swift & Graf, P.C.<br>N/A |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

Filed and Attested by the
Office of Judicial Records
20 DEC ... PM

|  |  |  |
|---|---|---|
| SALVATORE SYLVESTER, ALICIA EDWARDS-GUTZMAN, and EUNICE HILL, on behalf of themselves, and all others similarly situated, | : | Civil Action No. |
|  | : |  |
|  | : | Class Action |
| Plaintiffs, | : |  |
|  | : |  |
| vs. | : |  |
|  | : |  |
| DEPOSITORS INSURANCE COMPANY, NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY, and NATIONWIDE MUTUAL INSURANCE COMPANY, | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
| Defendants. | : |  |

## CLASS ACTION COMPLAINT

Plaintiff Salvatore Sylvester ("Sylvester"), Alicia Edwards-Gutzman ("Edwards") and Eunice Hill ("Hill") (collectively referred to as "Plaintiffs"), on behalf of themselves, and on behalf of all others similarly situated, files this Class Action Complaint against Depositors Insurance Company ("Depositors"), Nationwide Property & Casualty Insurance Company ("Nationwide Property") and Nationwide Mutual Insurance Company ("Nationwide Mutual") (collectively referred to as "Defendants") and in support states:

## NATURE OF THE ACTION

1.    This is a class action lawsuit by Plaintiffs, the named insured under respective automobile policies issued for private passenger auto physical damage including comprehensive and collision coverage, which requires payment of "Actual Cash Value" or "ACV." The ACV of

1

a vehicle equates to the full cost to replace the vehicle and such cost includes any mandatory state and local costs and fees (Full Total Loss Payments or "FTLP") required to replace the vehicle.

2.      Defendants are private passenger auto insurance carriers operating in Pennsylvania. One of the coverages Defendants offer is comprehensive and collision coverage. Upon information and belief, Defendants systematically underpaid not just Plaintiffs but thousands of other putative class members ("Class Members") amounts Defendants owed its insureds for ACV losses for total loss vehicles insured with comprehensive and collision coverage.

3.      This lawsuit is brought by the Plaintiffs, on behalf themselves, and on behalf of all other similarly situated insureds, who suffered damages due to Defendants' practice of refusing to pay full ACV payments to first-party total loss insureds on physical damage policies containing comprehensive and collision coverages. Specifically, as a matter of policy, Defendants fail to pay the full title registration and regulatory fees (FTLP) in its calculation of ACV when paying full total loss payment to its insureds.

4.      Plaintiffs bring a claim for breach of contract based on Defendants' practice of failing to include full title registration and regulatory fees notwithstanding its contractual obligation to do so.

5.      Venue is proper in this Court because the individual plaintiff is a resident of Philadelphia County, and a substantial portion of the acts and course of conduct give rise to the claims alleged occurred within Philadelphia County.

## THE PARTIES

6.      At all times material hereto, Plaintiff Sylvester was a citizen of the Commonwealth of Pennsylvania and resides in Lackawanna County.

2

7.    At all times material hereto, Plaintiff Edwards was a citizen of the Commonwealth of Pennsylvania and resides in Schuylkill County.

8.    At all times material hereto, Plaintiff Hill was a citizen of the Commonwealth of Pennsylvania and resides in Philadelphia County.

9.    At all times material hereto, Nationwide Property and Nationwide Mutual is and were a foreign corporation located in the State of Ohio, incorporated in Ohio and with its principal place of business in Ohio, and authorized to transact insurance in the Commonwealth of Pennsylvania.

10.    At all times material hereto, Depositors is and was a foreign corporation located in the State of Iowa, incorporated in Iowa and with its principal place of business in Iowa, and authorized to transact insurance in the Commonwealth of Pennsylvania.

## FACTUAL ALLEGATIONS

11.    In the respective Insurance Policies, Defendants' standardized policy language promises, upon the occurrence of a total loss to an insured vehicle, to provide payment of the ACV of the insured vehicle to the insured.

12.    Defendants' standardized policy language as to coverage for ACV of total loss vehicles is present in every auto policy issued by Defendants in Pennsylvania during the relevant time period.

13.    Under the policy and applicable state law, ACV has consistently been interpreted to mean repair or replacement costs less depreciation. Under the policy, ACV includes an obligation to pay state and local fees for total loss vehicle comprehensive and collision coverage (previously defined herein as FTLP). Such fees include title fees, title lien fees, registration fees, county fees, safety and emissions inspection fees, each of which are mandatory fees imposed by the Commonwealth of Pennsylvania.

3

**Plaintiff Sylvester**

14.     At all times material hereto, Plaintiff Sylvester owned a 2005 Subaru Legacy Sedan (the "Sylvester Insured Vehicle").

15.     At all times material hereto, the Sylvester Insured Vehicle was insured under the Insurance Policy issued by Defendant Depositors. *See* **Exhibit A** (Sylvester's Insurance Policy).

16.     On or about September 10, 2016, Sylvester was involved in an accident while operating the Insured Vehicle. As a result of the accident, Plaintiff filed a claim for property damage with Defendant, claim number 750256-GD (the "Sylvester's Claim").

17.     Following the filing of Sylvester's Claim, a third-party vendor CCC Information Services, Inc. ("CCC") determined that the Sylvester Insured Vehicle had a total vehicle valuation of $4,018.78. *See* **Exhibit B** at 2 (Market Valuation Report).

18.     No amount for title transfer fee or tag transfer fee was included in the amount listed in the CCC Market Valuation Report. *See Id* at 2. Instead the Report noted that the total value may not reflect the settlement amount because items such as "license and fees" were not taken into account in determining value, and may need to be taken into account prior to final determination of the settlement amount. *See Id* at 3.

19.     Depositor then determined the total value amount to be $4,018.78 and issued Sylvester a final payment in that amount. *See* **Exhibit C** (Settlement Breakdown).

20.     Depositor's payment of $4,018.78 did not include amounts for mandatory applicable fees (previously defined herein as FTLP).

21.     Title fees, title lien fees, registration fees, county fees, safety and emissions inspection fees (FTLP) are mandatory applicable fees that must be paid to replace any vehicle in the Commonwealth of Pennsylvania.

4

22.     Upon information and belief, Depositor, pursuant to a standard and uniform business practice, never pays insureds FTLP after a total-loss to an insured vehicle, notwithstanding its contractual obligation to do so.

**Plaintiff Edwards**

23.     At all times material hereto, Plaintiff Edwards owned a 2013 Nissan Altima S (the "Edwards Insured Vehicle").

24.     At all times material hereto, the Edwards Insured Vehicle was insured under the Insurance Policy issued by Defendant Nationwide Property. *See* **Exhibit D** (Edwards's Insurance Policy).

25.     On or about March 18, 2018, Edwards was involved in an accident while operating the Insured Vehicle. As a result of the accident, Plaintiff filed a claim for property damage with Defendant, claim number 923645-GG (the "Edwards's Claim").

26.     Following the filing of Edwards's Claim, a third-party vendor CCC Information Services, Inc. ("CCC") determined that the Edwards Insured Vehicle had a total vehicle valuation of $9,683.63. *See* **Exhibit E** at 2 (Market Valuation Report).

27.     No amount for title transfer fee or tag transfer fee was included in the amount listed in the CCC Market Valuation Report. *See Id* at 2. Instead the Report noted that the total value may not reflect the settlement amount because items such as "license and fees" were not taken into account in determining value, and may need to be taken into account prior to final determination of the settlement amount. *See Id* at 2.

28.     Nationwide Property then determined the total value amount to be $9,683.63 and issued Edwards a final payment in that amount. *See* **Exhibit F** (Settlement Breakdown).

5

29.     Nationwide Property's payment of $9,683.63 did not include amounts for mandatory applicable fees (previously defined herein as FTLP).

30.     Title fees, title lien fees, registration fees, county fees, safety and emissions inspection fees (FTLP) are mandatory applicable fees that must be paid to replace any vehicle in the Commonwealth of Pennsylvania.

31.     Upon information and belief, Nationwide Property, pursuant to a standard and uniform business practice, never pays insureds FTLP after a total-loss to an insured vehicle, notwithstanding its contractual obligation to do so.

**Plaintiff Hill**

32.     At all times material hereto, Plaintiff Hill owned a 2012 Nissan Maximum (the "Hill Insured Vehicle").

33.     At all times material hereto, the Hill Insured Vehicle was insured under the Insurance Policy issued by Defendant Nationwide Mutual. *See* **Exhibit G** (Hill's Insurance Policy).

34.     On or about September 12, 2017, Hill was involved in an accident while operating the Insured Vehicle. As a result of the accident, Plaintiff filed a claim for property damage with Defendant, claim number 941922-GF (the "Hill's Claim").

35.     Following the filing of Hill's Claim, a third-party vendor CCC Information Services, Inc. ("CCC") determined that the Hill Insured Vehicle had a total vehicle valuation of $12,920.77. *See* **Exhibit H** at 2 (Market Valuation Report).

36.     No amount for title transfer fee or tag transfer fee was included in the amount listed in the CCC Market Valuation Report. *See Id* at 2. Instead the Report noted that the total value may not reflect the settlement amount because items such as "license and fees"

6

were not taken into account in determining value, and may need to be taken into account prior to final determination of the settlement amount. *See Id* at 3.

37.     Nationwide Mutual then determined the total value amount to be $12,920.77 and issued Hill a final payment in that amount. *See* **Exhibit I** (Settlement Breakdown).

38.     Nationwide Mutual's payment of $12,920.77 did not include amounts for mandatory applicable fees (previously defined herein as FTLP).

39.     Title fees, title lien fees, registration fees, county fees, safety and emissions inspection fees (FTLP) are mandatory applicable fees that must be paid to replace any vehicle in the Commonwealth of Pennsylvania.

40.     Upon information and belief, Nationwide Mutual, pursuant to a standard and uniform business practice, never pays insureds FTLP after a total-loss to an insured vehicle, notwithstanding its contractual obligation to do so.

**Mandatory Fees in Pennsylvania**

41.     Vehicles are required to be legally titled, registered, and inspected in order to be used and operated in the Commonwealth of Pennsylvania. Pennsylvania imposes fees on such transactions, including a title fee of $55.00, a title lien fee of $26.00 (if a lien is recorded with the transfer of title), a passenger vehicle registration transfer fee of $9.00, county fees up to $5.00, PA State Safety Certificate of Inspection Program Certificate Fee ("Safety Inspection Sticker") of $8.00, and a PA Emission Inspection Program Management Fee ("Emissions Inspection Sticker") of $1.57. As mandatory, unavoidable fees, such fees are incontrovertibly part of the costs to replace a total loss vehicle.

Case ID: 191203184

42.     Defendants breached its Insurance Policy with Plaintiffs by failing to pay any amount for the title fee, title lien fee, registration fee, county fee, Safety Inspection Sticker fee, or Emissions Inspection Sticker fee when it paid Plaintiff what it purported to be the ACV associated with the total loss of the Insured Vehicle.

43.     Plaintiffs paid all premiums owed and otherwise satisfied all conditions precedent such that their insurance policy was in effect and operational at the time of the accident.

## THE POLICY

44.     Pursuant to the Insurance Policies, Defendants will pay for loss to the covered auto. *See* Ex. A at 8; Ex. D at 5; Ex. G at 14.

45.     Under a provision entitled "Limit of Liability," Defendants state, in relevant part, that the limit of liability is the actual cash value. *See* Ex. A at 10; Ex. D at 9; Ex. G at 17.

46.     ACV is not defined in the Insurance Policies.

47.     The policy language applies to all covered autos irrespective of ownership interests - whether owned, financed or leased.

48.     The Insurance Policies do not exclude:  (1) title fees, title lien fees, registration fees, county fees, safety and emissions inspection fees from ACV; or (2) any provision deferring or conditioning payment of vehicle title and registration fees for any purpose whatsoever.

49.     According to Defendants' policies, insureds are owed the same amount – actual cash value of the insured vehicle – whether or not they replace the vehicle at all. Insureds are owed the same amount – actual cash value – whether or not they paid (or how much they paid) for the total-loss vehicle. Instead, in exchange for the premiums paid by the

8

insureds, Defendants promise to pay a predictable amount – the actual cash value of the insured vehicle, including mandatory title and registration fees – irrespective of payments related to either the total-loss vehicle or the replacement vehicle (if any).

50.     Nevertheless, Defendants decline to include all such fees and costs in making ACV payment to total-loss insureds – specifically title fees, title lien fees, registration fees, county fees, safety and emissions inspection fees – thereby breaching its contracts with insureds.

51.     Actual cash value is the repair or replacement cost minus depreciation – a definition which would include sales tax, title fees, title lien fees, registration fees, county fees, safety and emissions inspection fees necessarily incurred upon replacement of the insured vehicle.

52.     Defendants' policies promise to provide costs to be incurred upon replacement of the vehicle.

## CLASS ALLEGATIONS

53. Plaintiffs bring this action as a class action pursuant to Pa. R. Civ. P. 1702, 1708, and 1709.

54. Plaintiffs bring this action as class representative, on behalf of themselves and all other persons or entities similarly situated, more specifically defined as follows:

> All insureds, under any Pennsylvania policy issued by Depositors Insurance Company, Nationwide Property & Casualty Insurance Company or Nationwide Mutual Insurance Company covering a vehicle with private-passenger auto physical damage coverage for comprehensive or collision loss, who made a first-party claim for total loss, where such vehicle was declared a total loss and adjusted as a total loss, where the total loss payment included no amount (or a prorated amount) for state and local regulatory fees imposed by the Commonwealth of Pennsylvania within four years prior to the date on which this lawsuit was filed through the date of any certification order.

9

55. The prerequisites to class certification under Pa. R. Civ. P. 1702 are met in that the members of the class are so numerous that joined of all members is impractical.

56. Plaintiffs' claims are typical to those of all class members because members of the class are similarly affected by Defendants' failure to make the FTLP upon the total loss of insured vehicles. The material and relevant policy terms for each class member are substantially identical to the terms of Plaintiffs' policies.

57. Plaintiffs' interests are coincident with and not antagonistic to those of other class members, nor are Plaintiffs subject to any unique defenses.

58. Plaintiffs' claims raise questions of law and fact common to all members of the class, within the meaning of Pa. R.Civ. P. 1702  and they predominate over any questions affecting only individual Class Members .

59. Common questions include, but are not limited to, the following: (a) whether, under the Defendants' standardized policy language, Plaintiffs and the class members are owed FTLP upon the total loss of an insured vehicle; and (b) whether Defendants have breached its insurance contracts with the Plaintiffs and the class members by failing to make the FTLP upon the total loss of an insured vehicle.

60. Plaintiffs' claims are typical of the claims of all other members of the class because all such claims arise from the allegedly improper failure by Defendants to make a FTLP upon the total loss of insured vehicles.

61. Plaintiffs and their counsel will fairly and adequately protect and represent the interests of each member of the class.

62. Plaintiffs are committed to the vigorous prosecution of this action and they

retained competent counsel experienced in prosecuting and defending class actions. Plaintiffs' counsel has successfully litigated other class action cases similar to that here, where insurers breached contracts with insureds by failing to include sales tax and/or total loss fees after total losses.

63. Pursuant to Pa. R.Civ. P. 1702(5) and 1708, a class action is superior to the other available methods for a fair and efficient adjudication of the controversy because, among other reasons, it is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Furthermore, because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them. Plaintiffs know of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

64. The issues related to Plaintiffs' claims do not vary from the issues relating to the claims of the other members of the classes such that a class action provides a more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

65. Although the precise number of class members is unknown to Plaintiffs at this time and can only be determined through appropriate discovery, Plaintiffs believe that the class of persons affected by Defendants' unlawful practice consists of thousands of individuals or the class of persons affected are otherwise so numerous that joinder of all class members is impractical. The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendants pursuant to standardized insurance policy language, and results in the retention by Defendants of insurance benefits and monies properly owed to Plaintiffs and the class members.

Case ID: 191203184

Thus, numerosity as to both classes is established.

66. Pa. R.Civ. P. 1702 (2)'s commonality requirement for the Class is satisfied for reasons articulated herein. The central issues in this litigation turn on interpretation of materially identical policy provisions; thus, this case is well-suited for class wide adjudication. Defendants and all class members are bound by the same materially identical policy terms. In addition to those reasons listed above, common questions include, but are not limited to the following: (a) whether under Defendants' standardized policy language, Plaintiff and Class Members are owed FTLP upon the total loss of an insured vehicle; and (b) whether Defendants breached its insurance contracts with Plaintiffs and the Class Members by failing to make FTLP upon the total loss of an insured vehicle.

67. Pa. R.Civ. P. 1702(3)'s typicality requirement for the Class Members is satisfied for reasons articulated herein, and particularly because Plaintiff and Class Members were injured through Defendants' uniform misconduct. Further, Plaintiffs and Class Members' legal claims arise from the same core practices, namely, the failure to make FTLP, including tag/title transfer fees, for first-party total loss claims. Plaintiffs' claims are based upon the same legal theories as those of the Class Members. Plaintiffs suffered the same harm as all the other Class Members.

68. The relevant Policy provisions for each Class Member are the same. The relevant law relating to the interpretation and application of those Policy provisions for each Class Member is the same. There is the potential for inconsistent or varying adjudications concerning individual Class Members. Without a single adjudication as to the application of relevant law to the relevant policy provisions, different courts may reach different conclusions relating to the same legal and factual issues.

69. Allowing the issues to be adjudicated in a piecemeal fashion likely would result

12

in certain Class Members who are not parties to individual adjudications having their rights impaired or impeded without notice or adequate representation.

70. Pa. R.Civ. P. 1708's requirements are met for all reasons already stated herein.

71. Specifically, the previously articulated common issues of fact and law predominate over any question solely affecting individual Class Members. Further, and as stated previously, class treatment is superior to any other alternative method of adjudication because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them, and Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

72. Defendants' breach of the policy provisions requiring them to pay ACV on total loss claims is a continuing breach and violation of policy terms. Injunctive relief is necessary to stop these repeated and continued violations, which are likely to continue, repeat, and cause damages to the Class in the future.

## COUNT I
## CLAIM FOR BREACH OF CONTRACT

73. Paragraphs 1-72 are hereby incorporated by reference.

74. This count is brought by Plaintiffs individually and on behalf of the Class Members.

75. Plaintiffs were a party to respective insurance policies with Defendants as described herein. *See* **Exhibit A, D** and **G.** All Class Members were parties to an insurance contract with Defendants containing materially identical terms.

76. The interpretation of Plaintiffs' and all Class Members' insurance policies is

Case ID: 191203184

governed by Pennsylvania law.

77. Plaintiffs and all Class Members made a claim determined by Defendants to be a first-party total loss under the insurance policy and determined by Defendants to be a covered claim.

78. Defendants, by paying the total loss claim, determined that Plaintiffs and each Class Member complied with the terms of their insurance contracts, and fulfilled all of their duties and conditions under their respective insurance policies for each to be paid on his or her total loss.

79. Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, the Plaintiffs and every Class Member were owed the ACV of the vehicle.

80. Defendants refused to make a FTLP (including mandatory fees) and thus failed to pay ACV owed under the respective insurance Policies to Plaintiffs and every Class Member.

81. Defendants' failure to provide the promised coverage constitutes a material breach of contract with Plaintiffs and every Class Member.

82. As a result of said breaches, Plaintiffs and the class members are entitled to sums representing the benefits owed for the full ACV payment, including full title fees, title lien fees, registration fees, county fees, safety and emissions inspection fees, as well as costs, prejudgment and post judgment interest, injunctive relief and other relief as is appropriate.

### RELIEF REQUESTED

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the putative Class, demands relief and judgment as follows:

1. For an Order certifying this action as a Class Action on behalf of the Class described above;

2. For an award of compensatory damages for the Class in amounts owed by Defendants;

Case ID: 191203184

3.      For all other damages according to proof;

4.      For an award of attorney's fees and expenses as appropriate pursuant to applicable law;

5.      For costs of suit incurred herein;

6.      For pre- and post-judgment interests on any amounts awarded; and

7.      For other and further forms of relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demands a trial by jury as to all issues so triable.


Respectfully submitted,

By: */s/ Jonathan Shub*
**KOHN, SWIFT & GRAF, P.C.**
Jonathan Shub (Bar No. 53965)
Kevin Laukaitis
1600 Market Street, Suite 2500
Philadelphia, PA  19103-7225
T:  215-238-1700
jshub@kohnswift.com
klaukaitis@kohnswift.com


**NORMAND PLLC**
Edmund A. Normand  *(pro hac vice to be filed)*
Jacob L. Phillips *(pro hac vice to be filed)*
3165 McCrory Place, Suite 175
Orlando, FL 32803
T: 407-603-6031
Ed@NormandPLLC.com

**EDELSBERG LAW, PA**
Scott Edelsberg, Esq. *(pro hac vice to be filed)*
20900 NE 30th Avenue, #417
Aventura, FL 33180
T: 305-975-3320
scott@edelsberglaw.com
utanski@edelsberglaw.com

Case ID: 191203184

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis *(pro hac vice to be filed)*
14 NE 1ᵗ Ave., Suite 1205
Miami, FL 33132
T: 305-479-2299
efilings@shamisgentile.com

**DAPEER LAW, P.A.**
Rachel Dapeer, Esq. *(pro hac vice to be filed)*
300 S. Biscayne Blvd, #2704
Miami, FL 33131
T: 305-610-5223
rachel@dapeer.com

Case ID: 191203184

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**DECEMBER 2019**

E-Filing Number: 1912052962

**003184**

| | |
|---|---|
| **PLAINTIFF'S NAME** SALVATORE SYLVESTER | **DEFENDANTS NAME** DEPOSITORS INSURANCE COMPANY |
| **PLAINTIFF'S ADDRESS** 1544 SUMMIT LAKE RD CLARKS SUMMIT PA 18411 | **DEFENDANTS ADDRESS** 1100 LOCUST STREET DES MOINES IA 50391 |
| **PLAINTIFF'S NAME** ALICIA EDWARDS-GUTZMAN | **DEFENDANTS NAME** NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY |
| **PLAINTIFF'S ADDRESS** 300 N. 8TH ST POTTSVILLE PA 17901 | **DEFENDANTS ADDRESS** ONE NATIONWIDE PLAZA COLUMBUS OH 43215 |
| **PLAINTIFF'S NAME** EUNICE HILL | **DEFENDANTS NAME** NATIONWIDE MUTUAL INSURANCE COMPANY |
| **PLAINTIFF'S ADDRESS** 5435 WHITBY AVE PHILADELPHIA PA 19143 | **DEFENDANTS ADDRESS** ONE NATIONWIDE PLAZA COLUMBUS OH 43215 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 3 | 3 | ☒ Complaint   ☐ Petition Action   ☐ Notice of Appeal ☐ Writ of Summons   ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| ☐ $50,000.00 or less ☒ More than $50,000.00 | ☐ Arbitration ☐ Jury ☐ Non-Jury ☒ Other: CLASS ACTION | ☐ Mass Tort ☐ Savings Action ☐ Petition | ☐ Commerce ☐ Minor Court Appeal ☐ Statutory Appeals | ☐ Settlement ☐ Minors ☐ W/D/Survival |

**CASE TYPE AND CODE**

C1 - CLASS ACTION

**STATUTORY BASIS FOR CAUSE OF ACTION**

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | IS CASE SUBJECT TO COORDINATION ORDER? |
|---|---|
| **FILED** **PRO PROTHY** DEC 20 2019 **M. BRYANT** | YES          NO |

---

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: <u>SALVATORE SYLVESTER , ALICIA</u>
<u>EDWARDS-GUTZMAN , EUNICE HILL</u>

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY JONATHAN SHUB | ADDRESS KOHN, SWIFT & GRAFT, P.C. 1600 MARKET STREET SUITE 2500 PHILADELPHIA PA 19103 |
|---|---|
| **PHONE NUMBER** (215)238-1700          **FAX NUMBER** (215)238-1968 | |
| **SUPREME COURT IDENTIFICATION NO.** 53965 | **E-MAIL ADDRESS** jshub@kohnswift.com |
| **SIGNATURE OF FILING ATTORNEY OR PARTY** JONATHAN SHUB | **DATE SUBMITTED** Friday, December 20, 2019, 03:36 pm |

FINAL COPY (Approved by the Prothonotary Clerk)



Filed and Attested by the
Office of Judicial Records
20 DEC 2019 5 pm

# EXHIBIT A

Case ID: 191203184

AA 0001P (10-05)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERSONAL AUTO POLICY

### AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

### DEFINITIONS

**A.** Throughout this policy, "you" and "your" refer to:

  1. The "named insured" shown in the Declarations; and

  2. The spouse if a resident of the same household.

  If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse will be considered "you" and "your" under this policy but only until the earlier of:

  1. The end of 90 days following the spouse's change of residency;

  2. The effective date of another policy listing the spouse as a named insured; or

  3. The end of the policy period.

**B.** "We", "us" and "our" refer to the Company providing this insurance.

**C.** For purposes of this policy, a private passenger type auto, pickup or van shall be deemed to be owned by a person if leased:

  1. Under a written agreement to that person; and

  2. For a continuous period of at least 6 months.

Other words and phrases are defined. They are in quotation marks when used.

**D.** "Bodily injury" means bodily harm, sickness or disease, including death that results.

**E.** "Business" includes trade, profession or occupation.

**F.** "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

**G.** "Occupying" means:

  1. In;

  2. Upon; or

  3. Getting in, on, out or off.

**H.** "Property damage" means physical injury to, destruction of or loss of use of tangible property.

**I.** "Trailer" means a vehicle designed to be pulled by a:

  1. Private passenger auto; or

  2. Pickup or van.

  It also means a farm wagon or farm implement while towed by a vehicle listed in **1.** or **2.** above.

**J.** "Your covered auto" means:

  1. Any vehicle shown in the Declarations.

  2. A "newly acquired auto".

  3. Any "trailer" you own.

  4. Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

    **a.** Breakdown;

    **b.** Repair;

    **c.** Servicing;

    **d.** Loss; or

    **e.** Destruction.

    This Provision (**J.4.**) does not apply to Coverage For Damage To Your Auto.

**K.** "Newly acquired auto":

  1. "Newly acquired auto" means any of the following types of vehicles you become the owner of during the policy period:

    **a.** A private passenger auto; or

    **b.** A pickup or van, for which no other insurance policy provides coverage, that:

      **(1)** Has a Gross Vehicle Weight Rating of 10,000 lbs. or less; and

      **(2)** Is not used for the delivery or transportation of goods and materials unless such use is:

AA 0001P (10-05)

Page 1 of 13

**AA 0001P (10-05)**

(a) Incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or

(b) For farming or ranching.

2. Coverage for a "newly acquired auto" is provided as described below. If you ask us to insure a "newly acquired auto" after a specified time period described below has elapsed, any coverage we provide for a "newly acquired auto" will begin at the time you request the coverage.

a. For any coverage provided in this policy except Coverage For Damage To Your Auto, a "newly acquired auto" will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner. However, for this coverage to apply to a "newly acquired auto" which is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 14 days after you become the owner.

If a "newly acquired auto" replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

b. Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

(1) 14 days after you become the owner if the Declarations indicate that Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the

broadest coverage we now provide for any auto shown in the Declarations.

(2) Four days after you become the owner if the Declarations do not indicate that Collision Coverage applies to at least one auto. If you comply with the 4 day requirement and a loss occurred before you asked us to insure the "newly acquired auto", a Collision deductible of $500 will apply.

c. Other Than Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

(1) 14 days after you become the owner if the Declarations indicate that Other Than Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

(2) Four days after you become the owner if the Declarations do not indicate that Other Than Collision Coverage applies to at least one auto. If you comply with the 4 day requirement and a loss occurred before you asked us to insure the "newly acquired auto", an Other Than Collision deductible of $500 will apply.

## PART A – LIABILITY COVERAGE

### INSURING AGREEMENT

A. We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the "insured". We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or

settlements. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

B. "Insured" as used in this Part means:

1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer".

2. Any person using "your covered auto".

3. For "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of a

Case ID: 191203184

person for whom coverage is afforded under this Part.

4. For any auto or "trailer", other than "your covered auto", any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This Provision (B.4.) applies only if the person or organization does not own or hire the auto or "trailer".

## SUPPLEMENTARY PAYMENTS

We will pay on behalf of an "insured":

1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

4. Up to $200 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

5. Other reasonable expenses incurred at our request.

These payments will not reduce the limit of liability.

## EXCLUSIONS

A. We do not provide Liability Coverage for any "insured":

1. Who intentionally causes "bodily injury" or "property damage".

2. For "property damage" to property owned or being transported by that "insured".

3. For "property damage" to property:

   a. Rented to;

   b. Used by; or

   c. In the care of;

   that "insured".

   This Exclusion (A.3.) does not apply to "property damage" to a residence or private garage.

4. For "bodily injury" to an employee of that "insured" during the course of employment. This Exclusion (A.4.) does not apply to "bodily injury" to a domestic employee

unless workers' compensation benefits are required or available for that domestic employee.

5. For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This Exclusion (A.5.) does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the "business" of:

   a. Selling;

   b. Repairing;

   c. Servicing;

   d. Storing; or

   e. Parking;

   vehicles designed for use mainly on public highways. This includes road testing and delivery. This Exclusion (A.6.) does not apply to the ownership, maintenance or use of "your covered auto" by:

   a. You;

   b. Any "family member"; or

   c. Any partner, agent or employee of you or any "family member".

7. Maintaining or using any vehicle while that "insured" is employed or otherwise engaged in any "business" (other than farming or ranching) not described in Exclusion A.6.

   This Exclusion (A.7.) does not apply to the maintenance or use of a:

   a. Private passenger auto;

   b. Pickup or van; or

   c. "Trailer" used with a vehicle described in a. or b. above.

8. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (A.8.) does not apply to a "family member" using "your covered auto" which is owned by you.

9. For "bodily injury" or "property damage" for which that "insured":

   a. Is an insured under a nuclear energy liability policy; or

   b. Would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

   A nuclear energy liability policy is a policy issued by any of the following or their successors:

Case ID: 191203184

AA 0001P (10-05)

a. Nuclear Energy Liability Insurance Association;

b. Mutual Atomic Energy Liability Underwriters; or

c. Nuclear Insurance Association of Canada.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any vehicle which:

a. Has fewer than four wheels; or

b. Is designed mainly for use off public roads.

This Exclusion (**B.1.**) does not apply:

a. While such vehicle is being used by an "insured" in a medical emergency;

b. To any "trailer"; or

c. To any non-owned golf cart.

2. Any vehicle, other than "your covered auto", which is:

a. Owned by you; or

b. Furnished or available for your regular use.

3. Any vehicle, other than "your covered auto", which is:

a. Owned by any "family member"; or

b. Furnished or available for the regular use of any "family member".

However, this Exclusion (**B.3.**) does not apply to you while you are maintaining or "occupying" any vehicle which is:

a. Owned by a "family member"; or

b. Furnished or available for the regular use of a "family member".

4. Any vehicle, located inside a facility designed for racing, for the purpose of:

a. Competing in; or

b. Practicing or preparing for;

any prearranged or organized racing or speed contest.

**LIMIT OF LIABILITY**

A. The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

The limit of liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident.

This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part B or Part C of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

**OUT OF STATE COVERAGE**

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

A. If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.

**FINANCIAL RESPONSIBILITY**

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

**OTHER INSURANCE**

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own, including any

AA 0001P (10-05)

Case ID: 191203184

AA 0001P (10-05)

vehicle while used as a temporary substitute for "your covered auto", shall be excess over any other collectible insurance.

---

## PART B – MEDICAL PAYMENTS COVERAGE

### INSURING AGREEMENT

**A.** We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury":

   **1.** Caused by accident; and

   **2.** Sustained by an "insured".

   We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

**B.** "Insured" as used in this Part means:

   **1.** You or any "family member":

      **a.** While "occupying"; or

      **b.** As a pedestrian when struck by;

      a motor vehicle designed for use mainly on public roads or a trailer of any type.

   **2.** Any other person while "occupying" "your covered auto".

### EXCLUSIONS

We do not provide Medical Payments Coverage for any "insured" for "bodily injury":

   **1.** Sustained while "occupying" any motorized vehicle having fewer than four wheels.

   **2.** Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This Exclusion (2.) does not apply to a share-the-expense car pool.

   **3.** Sustained while "occupying" any vehicle located for use as a residence or premises.

   **4.** Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury".

   **5.** Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

      **a.** Owned by you; or

      **b.** Furnished or available for your regular use.

   **6.** Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

      **a.** Owned by any "family member"; or

      **b.** Furnished or available for the regular use of any "family member".

However, this Exclusion (6.) does not apply to you.

   **7.** Sustained while "occupying" a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (7.) does not apply to a "family member" using "your covered auto" which is owned by you.

   **8.** Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured". This Exclusion (8.) does not apply to "bodily injury" sustained while "occupying" a:

      **a.** Private passenger auto;

      **b.** Pickup or van; or

      **c.** "Trailer" used with a vehicle described in a. or b. above.

   **9.** Caused by or as a consequence of:

      **a.** Discharge of a nuclear weapon (even if accidental);

      **b.** War (declared or undeclared);

      **c.** Civil war;

      **d.** Insurrection; or

      **e.** Rebellion or revolution.

   **10.** From or as a consequence of the following, whether controlled or uncontrolled or however caused:

      **a.** Nuclear reaction;

      **b.** Radiation; or

      **c.** Radioactive contamination.

   **11.** Sustained while "occupying" any vehicle located inside a facility designed for racing, for the purpose of:

      **a.** Competing in; or

      **b.** Practicing or preparing for;

      any prearranged or organized racing or speed contest.

### LIMIT OF LIABILITY

**A.** The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

   **1.** "Insureds";

Case ID: 191203184

AA 0001P (10-05)

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

**B.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part **A** or Part **C** of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

**OTHER INSURANCE**

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

---

## PART C – UNINSURED MOTORISTS COVERAGE

**INSURING AGREEMENT**

**A.** We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured"; and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

**B.** "Insured" as used in this Part means:

1. You or any "family member".

2. Any other person "occupying" "your covered auto".

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in **1.** or **2.** above.

**C.** "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.

3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

   a. You or any "family member";

b. A vehicle which you or any "family member" are "occupying"; or

c. "Your covered auto".

4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

   a. Denies coverage; or

   b. Is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member".

2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads.

5. Designed mainly for use off public roads while not on public roads.

6. While located for use as a residence or premises.

**EXCLUSIONS**

**A.** We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:

1. By an "insured" while "occupying", or when struck by, any motor vehicle owned by that "insured" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. By any "family member" while "occupying", or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

**B.** We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any "insured":

AA 0001P (10-05)

Case ID: 191203184

1. If that "insured" or the legal representative settles the "bodily injury" claim and such settlement prejudices our right to recover payment.

2. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This Exclusion **(B.2.)** does not apply to a share-the-expense car pool.

3. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion **(B.3.)** does not apply to a "family member" using "your covered auto" which is owned by you.

**C.** This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

**D.** We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

**LIMIT OF LIABILITY**

**A.** The limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

**B.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part A or Part B of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

**C.** We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

**D.** We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

**OTHER INSURANCE**

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy:

1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

2. Any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any collectible insurance providing such coverage on a primary basis.

3. If the coverage under this policy is provided:

   **a.** On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

   **b.** On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

**ARBITRATION**

**A.** If we and an "insured" do not agree:

1. Whether that "insured" is legally entitled to recover damages; or

2. As to the amount of damages which are recoverable by that "insured";

from the owner or operator of an "uninsured motor vehicle", then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Case ID: 191203184

AA 0001P (10-05)

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision

agreed to by at least two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and

2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

## PART D – COVERAGE FOR DAMAGE TO YOUR AUTO

**INSURING AGREEMENT**

A. We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto", including their equipment, minus any applicable deductible shown in the Declarations. If loss to more than one "your covered auto" or "non-owned auto" results from the same "collision", only the highest applicable deductible will apply. We will pay for loss to "your covered auto" caused by:

1. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a "non-owned auto", we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

B. "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object.

Loss caused by the following is considered other than "collision":

1. Missiles or falling objects;

2. Fire;

3. Theft or larceny;

4. Explosion or earthquake;

5. Windstorm;

6. Hail, water or flood;

7. Malicious mischief or vandalism;

8. Riot or civil commotion;

9. Contact with bird or animal; or

10. Breakage of glass.

If breakage of glass is caused by a "collision", you may elect to have it considered a loss caused by "collision".

C. "Non-owned auto" means:

1. Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member"; or

2. Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

a. Breakdown;

b. Repair;

c. Servicing;

d. Loss; or

e. Destruction.

**TRANSPORTATION EXPENSES**

A. In addition, we will pay, without application of a deductible, up to a maximum of $600 for:

1. Temporary transportation expenses not exceeding $20 per day incurred by you in the event of a loss to "your covered auto". We will pay for such expenses if the loss is caused by:

a. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

AA 0001P (10-05)

Case ID: 191203184

AA 0001P (10-05)

b. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

2. Expenses for which you become legally responsible in the event of loss to a "non-owned auto". We will pay for such expenses if the loss is caused by:

    a. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for any "your covered auto".

    b. "Collision" only if the Declarations indicate that Collision Coverage is provided for any "your covered auto".

   However, the most we will pay for any expenses for loss of use is $20 per day.

B. Subject to the provisions of Paragraph A., if the loss is caused by:

1. A total theft of "your covered auto" or a "non-owned auto", we will pay only expenses incurred during the period:

    a. Beginning 48 hours after the theft; and

    b. Ending when "your covered auto" or the "non-owned auto" is returned to use or we pay for its loss.

2. Other than theft of a "your covered auto" or a "non-owned auto", we will pay only expenses beginning when the auto is withdrawn from use for more than 24 hours.

Our payment will be limited to that period of time reasonably required to repair or replace the "your covered auto" or the "non-owned auto".

## EXCLUSIONS

We will not pay for:

1. Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used as a public or livery conveyance. This Exclusion (1.) does not apply to a share-the-expense car pool.

2. Damage due and confined to:

    a. Wear and tear;

    b. Freezing;

    c. Mechanical or electrical breakdown or failure; or

    d. Road damage to tires.

   This Exclusion (2.) does not apply if the damage results from the total theft of "your covered auto" or "non-owned auto".

3. Loss due to or as a consequence of:

    a. Radioactive contamination;

    b. Discharge of any nuclear weapon (even if accidental);

    c. War (declared or undeclared);

    d. Civil war;

    e. Insurrection; or

    f. Rebellion or revolution.

4. Loss to any electronic equipment that reproduces, receives or transmits audio, visual or data signals. This includes but is not limited to:

    a. Radios and stereos;

    b. Tape decks;

    c. Compact disk systems;

    d. Navigation systems;

    e. Internet access systems;

    f. Personal computers;

    g. Video entertainment systems;

    h. Telephones;

    i. Televisions;

    j. Two-way mobile radios;

    k. Scanners; or

    l. Citizens band radios.

   This Exclusion (4.) does not apply to electronic equipment that is permanently installed in "your covered auto" or any "non-owned auto".

5. Loss to tapes, records, disks or other media used with equipment described in Exclusion 4.

6. A total loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by governmental or civil authorities.

   This Exclusion (6.) does not apply to the interests of Loss Payees in "your covered auto".

7. Loss to:

    a. A "trailer", camper body, or motor home, which is not shown in the Declarations; or

    b. Facilities or equipment used with such "trailer", camper body or motor home. Facilities or equipment include but are not limited to:

        (1) Cooking, dining, plumbing or refrigeration facilities;

        (2) Awnings or cabanas; or

        (3) Any other facilities or equipment used with a "trailer", camper body, or motor home.

Case ID: 191203184

This Exclusion (**7.**) does not apply to a:

a. "Trailer", and its facilities or equipment, which you do not own; or

b. "Trailer", camper body, or the facilities or equipment in or attached to the "trailer" or camper body, which you:

(1) Acquire during the policy period; and

(2) Ask us to insure within 14 days after you become the owner.

8. Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

9. Loss to equipment designed or used for the detection or location of radar or laser.

10. Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

a. Special carpeting or insulation;

b. Furniture or bars;

c. Height-extending roofs; or

d. Custom murals, paintings or other decals or graphics.

This Exclusion (**10.**) does not apply to a cap, cover or bedliner in or upon any "your covered auto" which is a pickup.

11. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

a. Selling;

b. Repairing;

c. Servicing;

d. Storing; or

e. Parking;

vehicles designed for use on public highways. This includes road testing and delivery.

12. Loss to "your covered auto" or any "non-owned auto", located inside a facility designed for racing, for the purpose of:

a. Competing in; or

b. Practicing or preparing for;

any prearranged or organized racing or speed contest.

13. Loss to, or loss of use of, a "non-owned auto" rented by:

a. You; or

b. Any "family member";

if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that "family member", pursuant to the provisions of any applicable rental agreement or state law.

**LIMIT OF LIABILITY**

A. Our limit of liability for loss will be the lesser of the:

1. Actual cash value of the stolen or damaged property; or

2. Amount necessary to repair or replace the property with other property of like kind and quality.

However, the most we will pay for loss to:

1. Any "non-owned auto" which is a trailer is $1500.

2. Electronic equipment that reproduces, receives or transmits audio, visual or data signals, which is permanently installed in the auto in locations not used by the auto manufacturer for installation of such equipment, is $1,000.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

C. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**PAYMENT OF LOSS**

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or

2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

**NO BENEFIT TO BAILEE**

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

**OTHER SOURCES OF RECOVERY**

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be

Case ID: 191203184

AA 0001P (10-05)

excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the "non-owned auto";

2. Any other applicable physical damage insurance;

3. Any other source of recovery applicable to the loss.

**APPRAISAL**

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two

appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

---

## PART E – DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require:

   a. To physical exams by physicians we select. We will pay for these exams.

   b. To examination under oath and subscribe the same.

4. Authorize us to obtain:

   a. Medical reports; and

   b. Other pertinent records.

5. Submit a proof of loss when required by us.

C. A person seeking Uninsured Motorists Coverage must also:

1. Promptly notify the police if a hit-and-run driver is involved.

2. Promptly send us copies of the legal papers if a suit is brought.

D. A person seeking Coverage For Damage To Your Auto must also:

1. Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

---

## PART F – GENERAL PROVISIONS

**BANKRUPTCY**

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

**CHANGES**

A. This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B. If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;

2. Operators using insured vehicles;

3. The place of principal garaging of insured vehicles;

4. Coverage, deductible or limits.

If a change resulting from **A.** or **B.** requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

C. If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will

Case ID: 191203184

AA 0001P (10-05)

automatically apply to your policy as of the date we implement the change in your state. This Paragraph (C.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through Introduction of:

1. A subsequent edition of your policy; or

2. An Amendatory Endorsement.

## FRAUD

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

## LEGAL ACTION AGAINST US

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until:

1. We agree in writing that the "insured" has an obligation to pay; or

2. The amount of that obligation has been finally determined by judgment after trial.

B. No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured".

## OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

However, our rights in this Paragraph (A.) do not apply under Part D, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

## POLICY PERIOD AND TERRITORY

A. This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

2. Within the policy territory.

B. The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

## TERMINATION

### A. Cancellation

This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

    a. Returning this policy to us; or

    b. Giving us advance written notice of the date cancellation is to take effect.

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

    a. At least 10 days notice:

      (1) If cancellation is for nonpayment of premium; or

      (2) If notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

    b. At least 20 days notice in all other cases.

3. After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

    a. For nonpayment of premium; or

    b. If your driver's license or that of:

      (1) Any driver who lives with you; or

      (2) Any driver who customarily uses "your covered auto";

    has been suspended or revoked. This must have occurred:

      (1) During the policy period; or

      (2) Since the last anniversary of the original effective date if the policy period is other than 1 year; or

    c. If the policy was obtained through material misrepresentation.

**B. Nonrenewal**

If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 20 days before the end of the policy period. Subject to this notice requirement, if the policy period is:

1. Less than 6 months, we will have the right not to renew or continue this policy every 6 months, beginning 6 months after its original effective date.

2. 6 months or longer, but less than one year, we will have the right not to renew or continue this policy at the end of the policy period.

3. 1 year or longer, we will have the right not to renew or continue this policy at each anniversary of its original effective date.

**C. Automatic Termination**

If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

**D. Other Termination Provisions**

1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

**TRANSFER OF YOUR INTEREST IN THIS POLICY**

**A.** Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto".

**B.** Coverage will only be provided until the end of the policy period.

**TWO OR MORE AUTO POLICIES**

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Includes copyrighted material of ISO Properties, Inc., with its permission.
© ISO Properties, Inc., 2003

Case ID: 191203184



Filed and Attested by the
Office of Judicial Records
20 DEC 2019 05:25 pm

# EXHIBIT B

# Looking for a no-hassle pricing on New or Used Car?

Powered by TrueCar. The Auto Shopping Service. is here to help.



Shop with confidence and save, discovering great deals.

# We'll get you back on the road fast!

Powered by TrueCar. The Auto Shopping Service.
provides:

- TrueCar® Certified Dealers dedicated to providing a no-hassle car buying experience.
- What others paid for new vehicle in your area so you don't overpay.
- A way to easily view and compare thousands of new and used vehicles online.
- TrueCar® representatives available to help you through the entire process.

A service you can trust when you need it most

*Visit us today at www.nationwide.com/replacecar*
*or call 877-924-2588*

Your actual savings may vary based on multiple factors including the vehicle you select, region, dealer, and applicable manufacturer incentives.
This no obligation program is administered by TrueCar, Inc.

Case ID: 191203184

 **MARKET VALUATION REPORT**

*Prepared for DEPOSITORS INSURANCE COMPANY*

## REPORT SUMMARY

### CLAIM INFORMATION

| | |
|---|---|
| Owner | Sylvester, Salvatore<br>1544 Summit Lake Rd<br>Clarks Summit, PA 18411 |
| Loss Vehicle | 2005 Subaru Legacy Sedan<br>Automatic |
| Loss Incident Date | 09/10/2016 |
| Claim Reported | 09/12/2016 |

### INSURANCE INFORMATION

| | |
|---|---|
| Report Reference Number | 82143671 |
| Claim Reference | 750256-GD-1 |
| Adjuster | Manglaviti, Michael |
| Appraiser | Manglaviti, Michael G |
| Appr. License: | 0302493 |
| Odometer | 124,122 |
| Last Updated | 09/12/2016 12:59 PM |

### VALUATION SUMMARY

| | |
|---|---|
| **Pennsylvania Statewide Value** | **$ 4,625.00** |
| **Base Vehicle Value** | **$ 4,135.00** |
| **CCC Valuation (average of statewide and base vehicle values)** | **$ 4,380.00** |
| Condition Adjustment | - $ 117.00 |
| **Adjusted Vehicle Value** | **$ 4,263.00** |
| Vehicular Tax (6%) | + $ 255.78 |
| Tax reflects applicable state, county and municipal taxes. | |
| **Value before Deductible** | **$ 4,518.78** |
| Deductible | - $ 500.00 |
| **Total** | **$ 4,018.78** |

Appraiser's Signature: ...........................................

The CCC ONE® Market Valuation Report reflects CCC Information Services Inc.'s opinion as to the value of the loss vehicle, based on information provided to CCC by DEPOSITORS INSURANCE COMPANY.

Loss vehicle odometer is similar to the average mileage of 123,800.

**PENNSYLVANIA STATEWIDE VALUE**

The Pennsylvania Statewide Value is based on all Pennsylvania valuations for a similarly equipped 2005 Subaru Legacy Sedan

**BASE VEHICLE VALUE**

This is derived from comparable vehicle(s) available or recently available in the marketplace at the time of valuation, per our valuation methodology described on the next page.

**ADJUSTED VEHICLE VALUE**

This is determined by adjusting the CCC Valuation Amount to account for the actual condition of the loss vehicle and certain other reported attributes, if any, such as refurbishments and after factory equipment.

**Inside the Report**

Valuation Methodology...................3
Vehicle Information.......................4
Vehicle Condition.........................7
Comparable Vehicles....................8
Valuation Notes...........................11

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

Case ID: 191203184

 **CCC ONE. MARKET VALUATION REPORT**

| Owner: Sylvester, Salvatore
| Claim: 750256-GD-1

# REPORT SUMMARY

 **VALUATION SUMMARY**

The total may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account.



© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

**CCC ONE.** MARKET VALUATION REPORT | Owner: Sylvester, Salvatore
Claim: 750256-GD-1

# VALUATION METHODOLOGY

## How was the valuation determined?



### CLAIM INSPECTION

DEPOSITORS INSURANCE COMPANY has provided CCC with the zip code where the loss vehicle is garaged, loss vehicle VIN, mileage, equipment, as well as loss vehicle condition, which is used to assist in determining the value of the loss vehicle.



### DATABASE REVIEW

CCC maintains an extensive database of vehicles that currently are or recently were available for sale in the U.S. This database includes vehicles that CCC employees have physically inspected, as well as vehicles advertised for sale by dealerships or private parties. All of these sources are updated regularly.

### SEARCH FOR COMPARABLES

When a valuation is created the database is searched and comparable vehicles in the area are selected. The zip code where the loss vehicle is garaged determines the starting point for the search. Comparable vehicles are similar to the loss vehicle based on relevant factors.



### CALCULATE BASE VEHICLE VALUE

Adjustments to the price of the selected comparable vehicles are made to reflect differences in vehicle attributes, including mileage and options. Dollar adjustments are based upon market research.

Finally, the Base Vehicle Value is the weighted average of the adjusted values of the comparable vehicles based on the following factors:
- Source of the data (such as inspected versus advertised)
- Similarity (such as equipment, mileage, and year)
- Proximity to the loss vehicle's primary garage location
- Recency of information



© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE. MARKET VALUATION REPORT**

Owner: Sylvester, Salvatore
Claim: 750256-GD-1

# 🚗 VEHICLE INFORMATION

## VEHICLE DETAILS

| | |
|---|---|
| Location | CLARKS SUMMIT, PA 18411 |
| VIN | 4S3BL616157213432 |
| Year | 2005 |
| Make | Subaru |
| Model | Legacy Sedan |
| Body Style | Automatic |
| Body Type | Sedan |
| Engine - | |
|     Cylinders | 4 |
|     Displacement | 2.5L |
|     Fuel Type | Gasoline |
|     Carburation | SMPI |
| Transmission | Automatic Transmission 4 Wheel Drive Overdrive |
| Curb Weight | 3200 lbs |

Vehicles sold in the United States are required to have a manufacturer assigned Vehicle Identification Number(VIN). This number provides certain specifications of the vehicle.

Please review the information in the Vehicle Information Section to confirm the reported mileage and to verify that the information accurately reflects the options, additional equipment or other aspects of the loss vehicle that may impact the value.

## VEHICLE ALLOWANCES

| | | |
|---|---|---|
| **Odometer** | 124,122 | - 15 |

**Options**

| | | |
|---|---|---|
| Electric Glass Roof | Reported | + 278 |
| Positraction | Reported | + 23 |
| Rear Spoiler | Not Present | + 70 |

Reported* Option(s) added after initial valuation

Allowances are factors influencing the value of the loss vehicle when compared to a typical vehicle. The typical vehicle is a vehicle of the same year, make, and model as the loss vehicle, including average mileage, and all standard and predominant equipment. These allowances are displayed for illustrative purposes only.

The Base Vehicle Value is calculated from the comparable vehicles with adjustments to reflect the loss vehicle configuration.

## VEHICLE HISTORY SUMMARY

| | | |
|---|---|---|
| CCC VINguard® | 1 Collision Estimate | 09/16/2009 |
| Experian AutoCheck | No Title Problem Found | |
| National Highway Traffic Safety Administration | 2 Recalls | |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

Case ID: 191203184

 **CCC ONE.** MARKET VALUATION REPORT

Owner: Sylvester, Salvatore
Claim: 750256-GD-1

# 🚗 VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| | | | |
|---|---|---|---|
| **Odometer** | 124,122 | | |
| **Transmission** | Automatic Transmission | ✔ | |
| | Overdrive | ✔ | |
| | 4 Wheel Drive | ✔ | |
| **Power** | Power Steering | ✔ | |
| | Power Brakes | ✔ | |
| | Power Windows | ✔ | |
| | Power Locks | ✔ | |
| | Power Mirrors | ✔ | |
| | Power Trunk/Gate Release | ✔ | |
| **Decor/Convenience** | Air Conditioning | ✔ | |
| | Tilt Wheel | ✔ | |
| | Cruise Control | ✔ | |
| | Rear Defogger | ✔ | |
| | Intermittent Wipers | ✔ | |
| | Console/Storage | ✔ | |
| | Keyless Entry | ✔ | |
| **Seating** | Cloth Seats | ✔ | |
| | Bucket Seats | ✔ | |
| | Reclining/Lounge Seats | 🖹 | |
| **Radio** | AM Radio | ✔ | |
| | FM Radio | ✔ | |
| | Stereo | ✔ | |
| | Search/Seek | ✔ | |
| | CD Player | ✔ | |
| **Wheels** | Aluminum/Alloy Wheels | ✔ | |
| **Roof** | Electric Glass Roof | 🖹 | |
| **Safety/Brakes** | Air Bag (Driver Only) | ✔ | |
| | Passenger Air Bag | ✔ | |
| | Anti-lock Brakes (4) | ✔ | |
| | 4-wheel Disc Brakes | ✔ | |
| | Front Side Impact Air Bags | ✔ | |

To the left is the equipment of the loss vehicle that DEPOSITORS INSURANCE COMPANY provided to CCC.

✔ **Standard** This equipment is included in the base configuration of the vehicle at time of purchase.

🖹 **Additional** Equipment that is not Standard but was noted to be on the loss vehicle

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

Case ID: 191203184

# CCC ONE. MARKET VALUATION REPORT

Owner: Sylvester, Salvatore
Claim: 750256-GD-1



# 🚘 VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| | | |
|---|---|---|
| | Head/Curtain Air Bags | |
| | Positraction | 🗎 |
| | Alarm | |
| **Exterior/Paint/Glass** | Dual Mirrors | ✔ |
| | Body Side Moldings | |
| | Tinted Glass | 🗎 |
| | Clearcoat Paint | |
| | Metallic Paint | 🗎 |



© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC■ONE. MARKET VALUATION REPORT

Owner: Sylvester, Salvatore
Claim: 750256-GD-1

 VEHICLE CONDITION

## COMPONENT CONDITION

| | Condition | Inspection Notes | Value Impact |
|---|---|---|---|
| **MECHANICAL** | | | |
| Engine | AVERAGE PRIVATE | Engine oil overfull and in need of change. Engine compartment dusty. | $ 0 |
| Transmission | AVERAGE PRIVATE | OK | $ 0 |
| **PAINT** | | | |
| PAINT | FAIR | Paint fading. Left front fender previously painted. Roof delaminating. | $ 117 |
| **TIRES** | | | |
| Front Tires | AVERAGE PRIVATE | 7/32nds tread depth on left front tire and 6/32nds on right. | $ 0 |
| Rear Tires | AVERAGE PRIVATE | 7/32nds tread depth on left rear tire and 5/32nds on right. | $ 0 |
| **BODY/GLASS** | | | |
| BODY/ GLASS | AVERAGE PRIVATE | Rear bumper imapcted. | $ 0 |
| **INTERIOR** | | | |
| INTERIOR | AVERAGE PRIVATE | Cluttered. Vacuuming needed. Some staining on carpets and seats. | $ 0 |
| **Total Condition Adjustments** | | | **$ 117** |

DEPOSITORS INSURANCE COMPANY uses condition inspection guidelines to determine the condition of key components of the loss vehicle prior to the loss. The guidelines describe physical characteristics for these key components, for the condition selected based upon age. Inspection Notes reflect observations from the appraiser regarding the loss vehicle's condition. CCC makes dollar adjustments that reflect the impact the reported condition has on the value of the loss vehicle as compared to Average Private condition. These dollar adjustments are based upon interviews with dealerships across the United States.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

Case ID: 191203184

 **CCC ONE.  MARKET VALUATION REPORT**

Owner: Sylvester, Salvatore
Claim: 750256-GD-1

# COMPARABLE VEHICLES

| Source | Vehicle | Price | Adjusted Comparable Value |
|---|---|---|---|
| **Comp 1** | | | |
| Source: Autotrader | **2005 Subaru Legacy** | $ 9,500 | $ 5,070 |
| Piazza Hyundai Of Pottsto | **Sedan Gt Automatic 4 2.5l** | (List) | |
| Royersford, PA | **Gasoline Turbocharged** | | |
| (800) 916-7382 | **Smpi** | | |
| 89 Miles From Clarks Summit, | Odometer: 67,568 | | |
| PA | VIN: 4S3BL686954206929 | | |
| | Stock #: HP3961 | | |
| | Updated Date: 08/22/2016 | | |
| **Comp 2** | | | |
| Source: Autotrader | **2005 Subaru Legacy Sedan** | $ 5,998 | $ 3,992 |
| Kelly Chrysler Dodge Jeep | **Limited Automatic 4 2.5l** | (List) | |
| Emmaus, PA | **Gasoline Smpi** | | |
| (610) 972-5499 | Odometer: 119,491 | | |
| 67 Miles From Clarks Summit, | VIN: 4S3BL626257226933 | | |
| PA | Stock #: J62106A | | |
| | Updated Date: 07/05/2016 | | |
| **Comp 3** | | | |
| Source: Autotrader | **2005 Subaru Legacy Sedan** | $ 6,423 | $ 3,617 |
| Bloom Auto | **Gt Limited Manual W/black** | (List) | |
| Ledgewood, NJ | **Interior 4 2.5l Gasoline** | | |
| (973) 584-3336 | **Turbocharged Smpi** | | |
| 68 Miles From Clarks Summit, | Odometer: 123,476 | | |
| PA | VIN: 4S3BL676956204443 | | |
| | Updated Date: 07/05/2016 | | |
| **Comp 4** | | | |
| Source: Autotrader | **2005 Subaru Legacy** | $ 6,495 | $ 4,431 |
| W & L Subaru | **Sedan Gt Automatic 4 2.5l** | (List) | |
| Northumberland, PA | **Gasoline Turbocharged** | | |
| (570) 473-3432 | **Smpi** | | |
| 69 Miles From Clarks Summit, | Odometer: 128,904 | | |
| PA | VIN: 4S3BL686054211047 | | |
| | Stock #: 13069A | | |
| | Updated Date: 08/02/2016 | | |
| **Comp 5** | | | |
| Source: Dealer Ad | **2005 Subaru Legacy Sedan** | $ 7,950 | $ 3,714 |
| Car Mart Auto Center, Inc | **Limited Manual 4 2.5l** | (List) | |
| Allentown, PA | **Gasoline Smpi** | | |
| (610) 351-9797 | Odometer: 46,000 | | |
| 62 Miles From Clarks Summit, | Updated Date: 07/06/2016 | | |
| PA | | | |

Comparable vehicles used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value and may no longer be available for sale.

List Price is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

Distance is based upon a straight line between loss and comparable vehicle locations.

Adjusted Comparable Value represents the price of the comparable vehicle with adjustments for options, mileage, condition, and year/model/trim as compared to the loss vehicle.

A condition adjustment is also made to set the comparable vehicle to Average Private condition, which the loss vehicle is also compared to in the Vehicle Condition section.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

Case ID: 191203184

 **CCC▧ONE.** MARKET VALUATION REPORT | Owner: Sylvester, Salvatore
Claim: 750256-GD-1

## 🔍 COMPARABLE VEHICLES



**Comp 6**
Source: Autotrader
Sands Chrysler Jeep Dodge
Quakertown, PA
(215) 536-0946
74 Miles From Clarks Summit,
PA

**2005 Subaru Legacy Sedan
Gt Limited Automatic
W/black Interior 4 2.5l
Gasoline Turbocharged
Smpi**
Odometer: 141,490
VIN: 4S3BL676654203293
Stock #: BD16224
Updated Date: 07/27/2016

$ 6,995
(List)

$ 4,420

**Comp 7**
Source: Autotrader
Linden Volkswagen
Roselle, NJ
(855) 314-8387
94 Miles From Clarks Summit,
PA

**2005 Subaru Legacy Sedan
Manual 4 2.5l Gasoline
Smpi**
Odometer: 90,291
VIN: 4S3BL616X56214732
Stock #: U15254P
Updated Date: 08/03/2016

$ 6,450
(List)

$ 4,485

**Comp 8**
Source: Autotrader
Peekskill Autosales Inc
Peekskill, NY
(914) 737-0286
93 Miles From Clarks Summit,
PA

**2005 Subaru Legacy
Sedan Gt Automatic 4 2.5l
Gasoline Turbocharged
Smpi**
Odometer: 209,655
VIN: 4S3BL686X54204428
Stock #: 204428
Updated Date: 07/12/2016

$ 3,995
(List)

$ 3,040

**Comp 9**
Source: Autotrader
Small Town Auto Sales
Hazleton, PA
(570) 501-0433
39 Miles From Clarks Summit,
PA

**2006 Subaru Legacy Sedan
Limited Automatic 4 2.5l
Gasoline Mpfi**
Odometer: 111,082
VIN: 4S3BL626567200568
Updated Date: 07/06/2016

$ 6,995
(List)

$ 4,010

**Comp 10**
Source: Autotrader
Faulkner Subaru
Bethlehem, PA
(610) 867-4177
60 Miles From Clarks Summit,
PA

**2006 Subaru Legacy Sedan
Limited Automatic 4 2.5l
Gasoline Mpfi**
Odometer: 100,371
VIN: 4S3BL626767212401
Stock #: 67212401
Updated Date: 09/06/2016

$ 7,400
(List)

$ 4,083

**Comp 11**

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

Case ID: 191203184

 **CCC ONE. MARKET VALUATION REPORT** | Owner: Sylvester, Salvatore
Claim: 750256-GD-1

# COMPARABLE VEHICLES

Source: Autotrader
Jc Auto Sales
Bechtelsville, PA
(484) 415-9801
77 Miles From Clarks Summit,
PA

**2006 Subaru Legacy**
**Sedan Se Automatic 4 2.5l**
**Gasoline Mpfi**
Odometer: 93,231
VIN: 4S3BL626567208766
Stock #: 16117
Updated Date: 08/10/2016

$ 7,600
(List)

$ 4,335



© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

Case ID: 191203184

# CCC⬛ONE.  MARKET VALUATION REPORT

Owner: Sylvester, Salvatore
Claim: 750256-GD-1

## 📝 VALUATION NOTES

This Market Valuation Report has been prepared exclusively for use by DEPOSITORS INSURANCE COMPANY, and no other person or entity is entitled to or should rely upon this Market Valuation Report and/or any of its contents. CCC is one source of vehicle valuations, and there are other valuation sources available.

Regulations concerning vehicle value include Pennsylvania Administrative Code Section 62.3. Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete, or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and payment of a fine of up to $15,000.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE. MARKET VALUATION REPORT**

Owner: Sylvester, Salvatore
Claim: 750256-GD-1

# SUPPLEMENTAL INFORMATION

## VEHICLE HISTORY INFORMATION

**VINguard®**

VINguard® Message: VINguard has decoded this VIN without any errors

**Collision History Information:**

COLLISION INCIDENT REPORTED BY NATIONWIDE ENTERPRISE ON 09/16/2009

Claim #: 5837C 24968709100901P/G1 in JENKINTOWN, PA

Repair Estimate: 5094.7                    Miles: 059600

Damage Location:        FRONT
                        RIGHT FRONT



© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

Case ID: 191203184

# CCC⬛ONE. MARKET VALUATION REPORT

Owner: Sylvester, Salvatore
Claim: 750256-GD-1

# SUPPLEMENTAL INFORMATION

 **EXPERIAN® AUTOCHECK® VEHICLE HISTORY REPORT**

| TITLE CHECK | RESULTS FOUND |
|---|---|
| Abandoned | ✔ No Abandoned Record Found |
| Damaged | ✔ No Damaged Record Found |
| Fire Damage | ✔ No Fire Damage Record Found |
| Grey Market | ✔ No Grey Market Record Found |
| Hail Damage | ✔ No Hail Damage Record Found |
| Insurance Loss | ✔ No Insurance Loss Record Found |
| Junk | ✔ No Junk Record Found |
| Rebuilt | ✔ No Rebuilt Record Found |
| Salvage | ✔ No Salvage Record Found |

| EVENT CHECK | RESULTS FOUND |
|---|---|
| NHTSA Crash Test Vehicle | ✔ No NHTSA Crash Test Vehicle Record Found |
| Frame Damage | ✔ No Frame Damage Record Found |
| Major Damage Incident | ✔ No Major Damage Incident Record Found |
| Manufacturer Buyback/Lemon | ✔ No Manufacturer Buyback/Lemon Record Found |
| Odometer Problem | ✔ No Odometer Problem Record Found |
| Recycled | ✔ No Recycled Record Found |
| Water Damage | ✔ No Water Damage Record Found |
| Salvage Auction | ✔ No Salvage Auction Record Found |

| VEHICLE INFORMATION | RESULTS FOUND |
|---|---|
| Accident | 🗐 Accident Record Found |
| Corrected Title | ✔ No Corrected Title Record Found |
| Driver Education | ✔ No Driver Education Record Found |
| Fire Damage Incident | ✔ No Fire Damage Incident Record Found |
| Lease | ✔ No Lease Record Found |
| Lien | ✔ No Lien Record Found |
| Livery Use | ✔ No Livery Use Record Found |
| Government Use | ✔ No Government Use Record Found |
| Police Use | ✔ No Police Use Record Found |
| Fleet | ✔ No Fleet Record Found |
| Rental | ✔ No Rental Record Found |
| Fleet and/or Rental | ✔ No Fleet and/or Rental Record Found |
| Repossessed | ✔ No Repossessed Record Found |
| Taxi Use | ✔ No Taxi Use Record Found |
| Theft | ✔ No Theft Record Found |
| Fleet and/or Lease | ✔ No Fleet and/or Lease Record Found |
| Emissions Safety Inspection | ✔ No Emissions Safety Inspection Record Found |
| Duplicate Title | ✔ No Duplicate Title Record Found |

CCC provides DEPOSITORS INSURANCE COMPANY information reported by Experian regarding the 2005 Subaru Legacy Sedan (4S3BL616157213432). This data is provided for informational purposes. Unless otherwise noted in this Valuation Detail, CCC does not adjust the value of the loss vehicle based upon this information.

**LEGEND**
✔ No Event Found
⊖ Event Found
🗐 Information Needed

**TITLE CHECK**
THIS VEHICLE CHECKS OUT
AutoCheck's result for this loss vehicle show no significant title events. When found, events often indicate automotive damage or warnings associated with the vehicle.

**EVENT CHECK**
THIS VEHICLE CHECKS OUT
AutoCheck's result for this loss vehicle show no historical events that indicate a significant automotive problem. These problems can indicate past previous car damage, theft, or other significant problems.

**VEHICLE INFORMATION**
INFORMATION FOUND
AutoCheck found additional information on this vehicle. These records will provide more history for this loss vehicle.

**ODOMETER CHECK**
THIS VEHICLE CHECKS OUT
AutoCheck's result for this loss vehicle show no indication of odometer rollback or tampering was found. AutoCheck determines odometer rollbacks by searching for records that indicate odometer readings less than a previously reported value. Other odometer events can report events of tampering, or possible odometer breakage.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

Case ID: 191203184

# CCC▣ONE. MARKET VALUATION REPORT

Owner: Sylvester, Salvatore
Claim: 750256-GD-1

# SUPPLEMENTAL INFORMATION

## 📖 FULL HISTORY REPORT RUN DATE: 09/12/2016

Below are the historical events for this vehicle listed in chronological order.

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 12/10/2004 | JENKINTOWN, PA | 54 | Motor Vehicle Dept. | TITLE |
| 01/05/2005 | JENKINTOWN, PA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 03/01/2006 | JENKINTOWN, PA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 02/28/2007 | JENKINTOWN, PA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 01/28/2008 | PHILADELPHIA COUNTY, PA | | State Agency | FRONT IMPACT WITH ANOTHER VEHICLE |
| 01/28/2008 | PA | | State Agency | VEHICLE DAMAGE REPORTED AS DISABLING |
| 01/28/2008 | PA | | State Agency | VEHICLE WAS TOWED |
| 03/03/2009 | JENKINTOWN, PA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 04/30/2010 | JENKINTOWN, PA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 04/01/2014 | JENKINTOWN, PA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 03/09/2015 | PA | 108203 | Auto Auction | REPORTED AT AUTO AUCTION |
| 04/03/2015 | CLARKS SUMMIT, PA | 108990 | Motor Vehicle Dept. | TITLE |
| 04/07/2015 | CLARKS SUMMIT, PA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 03/22/2016 | CLARKS SUMMIT, PA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |

**AUTOCHECK TERMS AND CONDITIONS:**

Experian's Reports are compiled from multiple sources. It is not always possible for Experian to obtain complete discrepancy information on all vehicles; therefore, there may be other title brands, odometer readings or discrepancies that apply to a vehicle that are not reflected on that vehicle's Report. Experian searches data from additional sources where possible, but all discrepancies may not be reflected on the Report.

These Reports are based on information supplied to Experian by external sources believed to be reliable, BUT NO RESPONSIBILITY IS ASSUMED BY EXPERIAN OR ITS AGENTS FOR ERRORS, INACCURACIES OR OMISSIONS. THE REPORTS ARE PROVIDED STRICTLY ON AN "AS IS WHERE IS" BASIS, AND EXPERIAN FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE REGARDING THIS REPORT.

YOU AGREE TO INDEMNIFY EXPERIAN FOR ANY CLAIMS OR LOSSES, INCLUDING COSTS, EXPENSES AND ATTORNEYS FEES, INCURRED BY EXPERIAN ARISING DIRECTLY OR INDIRECTLY FROM YOUR IMPROPER OR UNAUTHORIZED USE OF AUTOCHECK VEHICLE HISTORY REPORTS.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC⬛ONE.  MARKET VALUATION REPORT

Owner: Sylvester, Salvatore
Claim: 750256-GD-1

## SUPPLEMENTAL INFORMATION

Experian shall not be liable for any delay or failure to provide an accurate report if and to the extent which such delay or failure is caused by events beyond the reasonable control of Experian, including, without limitation, "acts of God", terrorism, or public enemies, labor disputes, equipment malfunctions, material or component shortages, supplier failures, embargoes, rationing, acts of local, state or national governments, or public agencies, utility or communication failures or delays, fire, earthquakes, flood, epidemics, riots and strikes.

These terms and the relationship between you and Experian shall be governed by the laws of the State of Illinois (USA) without regard to its conflict of law provisions. You and Experian agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Cook, Illinois.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

Case ID: 191203184

 **CCC&ONE. MARKET VALUATION REPORT**

Owner: Sylvester, Salvatore
Claim: 750256-GD-1

# SUPPLEMENTAL INFORMATION

## NHTSA VEHICLE RECALL



The National Highway Traffic Safety Administration has issued 2 safety related recall notices that may apply to the above valued vehicle.

**NHTSA Campaign ID :** 04V274000

**Mfg's Report Date :** 06/04/2004

**Component :** AIR BAGS:SIDE/WINDOW

**Potential Number Of Units Affected :** 1987

**Summary :** THE LEFT AND RIGHT SIDE CURTAIN AIR BAGS IN CERTAIN VEHICLES INVOLVED IN THIS CAMPAIGN MAY NOT FULLY DEPLOY RAPIDLY ENOUGH WHEN ACTIVATED IN A SIDE IMPACT COLLISION. DURING A SIDE IMPACT TEST CONDUCTED BY THE INSURANCE INSTITUTE FOR HIGHWAY SAFETY (IIHS), THE TEST RESULTS INDICATED THAT THERE WAS A DIFFERENCE BETWEEN THE IIHS TEST RESULTS AND THE RESULT OF SIDE IMPACT TESTS CONDUCTED BY FHI.

**Consequence :** THIS MAY RESULT IN FAILURE TO PROVIDE THE INTENDED HEAD PROTECTION, INCREASING THE RISK OF INJURY TO A SEAT OCCUPANT.

**Remedy :** DEALERS WILL REPLACE THE LEFT AND RIGHT SIDE CURTAIN AIR BAG MODULES. THE RECALL BEGAN ON JUNE 11, 2004. OWNERS SHOULD CONTACT SUBARU AT 1-800-782-2783.

**Notes :** SUBARU RECALL NO. WWR02. CUSTOMERS CAN ALSO CONTACT THE NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION'S AUTO SAFETY HOTLINE AT 1-888-DASH-2-DOT (1-888-327-4236).

**NHTSA Campaign ID :** 14V830000

**Mfg's Report Date :** DEC 31, 2014

**Component :** SERVICE BRAKES, HYDRAULIC

**Potential Number Of Units Affected :** 198,900

**Summary :** Subaru of America, Inc. (Subaru) is recalling certain model year 2008-2011 Impreza, 2008-2014 WRX and STI, and 2009-2013 Forester vehicles, currently, or formerly, registered in Connecticut, Delaware, Illinois, Indiana, Iowa, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Vermont, West Virginia, Wisconsin and the District of Columbia that were remedied under recall 14V-311 prior to December 23, 2014. The brake lines may experience brake line corrosion due to salt water splashing on the brake lines through a gap in the fuel tank protector.

**Consequence :** Brake fluid may leak due to the brake line corrosion and may result in longer distances being required to slow or stop the vehicle, increasing the risk of a crash.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

Case ID: 191203184

# CCC⬛ONE. MARKET VALUATION REPORT

Owner: Sylvester, Salvatore
Claim: 750256-GD-1

# SUPPLEMENTAL INFORMATION

**Remedy :** Subaru will notify owners, and dealers will apply an anti-corrosion wax to the four-way joint connector area of the brake line system, free of charge. The recall is expected to begin on January 26, 2015. Owners may contact Subaru customer service at 1-800-782-2783. Subaru's number for this recall is WQQ-52. Notes: This recall is specific to affected Forester, Impreza, WRX, and STI customers who had their car remedied under NHTSA recall no. 14V-311 prior to December 23, 2014. Subaru has determined that this remedy was inadequate due to incomplete repair instructions provided to dealers. Affected Forester, Impreza, WRX, and STI vehicles that were not repaired under NHTSA recall no. 14V-311 prior to December 23, 2014 will continue to be processed under NHTSA recall no. 14V-311. Affected vehicles not currently, or formerly, registered in the salt belt states identified in this recall are eligible for repair, at no cost to the customer, upon request.

**Notes :** Owners may also contact the National Highway Traffic Safety Administration Vehicle Safety Hotline at 1-888-327-4236 (TTY 1-800-424-9153), or go to www.safercar.gov.



© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

Case ID: 191203184



Filed and Attested by the
Office of Judicial Records
20 DEC ... pm

# EXHIBIT C

 **Nationwide®**

| | |
|---|---|
| **Date prepared** | September 14, 2016 |
| **Claim number** | 750256-GD |
| **Policy number** | PPDM0053153540 |
| **Questions?** | Contact Claims Associate Claire McLaughlin MCLAUC4@nationwide.com Phone 877-413-9283 x8542665 Fax 866-450-9498 |

SALVATORE SYLVESTER
1544 SUMMIT LAKE RD
CLARKS SUMMIT, PA 18411-9103

## This letter confirms our settlement amount

Dear Salvatore,

We declared your 2005 SUBA LEGACY 2.5 a total loss. To help us resolve your Collision claim as quickly as possible, please follow the steps below. Enclosed is our total loss evaluation detailing the settlement amount. We calculated the Actual Cash Value Settlement using Certified Collateral Corporation's (CCC) market research system.

### Claim details

Insurer:          Depositors Insurance Company
Policyholder:     SALVATORE SYLVESTER
Claimant:         SALVATORE SYLVESTER
Claim number:     750256-GD
Loss date:        September 10, 2016

### Settlement details

Actual Cash Value = $4,380.00

Condition Adjustment - $117.00

Subtotal Actual Cash Value = $4,263.00

Total Actual Cash Value = $4,263.00

Tax + 6.00% $255.78

Total Tax/Tag & Title = $255.78

Subtotal = $4,518.78

(Deductible) - $500.00

Subtotal = $4,018.78

Total Settlement = $4,018.78

### What you need to do

Please complete these steps and return any documents to me by mail at 5525 Parkcenter Circle, Dublin, OH 43017-3584 As soon as possible:

- **Power of Attorney Form** — Complete and sign the enclosed form in its entirety in the presence of a Notary Public; vehicle Owner Name(s) and Signature(s) must match the Name(s) EXACTLY as they appear on the vehicle title

- **Electronic Funds Transfer** — If you're eligible, you can have your

Claim # 750256-GD
Page 2 of 2

settlement deposited directly into your checking account; please contact me by phone with your checking information, or send a voided check with your settlement documents

- **Lien release/Loan information** — instructions specific to lien release/loan information

## For help when you need it

If you have any questions or concerns about your claim, please contact me at 877-413-9283 x8542665 or MCLAUC4@nationwide.com.

Sincerely,

Claire McLaughlin
Depositors Insurance Company
5525 Parkcenter Circle CO-03-05
Dublin, OH 43017-3584



Filed and Attested by the
Office of Judicial Records
20 DEC 2019 5 pm

# EXHIBIT D



**Nationwide**
is on your side

**Table of contents**                                                                     Page

**Insuring agreement**................................................................................D1

**Definitions**.......................................................................................D1

**Insured persons' duties after an accident or loss**...........................D2

**Territory**.........................................................................................D2

**Coverages:**

**Physical damage** (Damage to your auto) .......................................P1-P7
Comprehensive and Collision

**Auto liability** (For damage or injury to others caused by your auto).........L1-L6
Property damage and Bodily injury

**First Party Benefits**........................................................................F1-F5

**Uninsured motorists-bodily injury** (For bodily injury caused by..........U1-U5
uninsured motorists)

**Underinsured motorists-bodily injury** (For bodily injury caused by........UI1-UI5
underinsured motorists)

**General policy conditions**
How your policy may be changed ...................................................G1
Optional payment of premium in installments ...............................G1
Renewal..........................................................................................G1
Non-renewal....................................................................................G1
Cancellation during policy period ..................................................G1
Assignability....................................................................................G2
Dividends ........................................................................................G2
If you become bankrupt...................................................................G2
Fraud and misrepresentation ..........................................................G2
Legal action limitations...................................................................G3
Subrogation.....................................................................................G3
Non-sufficient funds and late payment charges .............................G4
Applicable contract law ..................................................................G4
Interest rate .....................................................................................G4
Joint and individual interests ..........................................................G4

**Mutual policy conditions and proxy**
Nationwide Mutual Insurance Company and
Nationwide Mutual Fire Insurance Company....................................G4

Z-037

©2012 Nationwide Mutual Insurance Company, All Rights Reserved / Nationwide Mutual Insurance Company and
Affiliated Companies / One Nationwide Plaza Columbus, OH 43215
Nationwide, the Nationwide N and Eagle and Nationwide is on your side are service marks of Nationwide Mutual
Insurance Company. © 2015 Nationwide

Case ID: 191203184



Case ID: 191203184



**NATIONWIDE AUTO POLICY**

**Page D1**

### Insuring agreement

For the **policyholder's** payment of premiums and fees in amounts **we** require and subject to all of the terms and conditions of this policy, **we** agree to provide the coverages the **policyholder** has selected. These selections are shown in the enclosed Declarations, which are a part of this policy contract. The selected coverages in this policy apply only to occurrences while the policy is in force. Renewal premiums must be paid in advance.

### Definitions

This policy uses certain common words for easy reading. They are defined as follows:

1.  "POLICYHOLDER" means the first person named in the Declarations. The **policyholder** is the named insured under this policy but does not include the **policyholder's** spouse. If the first named insured is an organization, that organization is the **policyholder**.

2.  "YOU" and "YOUR" mean:

    a)  the **policyholder** and spouse, if a resident of the **policyholder's** household, when the **policyholder** is a natural person; or

    b)  the sole proprietor, majority shareholder or majority member of an organization, or general partner of a family limited partnership, as shown in the Declarations, and spouse, if a resident of the household of the sole proprietor, majority shareholder or majority member, or general partner shown in the Declarations, when the **policyholder** is an organization.

    If the spouse ceases to be a resident of the **policyholder's** household or household of the sole proprietor, majority shareholder or majority member, or general partner during the policy period or prior to the inception of this policy, the spouse will be considered **you** and **your** under this policy but only until the earlier of:

    a)  the end of 90 days following the spouse ceasing to be a resident of the **policyholder's** household or household of the sole proprietor, majority shareholder or majority member, or general partner;

    b)  the effective date of another policy listing the spouse as the named insured; or

    c)  the end of the policy period.

3.  "RELATIVE" means a natural person who regularly resides in **your** household and who is related to **you** by blood, marriage, or adoption (including a ward or foster child). A **relative** may live temporarily outside **your** household.

4.  "INSURED" means one who is described as entitled to protection under each coverage.

5.  "WE," "US," "OUR," and "THE COMPANY" mean or refer to **the company** issuing the policy as shown on the Declarations.

6.  "YOUR AUTO" means the vehicle(s) described in the Declarations.

7.  "MOTOR VEHICLE" means a land **motor vehicle** designed primarily to be driven on public roads. This does not include vehicles operated on rails or crawler treads. Other motorized vehicles designed for use mainly off public roads shall be included within the definition of **motor vehicle** while being operated on public roads.

8.  "PRIVATE PASSENGER AUTO" means a:

    a)  four-wheel automobile for private passenger use;

    b)  four-wheel van; or

    c)  pick-up truck having either four or six wheels.

9.  "DEDUCTIBLE" means the amount of loss to be paid by the **insured**. **We** pay for covered loss above the **deductible** amount shown in the Declarations.

10. "OCCUPYING" means in, upon, entering, or alighting from.

11. "BODILY INJURY" means:

    a)  physical injury;

Case ID: 191203184

**NATIONWIDE AUTO POLICY**

**Page D2**

b) physical sickness;

c) physical disease; or

d) resultant death;

of any person which results directly from a **motor vehicle** accident.

12. "PROPERTY DAMAGE" means:

a) destruction of tangible property;

b) damage or injury to it; and

c) loss of its use.

13. "NON-ECONOMIC LOSS" means pain and suffering and other non-monetary detriment.

14. "BIOLOGICAL DETERIORATION OR DAMAGE" means damage or decomposition, breakdown, and/or decay of man-made or natural material due to the presence of fungi, algae, lichens, slime, mold, bacteria, wet or dry rot, and any scents or by-products of these organisms, however produced. Fungi as used above include, but are not limited to any type or form of fungus, yeasts, mold, mildew, mycotoxins, spores, rusts, smuts, or fleshy fungi such as mushrooms, puffballs and coral fungi.

Other words are also defined. All defined words are in bold print.

**Insured persons' duties after an accident or loss**
The **insured** will:

1. give **us** or **our** agent prompt notice of all losses and provide written proof of claim if required.

2. notify the police or all theft losses as soon as practicable.

3. promptly deliver to **us** all papers dealing with any claims or suits.

4. as often as **we** reasonably require, submit to examinations under oath and sign same. At **your** or **our** request, the exams will be conducted separately and not in the presence of any other persons except legal representation.

5. assist **us** and, if applicable, the defense counsel chosen for **you** by **us**, with any claim or suit.

6. if injured, submit to examinations by company selected physicians as often as **the company** reasonably requires. The injured person must grant **us** authority, at **our** request, to obtain copies of all wage and medical, dental or other health care provider records.

7. protect damaged property insured under this policy and make it available to **us** for inspection before its repair or disposal and reinspection during the repair process.

8. provide access to any data and/or records, from any source and/or recorded by any method or means, that **we** reasonably request for use in the evaluation or defense of any claim or suit and permit **us** to make copies of such data or records.

9. preserve any tangible property or evidence as long as **we** request.

10. take reasonable steps to mitigate the loss and expenses associated with the loss.

**Territory**
The policy applies only in Canada, the United States of America and its territories or possessions, or between their ports. All coverages except Uninsured Motorists apply to occurrences in Mexico, if within 50 miles of the United States boundary. **We** will base the amount of any Comprehensive or Collision loss in Mexico on cost at the nearest United States point.

NOTE: **You** will need to buy auto insurance from a Mexican insurance company - regardless of coverage provided by this policy - before driving in Mexico. Otherwise, **you** may be subject to jail detention, auto impoundment, and other legal complications in case of an accident.



## Physical damage

### Additional definitions applicable to these coverages
For purposes of these coverages only:

1. "LOSS" means direct, physical and accidental **loss** or damage to **your auto**. **Your auto** includes its **equipment**.

2. "EQUIPMENT" means anything usual and incidental to the use of a **motor vehicle** as a **motor vehicle**. **Equipment** does not include **customization** or any type of trailer.

3. "CUSTOMIZATION" means accessories, cosmetic enhancements, and related changes, other than those offered by the manufacturer of the **motor vehicle** specifically for that model, which alter the appearance or function of a **motor vehicle**. This includes, but is not limited to, custom refinish, decals, and graphics. This does not include any device which records, emits, amplifies, receives and/or transmits sound, pictures, or data, whether permanently installed or not.

4. "BETTERMENT" is the increase in value of:
   a) a vehicle; or
   b) property; or
   c) any parts of a vehicle or property;

   as a result of repairing or replacing certain parts damaged in a **loss**.

## Coverage agreements

### Comprehensive coverage
1. **We** will pay for **loss** to **your auto** not caused by collision or upset. **We** will pay for the **loss** less **your deductible**. Coverage is included for:
   a) damage from contact with:
      (1) wild or domestic animals; or
      (2) falling or flying objects.
   b) broken glass:
      (1) even if caused by collision or upset; and
      (2) if **you** do not have Collision coverage.

   If **your** Comprehensive and Collision coverages have different **deductibles**, the smaller **deductible** will apply to broken glass.

   For damage to **your auto's** windshield, **we** may offer to have it repaired in lieu of replacement. **We** will not apply a **deductible** for the repair of the windshield. However, if the repair is not satisfactory, **we** will replace the windshield subject to **your deductible**.

2. Also, **we** will repay **your** reasonable travel costs as determined by **us** after **your auto** is stolen. Maximum payment is $20 per day, not to exceed $600 per occurrence. These costs must be incurred within a certain time. It starts 48 hours after **you** report the theft to **us** and the police. It ends when **your auto** is returned to **you** or **we** offer to pay for its **loss**.

### Collision coverage
**We** will pay for **loss** to **your auto** caused by collision or upset. **We** will pay for the **loss** less **your deductible**. **We** will not subtract the **deductible** amount for broken glass if **you** have full (no **deductible**) Comprehensive coverage in force.

### Towing and labor costs coverage
**We** will pay reasonable towing and labor costs as determined by **us** if **your auto** or a **motor vehicle** covered under Use of other motor vehicles is disabled. **We** will pay only for labor costs at the place the vehicle is disabled. **Our** maximum payment per disablement is shown in the Declarations.

Case ID: 191203184

**Nationwide®**
is on your side

## Coverage extensions

### Use of trailers
The insurance on **your auto** covers a trailer used by **you** or a **relative**.

1. The trailer must be:
   a) designed for use with a **private passenger auto**; and
   b) used with a vehicle that is insured under these coverages.
2. The trailer must not be:
   a) otherwise insured;
   b) owned by **you** or a **relative**; or
   c) used for business purposes with a vehicle that is not a **private passenger auto**.
3. The maximum amount payable is $1,500.

### Use of other motor vehicles
The insurance on **your auto** also covers:

1. A **motor vehicle you** do not own, while it is used as a temporary substitute for **your auto**. **Your auto** must be out of use because of:
   a) breakdown; repair; servicing; or
   b) repair; servicing; or loss.
2. A **private passenger auto** newly acquired by **you**. **You** must report the acquisition of it to **us** during the first 30 days **you** own the vehicle. Coverage applies only during the first 30 days **you** own the vehicle, unless it replaces **your auto**. However, if **your auto** does not have Comprehensive or Collision coverage, **we** will provide these coverages for the newly acquired vehicle for a four-day period after the date **you** become the owner of it, provided, **you** ask **us** to insure it within this four-day period. If a Comprehensive or Collision **loss** occurs during this period and before **you** asked **us** to provide this coverage, **we** will apply a **deductible** of $500 to the **loss**.
3. A **private passenger auto** owned by a non-member of **your** household and not covered in item 1. of this section.
   a) This applies only while such auto is operated by **you** or a **relative**.
   b) **We** will not pay for **loss**:
      (1) that results from the operation of an auto:
          (a) repair shop;               (c) sales agency; or
          (b) public garage or parking place; (d) service or maintenance facility.
      (2) involving a **private passenger auto** owned by an employer of an **insured**.
      (3) involving a **private passenger auto** furnished or available to **you** or a **relative** for regular use.
      (4) to any rented **motor vehicle**.
4. A rented **private passenger auto**, including its loss of income.
   a) This applies only:
      (1) while such auto is rented by **you** or a **relative**;
      (2) if such auto is rented from a rental company for less than 28 days; and
      (3) for loss of income that is:
          (a) verifiable by **us**; and
          (b) owed to a rental company because:
              (1) the rental company had a customer willing to rent a **private passenger auto**; and

Case ID: 191203184



(2)  there was no other vehicle available for rental in place of the damaged rented auto.

b)  **We** will not pay for **loss** involving a **private passenger auto** rented or leased by anyone for or on behalf of the employer of an **insured**.

### Coverage exclusions
**We** will not pay for **loss**:

1.  To more than one:
    a)  recording tape;
    b)  compact disc; or
    c)  other recording media.

2.  To a container to be used for storing or carrying:
    a)  recording tapes;
    b)  compact discs; or
    c)  other recording media.

3.  To any device which is a:
    a)  tape player;
    b)  compact disc player or recorder;
    c)  digital video disc player or recorder;
    d)  video cassette player or decoder;
    e)  television;
    f)  electronic navigational system;
    g)  citizens band radio;
    h)  two-way mobile radio;
    i)  telephone; or
    j)  any other device which records, emits, amplifies, receives and/or transmits sound, pictures, or data.



However, this exclusion (3.) does not apply:

a)  to such a device, its antenna or its other parts or accessories if permanently installed by the original manufacturer or new car dealer as part of the purchase agreement for the vehicle; or

b)  up to the first $1,500 of the actual cash value of any and all such devices, antennas, or other parts and accessories that are permanently installed but that were not a part of the new car purchase agreement for the vehicle. However, payment under this subpart b) shall not exceed the actual cash value of the insured vehicle in which the devices are installed.

Permanently installed means installed using bolts, brackets, or welding in a location designated by an auto manufacturer for such a device. A device attached only by wires is not considered permanently installed. No coverage will be provided for any item that is not permanently installed. No coverage will be provided for the devices designed to detect or deter speed monitoring equipment excluded in exclusion 4. below, whether permanently installed or not.

4.  To scanning monitor receivers used for radar detection, or any other device designed to detect or deter the monitoring of speed.

5.  To a camper or living quarters unit which can be mounted on or attached to a vehicle. **We** will pay the **loss** if:
    a)  the unit is reported to **us**; and
    b)  the required premium is paid;

**Nationwide®**
is on your side

before the **loss**.

6. Caused by and limited to:
   a) wear and tear;
   b) freezing;
   c) mechanical or electrical breakdown or failure; or
   d) road damage to tires.

   This exclusion (6.) does not apply if the damage results from the total theft of **your auto** or any other **motor vehicle**.

7. To any **motor vehicle** while used:
   a) to carry persons or property for a fee or compensation; or
   b) on a regular basis for retail or wholesale delivery, including but not limited to pizza, magazine, newspaper and mail delivery.

   Exclusion 7.a) does not apply to **motor vehicles** used in shared-expense car pools.

8. To any **motor vehicle** due to an act of war, including insurrection, rebellion or revolution.

9. To any **motor vehicle** which occurs:
   a) while it is being used on a temporary or permanent basis, for the transportation of, or in exchange for any illegal substance, or in connection with any criminal trade or transaction by:
      (1) **you**;
      (2) a **relative**; or
      (3) anyone else with **your** knowledge or permission; or
   b) due to confiscation of **your auto** by any law enforcement agency because of **your auto's** use in such activities.

10. To **your auto**:
    a) while rented or leased to others; or
    b) if under any type of conveyance of ownership including but not limited to a conditional sale, contract for sale, or rent to own, regardless of whether title has been transferred to others.

11. To any **motor vehicle**:
    a) while used in an organized or prearranged competitive event, including but not limited to:
       (1) racing contest or event; or
       (2) speed contest or event; or
       (3) in practice or preparation for any racing or speed contest or event.
    b) while used in **performance testing** that is done on a closed road, or a race track, or a testing facility environment where the **insured** is not competing.

    **Performance testing** is when an **insured** uses any **motor vehicle** to:
       (1) test its performance in speed, handling; or
       (2) test or practice driver skills.

    **Performance testing** does not apply to student-driver training activities an **insured** participates in to obtain that person's state issued learners permit or drivers license. **Performance testing** also does not apply to driver training activities an **insured** participates in to complete that person's state sanctioned courses in motor vehicle accident prevention, defensive driving, or driver improvement.

Case ID: 191203184

12. Caused intentionally. meaning **loss** resulting from an act committed by or at the direction of **you** or a **relative** that may reasonably be expected to result from such acts, or is the intended result from such acts even if such person lacks the mental capacity to govern his or her conduct. Intentional acts include criminal acts. Such acts exclude coverage for all **insureds**.

However, this exclusion does not apply to deny payment to an innocent **insured** who is the victim of abuse by another **insured** and claims **loss** to covered property which has been damaged as a result of an act of abuse provided that such an **insured** did not cooperate in or contribute to the creation of the **loss**.

With respect to this provision, abuse means:

(1) abuse as defined in the Pennsylvania Protection From Abuse Act; or

(2) attempting to cause or intentionally, knowingly or recklessly causing damage to covered property so as to intimidate or attempt to control the behavior of another person.

If **we** pay a claim under this provision, **our** payment to the innocent **insured** is limited to that **insured's** insurable interest in the property.

13. To any **motor vehicle** for diminution in value or depreciation.

14. Caused by or resulting from nuclear hazard, meaning any:

a) nuclear reaction;

b) nuclear discharge;

c) radiation; or

d) radioactive contamination;

whether controlled or uncontrolled or however caused, or as a consequence of any of these. **Loss** caused by nuclear hazard is not considered **loss** caused by fire, smoke or explosion.

15. Caused directly or indirectly by **biological deterioration or damage**. Such **loss** is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**.

16. To **customization**, other than original equipment from the manufacturer, in or upon **your motor vehicle**. However, this exclusion does not apply up to the first $1,500 of **customization**.

17. To any **motor vehicle** which **you** or a **relative**:

a) uses without a reasonable belief of being entitled to do so;

b) has stolen; or

c) knows to have been stolen.

**You** or a **relative** shall not be held to have a reasonable belief of being entitled to operate a **motor vehicle** if that person's license has been suspended, revoked, or never issued.

This exclusion does not apply to the use of **your auto** by:

a) **you**;

b) a **relative**; or

c) a business partner, employee, or agent of **you** or a **relative**.

## Limits and conditions of payment

### Actual cash value

The limit of **our** coverage is the actual cash value of **your auto** or its damaged parts at the time of **loss**. To determine actual cash value, **we** will consider:

1. fair market value;

Sample Copy



PHYSICAL DAMAGE

Page P6

2. age;

3. condition of the property; and

4. **betterment**;

at the time of **loss**. If a repair or replacement results in **betterment**, **we** will not pay for the amount of **betterment**. In addition to **our** payment of the **loss**, necessary and reasonable towing and storage will be paid to protect the auto from further damage. Covered storage costs are not to exceed four days of storage charges incurred prior to the date **you** report the **loss** to **us**.

The limit of coverage shall not be increased for **customization** unless such **customization** has been specifically declared to **us** and an additional charge is paid. Coverage for **customization** shall not cause **our** limit of liability to be increased to an amount in excess of the actual cash value of **your auto** including its **customization**.

*Loss settlement*
At **our** option, **we** may:

1. pay **you** directly for a **loss**;

2. pay to repair or replace **your auto** or its damaged parts with like parts made by or for the original equipment manufacturer or parts made by non-original equipment manufacturers or with like kind and quality parts including but not limited to salvage and refurbished parts; or

3. return stolen property at **our** expense and pay for any damage.

If there was a prior **loss** to **your auto** that **we** paid, **we** will deduct an appropriate amount from **our** payment of any subsequent **loss** to that same auto unless **you** provide proof that the prior damage was repaired.

*Amounts payable for towing and labor costs*
Limits apply as stated in the Declarations. Insuring more than one person or vehicle under this policy does not increase **our** limits.

*Other insurance*
If there is other insurance that covers any **loss**, **we** will pay only **our** share of the **loss**. **Our** share is **our** proportion of the total insurance collectible for the **loss**. For **loss** to **motor vehicles** other than **your auto**, **we** will pay only the insured **loss** not covered by other insurance or self-insurance.

## Coverage conditions

*Auto recovery*
When an insured auto which has been stolen or abandoned is located, **we** have the right to take it into **our** care to keep it safe.

*Controlling Storage Costs*
When an **insured** is involved in a Collision or Comprehensive **loss**, **we** have the right to move the vehicle from any impound lot, storage site, towing yard or any other facility to control storage costs, towing costs or other fees. The **insured** will be promptly notified whenever any such action is undertaken.

## Loss payable clause
This clause applies to the Comprehensive and Collision coverages provided by this policy. It protects the lienholder named in the policy Declarations.

Payment for **loss** will be made according to the interest of the **policyholder** and lienholder. At **our** option, payment may be made to both jointly, or to either separately. Either way, **the company** will protect the interests of both.



**Nationwide®**
is on your side

Protection of the lienholder's financial interest will not be affected by any change in ownership of the vehicle insured, nor by any act or omission by any person entitled to coverage under this policy. However, protection under this clause does not apply:

1. In any case of:
    a) fraud;
    b) misrepresentation, either in the application process, or in the presentation of the claim;
    c) material omission;
    d) conversion;
    e) embezzlement;
    f) secretion; or
    g) willful damaging or destruction of **your auto**;

   committed by or at the direction of **you** or a **relative**.

2. To the **loss** of **your auto** which occurs:
    a) while it is being used on a temporary or permanent basis, for the transportation of, or in exchange for, any illegal substance, or in connection with any criminal trade or transaction by:
        (1) **you**;
        (2) a **relative**; or
        (3) anyone else with **your** knowledge or permission; or
    b) due to confiscation of **your auto** by any law enforcement agency because of **your auto's** use in such activities.

3. Where the **loss** is otherwise not covered under the terms of this policy.

**We** will protect the lienholder's interest for 10 days from the date **we** notify them that the policy has terminated, for any reason. If **we** pay the lienholder for any **loss** or damage suffered during that 10-day period, **we** have the right to recover the amount of any such payment from **you**.

**The company** will not notify the lienholder each time **you** renew this policy, and **we** may cancel this policy according to the terms. **The company** will also notify the lienholder if coverage under the policy is excluded for any named driver.

The lienholder shall notify **the company** upon learning of any change in ownership of the vehicle.

To the extent of payment to the lienholder, **the company** will be entitled to the lienholder's rights of recovery. **The company** will do nothing to impair the right of the lienholder to recover the full amount of its claim.

IF **WE** BECOME OBLIGATED TO REIMBURSE A LIENHOLDER UNDER THIS COVERAGE DUE TO **YOUR** FAILURE TO MEET THE POLICY REQUIREMENTS OR THROUGH **YOUR** FAILING TO MAKE **YOUR** PREMIUM PAYMENTS, **WE** HAVE THE RIGHT TO RECOVER FROM **YOU** ANY MONEY **WE** PAY.

Sample Copy



Case ID: 191203184



**Nationwide®**
is on your side

## Auto liability

### Coverage agreement

#### *Property damage and bodily injury liability coverage*

1. **We** will pay for damages for which **you** are legally liable as a result of an accident arising out of the:

   a) ownership;

   b) maintenance or use; or

   c) loading or unloading;

   of **your auto**. A **relative** also has this protection. So does any person or organization who is liable for the use of **your auto** while used with **your** permission.

2. Damages must involve:

   a) **property damage**; or

   b) **bodily injury**.

3. **We** will pay such liability losses up to the limits stated in the Declarations. In addition to these limits and as to any covered damages, **we** will:

   a) defend at **our** expense, with attorneys of **our** choice, any suit against the **insured**. **We** may settle or defend any claim or suit as **we** think proper.

   b) pay:

   (1) all expenses incurred by **us**; and

   (2) all costs levied against the **insured**, including prejudgment interest on covered damages on that portion of the award which does not exceed the limits of this coverage;

   in any such suit.

   c) pay premiums:

   (1) of not more than $250 per **insured** for bail bonds required because of an accident or traffic violation.

   (2) for appeal bonds in defended suits and for bonds to release attached property. The amount of such bonds shall not be more than the limits of liability shown in the Declarations.

   Although paying such premiums, **we** are not required to apply for or furnish any bonds.

   d) pay post-judgment interest on all damages awarded. **We** will not pay interest that accrues after such time as **we** have:

   (1) paid;

   (2) formally offered; or

   (3) deposited in court;

   the amount for which **we** were liable under this policy.

   e) pay expenses incurred by an **insured** for emergency medical aid to others at the time of accident.

   f) upon submission for reimbursement, pay reasonable expenses incurred by an **insured** at **our** request, but not more than $200 per day for loss of earnings.

4. After the limits of this coverage have been paid, **we** will not defend any suit or pay any claim or judgment, unless required by law.

### Coverage extensions

#### *Use of trailers*

1. This coverage applies to the use of a trailer by:

   a) **you**;



b) a **relative**; or

c) someone else with **your** permission.

2. The trailer must be:

a) designed for use with a **private passenger auto**; and

b) used with a vehicle that is insured under this coverage.

3. The trailer must not be used for business purposes with a vehicle that is not a **private passenger auto**.

### Use of other motor vehicles

The insurance on **your auto** also covers:

1. A **motor vehicle you** do not own, while it is used as a temporary substitute for **your auto**. **Your auto** must be out of use because of:

a) breakdown;          c) servicing; or

b) repair;             d) loss.

2. A **private passenger auto** newly acquired by **you**. This coverage applies only during the first 30 days **you** own the vehicle unless it replaces **your auto**. If the newly acquired vehicle does not replace **your auto**, all household vehicles owned by **you** must be insured by **us** or a company affiliated with **us** for this extension of coverage to apply.

**We** provide this coverage only if **you** do not have other insurance. **You** must pay any added premium resulting from this coverage extension.

3. A **motor vehicle** owned by a non-member of **your** household and not covered in item 1. of this section.

a) This applies only while the vehicle is being operated by **you** or a **relative**. It protects **you** or a **relative** as the operator, and any person or organization, except as noted below in b), who is not operating the vehicle and does not own the vehicle but is legally responsible for its use.

b) This does not apply to losses involving a **motor vehicle**:

(1) used in the business or occupation of **you** or a **relative**. However, it does apply to a **private passenger auto** used by **you**, **your** chauffeur, or **your** household employee;

(2) owned, rented or leased by an employer of an **insured**;

(3) rented or leased by anyone for or on behalf of an employer of an **insured**; or

(4) furnished or available to **you** or a **relative** for regular use. This does not include a **motor vehicle** rented from a rental company for less than 28 days.

### Financial responsibility

**We** will adjust this policy to comply:

1. With the financial responsibility law of any state or province which requires higher liability limits than those provided by this policy.

2. With the kinds and limits of coverage required of non-residents by any compulsory **motor vehicle** insurance law, or similar law.

However, any loss payment under this coverage will be made only over and above any other collectible **motor vehicle** insurance. In no case will anyone be entitled to duplicate payments for the same loss.

When **we** certify this policy as proof under any financial responsibility law, it will comply with the law to the extent of the coverage required by the law. The **insured** agrees to reimburse **us** for any payment which **we** would not have been obligated to make under the terms of this policy except for the agreement outlined in this paragraph.

**Nationwide®**
is on your side

## Coverage exclusions

This coverage does not apply to:

1. **Property damage** or **bodily injury** caused intentionally by or at the direction of an **insured**, including willful acts the result of which the **insured** knows or ought to know will follow from the **insured's** conduct.

2. Any **motor vehicle** while used:

   a) to carry persons or property for a fee or compensation; or

   b) on a regular basis for retail or wholesale delivery, including but not limited to pizza, magazine, newspaper and mail delivery.

   Exclusion 2.a) does not apply to **motor vehicles** used in shared-expense car pools.

3. Any person for any occurrence arising out of the operation of an auto:

   a) repair shop;

   b) public garage or parking place;

   c) sales agency; or

   d) service or maintenance facility.

   However, this exclusion does not apply to the use of **your** auto by:

   a) **you**;

   b) a **relative**; or

   c) a business partner, employee, or agent of **you** or a **relative**.

4. **Property damage** caused by an **insured**:

   a) to a **motor vehicle** that is owned or operated by, or in the custody of, that **insured**; or

   b) to any other property that is owned by or in the custody of any **insured** or anyone **occupying your auto**. This exclusion does not apply to a:

      (1) rented home; or

      (2) rented private garage.

5. **Bodily injury** to any person eligible to receive any benefits required to be provided or voluntarily provided by any **insured** under a:

   a) workers' compensation;

   b) unemployment compensation;

   c) non-occupational or occupational disease;

   d) disability benefits;

   or any similar law.

6. **Bodily injury** to an employee of any **insured** while engaged in employment. However, it does cover an employee of **your** home who is not covered and is not required to be covered by any workers' compensation benefits, disability benefits, or benefits under similar laws.

7. The United States of America or any of its agencies. It also does not apply to any employee of the United States of America or any of its agencies while such person is acting within the scope of his or her office or employment and the provisions of the Federal Tort Claims Act apply.

8. Any person protected under nuclear energy liability insurance. This exclusion applies even if that insurance has been exhausted.

9. **Non-economic loss** of or for any person who has elected or has deemed to have elected "Limited Tort" in accordance with the Pennsylvania Motor Vehicle Financial Responsibility Law.

10. **Bodily injury** or **property damage** arising out of the ownership, maintenance or use of any **motor vehicle**:

    a) while rented or leased to others by any **insured**; or

sample copy

Case ID: 191203184

**Nationwide®**
is on your side

b) if under any type of conveyance of ownership including but not limited to a conditional sale, contract for sale, or rent to own, regardless of whether title has been transferred to others by any **insured**.

11. **Bodily injury** or **property damage** arising out of the ownership, operation, maintenance or use of any **motor vehicle**:

a) while used in an organized or prearranged competitive event, including but not limited to:

(1) racing contest or event; or

(2) speed contest or event; or

(3) in practice or preparation for any racing or speed contest or event.

b) while used in **performance testing** that is done on a closed road, or a race track, or a testing facility environment where the **insured** is not competing.

**Performance testing** is when an **insured** uses any **motor vehicle** to:

(1) test its performance in speed, handling; or

(2) test or practice driver skills.

**Performance testing** does not apply to student-driver training activities an **insured** participates in to obtain that person's state issued learner's permit or drivers license. **Performance testing** also does not apply to any training activities an **insured** participates in to complete that person's state sanctioned courses in motor vehicle accident prevention, defensive driving, or driver improvement.

12. Any of the following:

a) judgments;

b) costs;

c) attorneys fees; or

d) claims;

against an **insured** for punitive or exemplary damages.

13. **Property damage** caused directly or indirectly by **biological deterioration or damage**. Such loss is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

14. **Bodily injury** arising directly or indirectly from the inhalation of, ingestion of, contact with, exposure to, existence of or presence of any fungi, algae, lichens, slime, mold, bacteria, wet or dry rot and any scents or by-products of these organisms, however produced. Fungi as used above include, but are not limited to any type or form of fungus, yeasts, mold, mildew, mycotoxins, spores, rust, smuts or fleshy fungi such as mushrooms, puffballs and coral fungi.

15. Any person's liability resulting from the:

a) handling of property:

(1) before it is moved from the place where it is accepted by an **insured** for movement into or onto **your auto**; or

(2) after it is moved from **your auto** to the place where it is finally delivered by an **insured**.

b) movement of property by a mechanical device (other than a hand truck) not attached to **your auto**.

16. **Bodily injury** suffered while engaged in the transportation or exchange of any illegal substance, or in connection with any criminal trade or transaction. This exclusion applies to the operator or occupant of a **motor vehicle** so involved, and also to an **insured** so engaged as a pedestrian.



17. Any **motor vehicle** which any **insured**:
    a) uses without a reasonable belief of being entitled to do so;
    b) has stolen; or
    c) knows to have been stolen.

An **insured** shall not be held to have a reasonable belief of being entitled to operate a **motor vehicle** if that person's license has been suspended, revoked, or never issued.

This exclusion does not apply to the use of **your auto** by:
    a) **you**;
    b) a **relative**; or
    c) a business partner, employee, or agent of **you** or a **relative**.

### Limits and conditions of payment

#### *Amounts payable for liability losses*

**Our** obligation to pay Property damage or Bodily injury liability losses is limited to the amounts per person and per occurrence stated in the Declarations. The following conditions apply to these limits:

1. The limit shown:
    a) for Property damage liability is for all **property damage** in one occurrence.
    b) for Bodily injury liability for any one person is for all legal damages, including all derivative claims, claimed by anyone arising out of and due to **bodily injury** to one person as a result of one occurrence.

    The per person limit is the total amount available when one person sustains **bodily injury**, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims, or any other claims made by anyone arising out of **bodily injury**, including death, to one person as a result of one occurrence.

    c) for Bodily injury liability for each occurrence is the total limit of **our** liability for all legal damages when two or more persons sustain **bodily injury**, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims, or any other claims arising out of **bodily injury**, including death, to two or more persons as a result of one occurrence. This total limit is subject to the limit for any one person.

2. Liability limits apply as stated in the Declarations. The insuring of more than one person or vehicle under this policy does not increase **our** liability limits.

3. In any loss covered under items 2. and 3. of "Use of other motor vehicles," the highest liability limit applicable to any one vehicle on this policy will apply.

4. A **motor vehicle** and attached trailer are considered one vehicle for Auto liability coverage.

5. The limit of liability under this coverage is reduced by any amount paid to the same person for the same accident under the Uninsured motorists or Underinsured motorists coverage of this policy.

#### *Other insurance*

1. In any loss involving the use of **your auto**, **we** will be liable for only **our** share of the loss if there is other collectible liability insurance. **Our** share is **our** proportion of the total insurance limits for the loss.

2. For losses covered under "Use of other motor vehicles," **our** coverage is excess over any other collectible:
    a) insurance;

Sample Copy



**AUTO LIABILITY**

**Page L6**

b) self insurance;

c) proceeds from a governmental entity; or

d) sources of recovery.

If more than one policy issued by **us** or a company affiliated with **us** applies on an excess basis to the same loss, **we** will pay only up to the highest limit of any one of them.



Case ID: 191203184



## First Party Benefits

### Coverage agreement

This coverage provides First Party Benefit options in accordance with the Pennsylvania Motor Vehicle Financial Responsibility Law. The options and limits which the **policyholder** has selected are shown in the Declarations.

**We** will pay First Party Benefits for the **bodily injury** of an **insured** as a result of an accident that arises out of the maintenance or use of a **motor vehicle** as a **motor vehicle**. **We** will pay these benefits regardless of who is at fault in the accident.

### Additional definitions applicable to this coverage

For purposes of this coverage only:

"NECESSARY MEDICAL TREATMENT AND REHABILITATIVE SERVICES" means:

1. treatment;

2. accommodations; and

3. products or services;

which are determined to be necessary by a licensed health care provider unless they shall have been found or determined to be unnecessary by a state approved Peer Review Organization (PRO).

### Insureds

The **policyholder** and relatives are covered while **occupying** or injured by any **motor vehicle**.

Persons other than the **policyholder** and **relatives** are covered:

a) while **occupying your auto**.

b) as non-occupants of a **motor vehicle** if injured as a result of an accident in Pennsylvania involving **your auto**.

### Options

#### *Option 1—Medical Benefit*

**We** will pay all reasonable expenses for **necessary medical treatment and rehabilitative services**.

**We** will pay such expenses up to the limit shown on the Declarations.

Subject to the applicable provisions of the Motor Vehicle Responsibility Law concerning the statute of limitations, there is no time limitation for this benefit, provided that, within 18 months after the date of the accident, it is determined with reasonable medical probability that further expenses may be incurred as a result of the injury.

#### *Option 2 - Income Loss Benefit*

If this option is selected by payment of premium, **we** will pay for loss of income from work the **insured** was unable to do because of **bodily injury**. **We** will not pay under this benefit until five working days have been lost. **We** will not pay for these five days of lost income.

"LOSS OF INCOME" means:

a) 80 percent of actual loss of gross income. Gross income is income received from work performed while normally employed in gainful activity.

b) reasonable expenses actually incurred for hiring a substitute to perform self-employment services in order to reduce loss of gross income or for hiring special help which permits a person to work and reduce loss of gross income.

**We** will pay such benefits up to the limit shown on the Declarations. However, the total limit of this benefit is subject to the monthly maximum shown on the Declarations.

Income Loss Benefits do not continue after a person dies.



**FIRST PARTY BENEFITS**

**Page F2**

### Option 3—Accidental Death Benefit

If this option is selected by payment of premium, **we** will pay the Accidental Death Benefit for the **policyholder** or a **relative** who suffers accidental **bodily injury** causing death from a covered accident. **We** will pay the Accidental Death Benefit limit shown in the Declarations. Death must occur within two years of, and as a direct result of, the accident. Payment will be made to the:

    a) executor; or

    b) administrator;

    of the estate. In the alternative, payment will be made to the surviving spouse.

### Option 4—Funeral Benefit

If this option is selected by payment of premium, **we** will pay reasonable expenses directly related to the:

    a) funeral;

    b) burial;

    c) cremation; or

    d) other form of disposition of the remains of a deceased **insured**.

These expenses must be the direct result of death from a covered accident within two years of the date of the accident. Payment will be made to any person presenting bills for qualified expenses incurred.

**We** will pay such expenses up to the limit shown on the Declarations.

### Option 5—Combined Loss Benefits

If this option is selected by payment of premium, **we** will pay the benefits described in Options 1, 2, 3 and 4 above. However, total benefits payable under this option are limited to:

    a) the aggregate limit shown on the Declarations for this option; or

    b) three years from the date of the accident;

    whichever occurs first.

    Option 5 is subject to the following conditions:

    a) within 18 months after the date of the accident, it must be determined with reasonable medical probability that future medical expenses will be incurred as a result of the injury.

    b) in no event will benefits be paid beyond three years from the date of the accident.

    c) there is no monthly dollar maximum for Income Loss Benefits.

    d) the maximum Accidental Death Benefit payable is $25,000.

    e) the maximum Funeral Benefit payable is $2,500.

    f) benefits under d) and e) are only payable if death occurs within two years of the date of the accident.

### Option 6—Excess Medical Benefits

If this option is selected by payment of premium, **we** will pay the Excess Medical Benefits for an **insured** who suffers accidental **bodily injury** from a covered accident. Excess Medical Benefits are reasonable expenses for **necessary medical treatment and rehabilitative services**. **We** will pay such expenses in excess of $100,000 but not to exceed one million dollars. **We** will not pay Excess Medical Benefits to an **insured** who is not eligible for Option 1—Medical Benefits under this policy.

**Our** liability to one person in one accident is $50,000 per year. Subject to this limit for any one person in any one year, **our** aggregate limit for any one person is one million dollars for any one accident. During the first 18 months of eligibility, **we** shall approve payments for an **insured** without regard to the $50,000 per year limit. For purposes of this option, the first 18 months of eligibility begins when the **insured** has incurred $100,000 of eligible **necessary medical treatment and rehabilitative services** expenses.

Sample Copy



**FIRST PARTY BENEFITS**

**Page F3**

If the **insured** is covered by Option 5—Combined Loss Benefits package (or a similar auto benefits package with another insurer), applicable Medical Benefit limits greater than $100,000 in such package shall be excess over any sums paid or payable under Excess Medical Benefits.

**Coverage exclusions**

**We** will not pay First Party Benefits in certain circumstances, as follows:

1. The **policyholder** and **relatives** are not covered for **bodily injury** arising out of the maintenance or use of a **motor vehicle** that the **policyholder** owns that is not an insured **motor vehicle**. An insured **motor vehicle** is one on which there are First Party Benefits and to which the Auto bodily injury liability coverage in this policy applies.

2. There is no coverage for **bodily injury** to a **relative** arising out of the maintenance or use of a **motor vehicle** owned by such **relative** which is not insured for First Party Benefits and Auto bodily injury liability coverage under this or any other policy.

3. There is no coverage for anyone while **occupying** a:
   a) motorcycle;
   b) motor-driven cycle;
   c) motorized pedalcycle, or similar type vehicle; or
   d) a recreational vehicle not intended for highway use.

4. There is no coverage for anyone, other than the **policyholder** or a **relative**, who knowingly converts a **motor vehicle**.

5. There is no coverage for anyone injured by **your auto** while it is unoccupied and parked so as not to cause unreasonable risk of injury.

6. There is no coverage for use of any **motor vehicle** by an **insured**:
   a) to carry persons or property for a fee or compensation; or
   b) on a regular basis for retail or wholesale delivery, including but not limited to pizza, magazine, newspaper and mail delivery.

   Exclusion 6.a) does not apply to **motor vehicles** used in the shared-expense car pools.

7. There is no coverage for anyone who is the owner of a currently registered **motor vehicle** and who does not have financial responsibility. Financial responsibility means the type of financial responsibility that was self-certified to the Department of Transportation to obtain the registration.

8. **We** will not pay any benefits to or for anyone who injures themselves:
   a) or another intentionally, including an attempt to intentionally injure themselves or another;
   b) while committing a felony; or
   c) while seeking to elude lawful apprehension or arrest by a law enforcement official.

9. There is no coverage for loss sustained by any person as a direct result of loading or unloading any **motor vehicle**, except while **occupying** the **motor vehicle**.

10. There is no coverage for **bodily injury** caused by or resulting from an act of war, including insurrection, rebellion or revolution.

11. There is no coverage for **bodily injury** caused by or resulting from:
    a) nuclear hazard meaning any:
       (1) nuclear reaction;
       (2) nuclear discharge;
       (3) radiation; or
       (4) radioactive contamination;

Sample Copy

Case ID: 191203184

**Nationwide®**
is on your side

b) discharge of a biological weapon resulting in biological contamination;

whether controlled or uncontrolled or however caused, or as a consequence of any of these.

12. There is no coverage for expenses, charges or costs arising directly or indirectly from **bodily injury** caused by or resulting from the inhalation of, ingestion of, contact with, exposure to, existence of or presence of any fungi, algae, lichens, slime, mold, bacteria, wet or dry rot and any scents or by-products of these organisms, however produced. Fungi as used above include, but are not limited to any type or form of fungus, yeasts, mold, mildew, mycotoxins, spores, rust, smuts or fleshy fungi such as mushrooms, puffballs and coral fungi.

13. There is no coverage for **bodily injury** arising out of the ownership, operation, maintenance or use of any **motor vehicle**:

a) while used in an organized or prearranged competitive event, including but not limited to:

(1) racing contest or event; or

(2) speed contest or event; or

(3) in practice or preparation for any racing or speed contest or event.

b) while used in **performance testing** that is done on a closed road or a race track, or a testing facility environment where the **insured** is not competing.

**Performance testing** is when an **insured** uses any **motor vehicle** to:

(1) test its performance in speed, handling; or

(2) test or practice driver skills.

**Performance testing** does not apply to student-driver training activities an **insured** participates in to obtain that person's state issued learners permit or drivers license. **Performance testing** also does not apply to driver training activities an **insured** participates in to complete that person's state sanctioned courses in motor vehicle accident prevention, defensive driving, or driver improvement.

14. There is no coverage from the use of any **motor vehicle** which any **insured**:

a) uses without a reasonable belief of being entitled to do so;

b) has stolen; or

c) knows to have been stolen.

An **insured** shall not be held to have a reasonable belief of being entitled to operate a **motor vehicle** if that person's license has been suspended, revoked, or never issued.

This exclusion does not apply to the use of **your auto** by:

a) **you**;

b) a **relative**; or

c) a business partner, employee, or agent of **you** or a **relative**.

**Limits and conditions of payment**

Limits apply as stated in the attached Declarations. However, the insuring of more than one person or vehicle under this First Party Benefits coverage does not increase the limit of coverage to any one person in any one accident. In no event will any **insured** be entitled to more than the highest limit applicable to any one **motor vehicle** under this or any other policy. The following conditions apply to the relationship of this coverage to other insurance or benefits that may be available:

*Priorities of policies*

**We** will pay First Party Benefits in accordance with the order of priorities set forth by law. **We** will not pay if there is other insurance at a higher level of priority, even if the limits of that



insurance have been paid. The highest priority level listed below is the FIRST level which provides benefits for a named insured. The priority order is:

**FIRST—**   For a named insured on any policy, the policy on which that person is the named insured.

**SECOND—**   For a **relative**, the policy covering the **relative** as an **insured**.

**THIRD—**   For the occupants of an insured **motor vehicle**, the policy on that **motor vehicle**.

**FOURTH—**   For a person who is not the occupant of a **motor vehicle**, the policy on any **motor vehicle** involved in the accident.

### *No duplication of benefits; other insurance*

In any occurrence where other similar auto insurance or self-insurance of equal priority to that provided in this coverage is available and the claim is first presented to **us**, **we** will process and pay the claim as if wholly responsible up to the limits of **our** policy. The total limits available from all such insurance will be considered not to exceed the highest limits available from any one source of coverage.

In no instance may an **insured** or legal representative recover duplicate benefits from the same elements of loss under this and other similar auto insurance or self-insurance.

### *Workers' compensation reduction*

There is no coverage for **bodily injury** occurring during the course and scope of employment if workers' compensation benefits are payable or available for the **bodily injury**. Any amount payable to anyone under this coverage will only be in excess of and not in duplication of any valid and collectible workers' compensation benefit.

### **Insured persons' duties**

The **insured**, or someone on the **insured's** behalf, will report any accident to **us** in writing as soon as practicable. This report will identify the injured and give reasonably obtainable information about the time, place and circumstances of the accident.

As soon as practicable, the **insured** or someone on the **insured's** behalf will submit written proof of claim to **us**, under oath if required. This proof will include detailed information about the nature and extent of **bodily injury**, treatment and rehabilitation received and contemplated, and anything else that may help **us** determine what benefits are payable in what amounts.

The injured person must grant **us** authorization, if **we** request it, to obtain copies of medical, income and income tax reports and records.

Injured persons must submit to examinations by company-selected physicians as often as **the company** reasonably requires. The injured person must submit to examination under oath as often as reasonably requested by **us**.

Case ID: 191203184



Case ID: 191203184



**Uninsured motorists — bodily injury**

**Additional definitions applicable to this coverage**

*"Uninsured motor vehicle" — See definition in Coverage agreement section.*

**Coverage agreement**

*You and a relative*
**We** will pay compensatory damages, including derivative claims, which are due by law to **you** or a **relative** from the owner or driver of an **uninsured motor vehicle** because of **bodily injury** suffered by **you** or a **relative**. Damages must result from an accident arising out of the:

1. ownership;

2. maintenance; or

3. use;

of the **uninsured motor vehicle**.

Coverage for **you** or a **relative** under this policy also extends to replacement automobiles and to newly acquired automobiles. If, however, the newly acquired automobile does not replace **your auto**, **you** must report the acquisition of the vehicle to us for this extension of coverage to apply.

*Other persons*
**We** will also pay compensatory damages, including derivative claims, which are due by law to other persons from the owner or driver of an **uninsured motor vehicle** because of **bodily injury** suffered while occupying:

1. **Your auto**.

2. A **motor vehicle you** do not own, while it is used as a temporary substitute for **your auto**. **Your auto** must be out of use because of:

   a) breakdown;          c) servicing; or

   b) repair;              d) loss.

*Recovery*
1. Before recovery, **we** and any injured party seeking protection under this coverage must agree on two points:

   a) whether there is a legal right to recover damages from the owner or driver of an **uninsured motor vehicle**; and if so,

   b) the amount of such damages.

2. Any judgment against the uninsured will be binding on **us** only if it has **our** written consent.

3. The injured party shall provide notice of an uninsured motorist claim within two years after the date of the accident. If the injured party fails to provide such notice, and this failure precludes **our** ability to subrogate against liable parties, coverage may be denied as provided in Insured persons' duties No. 2 below.

4. Where multiple policies apply, payment shall be made in the following order of priority:

   a) a policy covering a **motor vehicle** occupied by the injured person at the time of the accident.

   b) a policy covering a **motor vehicle** not involved in the accident with respect to which the injured person is an **insured**.

5. Where multiple sources of equal priority apply, the **insured** against whom a claim is asserted first under the priorities set forth in 4. above shall process and pay the claim as if wholly responsible. **We** are thereafter entitled to recover contribution pro rata from the other insurer for the benefits paid and the cost of processing the claim.



**UNINSURED MOTORISTS**

**Page U2**

***Definition***

1. An **uninsured motor vehicle** is:

   a) one for which there is no bodily injury liability bond or insurance at the time of the accident.

   b) one for which the insuring company denies coverage or becomes insolvent.

   c) an unidentified **motor vehicle** which causes **bodily injury** to an **insured** by physical contact with:

   (1) such **insured**; or

   (2) a vehicle the **insured** is **occupying**.

   The driver and the owner of the unidentified vehicle must be unknown. A report must be made to the police within 24 hours and us within 30 days, or as soon as practicable. It must state that the insured has a legal action due to the accident. It must include facts to support the action. We may inspect any vehicle the insured was occupying.

2. **We** will not consider as an **uninsured motor vehicle**:

   a) a **motor vehicle** for which there is liability insurance or self-insurance applicable at the time of the accident;

   b) any vehicle in use as a residence or premises;

   c) any equipment or vehicle designed for use mainly off public roads;

   d) any **motor vehicle** insured under the Auto liability coverage of this policy; nor

   e) any **motor vehicle** furnished for the regular use of **you**, a resident, or a **relative**.

**Coverage exclusions**

This coverage does not apply to:

1. Any **motor vehicle** while used:

   a) to carry persons or property for a fee or compensation; or

   b) on a regular basis for retail or wholesale delivery, including but not limited to pizza, magazine, newspaper and mail delivery.

   Exclusion 1.a) does not apply to **motor vehicles** used in shared-expense car pools.

2. Any **motor vehicle** which any **insured**:

   a) uses without a reasonable belief of being entitled to do so;

   b) has stolen; or

   c) knows to have been stolen.

   An **insured** shall not be held to have a reasonable belief of being entitled to operate a **motor vehicle** if that person's license has been suspended, revoked, or never issued.

   This exclusion does not apply to the use of **your auto** by:

   a) **you**;

   b) a **relative**; or

   c) a business partner, employee, or agent of **you** or a **relative**.

3. Any of the following:

   a) judgments;

   b) costs;

   c) attorneys fees; or

   d) claims;

   for punitive or exemplary damages.

4. Directly or indirectly benefit any insurer or self-insurer under any disability benefits, or similar law with the exception of a workers' compensation law.

Case ID: 191203184

**Nationwide®**
is on your side

5. **Bodily injury** suffered while **occupying** a **motor vehicle** owned by **you** or a **relative** but not insured for Uninsured motorists coverage under this policy; nor to **bodily injury** from being hit by any such **motor vehicle**.

6. **Non-economic loss** of any **insured** who has elected or has deemed to have elected "Limited Tort" in accordance with the Pennsylvania Motor Vehicle Financial Responsibility Law.

7. **Bodily injury** of any **insured** if the **insured** settles, without **our** written consent, with a liable party.

8. **Bodily injury** suffered while **occupying** a **motor vehicle**:
   a) while used in an organized or prearranged competitive event, including but not limited to:
      (1) racing contest or event; or
      (2) speed contest or event; or
      (3) in practice or preparation for any racing or speed contest or event.
   b) while used in **performance testing** that is done on a closed road or a race track, or a testing facility environment where the **insured** is not competing.

   **Performance testing** is when an **insured** uses any **motor vehicle** to:
      (1) test its performance in speed or handling; or
      (2) test or measure the driver's skill.

   **Performance testing** does not apply to student-driver training activities an **insured** participates in to obtain that person's state issued learners permit or drivers license. **Performance testing** also does not apply to driver training activities an **insured** participates in to complete that person's state sanctioned courses in motor vehicle accident prevention, defensive driving, or driver improvement.

9. **Bodily injury** arising directly or indirectly from the inhalation of, ingestion of, contact with, exposure to, existence of or presence of any fungi, algae, lichens, slime, mold, bacteria, wet or dry rot and any scents or by-products of these organisms, however produced. Fungi as used above include, but are not limited to any type or form of fungus, yeasts, mold, mildew, mycotoxins, spores, rust, smuts or fleshy fungi such as mushrooms, puffballs and coral fungi.

10. **Bodily injury** suffered while **occupying** a **motor vehicle**:
    a) owned by;
    b) furnished to; or
    c) available for the regular use of;

    **you** or a **relative**, but not insured for Auto liability coverage under this policy.  It also does not apply to **bodily injury** from being hit by any such **motor vehicle**.

11. **Bodily injury** suffered while engaged in the transportation or exchange of any illegal substance, or in connection with any criminal trade or transaction.  This exclusion applies to the operator or occupant of a **motor vehicle** so involved, and also to an **insured** so engaged as a pedestrian.

**Insured persons' duties**
1. The **insured** must:
   a) submit written proof of the claim to **us** as soon as practicable. It must be under oath, if required.  It must include details of:
      (1) the nature and extent of injuries;
      (2) treatment; and
      (3) any other facts which could affect the amount of payment.
   b) provide all facts of the accident and the names of all witnesses.

**Nationwide®**
is on your side

   c) submit to oral examinations under oath as often as **we** require with good reason.

   d) sign an authorization giving **us** access to the **insured's** first party medical file.

   e) be examined by doctors, including doctors examining the **insured** for rehabilitation purposes, vocational specialists, dentists or other health care providers chosen by **us** as often as **we** require with good reason. Expenses incurred at **our** request will be paid by **us**.  At **our** request, the injured person or such person's legal representative must promptly authorize **us** to:

   (1) speak with any doctor, dentist, or other health care provider who has provided treatment;

   (2) read all medical history and reports of the injury;

   (3) obtain copies of wage and medical reports and records;

   (4) obtain copies of all medical, dental, and other health care bills as they are incurred; and

   (5) speak with any employer regarding a wage loss claim.

   Failure to do the above precludes recovery under this coverage.

2. **We** require the **insured** to file suit against any and all liable parties to preserve and protect **our** subrogation rights. Failure to do so precludes recovery under this coverage.

3. Where an **insured** brings legal action against another party for **bodily injury**, copies of any legal papers served in that action must be sent to **us** at once.

4. The **insured** must:

   a) obtain **our** written consent to:

   (1) settle any legal action brought against any liable party; or

   (2) release any liable party.

   b) preserve and protect **our** right to subrogate against any liable party.

   Failure to do the above precludes recovery under this coverage.

**Our right to recovery**
This applies to the extent of any payment **we** make under this coverage.

1. **We** will have first right to any amount the **insured** receives from any liable party.  The **insured** must:

   a) hold in trust for **us** his right to recover against any such party;

   b) do whatever is proper to secure such rights, and do nothing to prejudice them;

   c) furnish **us** all papers in any suit the **insured** files;

   d) do whatever is necessary to recover for **us** payments **we** have made under this coverage; and

   e) repay **us** out of any recovery for any payments **we** have made and any expenses **we** have incurred in the action.

2. **Our** payment of a claim may result from the insolvency of an insurer.  If so, **we** have the right to recover from the insurer, but not its insured.

**Limits and conditions of payment**

***Amounts payable for uninsured motorists—bodily injury losses***
**Our** obligation to pay Uninsured motorists—bodily injury losses is limited to the amounts per person and per occurrence stated in the policy Declarations. The following conditions apply to these limits:

1. The limit shown:

   a) for Uninsured motorists—bodily injury for any one person is for all covered damages, including all derivative claims, claimed by anyone arising out of and due to **bodily**



**injury** to one person as a result of one occurrence.

The per-person limit is the total amount available when one person sustains **bodily injury**, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims, or any other claims made by anyone arising out of **bodily injury**, including death, to one person as a result of one occurrence.

b) for **bodily injury** for each occurrence is the total limit of **our** liability for all covered damages when two or more persons sustain **bodily injury**, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims, or any other claims arising out of **bodily injury**, including death, to two or more persons as a result of one occurrence. This total limit is subject to the limit for any one person.

2. Coverage applies as stated in the Declarations. The insuring of more than one person or vehicle under this policy does not increase **our** Uninsured motorists payment limits. In no event will any **insured** be entitled to more than the highest per-person limit applicable to any one **motor vehicle** under this policy or any other policy issued by **us**. However, if **your** Declarations show **you** have elected "Uninsured motorists—bodily injury Stacked" coverage, the sum of limits for **your autos** apply to **you** or a **relative** as stated in the Declarations.

3. The limit of liability under this coverage is reduced by any amount paid to the same person for the same accident under the auto liability coverage of this policy.

4. **You** must comply with the terms of the policy before **you** may sue **us**. Suit filed against **us** must be brought in the county and state where the **insured** lived at the time of the accident. In the event of a judgment against **us** for Uninsured motorist benefits, including any award for Pa. R.C.P. No 238 delay damages, the **insured** cannot recover more than the applicable per person limit provided by the policy.

### *Other insurance*

1. If there is other insurance for **bodily injury** suffered by an **insured** while **occupying** a **motor vehicle** other than **your auto**, **our** coverage is excess over any other collectible:

   a) insurance;

   b) self insurance;

   c) proceeds from a governmental entity;

   d) sources of recovery other than workers' compensation benefits.

2. Except as stated above, if there is other insurance similar to this coverage under any other policy, **we** will be liable for only **our** share of the loss. **Our** share is **our** proportion of the total insurance limits for the loss.

3. If more than one policy applies, the total limits applicable will be considered not to exceed the highest limit amount of any one of them.

4. When the Declarations show **you** have elected "Uninsured motorists—bodily injury Stacked" coverage, the total limits applicable will be considered not to exceed the highest limit amount of any one of them for an **insured** other than **you** or a **relative**.

### *Duplicate payment*

**We** will make no duplicate payment to or for any **insured** for the same element of loss.



Case ID: 191203184



**Underinsured motorists—bodily injury**

**Additional definition applicable to this coverage**

*"Underinsured motor vehicle" — See definition in Coverage agreement section.*

**Coverage agreement**

*You and a relative*
**We** will pay compensatory damages, including derivative claims, which are due by law to **you** or a **relative** from the owner or driver of an **underinsured motor vehicle** because of **bodily injury** suffered by **you** or a **relative**. Damages must result from an accident arising out of the:

1. ownership;

2. maintenance; or

3. use;

of the **underinsured motor vehicle**.

Coverage for **you** or a **relative** under this policy also extends to replacement automobiles and to newly acquired automobiles. If, however, the newly acquired automobile does not replace **your auto**, **you** must report the acquisition of the vehicle to us for this extension of coverage to apply.

*Other persons*
**We** will also pay compensatory damages, including derivative claims, which are due by law to other persons from the owner or driver of an **underinsured motor vehicle** because of **bodily injury** suffered while **occupying**:

1. **Your auto**.

2. A **motor vehicle you** do not own, while it is used as a temporary substitute for **your auto**. **Your auto** must be out of use because of:
   a) breakdown;        c) servicing; or
   b) repair;           d) loss.

*Recovery*
1. Before recovery, **we** and any injured party seeking protection under this coverage must agree on two points:
   a) whether there is a legal right to recover damages from the owner or driver of an **underinsured motor vehicle**; and if so,
   b) the amount of such damages.

2. Any judgment against the underinsured will be binding on **us** only if it has **our** written consent.

3. The injured party shall provide notice of an underinsured motorist claim within two years after the date of the accident. If the injured party fails to provide such notice, and this failure precludes **our** ability to subrogate against liable parties, coverage may be denied as provided in Insured persons' duties No. 2 below.

4. Where multiple policies apply, payment shall be made in the following order of priority:
   a) a policy covering a **motor vehicle** occupied by the injured person at the time of the accident.
   b) a policy covering a **motor vehicle** not involved in the accident with respect to which the injured person is an **insured**.

5. Where multiple sources of equal priority apply, the **insured** against whom a claim is asserted first under the priorities set forth in 4. above shall process and pay the claim as if wholly responsible. **We** are thereafter entitled to recover contribution pro rata from the other insurer for the benefits paid and the cost of processing the claim.

Case ID: 191203184

*Definition*

1. An **underinsured motor vehicle** is a **motor vehicle** for which bodily injury liability coverage, bonds or insurance are in effect. However, their total amount is insufficient to pay the damages an **insured** is entitled to recover. **We** will pay damages that exceed such total amount.

2. **We** will not consider as an **underinsured motor vehicle**:

   a) a **motor vehicle** for which there is sufficient liability insurance or self-insurance applicable at the time of the accident to pay loses and damages;

   b) any vehicle in use as a residence or premises;

   c) any equipment or vehicle designed for use mainly off public roads;

   d) any **motor vehicle** insured under the Auto liability coverage of this policy; nor

   e) any **motor vehicle** furnished for the regular use of **you**, a resident, or a **relative**.

**Coverage exclusions**

This coverage does not apply to:

1. Any **motor vehicle** while used:

   a) to carry persons or property for a fee or compensation; or

   b) on a regular basis for retail or wholesale delivery, including but not limited to pizza, magazine, newspaper and mail delivery.

   Exclusion 1. does not apply to **motor vehicles** used in shared-expense car pools.

2. Any **motor vehicle** which any **insured**:

   a) uses without a reasonable belief of being entitled to do so;

   b) has stolen; or

   c) knows to have been stolen.

   An **insured** shall not be held to have a reasonable belief of being entitled to operate a **motor vehicle** if that person's license has been suspended, revoked, or never issued.

   This exclusion does not apply to the use of **your auto** by:

   a) **you**;

   b) a **relative**; or

   a business partner, employee, or agent of **you** or a **relative**.

3. Any of the following:

   a) judgments;

   b) costs;

   c) attorneys fees; or

   d) claims;

   for punitive or exemplary damages.

4. Directly or indirectly benefit any insurer or self-insurer under any disability benefits, or similar law with the exception of a workers' compensation law.

5. **Bodily injury** suffered while **occupying** a **motor vehicle** owned by **you** or a **relative** but not insured for Underinsured motorists coverage under this policy; nor to **bodily injury** from being hit by any such **motor vehicle**.

6. **Non-economic loss** of any **insured** who has elected or has deemed to have elected "Limited Tort" in accordance with the Pennsylvania Motor Vehicle Financial Responsibility Law.

7. **Bodily injury** of any **insured** if the **insured** settles, without **our** written consent, with a liable party.



**UNDERINSURED MOTORISTS**

**Page UI3**

8. **Bodily injury** suffered while **occupying** a **motor vehicle**:

   a) while used in an organized or prearranged competitive event, including but not limited to:

      (1) racing contest or event; or

      (2) speed contest or event; or

      (3) in practice or preparation for any racing or speed contest or event.

   b) while used in **performance testing** that is done on a closed road, or a race track, or a testing facility environment where the **insured** is not competing.

     **Performance testing** is when an **insured** uses any **motor vehicle** to:

      (1) test its performance in speed, handling; or

      (2) test or practice driver skills.

     **Performance testing** does not apply to student-driver training activities an **insured** participates in to obtain that person's state issued learners permit or drivers license. **Performance testing** also does not apply to driver training activities an **insured** participates in to complete that person's state sanctioned courses in motor vehicle accident prevention, defensive driving, or driver improvement.

9. **Bodily injury** arising directly or indirectly from the inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any fungi, algae, lichens, slime, mold, bacteria, wet or dry rot and any scents or byproducts of these organisms, however produced. Fungi as used above include, but are not limited to any type or form of fungus, yeasts, mold, mildew, mycotoxins, spores, rust, smuts or fleshy fungi such as mushrooms, puffballs and certain fungi.

10. **Bodily injury** suffered while **occupying** a **motor vehicle**:

   a) owned by;

   b) furnished to; or

   c) available for the regular use of;

   **you** or a **relative**, but not insured for Auto liability coverage under this policy. It also does not apply to **bodily injury** from being hit by any such **motor vehicle**.

11. **Bodily injury** suffered while engaged in the transportation or exchange of any illegal substance, or in connection with any criminal trade or transaction. This exclusion applies to the operator or occupant of a **motor vehicle** so involved, and also to an **insured** so engaged as a pedestrian.

**Insured persons' duties**

1. The **insured** must:

   a) submit written proof of the claim to **us** as soon as practicable. It must be under oath, if required. It must include details of:

      (1) the nature and extent of injuries;

      (2) treatment; and

      (3) any other facts which could affect the amount of payment.

   b) provide all facts of the accident and the names of all witnesses.

   c) submit to oral examinations under oath as often as **we** require with good reason.

   d) sign an authorization giving **us** access to the **insured's** first party medical file.

   e) be examined by doctors, including doctors examining the **insured** for rehabilitation purposes, vocational specialists, dentists or other health care providers chosen by **us** as often as **we** require with good reason. Expenses incurred at **our** request will be paid by **us**. At **our** request, the injured person or such person's legal representative must promptly authorize **us** to:

      (1) speak with any doctor, dentist, or other health care provider who has provided treatment;

Case ID: 191203184



(2) read all medical history and reports of the injury;

(3) obtain copies of wage and medical reports and records;

(4) obtain copies of all medical, dental, and other health care bills as they are incurred; and

(5) speak with any employer regarding a wage loss claim.

Failure to do the above precludes recovery under this coverage.

2. **We** require the **insured** to file suit against any and all liable parties to preserve and protect **our** subrogation rights. Failure to do so precludes recovery under this coverage.

3. Where an **insured** brings legal action against another party for **bodily injury**, copies of any legal papers served in such action must be sent to **us** at once.

4. The **insured** must:

a) obtain **our** written consent to:

(1) settle any legal action brought against any liable party; or

(2) release any liable party.

b) preserve and protect **our** right to subrogate against any liable party.

Failure to do the above precludes recovery under this coverage.

***Our right to recovery***
This applies to the extent of any payment **we** make under this coverage.

1. **We** will have the right to any amount the **insured** receives from any liable party.  The **insured** must:

a) hold in trust for **us** his right to recover against any such party;

b) do whatever is proper to secure such rights, and do nothing to prejudice them;

c) furnish **us** all papers in any suit the **insured** files;

d) do whatever is necessary to recover for **us** payments **we** have made under this coverage; and

e) repay **us** out of any recovery for any payments **we** have made and any expenses **we** have incurred in the action.

2. **Our** payment of a claim may result from the insolvency of an insurer.  If so, **we** have the right to recover from the insurer, but not its insured.

**Limits and conditions of payment**

***Amounts payable for Underinsured motorists—bodily injury losses***
**Our** obligation to pay Underinsured motorists—bodily injury losses is limited to the amounts per person and per occurrence stated in the policy Declarations. The following conditions apply to these limits:

1. The limit shown:

a) for Underinsured motorists—bodily injury for any one person is for all covered damages, including all derivative claims, claimed by anyone arising out of and due to **bodily injury** to one person as a result of one occurrence.

The per-person limit is the total amount available when one person sustains **bodily injury**, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims, or any other claims made by anyone arising out of **bodily injury**, including death, to one person as a result of one occurrence.

b) for **bodily injury** for each occurrence is the total limit of **our** liability for all covered damages when two or more persons sustain **bodily injury**, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims, or any other claims arising out of **bodily injury**, including death,

Sample Copy



two or more persons as a result of one occurrence. This total limit is subject to the limit for any one person.

2. Coverage applies as stated in the Declarations. The insuring of more than one person or vehicle under this policy does not increase **our** Underinsured motorists payment limits. In no event will any **insured** be entitled to more than the highest per-person limit applicable to any one **motor vehicle** under this policy or any other policy issued by **us**. However, if **your** Declarations show **you** have elected "Underinsured motorists—bodily injury Stacked" coverage, the sum of limits for **your autos** apply to **you** or a **relative** as stated in the Declarations.

3. The limit of liability under this coverage is reduced by any amount paid to the same person for the same accident under the Auto liability coverage of this policy.

4. No payment will be made until the limits of all other bodily injury liability insurance and bonds that apply have been exhausted by payments or judgments.

5. An **insured** who recovers damages for an uninsured motorists claim cannot recover damages for an underinsured motorists claim for the same accident.

6. **You** must comply with the terms of the policy before **you** may sue **us**. Suit filed against **us** must be brought in the county and state where the **insured** lived at the time of the accident. In the event of a judgment against **us** for Underinsured motorist benefits, including any award for Part R or No-Fault delay damages , the **insured** cannot recover more than the applicable per-person limit provided by the policy.

***Other insurance***

1. If there is other insurance for **bodily injury** suffered by an **insured** while **occupying** a **motor vehicle** other than **your auto**, **our** coverage is excess over any other collectible:

   a) insurance;

   b) self insurance;

   c) proceeds from a governmental entity;

   d) sources of recovery other than workers' compensation benefits.

2. Except as stated above, if there is other insurance similar to this coverage under any other policy, **we** will be liable for only **our** share of the loss. **Our** share is **our** proportion of the total insurance limits for the loss.

3. If more than one policy applies, the total limits applicable will be considered not to exceed the highest limit amount of any one of them.

4. When the Declarations show you have elected "Underinsured motorists—bodily injury Stacked" coverage, the total limits applicable will be considered not to exceed the highest limit amount of any one of them for an **insured** other than **you** or a **relative**.

***Duplicate payment***

**We** will make no duplicate payment to or for any **insured** for the same element of loss.



Case ID: 191203184



**GENERAL POLICY CONDITIONS**

**Page G1**

## General policy conditions

**We**, **you**, and anyone insured by this policy are bound by and must comply with all the terms, conditions and obligations of the policy. The following are policy conditions:

1. **How your policy may be changed**
   a) Any terms of this policy which may be in conflict with statutes of the state in which the policy is issued are hereby amended to conform.
   b) Any **insured** will automatically have the benefit of any extension or broadening of coverage in this policy, as of the effective date of the change, provided it does not require more premium.
   c) A waiver of any part or condition of this policy must be in writing by **us** to be valid.
   d) No other changes may be made in the terms of this policy except by endorsement or policy revision.
   e) The premium for each coverage is based on information in **our** possession. Any change or correction in this information will allow **us** to make an adjustment of the premium as of the date the change is effective.
   f) The **policyholder** has a duty to notify **us** as soon as possible of any change which may affect the premium or the risk under this policy. This includes, but is not limited to, changes in:
      (1) the principal garaging address of the insured vehicle(s) which must be reported to **us** within 30 days of the date the address change becomes effective;
      (2) drivers;
      (3) use of the insured vehicle(s);
      (4) desired coverages, **deductibles**, or limits; or
      (5) ownership.

2. **Optional payment of premium in installments**
   The **policyholder** may pay the premium for this policy in installments, under terms and conditions approved where required by the Insurance Department. For each separate installment payment there is an installment service charge. **Your** agent can provide more information.

3. **Renewal**
   This policy is written for the period of time shown on the Declarations. **We** will renew it for successive policy periods, subject to the following conditions:
   a) Renewal will be in accordance with policy forms, rules, rates, fees, and rating plans in use by **us** at the time.
   b) All premiums, premium installment payments, and fees must be paid when due, whether payable directly to **us** or through any premium finance plan.
   c) Prior to the expiration of a policy term for which premium has been paid, **we** will mail a notice to the **policyholder** for the premium required to renew or maintain the policy in effect. **We** will mail this notice to the address last known to **us**.

4. **Non-renewal**
   a) At the end of each 12-month period after the first effective date of the policy or any coverage, **we** will have the right to refuse to renew the entire policy or any of its coverages.
   b) If **we** elect not to renew, **we** will mail or deliver written notice to the **policyholder** 60 days in advance of the date **our** action will take effect. Mailing of this notice to the last known address or delivery of it to the **policyholder** will be considered proof of notice.
   c) For non-payment of renewal premium, coverage will terminate at the end of the last policy period for which premium was paid.

5. **Cancellation during policy period**
   a) Any named insured may cancel this policy or any of its coverages orally or by written notice to **us** of the future date of cancellation desired. However, if an organization

Sample Copy



**Nationwide®**
is on your side

**GENERAL POLICY CONDITIONS**

**Page G2**

listed exclusively as the named insured, as shown in the Declarations for this policy, the sole proprietor, majority shareholder or majority member of an organization, or general partner of a family limited partnership may cancel this policy or any of its coverages. Such action will be binding on any **insured**. **We** will calculate any returned premium according to the rules, rates, fees and forms in effect and on file if required, for **our** use in **your** state.

b) Up to the time this policy or any coverage has been in effect less than 60 days, **we** may cancel for any reason allowed by law. **We** may cancel by mailing notice to the **policyholder** 15 days prior to the effective date of cancellation. While the date **we** mail this notice must be within the 60 days, the effective date of cancellation need not be.

c) After any coverage of this policy has been in force 60 days, **our** right to cancel such coverage during the policy period is limited.

  (1) **We** may cancel during an annual policy period for any of the following reasons:

    (a) if premiums, premium installment payments, and fees are not paid when due, whether payable directly to **us** or through any premium finance plan.

    (b) if the driver's license or **motor vehicle** registration of any named insured has been suspended or revoked during the policy period.

    (c) if it is determined that any **insured** has concealed a material fact, has made a material allegation contrary to fact, or has made a misrepresentation of a material fact and that such concealment, allegation or misrepresentation was material to the acceptance of the risk by **us**.

  (2) **We** must mail notice to the **policyholder**:

    (a) 15 days in advance of termination for nonpayment of premium.

    (b) 15 days in advance of termination for loss of license or of **motor vehicle** registration.

    (c) 60 days in advance of termination for concealment or misrepresentation.

d) In any case of cancellation by **us** under items b) and c) above, **our** mailing of notice to the **policyholder's** last known address will constitute proof of notice as of the date **we** mail it. **We** will retain premium for days covered during the policy period.

e) Premium refund, if any due, will be made as soon as practicable after the date of cancellation. Mailing or delivery of **our** check will constitute tender of refund.

**6. Assignability**
No interest in this policy can be transferred without **our** written consent. However, if the **policyholder** dies, coverage will stay in force for the rest of the policy period for:

a) anyone having proper temporary custody of **your auto**; and

b) the appointed legal representative.

**7. Dividends**
The **policyholder** is entitled to any dividends which are declared by the Board of Directors and are applicable to coverages in this policy.

**8. If you become bankrupt**
Bankruptcy or insolvency of any **insured** will not relieve **us** of any obligation under the terms of this policy.

**9. Fraud and misrepresentation**
a) THIS POLICY WAS ISSUED IN RELIANCE ON THE INFORMATION **YOU** PROVIDED AT THE TIME OF **YOUR** APPLICATION FOR INSURANCE COVERAGE. WITHIN THE FIRST 60 DAYS THIS POLICY HAS BEEN IN EFFECT, **WE** MAY RESCIND COVERAGE UNDER THIS POLICY, DENY COVERAGE UNDER THIS POLICY, OR, AT **OUR** ELECTION, ASSERT ANY OTHER REMEDY AVAILABLE UNDER APPLICABLE LAW, IF **YOU** OR ANY INSURED PERSON SEEKING COVERAGE UNDER THIS POLICY, KNOWINGLY, OR UNKNOWINGLY CONCEALED, MISREPRESENTED OR OMITTED ANY MATERIAL FACT OR ENGAGED IN FRAUDULENT CONDUCT AT THE TIME THE APPLICATION WAS MADE OR AT ANY TIME DURING THE POLICY PERIOD.

Case ID: 191203184



**GENERAL POLICY CONDITIONS**

**Page G3**

b) AFTER THE FIRST 60 DAYS THIS POLICY HAS BEEN IN EFFECT, AND IF:

    (1) **YOU** OR ANY INSURED PERSON SEEKING COVERAGE UNDER THIS POLICY KNOWINGLY MISREPRESENTED OR OMITTED ANY MATERIAL FACT; AND

    (2) SUCH MISREPRESENTATION OR OMISSION COULD NOT HAVE REASONABLY BEEN DISCOVERED BY **US** IN LESS THAN 60 DAYS; AND

    (3) THE UNDISCLOSED INFORMATION WOULD HAVE PROMPTED **US** TO REFUSE ACCEPTANCE OF THE RISK;

**WE** MAY VOID COVERAGE UNDER THIS POLICY, DENY COVERAGE UNDER THIS POLICY, OR, AT **OUR** ELECTION, ASSERT ANY OTHER REMEDY AVAILABLE UNDER APPLICABLE LAW.

IF **WE** VOID COVERAGE UNDER THIS POLICY, THIS SHALL NOT AFFECT THE LIABILITY COVERAGE OF THIS POLICY.

c) **WE** DO NOT PROVIDE COVERAGE TO ANY **INSURED** UNDER THIS POLICY WHEN **YOU** OR ANY OTHER PERSON OR ORGANIZATION SEEKING COVERAGE OR PAYMENT UNDER THE POLICY HAS CONCEALED OR MISREPRESENTED ANY MATERIAL FACT OR ENGAGED IN FRAUDULENT CONDUCT IN CONNECTION WITH THE FILING OR SETTLEMENT OF ANY CLAIM UNDER THIS POLICY.

d) NO PERSON OR ORGANIZATION WHO ENGAGES IN FRAUDULENT CONDUCT IN CONNECTION WITH THE APPLICATION PROCESS, AN ACCIDENT OR FILING A CLAIM OR ENGAGES IN ANY MATERIAL MISREPRESENTATION REGARDING THE ISSUANCE OF THIS POLICY WILL BE ENTITLED TO RECEIVE ANY PAYMENT UNDER THIS POLICY AT ANY TIME.

**10. Legal action limitations**

No legal action may be brought against **the company** concerning any of the coverages provided in this policy until the **insured** has fully complied with all terms of the policy.

Under the Auto liability coverages of this policy, no legal action may be brought against **the company** until judgment against the **insured** has been finally determined after trial. This policy does not give anyone the right to make **us** a party to any action to determine the liability of an **insured**.

Under the Uninsured motorists—bodily injury or Underinsured motorists—bodily injury coverage of this policy, any legal action  against **us** must begin within a certain time period. The proper papers for any action must be filed, within the time limit allowed by law:

a) for death actions if the claim involves death of an **insured**; or

b) for bodily injury actions if the claim involves injury to an **insured** but not death.

**11. Subrogation**

**We** have the right of subrogation under the:

a) Physical damage;

b) Auto liability;

c) Uninsured motorists—bodily injury; and

d) Underinsured motorists—bodily injury;

coverages in this policy and its endorsements.  This means that after paying a loss to **you** or others under this policy, **we** will have the **insured's** right to sue for or otherwise recover such loss from anyone else who may be held liable.  Also, **we** may require reimbursement from the **insured** out of any settlement or judgment that duplicates **our** payments. These provisions will be applied in accordance with state law.  Any **insured** will sign such papers, and do whatever else is necessary to transfer these rights to **us**, and will do nothing to prejudice them.

Case ID: 191203184



**GENERAL POLICY CONDITIONS**

**Page G4**

If payment of a claim under Uninsured motorists coverage or Underinsured motorists coverage arises out of the insolvency of an insurer, **we** will have right of recovery against the insurer or its receiver, but not its insured.

**We** are not entitled to recovery under Uninsured motorists or Underinsured motorists coverage until the **insured** has been fully compensated for damages.

12. **Non-sufficient funds and late payment charges**
**The company** reserves the right to impose a fee for any premium payment that is unable to be processed due to non-sufficient funds, or if there are non-sufficient funds in an account that is being utilized for electronic funds transfer (EFT) payments, or if the premium is not paid by the due date. This is under the terms and conditions approved where required by the Department of Insurance.

If the initial premium payment for this policy is unable to be processed due to non-sufficient funds as indicated above, **we** reserve the right to void the policy back to the date of inception. When **we** void the policy, **we** will not be liable for any claims which occurred during the policy period. This includes any claims reported to **us** prior to receiving notice of the non-sufficient funds payment.

13. **Applicable contract law**
The contract law of the state where the policy was issued governs the interpretation of this contract, except for the Mutual policy conditions and proxy, which shall be governed by the insuring company's state of domicile.

14. **Interest rate**
If a court determines that interest on judgment, decree, or order for payment of money is required by law on amounts due and payable under the policy to an **insured**, or if it is otherwise determined by **us** that **you** are entitled to interest on a payment from **us**, it will be paid at the rate of two percent per annum, unless another rate is required by law.

15. **Joint and individual interests**
If there is more than one person who is a named insured as shown in the Declarations for this policy, any such person may cancel or change this policy. However, if an organization is listed exclusively as the named insured, as shown in the Declarations for this policy, the sole proprietor, majority shareholder or majority member of an organization, or general partner of a family limited partnership may cancel or change this policy. Such action will be binding on any **insured**.

**Mutual policy conditions and proxy**
(Applicable only to policies issued by Nationwide Mutual Insurance Company - Nationwide Mutual Fire Insurance Company.)

If this policy is issued by Nationwide Mutual Insurance Company or Nationwide Mutual Fire Insurance Company, the **policyholder** is a member of **the company** issuing the policy while this or any other policy issued by one of these two companies is in force. While a member, the **policyholder** is entitled to one vote only - regardless of the number of policies issued to the **policyholder** - either in person or by proxy at meetings of members of said company.

By accepting this policy of insurance, the member appoints the Chairman of the Board of Directors of **the company**, with full power of substitution, to be the member's proxy, and such individual is authorized and empowered to vote on behalf of the member on all matters presented for vote at any membership meeting of **the company**. The proxy will continue in force for the full duration of this policy or any renewal thereof issued by **the company** to the member. This proxy may be revoked at any time by providing written notice of such revocation to: Secretary, Nationwide Mutual Insurance Company/Nationwide Mutual Fire Insurance Company, Attention: Proxy Revocation, One Nationwide Plaza, Columbus, Ohio 43215. The member may also revoke this proxy in person at any meeting of the members by so announcing in the open meeting before any vote is taken or the proxy authority is exercised.



**GENERAL POLICY CONDITIONS**

**Page G5**

This proxy granted to the Chairman of the Board of **the company** will be superseded by any other valid proxy presented to the Secretary of **the company** in accordance with the Amended and Restated Bylaws of **the company** under Article II, Section 7.

The annual meeting of members of Nationwide Mutual Insurance Company will be held at the Home Office at Columbus, Ohio, at 10 a.m. on the first Thursday of April. The annual meeting of members of Nationwide Mutual Fire Insurance Company will be held at the Home Office at Columbus, Ohio, at 9:30 a.m. on the first Thursday of April. If the Board of Directors of either of the above companies should elect to change the time or place of meeting, that company will mail notice of the change to the **policyholder** at the address last known to it. **The company** will mail this notice at least 10 days in advance of the meeting date.

This policy is non-assessable, meaning that the **policyholder** is not subject to any assessment beyond the premiums the above companies require for each policy term.

**IN WITNESS WHEREOF:** The company listed in the Declarations has caused this policy to be signed and countersigned as may be required by a duly authorized representative of the company.

**President**

**Secretary**

**Nationwide Insurance Companies/Home Office: Columbus, Ohio 43215-2220**
**Nationwide Mutual Insurance Company • Nationwide Mutual Fire Insurance Company •**
**Nationwide Property & Casualty Insurance Company • Nationwide General Insurance Company**

Case ID: 191203184



Filed and Attested by the
Office of Judicial Records
20 DEC 2019 03:45 pm

# EXHIBIT E

# Looking for a no-hassle pricing on New or Used Car?

Powered by TrueCar. The Auto Shopping Service. is here to help.



Shop with confidence and save, discovering great deals.

# We'll get you back on the road fast!

Powered by TrueCar. The Auto Shopping Service.
provides:

- TrueCar® Certified Dealers dedicated to providing a no-hassle car buying experience.
- What others paid for new vehicle in your area so you don't overpay.
- A way to easily view and compare thousands of new and used vehicles online.
- TrueCar® representatives available to help you through the entire process.

A service you can trust when you need it most

*Visit us today at www.nationwide.com/replacecar*
*or call 877-924-2588*

---

Your actual savings may vary based on multiple factors including the vehicle you select, region, dealer, and applicable manufacturer incentives.
This no obligation program is administered by TrueCar, Inc.

Case ID: 191203184

# CCC ONE. MARKET VALUATION REPORT

*Prepared for NATIONWIDE PROPERTY AND CASUALTY COMPANY*


## REPORT SUMMARY

### CLAIM INFORMATION

| | |
|---|---|
| Owner | Edwards Gutzman, Alicia |
| | 300 N 8th St |
| | Pottsville, PA 17901-2308 |
| Loss Vehicle | 2013 Nissan Altima S |
| Loss Incident Date | 03/18/2018 |
| Claim Reported | 03/22/2018 |

### INSURANCE INFORMATION

| | |
|---|---|
| Report Reference Number | 88061848 |
| Claim Reference | 923645-GG-2 |
| Adjuster | Williams, Leslie |
| Odometer | 72,254 |
| Last Updated | 03/26/2018 04:15 PM |

### VALUATION SUMMARY

| | |
|---|---|
| **Pennsylvania Statewide Value** | **$ 8,875.00** |
| **Base Vehicle Value** | **$ 8,692.00** |
| **CCC Valuation (average of statewide and base vehicle values)** | **$ 8,783.50** |
| Condition Adjustment | + $ 352.00 |
| **Adjusted Vehicle Value** | **$ 9,135.50** |
| Vehicular Tax (6%) | + $ 548.13 |
| Tax reflects applicable state, county and municipal taxes. | |

| **Total** | **$ 9,683.63** |
|---|---|

Appraiser's Signature: ...............................................

The total may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account.

---

The CCC ONE® Market Valuation Report reflects CCC Information Services Inc.'s opinion as to the value of the loss vehicle, based on information provided to CCC by NATIONWIDE PROPERTY AND CASUALTY COMPANY.

Loss vehicle has 7% greater than average mileage of 67,700.

**PENNSYLVANIA STATEWIDE VALUE**

The Pennsylvania Statewide Value is based on all Pennsylvania valuations for a similarly equipped 2013 Nissan Altima S

**BASE VEHICLE VALUE**

This is derived per our Valuation methodology described on the next page.

**ADJUSTED VEHICLE VALUE**

This is determined by adjusting the CCC Valuation Amount to account for the actual condition of the loss vehicle and certain other reported attributes, if any, such as refurbishments and after factory equipment.

**Inside the Report**

Valuation Methodology ................... 2
Vehicle Information ......................... 3
Vehicle Condition .......................... 6
Comparable Vehicles ...................... 7
Valuation Notes ........................... 10
Supplemental Information ............... 11

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

Case ID: 191203184

**CCC≋ONE. MARKET VALUATION REPORT** | Owner: Edwards Gutzman, Alicia
Claim: 923645-GG-2

# VALUATION METHODOLOGY

## How was the valuation determined?



### CLAIM INSPECTION

NATIONWIDE PROPERTY AND CASUALTY COMPANY has provided CCC with the zip code where the loss vehicle is garaged, loss vehicle VIN, mileage, equipment, as well as loss vehicle condition, which is used to assist in determining the value of the loss vehicle.



### DATABASE REVIEW

CCC maintains an extensive database of vehicles that currently are or recently were available for sale in the U.S. This database includes vehicles that CCC employees have physically inspected, as well as vehicles advertised for sale by dealerships or private parties. All of these sources are updated regularly.



### SEARCH FOR COMPARABLES

When a valuation is created the database is searched and comparable vehicles in the area are selected. The zip code where the loss vehicle is garaged determines the starting point for the search. Comparable vehicles are similar to the loss vehicle based on relevant factors.

### CALCULATE BASE VEHICLE VALUE



Adjustments to the price of the selected comparable vehicles are made to reflect differences in vehicle attributes, including mileage and options. Dollar adjustments are based upon market research.

Finally, the Base Vehicle Value is the weighted average of the adjusted values of the comparable vehicles based on the following factors:

- Source of the data (such as inspected versus advertised)
- Similarity (such as equipment, mileage, and year)
- Proximity to the loss vehicle's primary garage location
- Recency of information

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC☰ONE. MARKET VALUATION REPORT

Owner: Edwards Gutzman, Alicia
Claim: 923645-GG-2

 VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| | | |
|---|---|---|
| Odometer | 72,254 | |
| Transmission | Automatic Transmission | ✔ |
| Power | Power Steering | ✔ |
| | Power Brakes | ✔ |
| | Power Windows | ✔ |
| | Power Locks | ✔ |
| | Power Mirrors | ✔ |
| | Power Driver Seat | ✔ |
| | Power Trunk/Gate Release | ✔ |
| Decor/Convenience | Air Conditioning | ✔ |
| | Tilt Wheel | ✔ |
| | Cruise Control | ✔ |
| | Rear Defogger | ✔ |
| | Intermittent Wipers | ✔ |
| | Console/Storage | ✔ |
| | Overhead Console | ✔ |
| | Keyless Entry | ✔ |
| | Telescopic Wheel | ✔ |
| | Message Center | ✔ |
| Seating | Cloth Seats | ✔ |
| | Bucket Seats | ✔ |
| Radio | AM Radio | ✔ |
| | FM Radio | ✔ |
| | Stereo | ✔ |
| | Search/Seek | ✔ |
| | CD Player | ✔ |
| | Steering Wheel Touch Controls | ✔ |
| | Auxiliary Audio Connection | ✔ |
| Wheels | Wheel Covers | ✔ |
| Safety/Brakes | Air Bag (Driver Only) | ✔ |
| | Passenger Air Bag | ✔ |
| | Anti-lock Brakes (4) | ✔ |

To the left is the equipment of the loss vehicle that NATIONWIDE PROPERTY AND CASUALTY COMPANY provided to CCC.

✔ **Standard** This equipment is included in the base configuration of the vehicle at time of purchase.

☐ **Additional** Equipment that is not Standard but was noted to be on the loss vehicle.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

Case ID: 191203184