**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SALVATORE SYLVESTER, ALICIA EDWARDS-GUTZMAN, and EUNICE HILL, on behalf of themselves, and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 20-cv-1322 ER |
| DEPOSITORS INSURANCE COMPANY, NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY, and NATIONWIDE MUTUAL INSURANCE COMPANY | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT**

Defendants move to dismiss Plaintiffs' Complaint, in its entirety and with prejudice, under Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1) because: (i) Plaintiffs fail to state a claim upon which relief may be granted; and (ii) Plaintiffs have no standing to pursue a breach of contract claim.

A memorandum in support is attached.

Respectfully submitted this 27th day of March 2020.

*/s/ Pamela A. Carlos*
PAMELA A. CARLOS, ESQUIRE
Bennett, Bricklin & Saltzburg LLC
1500 Market Street, 32nd Floor
Philadelphia, PA  19102
Telephone:  (215) 665-3315
Email: carlos@bbs-law.com

Mark L. Hanover (*pro hac vice*)
Kathleen V. Kinsella (*pro hac vice*)
DENTONS US LLP
233 South Wacker Drive
Suite 5900
Chicago, Illinois 60606
Telephone:  (312) 876-8000
Email:  mark.hanover@dentons.com
kathleen.kinsella@dentons.com

*Attorneys for Defendants Depositors Insurance Company,
Nationwide Property & Casualty Insurance Company, and
Nationwide Mutual Insurance Company*

## CERTIFICATE OF SERVICE

I, Pamela A. Carlos, hereby certify that on this 26th day of March 2020, I caused a true and

correct copy of the foregoing **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS**

**ACTION COMPLAINT** to be electronically filed with the clerk of the court using the CM/ECF

system and sent via e-mail to the following attorneys of record:

Jonathan Shub
Kevin Laukaitis
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103-7225
jshub@kohnswift.com
klaukaitis@kohnswift.com

Edmund A. Normand (pro hac vice to be filed)
Jacob L. Phillips (pro hac vice to be filed)
NORMAND PLLC
3165 McCrory Place, Suite 175
Orlando, FL 32803
Ed@NormandPLLC.com

Scott Edelsberg, Esq. (pro hac vice to be filed)
EDELSBERG LAW, PA
20900 NE 30th Avenue, #417
Aventura, FL 33180
scott@edelsberglaw.com
utanski@edelsberglaw.com

Andrew J. Shamis (pro hac vice to be filed)
SHAMIS & GENTILE, P.A.
14 NE 1st Ave., Suite 1205
Miami, FL 33132
efilings@shamisgentile.com

Rachel Dapeer, Esq. (pro hac vice to be filed)
DAPEER LAW, P.A.
300 S. Biscayne Blvd, #2704
Miami, FL 33131
rachel@dapeer.com

_/s/ Pamela A. Carlos_____
PAMELA A. CARLOS, ESQUIRE
_An Attorney for Defendants_
_Depositors Insurance Company,_
_Nationwide Property & Casualty_
_Insurance Company, and Nationwide_
_Mutual Insurance Company_

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SALVATORE SYLVESTER, ALICIA EDWARDS-GUTZMAN, and EUNICE HILL, on behalf of themselves, and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 20-cv-1322 ER |
| DEPOSITORS INSURANCE COMPANY, NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY, and NATIONWIDE MUTUAL INSURANCE COMPANY | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS**
**PLAINTIFFS' CLASS ACTION COMPLAINT**

Defendants Depositors Insurance Company, Nationwide Property & Casualty Insurance Company, and Nationwide Mutual Insurance Company (collectively, "Nationwide Defendants") respectfully submit this Memorandum of Law in Support of their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

## INTRODUCTION

Plaintiffs Sylvester, Edwards and Hill (collectively "Plaintiffs") each submitted a first-party automobile physical damage claim to their respective Nationwide Defendant. The Nationwide Defendants allegedly treated the claims as total losses, and issued payments according to the express terms of the applicable insurance policy ("Policy"). Plaintiffs allege that the payments were too low, because they allegedly did not include certain enumerated fees (title fees, title lien fees, registration transfer fees, county fees, Safety Inspection Sticker fees,

and Emissions Inspection Sticker fees) (together, "Title and Regulatory Fees").  Plaintiffs filed suit on behalf of themselves and a putative class,[1] alleging breach of contract, and seeking alleged compensatory damages and injunctive relief.   The Complaint should be dismissed because:  (1) Plaintiffs lack standing, as they do not plead the existence of any injury or any actual controversy arising from the alleged nonpayment of Title and Regulatory Fees; and (2) neither the express language of the respective Policies nor Pennsylvania law requires payment of Title and Regulatory Fees in connection with a covered loss.  There is simply no basis in the Policies or at law for the proposition that total loss payments must include Title and Regulatory Fees.

## BACKGROUND

The Nationwide Defendants offer their customers private passenger automobile insurance with comprehensive and/or collision coverage, providing for payment under the policy when a covered vehicle is determined to be a "total loss."  (*See* Compl., at ¶ 2.)

### I.   Plaintiff Edwards

Nationwide Property and Casualty Insurance Company issued a Policy to Plaintiff Edwards insuring a 2013 Nissan Altima ("Edwards Policy").  (*See id*., at ¶¶ 23-24 and Edwards Policy attached in part as Ex. D to the Compl. (attached hereto in full as **Ex. 1**).)  Two portions of the Edwards Policy are relevant here.  First, the Edwards Policy grants collision coverage:

---

[1] Plaintiffs define the putative class as:  "All insureds, under any Pennsylvania policy issued by Depositors Insurance Company, Nationwide Property & Casualty Company or Nationwide Mutual Insurance Company covering a vehicle with private-passenger auto physical damage coverage for comprehensive or collision loss, who made a first-party claim for total loss, where such vehicle was declared a total loss and adjusted as a total loss, where the total loss payment included no amount (or a prorated amount) for state and local regulatory fees imposed by the Commonwealth of Pennsylvania within four years prior to the date on which this lawsuit was filed through the date of any certification order."  (Compl. ¶ 54.)

2

**Coverage agreements**
\*   \*   \*
*Collision coverage*
**We** will pay for **loss** to **your auto** caused by collision or upset.  **We** will pay for the **loss** less **your deductible**.  **We** will not subtract the **deductible** amount for broken glass if **you** have full (no **deductible**) Comprehensive coverage in force.

(Edwards Policy, Ex. 1, at p. P1.)  The Edwards Policy defines "loss" as follows:

LOSS means direct, physical and accidental **loss** or damage to **your auto**.  **Your auto** includes its **equipment**.

(*Id.*)  The term "your auto" is defined as "the vehicle(s) described in the Declarations." (*Id.* at p. D1.)

Second, with respect to the limits of liability, the Edwards Policy states:

**Limits and conditions of payment**
*Actual cash value*
The limit of **our** coverage is the actual cash value of **your auto** or its damaged parts at the time of **loss**. To determine actual cash value, **we** will consider:
1.  fair market value;
2.  age;
3.  condition of the property; and
4.  **betterment**;

at the time of **loss**.  If a repair or replacement results in **betterment**, **we** will not pay for the amount of **betterment**.   In addition to **our** payment of the **loss**, necessary and reasonable towing and storage will be paid to protect the auto from further damage.   Covered storage costs are not to exceed four days of storage charges incurred prior to the date **you** report the **loss** to **us**.

The limit of coverage shall not be increased for **customization** unless such **customization** has been specifically declared to **us** and an additional charge is paid. Coverage for **customization** shall not cause **our** limit of liability to be increased to an amount in excess of the actual cash value of **your auto** including its **customization**.

(*Id.* at pp. P5-P6.)

"Betterment" is defined as:

BETTERMENT is the increase in value of:
a)   a vehicle; or
b)   property; or

3

   c)  any parts of a vehicle or property;

as a result of repairing or replacing certain parts damaged in a **loss**.

(*Id*. at p. P1.)

The Complaint alleges that, on or about March 18, 2018, Plaintiff Edwards' vehicle was involved in an accident, after which Plaintiff filed a first-party claim for property damage. (*See* Compl., at ¶ 25.) Nationwide Property and Casualty allegedly determined that the vehicle was a "total loss," and paid Plaintiff Edwards $9,683.63. (*See id*., at ¶ 28 and Ex. F to the Compl.) This total amount allegedly did not include Title and Regulatory Fees. (*Id*., at ¶ 29.) The Complaint contends that Nationwide Property and Casualty was required to include in the total loss payment a minimum of $104.57 for Title and Regulatory Fees, comprising:

- A title fee of $55.00;
- A title lien fee of $26.00 (if a lien is recorded with the transfer of title);
- A passenger vehicle registration transfer fee of $9.00;
- County fees up to $5.00;
- A Safety Inspection Sticker costing $8.00; and
- An Emissions Inspection Sticker of $1.57.

(*Id*. at ¶ 41.)

## II.  Plaintiff Hill

Nationwide Mutual Insurance Company issued a Policy to Plaintiff Hill insuring a 2012 Nissan Maxima[2] ("Hill Policy"). (*See id*., at ¶¶ 32-33 and Ex. G to the Compl.) Two portions of the Hill Policy are relevant here. First, the Hill Policy grants collision coverage:

> **COLLISION COVERAGE**
> **We** will pay for **loss** to **your auto** caused by collision or upset. **We** will pay for the **loss** less **your deductible**. **We** will not subtract the **deductible** amount for broken glass if **you** have full (no **deductible**) Comprehensive coverage in force.

---

[2] While the Complaint alleges that Plaintiff Hill owned a "2012 Nissan Maximum," (Compl. at ¶ 32), Hill's Policy states that the vehicle is a "2012 Nissan Maxima" (Hill Policy, Ex. G to Compl., at Declarations).

(*See* Hill Policy, Ex. G to the Compl., at p. P1.)  The Hill Policy defines "loss" as "direct and accidental **loss** or damage to **your auto**.  **Your auto** includes its equipment." (*Id*.)  The term "your auto" is defined as "the vehicle(s) described in the Declarations." (*Id*. at p. D1).

Second, with respect to the limits of liability, the Hill Policy states:

> **Limits and Conditions of Payment**
> **ACTUAL CASH VALUE**
> The limit of **our** coverage is the actual cash value of **your auto** or its damaged parts at the time of **loss**. To determine actual cash value, **we** will consider:
> 1.  fair market value;
> 2.  age;
> 3.  condition of the property; and
> 4.  **betterment**;
>
> at the time of **loss**. If a repair or replacement results in **betterment**, **we** will not pay for the amount of **betterment**. In addition to **our** payment of the **loss**, necessary and reasonable towing and storage will be paid to protect the auto from further damage. Covered storage costs are not to exceed four days of storage charges incurred prior to the date **you** report the **loss** to **us**.
>
> The limit of coverage shall not be increased for **customization** unless such **customization** has been specifically declared to **us** and an additional charge is paid.

(*Id*. at Endorsement 3453.)

"Betterment" is defined as:

> "BETTERMENT" is the increase in value of:
> a)  a vehicle; or
> b)  property; or
> c)  any parts of a vehicle or property;
>
> as a result of repairing or replacing certain parts damaged in a **loss**.

(*Id*.)

The Complaint alleges that, on or about September 12, 2017, Plaintiff Hill's vehicle was involved in an accident, after which Plaintiff filed a first-party claim for property damage. (*See* Compl., at ¶ 34.)  Nationwide Mutual allegedly determined that the vehicle was a "total loss,"

5

and paid Plaintiff Hill $12,920.77.  (*See id.*, at ¶ 37 and Ex. I to the Compl.)  This total amount allegedly did not include Title and Regulatory Fees.  (*Id.*, at ¶ 38.)  The Complaint contends that Nationwide Mutual was required to include in the total loss payment a minimum of $104.57 for Title and Regulatory Fees.  (*Id.* at ¶ 41.)

## III.    Plaintiff Sylvester

Depositors Insurance Company issued a Policy to Plaintiff Sylvester insuring a 2005 Subaru Legacy ("Sylvester Policy").  (*See id.*, at ¶¶ 14-15 and Sylvester Policy attached in part as Ex. A to the Compl. (attached hereto in full as **Ex. 2**).)  Two portions of the Sylvester Policy are relevant here.  First, the Sylvester Policy grants collision coverage:

### PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

A.  We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto", including their equipment, minus any applicable deductible shown in the Declarations….   We will pay for loss to "your covered auto" caused by: …

    2.  "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto….

(*See* Sylvester Policy, Ex. 2, at p. 8.)  "Your covered auto" means, in pertinent part, the "vehicle shown in the Declarations." (*Id*. at p. 1.)

Second, with respect to "Limit of Liability," the Sylvester Policy states:

### LIMIT OF LIABILITY

A.  Our limit of liability for loss will be the lesser of the:
    1.  Amount shown in the Schedule or in the Declarations.
    2.  Actual cash value of the stolen or damaged property; or
    3.  Amount necessary to repair or replace the property with other property of like kind and quality.

Our payment for loss will be reduced by any applicable deductible shown in the Schedule or in the Declarations….

    B.   An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

    C.   If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

(*Id*. at Endorsement AA 0308 (10-05).)

    The Complaint alleges that, on or about September 10, 2016, Plaintiff Sylvester's vehicle was involved in an accident, after which Plaintiff filed a first-party claim for property damage. (*See* Compl., at ¶ 16.)  Depositors Insurance allegedly determined that the vehicle was a "total loss," and paid Plaintiff Sylvester $4,018.78.  (*See id*., at ¶ 19 and Ex. C to the Compl.)  This total amount allegedly did not include Title and Regulatory Fees.  (*Id*., at ¶ 20.)  The Complaint contends that Nationwide was required to include in the total loss payment a minimum of $104.57 for Title and Regulatory Fees.  (*Id*. at ¶ 41.)

## ARGUMENT

**I.    Pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court Should Dismiss For Lack Of Standing.**

### A.    Legal Standard

    "A motion to dismiss for want of standing is properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."  *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (internal punctuation and citation omitted).  As a threshold matter, "[a]bsent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed."  *McCray v. Fid. Nat. Title Ins. Co.*, 682 F.3d 229, 243 (3d Cir. 2012) (internal punctuation and citation omitted).  "Article III standing requires (1) injury-in-fact, which is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct

7

complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*.

To determine whether a plaintiff has standing, a court determines "whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the court's jurisdiction." *Id*. at 243 n.14 (internal punctuation and citation omitted). *See also Collura v. Disciplinary Bd. of Supreme Court of Pennsylvania*, No. CIV.A. 11-5637, 2013 WL 4479141, at *4 (E.D. Pa. Aug. 22, 2013) ("In evaluating whether a plaintiff has adequately pled the elements of standing, the Court applies the same standard for reviewing a complaint pursuant to Rule 12(b)(6)."), *aff'd sub nom. Collura v. Maguire*, 569 F. App'x 114 (3d Cir. 2014). After determining that a plaintiff lacks standing, a court must dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d at 243 ("Under Fed.R.Civ.P. 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim."); *Collura*, 2013 WL 4479141, at *11 (dismissing complaint for lack of standing).

### B.   Plaintiffs Lack Standing Because They Fail To Allege The Existence of Any Injury Or Damages.

The Complaint alleges that the Nationwide Defendants breached the Policies by failing to pay Title and Regulatory Fees as part of total loss payments for Plaintiffs' vehicles. (*See* Compl., at ¶ 3-4, 41-42, 80-82.) Under Pennsylvania law, "[i]t is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016).

While Plaintiffs complain that the Nationwide Defendants did not include Title and Regulatory Fees in the total loss payments, *they never allege that they actually paid any Title and Regulatory Fees* after the losses at issue. (*See* Compl.) The Complaint is devoid of any allegations concerning any other purported damages sustained by Plaintiffs. (*See id.*) Thus, Plaintiffs have suffered no concrete or actual harm or injury-in-fact. *See, e.g., McCray*, 682 F.3d at 243 (finding plaintiffs lacked standing where they failed to allege injury-in-fact). Accordingly, Plaintiffs fail to make any allegation that would give rise to standing.

While Plaintiffs style their Complaint as a putative class action, that does not change the standing requirements under Pennsylvania law. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *McCray*, 682 F.3d at 243 ("In the context of class actions, Article III standing is determined vis-a-vis the named parties." (internal punctuation and citation omitted); *Treski v. Kemper Nat. Ins. Companies*, 674 A.2d 1106, 1111 (Pa. Super. Ct. 1996) (finding insureds had no standing to bring class action suit against insurers where they lacked standing). Because Plaintiffs lack standing to bring their individual claims for breach of contract, they also lack standing to bring claims on behalf of the proposed class, and the entire Complaint must be dismissed.[3]

---

[3] Citing *Wells Fargo Bank, NA. v. Elliot*, 5th Dist. Delaware No. 13 CAE 03 0012, 2013-Ohio-3690, 2013WL4678366, 113 ("[t]here is no provision in Civil Rule l2(B)(l) for dismissal for lack of standing or capacity to sue"), the court in *Hines*, *infra* p. 16, declined to dismiss a similar complaint because the general jurisdiction standard of Ohio state court is less stringent than the limited federal jurisdiction standard—a concern that has no bearing here. However, the court in *Hines* nevertheless dismissed with prejudice under Ohio R. Civ. P. 12(b)(6), as described below at p. 16.

II.     **Pursuant To Federal Rule of Civil Procedure 12(b)(6), The Court Should Dismiss Plaintiff's Complaint Because Neither the Policy Nor Pennsylvania Law Requires Payment Of Title and Regulatory Fees.**

Plaintiffs' case rests on two pillars: (1) the Policy allegedly requires payment of the actual cash value of the insured vehicle (Compl., at ¶ 1); and (2) actual cash value allegedly includes Title and Regulatory Fees (Compl., at ¶¶ 3 and 41).  As set forth below, neither of these pillars holds any weight, and therefore Plaintiffs' Complaint collapses as a matter of law.

A.      **Legal Standard**

A complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) if "plaintiff's claims lack facial plausibility."  *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citation omitted).  In other words, the motion "should be granted if it appears to a certainty that no relief could be granted under any set of facts which could be proved."  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal punctuation and citation omitted).  Although a court should "accept all factual allegations as true," "conclusory or bare-bones allegations will no longer survive a motion to dismiss:  threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Warren Gen. Hosp.*, 643 F.3d at 84 (internal punctuation and citations omitted).

Generally, "a district court considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) may not consider matters extraneous to the pleadings without converting the motion into one for summary judgment."  *In re Egalet Corp. Sec. Litig.*, 340 F. Supp. 3d 479, 496 (E.D. Pa. 2018) (punctuation omitted) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).  There are three exceptions to this general rule:

(1) Exhibits attached to the complaint;
(2) Matters of public record; and
(3) Undisputedly authentic documents integral to or explicitly relied upon in the complaint.

*Id.* (citing *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)).

> **B.** **Rather Than Actual Cash Value, The Policies Require Payment For "loss to 'your covered auto,'" or "loss to your auto;" Actual Cash Value Reflects The *Limit Of Liability* Rather Than The *Contractual Payment Obligation*.**

Plaintiffs argue that Nationwide must pay the actual cash value of the total loss vehicle, and thus the case turns on the definition of "actual cash value."  But this mischaracterizes the Policies.  Rather than "actual cash value," the insuring clause of the Edwards and Hill Policies obligate payment for "**loss** to **your auto**," (Edwards Policy, Ex. 1, at p. P1; Hill Policy, Ex. G to the Compl., at p. P1); and the Sylvester Policy obligates payment for the "loss to 'your covered auto'" (Sylvester Policy, Ex. 2, at p. 8).  The term "your auto" is defined in the Edwards and Hill Policies as "the vehicle(s) described in the Declarations," *i.e.*, the 2013 Nissan Altima and the 2012 Nissan Maxima, respectively (Edwards Policy, Ex. 1, at p. D1; Hill Policy, Ex. G to the Compl., at p. D1).  Similarly, the term "your covered auto" is defined in the Sylvester Policy in pertinent part as the "vehicle shown in the Declarations," *i.e.*, the 2005 Subaru Legacy (Sylvester Policy, Ex. 2, at p. 1).

Plaintiffs *do not even attempt to argue* that "**loss** to **your auto**" or "loss to 'your covered auto'" somehow additionally include Title and Regulatory Fees, as that would contravene the plain language of the Policies.  *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006) ("Our primary goal in interpreting a policy, as with interpreting any contract, is to ascertain the parties' intentions as manifested by the policy's terms….  When the language of the policy is clear and unambiguous, we must give effect to that language." (internal punctuation and citation omitted)); *Penn-Air, Inc. v. Indem. Ins. Co. of N. Am.*, 269 A.2d 19, 22 (Pa. 1970) ("We find no ambiguity in the clause before us, and … [c]ourts do not resort to forced construction in order to fasten liability upon an insured which, by the terms of the policy, it has not assumed." (internal punctuation and citation omitted)); *Saslaff v.*

*Equitable Life Assur. Soc'y*, 11 Pa. D. & C.3d 398, 413 (Pa. Com. Pl. 1979) ("It is the duty of the courts in interpreting insurance contracts to enforce and carry out the contract which the parties have made, without importing anything into the contract by construction contrary to its express terms, or the plain meaning of its terms, or attempting to make a better or different contract[.]  If the terms of the contract are clear and express, the courts cannot extend or enlarge the contract by implication or construction so as to embrace a risk, object, or limitation distinct from that originally contemplated and not included in the express provisions." (punctuation omitted) (citing Couch on Insurance 2d § 15:37)).

Instead, Plaintiffs argue there was a breach of contract because the Policies allegedly "require[] payment of 'Actual Cash Value' or 'ACV,'" (Compl., at ¶ 1), and Title and Regulatory Fees allegedly constitute part of the "payment of the ACV" that Nationwide purportedly "promise[d]" to pay to Plaintiffs following the "total loss to an insured vehicle" (*id.* at ¶ 11).  This argument is flawed because actual cash value is merely a *limit of liability* under the Policies, not the underlying payment obligation.  The Edwards and Hill Policies expressly limit liability in pertinent part as follows:

> The limit of **our** coverage is the actual cash value of **your auto** or its damaged parts at the time of **loss**. To determine actual cash value, **we** will consider:
> 1. fair market value;
> 2. age;
> 3. condition of the property; and
> 4. **betterment**;
>    at the time of **loss**….

(Edwards Policy, Ex. 1, at pp. P5-P6; Hill Policy, Ex. G to the Compl., at Endorsement 3453.)

The Sylvester Policy limits liability to the *lesser* of:

> 1. Amount shown in the Schedule or in the Declarations.
> 2. Actual cash value of the stolen or damaged property; or
> 3. Amount necessary to repair or replace the property with other property of like kind and quality.

(Sylvester Policy, Ex. 2, at Endorsement AA 0308 (10-05).)

Thus, even if Plaintiffs were correct that actual cash value includes Title and Regulatory Fees (which it does not, *see below*), that would prove nothing, because "actual cash value" is not the amount the Nationwide Defendants promised to pay in the event of a covered loss. *See* Order of Dismissal of Jan. 30, 2020, *Coleman v. Garrison Prop. & Cas. Ins. Co*., No. 19 C 1745 (N.D. Ill.) (attached hereto as **Ex. 3**).

In the *Coleman* case, decided two months ago by the Northern District of Illinois, the plaintiff alleged that the defendant insurer breached the automobile policy by paying for a total loss without including sales tax and title registration fees. The court dismissed the suit because, like here, the plaintiff confused the insurer's payment obligation (*i.e.,* "Defendants will pay for 'loss' to a covered vehicle") with the limit of liability (*i.e.,* actual cash value):

> There is simply no language in the policy that says, "in the event of a total loss, Defendants will pay the actual cash value of the vehicle" or anything to that effect. Plaintiff cannot conjure that term out of thin air… Plaintiff alleges that Defendants promised to pay for total loss "on an 'actual cash value' basis," but that allegation is conclusory and conflicts with the plain language of the contract, so it is disregarded…. Defendants never promised to pay Plaintiff the 'actual cash value' of her vehicle. As the [insurance] policy makes clear, 'actual cash value' is the limit of Defendants' liability for total loss—not the amount it promised to pay in the event of total loss… Because there is no language in the policy … that obligates Defendants to pay Plaintiff the 'actual cash value' of her vehicle in the event of a total loss, Plaintiff fails to state breach of contract claims against Defendants.

(*Coleman* Dismissal Order, Ex. 3, at pp. 5-6, 8.) The same reasoning of *Coleman* applies here. The Nationwide Defendants simply agreed to pay for loss to the insured vehicles, and Plaintiffs' contention that the Policies' limit of liability (actual cash value) somehow obligates additional payment of Title and Regulatory Fees is a *non sequitur* that fails to state a claim as a matter of law.

**C.     Even If The Policies Require Payment Of The Limit Of Liability, This Does Not Include Title and Regulatory Fees.**

If Plaintiffs were correct that the Nationwide Defendants must pay for total losses based on the contractual limit of liability, nothing in the Policies mandates payment of Title and Regulatory Fees.  Plaintiffs allege that "[u]nder the policy and applicable state law, ACV has consistently been interpreted to mean repair and replacement costs less depreciation," (Compl., at ¶ 13), and so actual cash value supposedly includes Title and Regulatory Fees because they are "part of the costs to replace a total loss vehicle" (Compl., at ¶ 41).  These allegations run contrary to the express language of the Policies, which do not require payment of Title and Regulatory Fees, and thus the Court should enforce the Policies' terms as written.  *Kvaerner*, 908 A.2d at 897; *Penn-Air*, 269 A.2d at 22; *Saslaff*, 11 Pa. D. & C.3d at 413.

**i.   The Edwards and Hill Policies**

The Edwards and Hill Policies specifically identify the relevant considerations for determining actual cash value, and do not even mention "replacement cost:"

> ***Actual cash value***
> The limit of **our** coverage is the actual cash value of **your auto** or its damaged parts at the time of **loss**. To determine actual cash value, **we** will consider:
> 1.  fair market value;
> 2.  age;
> 3.  condition of the property; and
> 4.  **betterment**;
>
> at the time of **loss**….

(Edwards Policy, Ex. 1, at pp. P5-P6; and Hill Policy, Ex. G to Compl., at Endorsement 3453 (bold in original).)

This language makes clear that actual cash value is determined based on the specific characteristics of "your auto" (*i.e.,* Plaintiff Edwards' Nissan Altima and Plaintiff Hill's Nissan Maxima) at the time of loss.  There is no requirement to pay Title and Regulatory Fees because

they could only be associated with *a replacement vehicle,* not "your auto."  Indeed, Plaintiffs specifically acknowledge this in the Complaint.  (*See* Compl., at ¶¶ 21, 30, 39 ("[Title and Regulatory Fees] are mandatory applicable fees that must be paid *to replace* any vehicle in the Commonwealth of Pennsylvania." (emphasis added)).  Thus, straightforward application of the Policies' language results in no recovery of Title and Regulatory Fees as a matter of law.

Multiple courts have recently reached this conclusion in cases involving similar policy language.  First, the United States Court of Appeals for the Fifth Circuit recently upheld dismissal at the pleadings stage of a breach of contract claim for nonpayment of taxes and fees. *Singleton v. Elephant Ins. Co.*, No. 19-50470, 2020 WL 1280781, at *3 (5th Cir. Mar. 18, 2020). Similar to the Edwards and Hill Policies, the policy at issue in *Singleton* determined actual cash value "'by the market value, age and condition' of the vehicle at the time of the accident." *Id.* at *2.  The court concluded that actual cash value meant "market value," which "plainly excludes taxes and fees that are remitted to the state." *Id.* at *3 ("That the state collects taxes and fees from the buyer is irrelevant to the question of fair market value because those amounts are not part of the price paid to the seller.").  *Cf. Lapinski v. Lorusso*, No. 2016-C-3522, 2017 WL 3387181, at *2 (Pa.Com.Pl. June 09, 2017) (" … Plaintiff's recovery is limited to the fair market value of the subject vehicle 'at the time of the tort' and does not include the items of damage associated with the subsequent purchase of a replacement vehicle as claimed by Plaintiff, *i.e.* new title fee, lien fee, and license plate transfer fee.").

Second, the Central District of Illinois also recently rejected similar claims against another insurer.  In *Sigler v. Geico Cas. Co*., 2019 WL 2130137, C.D. Ill. No. 1:18-cv-01446, at

*2-4 (May 15, 2019),[4] the plaintiff alleged that GEICO breached the applicable automobile policy by not including title transfer and registration fees (and sales tax) in the total loss payment.  The court dismissed the complaint because plaintiff failed "to point to any section of the policy at issue to support his position," stressing that "[n]othing in the plain language of the policy can reasonably be construed as an express promise to insureds that they will be reimbursed for sales tax, title transfer fees, and tag transfer fees without first incurring such costs….  The claim is simply too speculative."  *Id*. at *3.

Third, an Ohio court recently dismissed a class action complaint brought by the same counsel as the instant case for failure to state a claim for breach of contract for nonpayment of title and registration fees. *See* Feb. 4, 2020 Order Granting Motion to Dismiss, *Hines v. Victoria Fire & Casualty Company*, Case No. 19CV001233 (Ct. Common Pleas, Lake Cty.) (attached hereto as **Ex. 4** ).  The court found that the policy language regarding actual cash value—which is similar to that in the Edwards Policy and Hill Policy—"does not explicitly provide for the payment of title and registration fees."  *Id*. at ¶ 10.  Further, the court found that the insurer would consider fair market value in determining actual cash value under the terms of the policy, explaining:

> Further, fair market value is generally understood to mean "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market…." *Black's Law Dictionary* (11th ed. 2019).  Title and registration fees are not included in the common understanding of fair market value.  Title and registration fees are costs associated with the ownership of a vehicle and do not affect the value of the vehicle, as they are not part of the price the seller is willing to accept for the vehicle.  Therefore, the court finds that the policy did not require the defendant to pay title and registration fees.

*Id*.

---

[4] Plaintiff in *Sigler* appealed the court's order dismissing his class action complaint, and the appeal is currently pending.

Fourth, another Ohio judge dismissed a class action complaint for failure to state a claim, emphasizing that:

> The [insurance policy at issue] defines actual cash value as the fair market value of the property.  In turn, fair market value is ordinarily defined as the price that a willing buyer would pay and a willing seller [would] accept.  That amount does not include sales tax and [title and registration] fees, and ***nowhere in the contract does the [insurer] promise to pay sales tax and [title and registration] fees in the event the plaintiff, after accepting an actual cash value payment, decides to replace the damaged vehicle***.

June 28, 2019 Journal Entry, *Williams-Diggins v. Permanent Gen. Assur. Corp. of Ohio*, Case No. CV 19 912705 (Ct. Common Pleas, Cuyahoga Cty.) (emphasis added) (attached hereto as **Ex. 5**).

Consistent with paying for actual cash value based on "your auto," Plaintiff Edwards' and Plaintiff Hill's Policies list four relevant considerations for calculating the amount of actual cash value—fair market value, age, condition and betterment.  (Edwards Policy, Ex. 1, at pp. P5-P6; and Hill Policy, Ex. G to Compl., at Endorsement 3453.)  None of these considerations includes the Title and Regulatory Fees associated with purchasing a replacement vehicle—and no other portion of the Policies could give rise to any obligation to pay such fees.  As in the cases cited above, Plaintiff Edwards and Plaintiff Hill have been fully compensated for all amounts owed under the Policy, and they do not adequately plead that any additional amounts are compensable.  Accordingly, Plaintiff's claims fail as a matter of law.

### ii.  The Sylvester Policy

The Sylvester Policy limits liability to the lesser of three values:  the amount shown in the Schedule or Declarations, *or* the actual cash value, *or* the "[a]mount necessary to repair or replace the property with other property of like kind and quality."  (Sylvester Policy, Ex. 2, at Endorsement AA 0308 (10-05).)  The amount shown in the Declarations for "Damage to Your

17

Vehicle" is "Actual Cash Value Minus Deductible." (*Id.* at Declarations.)  Further, the Sylvester Policy specifies that "[a]n adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss."  (*Id.*)  Focusing exclusively on the reference to "[a]mount necessary to repair or replace," Plaintiff ignores the other two limits.  But *nowhere* does the Policy state that "actual cash value" includes Title and Regulatory Fees.

Moreover, Plaintiffs' argument would render the two alternate limits redundant and superfluous, which contravenes Pennsylvania law.  *Riverside Sch. Dist. v. Career Tech. Ctr. of Lackawanna Cty.*, 104 A.3d 73, 76 (Pa. Commw. Ct. 2014) ("The general mandates of contract interpretation are: (1) that no provision of a contract should be treated as surplusage or redundant if any reasonable meaning consistent with other parts of the agreement can be given to it, and (2) that the court must determine the intent of the parties and give effect to all provisions of the contract." (internal punctuation and citation omitted)). *Accord CAMICO Mut. Ins. Co. v. Heffler, Radetich & Saitta, L.L.P.*, 587 F. App'x 726, 730 (3d Cir. 2014) (Pennsylvania law).  On the contrary, the plain language of the Policy lists the alternatives in the disjunctive, and so they cannot be read to mean the same thing.  *Loughman v. Equitable Gas Co., LLC*, 134 A.3d 470, 476 (Pa. Super. Ct. 2016) ("[W]e find that the durational provisions of the Loughman Lease are clearly and unambiguously written in the disjunctive and provide that the Loughman Lease shall continue during either production **or** storage." (emphasis original)).

In *Rogers v. Harleysville Ins.*, No. 289 MDA 2016, 2016 WL 4952110, at *4 (Pa. Super. Ct. Sept. 13, 2016), the court dismissed a breach of contract claim based on language similar to the Sylvester Policy.  Like Plaintiff Sylvester, the plaintiff in *Rogers* argued that he was owed the replacement cost of the vehicle, but the court disagreed:

> The clear unambiguous language of the commercial auto policy provides that in the event of a total loss, [the insurer] would provide [the insured] with the actual

cash value of the covered auto, with "an adjustment for depreciation and physical condition … in the event of a total loss". (Commercial Auto Policy, 2/11/12-2/11/13, at Endorsement to Business Auto Coverage Form, at 2; *see id.* at 1; *see also* Schedule of Coverages and Covered Autos, Physical Damage Comprehensive Coverage (stating limit is "actual cash value or cost of repair, whichever is less[ ] ...." (unnecessary capitalization omitted))). Pursuant to the policy's clear terms, [the insurer] obtained an appraisal of [the insured's] van, agreed to waive the $250.00 deductible, and offered to pay him the $1,120.00 cash value of the vehicle…. Therefore, based on the insurance policy's clear and unambiguous language, [the insured] failed to prove either that [the insurer] breached the terms of the policy or acted in bad faith by refusing to reimburse [the insured] for the replacement cost of the van, and instead offering him its cash value.

*Id.* (citations omitted).

As in *Rogers*, the Sylvester Policy does not use "actual cash value" synonymously with replacement cost—and that is the sole basis for Plaintiff Sylvester's allegation that he is owed Title and Regulatory Fees. Thus, Plaintiff Sylvester has no claim for breach of contract.

### C. Pennsylvania Law Does Not Create An Independent Obligation For Nationwide To Pay Title and Regulatory Fees.

Although Plaintiffs plead that Pennsylvania law mandates Title and Regulatory Fees are "mandatory fees imposed by the Commonwealth of Pennsylvania," (*see* Compl., at ¶ 13), they cite no Pennsylvania statute or regulation requiring payment of Title and Regulatory Fees as part of a total loss payment or actual cash value.[5] Thus, the Policies alone govern the Nationwide

---

[5] There is a Pennsylvania Administrative Code provision addressing an insurer's requirement to include *sales tax* in connection with an *appraisal value*—but it does not address Title and Regulatory Fees, let alone the calculation of actual cash value or settlement payments by insurers:

> (e) The appraised value of the loss shall be the replacement value of the motor vehicle if the cost of repairing a motor vehicle exceeds its appraised value less salvage value, or the motor vehicle cannot be repaired to its predamaged condition.

> * * *

> (4) Applicable sales tax on the replacement cost of a motor vehicle shall be included as part of the replacement value.

Defendants' payment obligations, and the Policies do not mandate payment of Title and Regulatory Fees.  Therefore, Plaintiffs' claims must be dismissed as a matter of law.

## **CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's Class Action Complaint in its entirety and with prejudice.

---

31 Pa. Code § 62.3(e).

This provision is not relevant here because: (a) it concerns sales tax rather than Title and Regulatory Fees; (b) it governs standards applicable for an appraisal procedure, not the threshold estimation of actual cash value for adjustment of total loss vehicle claims; and (c) under the principle of *expressio unius est exclusio alterius* (*i.e.,* the expression of one thing implies the exclusion of another) the explicit reference to "sales tax" *but not* Title and Regulatory Fees, demonstrates that such fees are not included in appraisal value.  *See, e.g., Corley v. Infinity Leader Ins. Co.*, 113 Fed. App'x 478, 480-81 (3d Cir. 2004) ("[w]e are aided by the contractual interpretation maxim *expressio unius est exclusio alterius* ('to include one is to exclude the others') in reaching our conclusion[.]") (footnote omitted).

Even if this provision were relevant, it sets forth three methods for determining the appraised value of the loss: (i) guide source method, using approved guide sources published in the Pennsylvania Bulletin; (ii) actual cost method; and (iii) dealer quotation method. 31 Pa. Code § 62.3(e)(1).  The guide source used by Nationwide here, CCC Information Services, Inc., is an "Approved Guide Source Vendor."   Bulletin 11-23-2019 (#3), 2019 WL 6255525 (PA INS BUL) (attached hereto as **Ex. 6**.)

Respectfully submitted this 26th day of March 2020.


/s/ Pamela A. Carlos
PAMELA A. CARLOS, ESQUIRE
Bennett, Bricklin & Saltzburg LLC
Centre Square, West Tower
1500 Market Street, 32nd Floor
Philadelphia, PA 19102
Telephone: (215) 665-3315
Email: carlos@bbs-law.com

Mark L. Hanover (*pro hac vice*)
Kathleen V. Kinsella (*pro hac vice*)
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Telephone:  (312) 876-8000
Email:  mark.hanover@dentons.com
kathleen.kinsella@dentons.com
*Attorneys for Defendants Depositors Insurance Company,*
*Nationwide Property & Casualty Insurance Company, and*
*Nationwide Mutual Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I, Pamela A. Carlos, hereby certify that on this 26th day of March 2020, I caused a true and correct copy of the foregoing **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT** to be electronically filed with the clerk of the court using the CM/ECF system and sent via e-mail to the following attorneys of record:

Jonathan Shub
Kevin Laukaitis
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103-7225
jshub@kohnswift.com
klaukaitis@kohnswift.com

Edmund A. Normand (pro hac vice to be filed)
Jacob L. Phillips (pro hac vice to be filed)
NORMAND PLLC
3165 McCrory Place, Suite 175
Orlando, FL 32803
Ed@NormandPLLC.com

Scott Edelsberg, Esq. (pro hac vice to be filed)
EDELSBERG LAW, PA
20900 NE 30th Avenue, #417
Aventura, FL 33180
scott@edelsberglaw.com
utanski@edelsberglaw.com

Andrew J. Shamis (pro hac vice to be filed)
SHAMIS & GENTILE, P.A.
14 NE 1st Ave., Suite 1205
Miami, FL 33132
efilings@shamisgentile.com

Rachel Dapeer, Esq. (pro hac vice to be filed)
DAPEER LAW, P.A.
300 S. Biscayne Blvd, #2704
Miami, FL 33131
rachel@dapeer.com

*/s/ Pamela A. Carlos*
PAMELA A. CARLOS, ESQUIRE
An attorney for *Defendants Depositors Insurance Company, Nationwide Property & Casualty Insurance Company, and Nationwide Mutual Insurance Company*

Exhibit 1

# EXHIBIT 1

# Certification

As a duly authorized Nationwide Insurance associate entrusted with oversight of the system of record from which this copy was produced, based upon information and belief; certify under the penalty of perjury that this attached copy of the Declaration and or Policy pages on policy number **58 37 G 031939**  was made at or near the time of certification, as part of regularly conducted business activities, and is a true and accurate copy of the official record kept as part of regular business activities**.**

_____      Date:    January 8, 2020
Signature

_____Jon King_____
Print Name

_Technical Processor, Imaging_____
Title

# Financial Responsibility Identification Card

Prepared on November 29, 2017



- **Detach** your identification cards along the perforated lines.
- **Keep** this card in your vehicle.
- **See** section following ID Cards for **What's enclosed.**

## IMPORTANT NOTICE about your Financial Responsibility ID Card

Pennsylvania law requires insurance companies to provide each Policyholder with an Identification (ID) Card for each insured vehicle. The card shows that a Liability Insurance Policy has been issued which satisfies the **financial responsibility** requirements of the law.

You are required to maintain financial responsibility on each vehicle. It is against Pennsylvania law to use the ID card fraudulently    for example as proof of financial responsibility after the policy is terminated.

Your ID Card may be used for vehicle registration and replacing license plates. It must also be shown to any police officer, judge or hearing officer if requested. In the event of an accident your ID card may be used to exchange information with other drivers.

If you lose your ID card or    have any questions about its use    just get in touch with your agent.

0285000284301 5



Things in your life change. Make sure your insurance keeps up. Ask your agent for a free *On Your Side* Review.

Manage your account, make a payment, check the status of a claim and receive your bill by email with online Account Access. Visit nationwide.com/manage - see how easy it can be.

Sign up for convenient, automatic bill payment with Nationwide Easy Pay. To learn more,  ask your agent or log in to nationwide.com/easypay.

 **Financial Responsibility Identification Card**

| Policy Number 5837G 031939 | Effective Date Nov 17, 2017 | Expiration Date May 17, 2018 |
|---|---|---|

NOT VALID MORE THAN 1 YEAR FROM EFFECTIVE DATE

| Year 2014 | Make/Model Honda/Accord | Vehicle Identification Number 1HGCR2F83EA185675 |
|---|---|---|

**24 Hour Claims 1.800.421.3535**

Alicia
Edwards-Gutzman
Roland Gutzman
300 N 8th St
Pottsville, PA
17901-2308

Nationwide Property And Casualty Insurance Company
PO Box 30000
Raleigh NC 27612-0000          NAIC # 37877

For questions about your policy, call your Nationwide agent, Nationwide Sales Solution at 1.877.669.6877.

**Nationwide's *On Your Side*® Claims Guarantee
means fast and fair handling of your claim.**
**24 Hour Claims 1.800.421.3535**
Report Claims Anytime, Anywhere in the U.S.A.

When calling, please give these details:
1. Policy number and zip code
2. Make and model year
3. Location of accident, injuries and damages
4. Other vehicle and persons involved

**If you lose your card, contact your Nationwide agent.**

Manage your account, make a payment, check the status of a claim and receive your bill by email with online Account Access. Visit nationwide.com/manage - see how easy it can be.

Things in your life change. Make sure your insurance keeps up. Ask your agent for a free *On Your Side* Review.



**This card must be carried for production, upon demand. It is suggested that you carry this card in the insured vehicle.**
**Warning:** Any owner or registrant of a motor vehicle who drives or permits a motor vehicle to be driven in this **Commonwealth** without the required financial responsibility may have his registration suspended or revoked.

Note: This card is required when:
   (1) You are involved in an auto accident.
   (2) You are convicted of a traffic offense other than a parking offense that requires a court appearance.
   (3) Upon request of a police officer when you are stopped for violating any provision of the Vehicle Code (75 Pa. C.S., §§101-9910).

You must provide a copy of this card to the Department of Transportation when you request restoration of your operating privilege or registration which has been previously suspended or revoked.

Sign up for convenient, automatic bill payment with Nationwide Easy Pay. To learn more, ask your agent or log in to nationwide.com/easypay.

Prepared on November 29, 2017          Page 1 of 2

**Nationwide**®
is on your side

Nationwide Sales Solution
1200 Locust St
Des Moines, IA 50391

# Your Revised Policy

**Your bill is sent separately.**
**Nationwide Auto Policy**
Policy Period:  Nov 17, 2017 – May 17, 2018
Policy Number:  **5837G 031939**

Sign up for convenient, automatic bill payment with Nationwide Easy Pay. To learn more, ask your agent or log in to nationwide.com/easypay.

Alicia
Edwards-Gutzman
Roland Gutzman
300 N 8th St
Pottsville, PA
17901-2308

0285000284 3022



## What's enclosed



✓ **Insurance Identification Cards** - Your ID cards are enclosed in this packet.

✓ **Declarations** - These pages show **your coverages** under this policy.  Carefully review these details and call **Nationwide Sales Solution at 1.800.421.1444** if you have questions or want to make changes.
  - **General Information**
  - **Coverage Details**
  - **Your Total Policy Premium**

✓ **Insurance Documents** - Please keep these documents for future reference.

**How to Contact Us**
Your Nationwide Agent
Internet
24-Hour Claims Reporting
Hearing Impaired (TTY)

**Nationwide Sales Solution 1.800.421.1444**
**Nationwide.com**
**1.800.421.3535**
**1.800.622.2421**



**Important Reminders from Nationwide**

**NOTES:**

An additional premium of $ 453.60 is for recent policy change(s).

The enclosed Declarations confirms changes made to your insurance coverage.  Please verify change(s).

Sign up for convenient, automatic bill payment with Nationwide Easy Pay.  To learn more, ask your agent or log in to nationwide.com/easypay.

Manage your account, make a payment, check the status of a claim and receive your bill by email with online Account Access.  Visit nationwide.com/manage - see how easy it can be.

Nationwide thanks you for your business.  Our first priority is to serve you, our Customer.

Whether you have a claim, a question, a concern, or just need a convenient service, our *On Your Side* promise means we'll be there to serve your needs.

Thank you for choosing Nationwide.  We value your business.





Prepared on November 29, 2017          Page 1 of 4

# Your Policy Declarations

**Nationwide Auto Policy**
Policy Period:  Nov 17, 2017 - May 17, 2018
Policy Number:  **5837G 031939**

**Policyholder (Named Insured):**
Alicia
Edwards-Gutzman
Roland Gutzman
300 N 8th St
Pottsville, PA
17901-2308

Keep these Declarations for your records.

## General Policy Information

**Issued:  November 29, 2017**
These Declarations are a part of the policy named above and identified by the policy number above.  They supersede any Declarations issued earlier.  Your policy provides the coverages and limits shown in the schedule of coverages. They apply to each insured vehicle as indicated.  Your policy complies with the motorists' financial responsibility laws of your state only for vehicles for which Property Damage and Bodily Injury Liability coverages are provided.

**Policy Period:  November 17, 2017 - May 17, 2018** but only if the required premium for this period has been paid and only for six month renewal periods if renewal premiums have been paid as required.  This policy is initially effective at (1) the time the application for insurance is completed, or (2) 12:01 a.m. on the first day of the policy period, whichever is later.  Each renewal period begins and ends at 12:01 a.m. standard time at the address of the named insured stated herein.  This policy expires at 12:01 a.m. at the address of the named insured stated herein.

Your carrier is Nationwide Property And Casualty Insurance Company, NAIC #37877.

---

### IMPORTANT MESSAGES:

**IF THIS DECLARATIONS PAGE SHOWS THAT COLLISION COVERAGE APPLIES TO YOUR AUTO, THERE IS ALSO COLLISION COVERAGE FOR DAMAGE TO A RENTED AUTO.  COVERAGE IS SUBJECT TO CONDITIONS AND LIMITATIONS LISTED IN THE POLICY OR ATTACHED ENDORSEMENTS.**

---

## Changes Made to Your Policy

Changed  Deductible  Credit  Amount (Vanishing  Deductible  Feature) to $300.   In  the  event  of  a  covered  loss, your Comprehensive or Collision Deductible will be reduced by $300.

- **Effective November 17, 2017**
- Added 2014 Hond Accord
- Added Discount(s)

## Premium Summary and Other Charges

| | | |
|---|---|---:|
| 2013 Nissan Altima | $ | 791.60 |
| 2014 Honda Accord | $ | 592.40 |
| **Total Policy Premium** | **$** | **1,384.00** |

## How You Saved on this Policy with Nationwide

| | | |
|---|---|---|
| • Passive Restraint | • Safe Driver | • Accident Free |
| • Anti Theft Device | • Multi Car | • Advance Quote |
| • Select | • New Vehicle | • Paperless Policy |

Continued on the next page

0285000284303 9





# Your Policy Declarations

**Nationwide Auto Policy**
Policy Period:  Nov 17, 2017 - May 17, 2018
Policy Number:  **5837G 031939**

For coverage definitions and descriptions,
visit Nationwide.com

---

## Listed Driver(s)

| Name | Date of Birth | Marital Status |
|------|---------------|----------------|
| Alicia  Edwards-Gutzman | 05/26/83 | Married |
| Roland  Gutzman | 06/28/78 | Married |

## Insured Vehicle(s) and Schedule of Coverages

### 2013 Nissan Altima

VIN 1N4AL3AP6DC909847

| Coverages | Limits of Liability | | Premium |
|-----------|---------------------|---|---------|
| Comprehensive and $ 1,500 IN Customization | Actual Cash Value Less $1,000 | $ | 82.30 |
| Collision and $ 1,500 IN Customization | Actual Cash Value Less $1,000 | $ | 267.10 |
| Property Damage Liability | $    25,000  Each Occurrence | $ | 126.70 |
| Bodily Injury Liability | $    15,000  Each Person | | |
| | $    30,000  Each Occurrence | $ | 148.60 |
| Uninsured Motorists-Bodily Injury | (Stacked) | | |
| | $    15,000  Each Person | | |
| | $    30,000  Each Occurrence | $ | 7.30 |
| Underinsured Motorists-Bodily Injury | (Stacked) | | |
| | $    15,000  Each Person | | |
| | $    30,000  Each Occurrence | $ | 29.70 |
| Loss Of Use-Rental Days Plus | Endorsement 3573 | $ | 23.70 |
| | $         30  Per Day | | |
| | $        900  Per Accident | | |
| First Party Benefits | | | |
| Option 1-Medical Benefit | $     5,000 | $ | 75.30 |
| Option 2-Income Loss Benefit | $     5,000  Total | | |
| | $     1,000  Monthly | $ | 11.10 |
| Option 3-Accidental Death Benefit | $    10,000 | $ | 2.10 |
| Option 4-Funeral Benefit | $     5,000 | $ | .80 |
| Option 6-Excess Medical Benefits | $1,000,000  Per Person | $ | 16.90 |
| | $    50,000  Per Year | | |
| Full Tort | | | |
| Lienholder-General Motors Ameri | Lien Expires On Apr 01, 2021 | | |



**Total for this Vehicle** $      791.60

Continued on the next page

**Nationwide®**
is on your side

# Your Policy Declarations

**Nationwide Auto Policy**
Policy Period:  Nov 17, 2017 - May 17, 2018
Policy Number:  **5837G 031939**

---

## Insured Vehicle(s) and Schedule of Coverages (continued)

### 2014 Honda Accord
VIN 1HGCR2F83EA185675

| Coverages | Limits of Liability | | Premium | |
|---|---|---|---|---|
| Comprehensive and $ 1,500 IN Customization | Actual Cash Value Less $1,000 | | $ | 54.00 |
| Collision and $ 1,500 IN Customization | Actual Cash Value Less $1,000 | | $ | 160.60 |
| Property Damage Liability | $   25,000 | Each Occurrence | $ | 110.10 |
| Bodily Injury Liability | $   15,000 | Each Person | | |
| | $   30,000 | Each Occurrence | $ | 113.60 |
| Uninsured Motorists-Bodily Injury | (Stacked) | | | |
| | $   15,000 | Each Person | | |
| | $   30,000 | Each Occurrence | $ | 7.30 |
| Underinsured Motorists-Bodily Injury | (Stacked) | | | |
| | $   15,000 | Each Person | | |
| | $   30,000 | Each Occurrence | $ | 29.70 |
| Loss Of Use-Rental Days Plus | Endorsement 3573 | | $ | 23.70 |
| | $   30 | Per Day | | |
| | $   900 | Per Accident | | |
| First Party Benefits | | | | |
| Option 1-Medical Benefit | $   5,000 | | $ | 64.30 |
| Option 2-Income Loss Benefit | $   5,000 | Total | | |
| | $   1,000 | Monthly | $ | 9.70 |
| Option 3-Accidental Death Benefit | $   10,000 | | $ | 1.80 |
| Option 4-Funeral Benefit | $   5,000 | | $ | .70 |
| Option 6-Excess Medical Benefits | $1,000,000 | Per Person | $ | 16.90 |
| | $   50,000 | Per Year | | |
| Full Tort | | | | |
| | | **Total for this Vehicle** | $ | 592.40 |

---

## Policy Level Schedule of Coverages

| Coverages | Limits of Liability | | Premium |
|---|---|---|---|
| Accident Forgiveness Feature - Currently Eligible To Use | | | Incl |
| Vanishing Deductible Feature | $   300 | Deductible Credit Endorsement  3536A | Incl |
| Total Loss Deductible Waiver Feature | | Endorsement  3417 | Incl |





Continued on the next page



# Your Policy Declarations

**Nationwide Auto Policy**
Policy Period:  Nov 17, 2017 - May 17, 2018
Policy Number:  **5837G 031939**

## Policy Form and Endorsements

| | |
|---|---|
| Z-037 | Nationwide Auto Policy |
| V-3417 | Total Loss Deductible Waiver Endorsement |
| V-3536A | Vanishing Deductible |
| 6813A | Amendatory Endorsement - Benefits |
| V-3590 | Amendatory Endorsement |
| V-3573 | Loss of Use - Rental Days Plus |

**For Office Use Only:**
11/17/17      $ 453.60

**Issued By:**  Nationwide Property And Casualty Insurance Company

**Countersigned At:**

**By:**      Nationwide Sa

**How to Contact Us**

| | |
|---|---|
| Your Nationwide Agent | **Nationwide Sales Solution 1.800.421.1444** |
| Internet | **Nationwide.com** |
| 24-Hour Claims Reporting | **1.800.421.3535** |
| Hearing Impaired (TTY) | **1.800.622.2421** |



**Nationwide®**
is on your side

| | |
|---|---|
| **Table of contents** | Page |
| **Insuring agreement**................................................................................ | D1 |
| **Definitions**.............................................................................................. | D1 |
| **Insured persons' duties after an accident or loss**............................. | D2 |
| **Territory**................................................................................................ | D2 |

**Coverages:**

**Physical damage** (Damage to your auto) ................................................P1-P7
Comprehensive and Collision

**Auto liability** (For damage or injury to others caused by your auto) ...................L1-L6
Property damage and Bodily injury

**First Party Benefits** ..................................................................................F1-F5

**Uninsured motorists-bodily injury** (For bodily injury caused by ...........................U1-U5
uninsured motorists)

**Underinsured motorists-bodily injury** (For bodily injury caused by.................................UI1-UI5
underinsured motorists)

**General policy conditions**
How your policy may be changed ...........................................................G1
Optional payment of premium in installments ........................................G1
Renewal.....................................................................................................G1
Non-renewal..............................................................................................G1
Cancellation during policy period............................................................G1
Assignability..............................................................................................G2
Dividends...................................................................................................G2
If you become bankrupt.............................................................................G2
Fraud and misrepresentation ....................................................................G2
Legal action limitations ............................................................................G3
Subrogation...............................................................................................G3
Non-sufficient funds and late payment charges .....................................G4
Applicable contract law ............................................................................G4
Interest rate ...............................................................................................G4
Joint and individual interests ...................................................................G4

**Mutual policy conditions and proxy**
Nationwide Mutual Insurance Company and
Nationwide Mutual Fire Insurance Company...........................................G4

Z-037

©2012 Nationwide Mutual Insurance Company, All Rights Reserved / Nationwide Mutual Insurance Company and
Affiliated Companies / One Nationwide Plaza Columbus, OH 43215
Nationwide, the Nationwide N and Eagle and Nationwide is on your side are service marks of Nationwide Mutual
Insurance Company. © 2015 Nationwide



**Nationwide®**
is on your side

## Insuring agreement

For the **policyholder's** payment of premiums and fees in amounts **we** require and subject to all of the terms and conditions of this policy, **we** agree to provide the coverages the **policyholder** has selected.  These selections are shown in the enclosed Declarations, which are a part of this policy contract. The selected coverages in this policy apply only to occurrences while the policy is in force. Renewal premiums must be paid in advance.

## Definitions

This policy uses certain common words for easy reading. They are defined as follows:

1. "POLICYHOLDER" means the first person named in the Declarations. The **policyholder** is the named insured under this policy but does not include the **policyholder's** spouse. If the first named insured is an organization, that organization is the **policyholder**.

2. "YOU" and "YOUR" mean:

   a) the **policyholder** and spouse, if a resident of the **policyholder's** household, when the **policyholder** is a natural person; or

   b) the sole proprietor, majority shareholder or majority member of an organization, or general partner of a family limited partnership, as shown in the Declarations, and spouse, if a resident of the household of the sole  proprietor, majority shareholder or majority member, or general partner shown in the Declarations, when the **policyholder** is an organization.

   If the spouse ceases to be a resident of the **policyholder's** household or household of the sole proprietor, majority shareholder or majority member, or general partner during the policy period or prior to the inception of this policy, the spouse will be considered **you** and **your** under this policy but only until the earlier of:

   a) the end of 90 days following the spouse ceasing to be a resident of the **policyholder's** household or household of the sole proprietor, majority shareholder or majority member, or general partner;

   b) the effective date of another policy listing the spouse as the named insured; or

   c) the end of the policy period.

3. "RELATIVE" means a natural person who regularly resides in **your** household and who is related to **you** by blood, marriage, or adoption (including a ward or foster child). A **relative** may live temporarily outside **your** household.

4. "INSURED" means one who is described as entitled to protection under each coverage.

5. "WE," "US," "OUR," and "THE COMPANY" mean or refer to **the company** issuing the policy as shown on the Declarations.

6. "YOUR AUTO" means the vehicle(s) described in the Declarations.

7. "MOTOR VEHICLE" means a land **motor vehicle** designed primarily to be driven on public roads.  This does not include vehicles operated on rails or crawler treads. Other motorized vehicles designed for use mainly off public roads shall be included within the definition of **motor vehicle** while being operated on public roads.

8. "PRIVATE PASSENGER AUTO" means a:

   a) four-wheel automobile for private passenger use;

   b) four-wheel van; or

   c) pick-up truck having either four or six wheels.

9. "DEDUCTIBLE" means the amount of loss to be paid by the **insured**. **We** pay for covered loss above the **deductible** amount shown in the Declarations.

10. "OCCUPYING" means in, upon, entering, or alighting from.

11. "BODILY INJURY" means:

    a) physical injury;



b) physical sickness;

c) physical disease; or

d) resultant death;

of any person which results directly from a **motor vehicle** accident.

12. "PROPERTY DAMAGE" means:

a) destruction of tangible property;

b) damage or injury to it; and

c) loss of its use.

13. "NON-ECONOMIC LOSS" means pain and suffering and other non-monetary detriment.

14. "BIOLOGICAL DETERIORATION OR DAMAGE" means damage or decomposition, breakdown, and/or decay of man-made or natural material due to the presence of fungi, algae, lichens, slime, mold, bacteria, wet or dry rot, and any scents or by-products of these organisms, however produced. Fungi as used above include, but are not limited to any type or form of fungus, yeasts, mold, mildew, mycotoxins, spores, rust, smuts, or fleshy fungi such as mushrooms, puffballs and coral fungi.

Other words are also defined. All defined words are in bold print.

### Insured persons' duties after an accident or loss
The **insured** will:

1. give **us** or **our** agent prompt notice of all losses and provide written proof of claim if required.

2. notify the police of all theft losses as soon as practicable.

3. promptly deliver to **us** all papers dealing with any claims or suits.

4. as often as **we** reasonably require, submit to examinations under oath and sign same. At **your** or **our** request, the exams will be conducted separately and not in the presence of any other persons except legal representation.

5. assist **us** and, if applicable, the defense counsel chosen for **you** by **us**, with any claim or suit.

6. if injured, submit to examinations by company selected physicians as often as **the company** reasonably requires. The injured person must grant **us** authority, at **our** request, to obtain copies of all wage and medical, dental or other health care provider records.

7. protect damaged property insured under this policy and make it available to **us** for inspection before its repair or disposal and reinspection during the repair process.

8. provide access to any data and/or records, from any source and/or recorded by any method or means, that **we** reasonably request for use in the evaluation or defense of any claim or suit and permit **us** to make copies of such data or records.

9. preserve any tangible property or evidence as long as **we** request.

10. take reasonable steps to mitigate the loss and expenses associated with the loss.

### Territory
The policy applies only in Canada, the United States of America and its territories or possessions, or between their ports. All coverages except Uninsured Motorists apply to occurrences in Mexico, if within 50 miles of the United States boundary. **We** will base the amount of any Comprehensive or Collision loss in Mexico on cost at the nearest United States point.

NOTE: **You** will need to buy auto insurance from a Mexican insurance company - regardless of coverage provided by this policy - before driving in Mexico. Otherwise, **you** may be subject to jail detention, auto impoundment, and other legal complications in case of an accident.



## Physical damage

**Additional definitions applicable to these coverages**
For purposes of these coverages only:

1.  "LOSS" means direct, physical and accidental **loss** or damage to **your auto**. **Your auto** includes its **equipment**.

2.  "EQUIPMENT" means anything usual and incidental to the use of a **motor vehicle** as a **motor vehicle**. **Equipment** does not include **customization** or any type of trailer.

3.  "CUSTOMIZATION" means accessories, cosmetic enhancements, and related changes, other than those offered by the manufacturer of the **motor vehicle** specifically for that model, which alter the appearance or function of a **motor vehicle**. This includes, but is not limited to, custom refinish, decals, and graphics. This does not include any device which records, emits, amplifies, receives and/or transmits sound, pictures, or data, whether permanently installed or not.

4.  "BETTERMENT" is the increase in value of:

    a)  a vehicle; or

    b)  property; or

    c)  any parts of a vehicle or property;

    as a result of repairing or replacing certain parts damaged in a **loss**.

## Coverage agreements

*Comprehensive coverage*
1.  **We** will pay for **loss** to **your auto** not caused by collision or upset. **We** will pay for the **loss** less **your deductible**. Coverage is included for:

    a)  damage from contact with:

        (1)  wild or domestic animals; or

        (2)  falling or flying objects.

    b)  broken glass:

        (1)  even if caused by collision or upset; and

        (2)  if **you** do not have Collision coverage.

        If **your** Comprehensive and Collision coverages have different **deductibles**, the smaller **deductible** will apply to broken glass.

        For damage to **your auto's** windshield, **we** may offer to have it repaired in lieu of replacement. **We** will not apply a **deductible** for the repair of the windshield. However, if the repair is not satisfactory, **we** will replace the windshield subject to **your deductible**.

2.  Also, **we** will repay **your** reasonable travel costs as determined by **us** after **your auto** is stolen. Maximum payment is $20 per day, not to exceed $600 per occurrence. These costs must be incurred within a certain time. It starts 48 hours after **you** report the theft to **us** and the police. It ends when **your auto** is returned to **you** or **we** offer to pay for its **loss**.

*Collision coverage*
**We** will pay for **loss** to **your auto** caused by collision or upset. **We** will pay for the **loss** less **your deductible**. **We** will not subtract the **deductible** amount for broken glass if **you** have full (no **deductible**) Comprehensive coverage in force.

*Towing and labor costs coverage*
**We** will pay reasonable towing and labor costs as determined by **us** if **your auto** or a **motor vehicle** covered under Use of other motor vehicles is disabled. **We** will pay only for labor costs at the place the vehicle is disabled. **Our** maximum payment per disablement is shown in the Declarations.

**Nationwide®**
is on your side

## Coverage extensions

### *Use of trailers*
The insurance on **your auto** covers a trailer used by **you** or a **relative**.

1. The trailer must be:
   a) designed for use with a **private passenger auto**; and
   b) used with a vehicle that is insured under these coverages.

2. The trailer must not be:
   a) otherwise insured;
   b) owned by **you** or a **relative**; or
   c) used for business purposes with a vehicle that is not a **private passenger auto**.

3. The maximum amount payable is $1,500.

### *Use of other motor vehicles*
The insurance on **your auto** also covers:

1. A **motor vehicle you** do not own, while it is used as a temporary substitute for **your auto**. **Your auto** must be out of use because of:
   a) breakdown;        c) servicing; or
   b) repair;           d) **loss**.

2. A **private passenger auto** newly acquired by **you**. **You** must report the acquisition of it to **us** during the first 30 days **you** own the vehicle. Coverage applies only during the first 30 days **you** own the vehicle, unless it replaces **your auto**. However, if **your auto** does not have Comprehensive or Collision coverage, **we** will provide these coverages for the newly acquired vehicle for a four-day period after the date **you** become the owner of it, provided, **you** ask **us** to insure it within this four-day period. If a Comprehensive or Collision **loss** occurs during this period and before **you** asked **us** to provide this coverage, **we** will apply a **deductible** of $500 to the **loss**.

3. A **private passenger auto** owned by a non-member of **your** household and not covered in item 1. of this section.
   a) This applies only while such auto is operated by **you** or a **relative**.
   b) **We** will not pay for **loss**:
      (1) that results from the operation of an auto:
         (a) repair shop;                    (c) sales agency; or
         (b) public garage or parking place; (d) service or maintenance facility.
      (2) involving a **private passenger auto** owned by an employer of an **insured**.
      (3) involving a **private passenger auto** furnished or available to **you** or a **relative** for regular use.
      (4) to any rented **motor vehicle**.

4. A rented **private passenger auto**, including its loss of income.
   a) This applies only:
      (1) while such auto is rented by **you** or a **relative**;
      (2) if such auto is rented from a rental company for less than 28 days; and
      (3) for loss of income that is:
         (a) verifiable by **us**; and
         (b) owed to a rental company because:
            (1) the rental company had a customer willing to rent a **private passenger auto**; and



(2) there was no other vehicle available for rental in place of the damaged rented auto.

b) **We** will not pay for **loss** involving a **private passenger auto** rented or leased by anyone for or on behalf of the employer of an **insured**.

## Coverage exclusions

**We** will not pay for **loss**:

1. To more than one:
   a) recording tape;
   b) compact disc; or
   c) other recording media.

2. To a container to be used for storing or carrying:
   a) recording tapes;
   b) compact discs; or
   c) other recording media.

3. To any device which is a:
   a) tape player;
   b) compact disc player or recorder;
   c) digital video disc player or recorder;
   d) video cassette player or recorder;
   e) television;
   f) electronic navigational system;
   g) citizens band radio;
   h) two-way mobile radio;
   i) telephone; or
   j) any other device which records, emits, amplifies, receives and/or transmits sound, pictures, or data.

   However, this exclusion (3.) does not apply:
   a) to such a device, its antenna or its other parts or accessories if permanently installed by the original manufacturer or new car dealer as part of the purchase agreement for the vehicle; or
   b) up to the first $1,500 of the actual cash value of any and all such devices, antennas, or other parts and accessories that are permanently installed but that were not a part of the new car purchase agreement for the vehicle. However, payment under this subpart b) shall not exceed the actual cash value of the insured vehicle in which the devices are installed.

   Permanently installed means installed using bolts, brackets, or welding in a location designated by an auto manufacturer for such a device. A device attached only by wires is not considered permanently installed. No coverage will be provided for any item that is not permanently installed. No coverage will be provided for the devices designed to detect or deter speed monitoring equipment excluded in exclusion 4. below, whether permanently installed or not.

4. To scanning monitor receivers used for radar detection, or any other device designed to detect or deter the monitoring of speed.

5. To a camper or living quarters unit which can be mounted on or attached to a vehicle. **We** will pay the **loss** if:
   a) the unit is reported to **us**; and
   b) the required premium is paid;


before the **loss**.

6. Caused by and limited to:

   a) wear and tear;

   b) freezing;

   c) mechanical or electrical breakdown or failure; or

   d) road damage to tires.

   This exclusion (6.) does not apply if the damage results from the total theft of **your auto** or any other **motor vehicle**.

7. To any **motor vehicle** while used:

   a) to carry persons or property for a fee or compensation; or

   b) on a regular basis for retail or wholesale delivery, including but not limited to pizza, magazine, newspaper and mail delivery.

   Exclusion 7.a) does not apply to **motor vehicles** used in shared-expense car pools.

8. To any **motor vehicle** due to an act of war, including insurrection, rebellion or revolution.

9. To any **motor vehicle** which occurs:

   a) while it is being used on a temporary or permanent basis, for the transportation of, or in exchange for, any illegal substance, or in connection with any criminal trade or transaction by:

      (1)  **you**;

      (2)  a **relative**; or

      (3)  anyone else with **your** knowledge or permission; or

   b) due to confiscation of **your auto** by any law enforcement agency because of **your auto's** use in such activities.

10. To **your auto**:

    a) while rented or leased to others; or

    b) if under any type of conveyance of ownership including but not limited to a conditional sale, contract for sale, or rent to own, regardless of whether title has been transferred to others.

11. To any **motor vehicle**:

    a) while used in an organized or prearranged competitive event, including but not limited to:

       (1)  racing contest or event; or

       (2)  speed contest or event; or

       (3)  in practice or preparation for any racing or speed contest or event.

    b) while used in **performance testing** that is done on a closed road, or a race track, or a testing facility environment where the **insured** is not competing.

       **Performance testing** is when an **insured** uses any **motor vehicle** to:

       (1)  test its performance in speed, handling; or

       (2)  test or practice driver skills.

       **Performance testing** does not apply to student-driver training activities an **insured** participates in to obtain that person's state issued learners permit or drivers license. **Performance testing** also does not apply to driver training activities an **insured** participates in to complete that person's state sanctioned courses in motor vehicle accident prevention, defensive driving, or driver improvement.



**Nationwide®**
is on your side

12. Caused intentionally. meaning **loss** resulting from an act committed by or at the direction of **you** or a **relative** that may reasonably be expected to result from such acts, or is the intended result from such acts even if such person lacks the mental capacity to govern his or her conduct. Intentional acts include criminal acts. Such acts exclude coverage for all **insureds**.

However, this exclusion does not apply to deny payment to an innocent **insured** who is the victim of abuse by another **insured** and claims **loss** to covered property which has been damaged as a result of an act of abuse provided that such an **insured** did not cooperate in or contribute to the creation of the **loss**.

With respect to this provision, abuse means:

(1) abuse as defined in the Pennsylvania Protection From Abuse Act; or

(2) attempting to cause or intentionally, knowingly or recklessly causing damage to covered property so as to intimidate or attempt to control the behavior of another person.

If **we** pay a claim under this provision, **our** payment to the innocent **insured** is limited to that **insured's** insurable interest in the property.

13. To any **motor vehicle** for diminution in value or depreciation.

14. Caused by or resulting from nuclear hazard, meaning any:

a) nuclear reaction;

b) nuclear discharge;

c) radiation; or

d) radioactive contamination;

whether controlled or uncontrolled or however caused, or as a consequence of any of these. **Loss** caused by nuclear hazard is not considered **loss** caused by fire, smoke or explosion.

15. Caused directly or indirectly by **biological deterioration or damage**. Such **loss** is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**.

16. To **customization**, other than original equipment from the manufacturer, in or upon **your motor vehicle**. However, this exclusion does not apply up to the first $1,500 of **customization**.

17. To any **motor vehicle** which **you** or a **relative**:

a) uses without a reasonable belief of being entitled to do so;

b) has stolen; or

c) knows to have been stolen.

**You** or a **relative** shall not be held to have a reasonable belief of being entitled to operate a **motor vehicle** if that person's license has been suspended, revoked, or never issued.

This exclusion does not apply to the use of **your auto** by:

a) **you**;

b) a **relative**; or

c) a business partner, employee, or agent of **you** or a **relative**.

## Limits and conditions of payment

### *Actual cash value*

The limit of **our** coverage is the actual cash value of **your auto** or its damaged parts at the time of **loss**. To determine actual cash value, **we** will consider:

1. fair market value;

**Nationwide®**
is on your side

2. age;

3. condition of the property; and

4. **betterment**;

at the time of **loss**. If a repair or replacement results in **betterment**, **we** will not pay for the amount of **betterment**. In addition to **our** payment of the **loss**, necessary and reasonable towing and storage will be paid to protect the auto from further damage. Covered storage costs are not to exceed four days of storage charges incurred prior to the date **you** report the **loss** to **us**.

The limit of coverage shall not be increased for **customization** unless such **customization** has been specifically declared to **us** and an additional charge is paid. Coverage for **customization** shall not cause **our** limit of liability to be increased to an amount in excess of the actual cash value of **your auto** including its **customization**.

*Loss settlement*
At **our** option, **we** may:

1. pay **you** directly for a **loss**;

2. pay to repair or replace **your auto** or its damaged parts with the parts made by or for the original equipment manufacturers or parts made by non-original equipment manufacturers or with like kind and quality parts including but not limited to salvage and refurbished parts;

3. return stolen property at **our** expense and pay for any damage.

If there was a prior **loss** to **your auto** that **we** paid, **we** will deduct an appropriate amount from **our** payment of any subsequent **loss** to that same auto unless **you** provide proof that the prior damage was repaired.

***Amounts payable for towing and labor costs***
Limits apply as stated in the Declarations. Insuring more than one person or vehicle under this policy does not increase **our** limits.

***Other insurance***
If there is other insurance that covers any **loss**, **we** will pay only **our** share of the **loss**. **Our** share is **our** proportion of the total insurance collectible for the **loss**. For **loss** to **motor vehicles** other than **your auto**, **we** will pay only the insured **loss** not covered by other insurance or self-insurance.

## Coverage conditions

***Auto recovery***
When an insured auto which has been stolen or abandoned is located, **we** have the right to take it into **our** care to keep it safe.

***Controlling Storage Costs***
When an **insured** is involved in a Collision or Comprehensive **loss**, **we** have the right to move the vehicle from any impound lot, storage site, towing yard or any other facility to control storage costs, towing costs or other fees. The **insured** will be promptly notified whenever any such action is undertaken.

## Loss payable clause

This clause applies to the Comprehensive and Collision coverages provided by this policy. It protects the lienholder named in the policy Declarations.

Payment for **loss** will be made according to the interest of the **policyholder** and lienholder. At **our** option, payment may be made to both jointly, or to either separately. Either way, **the company** will protect the interests of both.

Protection of the lienholder's financial interest will not be affected by any change in ownership of the vehicle insured, nor by any act or omission by any person entitled to coverage under this policy. However, protection under this clause does not apply:

1.  In any case of:

    a)  fraud;

    b)  misrepresentation, either in the application process, or in the presentation of the claim;

    c)  material omission;

    d)  conversion;

    e)  embezzlement;

    f)  secretion; or

    g)  willful damaging or destruction of **your auto**;

    committed by or at the direction of **you** or a **relative**.

2.  To the **loss** of **your auto** which occurs:

    a)  while it is being used on a temporary or permanent basis, for the transportation of, or in exchange for, any illegal substance, or in connection with any criminal trade or transaction by:

        (1)  **you**;

        (2)  a **relative**; or

        (3)  anyone else with **your** knowledge or permission; or

    b)  due to confiscation of **your auto** by any law enforcement agency because of **your auto's** use in such activities.

3.  Where the **loss** is otherwise not covered under the terms of this policy.

**We** will protect the lienholder's interest for 10 days from the date **we** notify them that the policy has terminated, for any reason. If **we** pay the lienholder for any **loss** or damage suffered during that 10-day period, **we** have the right to recover the amount of any such payment from **you**.

**The company** will not notify the lienholder each time **you** renew this policy, and **we** may cancel this policy according to the terms. **The company** will also notify the lienholder if coverage under the policy is excluded for any named driver.

The lienholder shall notify **the company** upon learning of any change in ownership of the vehicle.

To the extent of payment to the lienholder, **the company** will be entitled to the lienholder's rights of recovery. **The company** will do nothing to impair the right of the lienholder to recover the full amount of its claim.

IF **WE** BECOME OBLIGATED TO REIMBURSE A LIENHOLDER UNDER THIS COVERAGE DUE TO **YOUR** FAILURE TO MEET THE POLICY REQUIREMENTS OR THROUGH **YOUR** FAILING TO MAKE **YOUR** PREMIUM PAYMENTS, **WE** HAVE THE RIGHT TO RECOVER FROM **YOU** ANY MONEY **WE** PAY.

## Auto liability

### Coverage agreement

***Property damage and bodily injury liability coverage***

1. **We** will pay for damages for which **you** are legally liable as a result of an accident arising out of the:

   a) ownership;

   b) maintenance or use; or

   c) loading or unloading;

   of **your auto**. A **relative** also has this protection. So does any person or organization who is liable for the use of **your auto** while used with **your** permission.

2. Damages must involve:

   a) **property damage**; or

   b) **bodily injury**.

3. **We** will pay such liability losses up to the limits stated in the Declarations. In addition to these limits and as to any covered damages, **we** will:

   a) defend at **our** expense, with attorneys of **our** choice, any suit against the **insured**. **We** may settle or defend any claim or suit as **we** think proper.

   b) pay:

      (1) all expenses incurred by **us**; and

      (2) all costs levied against the **insured**, including prejudgment interest on covered damages on that portion of the award which does not exceed the limits of this coverage;

   in any such suit.

   c) pay premiums:

      (1) of not more than $250 per **insured** for bail bonds required because of an accident or traffic violation.

      (2) for appeal bonds in defended suits and for bonds to release attached property. The amount of such bonds shall not be more than the limits of liability shown in the Declarations.

   Although paying such premiums, **we** are not required to apply for or furnish any bonds.

   d) pay post-judgment interest on all damages awarded. **We** will not pay interest that accrues after such time as **we** have:

      (1) paid;

      (2) formally offered; or

      (3) deposited in court;

   the amount for which **we** were liable under this policy.

   e) pay expenses incurred by an **insured** for emergency medical aid to others at the time of accident.

   f) upon submission for reimbursement, pay reasonable expenses incurred by an **insured** at **our** request, but not more than $200 per day for loss of earnings.

4. After the limits of this coverage have been paid, **we** will not defend any suit or pay any claim or judgment, unless required by law.

### Coverage extensions

***Use of trailers***

1. This coverage applies to the use of a trailer by:

   a) **you**;



b) a **relative**; or

c) someone else with **your** permission.

2. The trailer must be:

a) designed for use with a **private passenger auto**; and

b) used with a vehicle that is insured under this coverage.

3. The trailer must not be used for business purposes with a vehicle that is not a **private passenger auto**.

### Use of other motor vehicles

The insurance on **your auto** also covers:

1. A **motor vehicle you** do not own, while it is used as a temporary substitute for **your auto**. **Your auto** must be out of use because of:

a) breakdown;     c) servicing; or

b) repair;        d) loss.

2. A **private passenger auto** newly acquired by **you**. This coverage applies only during the first 30 days **you** own the vehicle unless it replaces **your auto**. If the newly acquired vehicle does not replace **your auto**, all household vehicles owned by **you** must be insured by **us** or a company affiliated with **us** for this extension of coverage to apply.

   **We** provide this coverage only if **you** do not have other insurance. **You** must pay any added premium resulting from this coverage extension.

3. A **motor vehicle** owned by a non-member of **your** household and not covered in item 1. of this section.

a) This applies only while the vehicle is being operated by **you** or a **relative**. It protects **you** or a **relative** as the operator, and any person or organization, except as noted below in b), who is not operating the vehicle and does not own the vehicle but is legally responsible for its use.

b) This does not apply to losses involving a **motor vehicle**:

(1) used in the business or occupation of **you** or a **relative**. However, it does apply to a **private passenger auto** used by **you**, **your** chauffeur, or **your** household employee;

(2) owned, rented or leased by an employer of an **insured**;

(3) rented or leased by anyone for or on behalf of an employer of an **insured**; or

(4) furnished or available to **you** or a **relative** for regular use. This does not include a **motor vehicle** rented from a rental company for less than 28 days.

### Financial responsibility

**We** will adjust this policy to comply:

1. With the financial responsibility law of any state or province which requires higher liability limits than those provided by this policy.

2. With the kinds and limits of coverage required of non-residents by any compulsory **motor vehicle** insurance law, or similar law.

However, any loss payment under this coverage will be made only over and above any other collectible **motor vehicle** insurance. In no case will anyone be entitled to duplicate payments for the same loss.

When **we** certify this policy as proof under any financial responsibility law, it will comply with the law to the extent of the coverage required by the law. The **insured** agrees to reimburse **us** for any payment which **we** would not have been obligated to make under the terms of this policy except for the agreement outlined in this paragraph.

**Nationwide®**
is on your side

**Coverage exclusions**

This coverage does not apply to:

1.  **Property damage** or **bodily injury** caused intentionally by or at the direction of an **insured**, including willful acts the result of which the **insured** knows or ought to know will follow from the **insured's** conduct.

2.  Any **motor vehicle** while used:

    a) to carry persons or property for a fee or compensation; or

    b) on a regular basis for retail or wholesale delivery, including but not limited to pizza, magazine, newspaper and mail delivery.

    Exclusion 2.a) does not apply to **motor vehicles** used in shared-expense car pools.

3.  Any person for any occurrence arising out of the operation of an auto:

    a) repair shop;                          c) sales agency; or

    b) public garage or parking place;       d) service or maintenance facility.

    However, this exclusion does not apply to the use of **your auto** by:

    a) **you**;

    b) a **relative**; or

    c) a business partner, employee, or agent of **you** or a **relative**.

4.  **Property damage** caused by any **insured**:

    a) to a **motor vehicle** that is owned or operated by, or in the custody of, that **insured**; or

    b) to any other property that is owned by or in the custody of any **insured** or anyone **occupying your auto**. This exclusion does not apply to a:

       (1) rented home; or

       (2) rented private garage.

5.  **Bodily injury** to any person eligible to receive any benefits required to be provided or voluntarily provided by any **insured** under a:

    a) workers' compensation;

    b) unemployment compensation;

    c) non-occupational or occupational disease;

    d) disability benefits;

    or any similar law.

6.  **Bodily injury** to an employee of any **insured** while engaged in employment. However, it does cover an employee of **your** home who is not covered and is not required to be covered by any workers' compensation benefits, disability benefits, or benefits under similar laws.

7.  The United States of America or any of its agencies. It also does not apply to any employee of the United States of America or any of its agencies while such person is acting within the scope of his or her office or employment and the provisions of the Federal Tort Claims Act apply.

8.  Any person protected under nuclear energy liability insurance. This exclusion applies even if that insurance has been exhausted.

9.  **Non-economic loss** of or for any person who has elected or has deemed to have elected "Limited Tort" in accordance with the Pennsylvania Motor Vehicle Financial Responsibility Law.

10. **Bodily injury** or **property damage** arising out of the ownership, maintenance or use of any **motor vehicle**:

    a) while rented or leased to others by any **insured**; or


b) if under any type of conveyance of ownership including but not limited to a conditional sale, contract for sale, or rent to own, regardless of whether title has been transferred to others by any **insured**.

11. **Bodily injury** or **property damage** arising out of the ownership, operation, maintenance or use of any **motor vehicle**:

a) while used in an organized or prearranged competitive event, including but not limited to:

(1) racing contest or event; or

(2) speed contest or event; or

(3) in practice or preparation for any racing or speed contest or event.

b) while used in **performance testing** that is done on a closed road, or a race track, or a testing facility environment where the **insured** is not competing.

**Performance testing** is when an **insured** uses any **motor vehicle** to:

(1) test its performance in speed, handling; or

(2) test or practice driver skills.

**Performance testing** does not apply to student-driver training activities an **insured** participates in to obtain that person's state issued learners permit or drivers license. **Performance testing** also does not apply to driver training activities an **insured** participates in to complete that person's state sanctioned courses in motor vehicle accident prevention, defensive driving, or driver improvement.

12. Any of the following:

a) judgments;

b) costs;

c) attorneys fees; or

d) claims;

against an **insured** for punitive or exemplary damages.

13. **Property damage** caused directly or indirectly by **biological deterioration or damage**. Such loss is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

14. **Bodily injury** arising directly or indirectly from the inhalation of, ingestion of, contact with, exposure to, existence of or presence of any fungi, algae, lichens, slime, mold, bacteria, wet or dry rot and any scents or by-products of these organisms, however produced. Fungi as used above include, but are not limited to any type or form of fungus, yeasts, mold, mildew, mycotoxins, spores, rust, smuts or fleshy fungi such as mushrooms, puffballs and coral fungi.

15. Any person's liability resulting from the:

a) handling of property:

(1) before it is moved from the place where it is accepted by an **insured** for movement into or onto **your auto**; or

(2) after it is moved from **your auto** to the place where it is finally delivered by an **insured**.

b) movement of property by a mechanical device (other than a hand truck) not attached to **your auto**.

16. **Bodily injury** suffered while engaged in the transportation or exchange of any illegal substance, or in connection with any criminal trade or transaction. This exclusion applies to the operator or occupant of a **motor vehicle** so involved, and also to an **insured** so engaged as a pedestrian.

17. Any **motor vehicle** which any **insured**:

    a)  uses without a reasonable belief of being entitled to do so;

    b)  has stolen; or

    c)  knows to have been stolen.

An **insured** shall not be held to have a reasonable belief of being entitled to operate a **motor vehicle** if that person's license has been suspended, revoked, or never issued.

This exclusion does not apply to the use of **your auto** by:

    a)  **you**;

    b)  a **relative**; or

    c)  a business partner, employee, or agent of **you** or a **relative**.

### Limits and conditions of payment

***Amounts payable for liability losses***

**Our** obligation to pay Property damage or Bodily injury liability losses is limited to the amounts per person and per occurrence stated in the Declarations. The following conditions apply to these limits:

1.  The limit shown:

    a)  for Property damage liability is for all **property damage** in one occurrence.

    b)  for Bodily injury liability for any one person is for all legal damages, including all derivative claims, claimed by anyone arising out of and due to **bodily injury** to one person as a result of one occurrence.

        The per-person limit is the total amount available when one person sustains **bodily injury**, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims, or any other claims made by anyone arising out of **bodily injury**, including death, to one person as a result of one occurrence.

    c)  for Bodily injury liability for each occurrence is the total limit of **our** liability for all legal damages when two or more persons sustain **bodily injury**, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims, or any other claims arising out of **bodily injury**, including death, to two or more persons as a result of one occurrence. This total limit is subject to the limit for any one person.

2.  Liability limits apply as stated in the Declarations. The insuring of more than one person or vehicle under this policy does not increase **our** liability limits.

3.  In any loss covered under items 2. and 3. of "Use of other motor vehicles," the highest liability limit applicable to any one vehicle on this policy will apply.

4.  A **motor vehicle** and attached trailer are considered one vehicle for Auto liability coverage.

5.  The limit of liability under this coverage is reduced by any amount paid to the same person for the same accident under the Uninsured motorists or Underinsured motorists coverage of this policy.

***Other insurance***

1.  In any loss involving the use of **your auto**, **we** will be liable for only **our** share of the loss if there is other collectible liability insurance. **Our** share is **our** proportion of the total insurance limits for the loss.

2.  For losses covered under "Use of other motor vehicles," **our** coverage is excess over any other collectible:

    a)  insurance;



AUTO LIABILITY

**Page L6**

b) self insurance;

c) proceeds from a governmental entity; or

d) sources of recovery.

If more than one policy issued by **us** or a company affiliated with **us** applies on an excess basis to the same loss, **we** will pay only up to the highest limit of any one of them.

**Nationwide®**
is on your side

## First Party Benefits

### Coverage agreement
This coverage provides First Party Benefit options in accordance with the Pennsylvania Motor Vehicle Financial Responsibility Law. The options and limits which the **policyholder** has selected are shown in the Declarations.

**We** will pay First Party Benefits for the **bodily injury** of an **insured** as a result of an accident that arises out of the maintenance or use of a **motor vehicle** as a **motor vehicle**. **We** will pay these benefits regardless of who is at fault in the accident.

### Additional definitions applicable to this coverage
For purposes of this coverage only:

"NECESSARY MEDICAL TREATMENT AND REHABILITATIVE SERVICES" means:

1. treatment;

2. accommodations; and

3. products or services;

which are determined to be necessary by a licensed health care provider unless they shall have been found or determined to be unnecessary by a state-approved Peer Review Organization (PRO).

### Insureds
The **policyholder** and **relatives** are covered while **occupying** or injured by any **motor vehicle**.

Persons other than the **policyholder** and **relatives** are covered:
   a) while **occupying your auto**.
   b) as non-occupants of a **motor vehicle** if injured as a result of an accident in Pennsylvania involving **your auto**.

### Options

*Option 1—Medical Benefit*
**We** will pay all reasonable expenses for **necessary medical treatment and rehabilitative services**.

**We** will pay such expenses up to the limit shown on the Declarations.

Subject to the applicable provisions of the Motor Vehicle Responsibility Law concerning the statute of limitations, there is no time limitation for this benefit, provided that, within 18 months after the date of the accident, it is determined with reasonable medical probability that further expenses may be incurred as a result of the injury.

*Option 2 - Income Loss Benefit*
If this option is selected by payment of premium, **we** will pay for loss of income from work the **insured** was unable to do because of **bodily injury**. **We** will not pay under this benefit until five working days have been lost. **We** will not pay for these five days of lost income.

"LOSS OF INCOME" means:
   a) 80 percent of actual loss of gross income. Gross income is income received from work performed while normally employed in gainful activity.
   b) reasonable expenses actually incurred for hiring a substitute to perform self-employment services in order to reduce loss of gross income or for hiring special help which permits a person to work and reduce loss of gross income.

**We** will pay such benefits up to the limit shown on the Declarations. However, the total limit of this benefit is subject to the monthly maximum shown on the Declarations.

Income Loss Benefits do not continue after a person dies.



### Option 3—Accidental Death Benefit

If this option is selected by payment of premium, **we** will pay the Accidental Death Benefit for the **policyholder** or a **relative** who suffers accidental **bodily injury** causing death from a covered accident.  **We** will pay the Accidental Death Benefit limit shown in the Declarations. Death must occur within two years of, and as a direct result of, the accident. Payment will be made to the:

   a)  executor; or

   b)  administrator;

of the estate. In the alternative, payment will be made to the surviving spouse.

### Option 4—Funeral Benefit

If this option is selected by payment of premium, **we** will pay reasonable expenses directly related to the:

   a)  funeral;

   b)  burial;

   c)  cremation; or

   d)  other form of disposition of the remains of a deceased **insured**.

These expenses must be the direct result of death from a covered accident within two years of the date of the accident. Payment will be made to any person presenting bills for qualified expenses incurred.

**We** will pay such expenses up to the limit shown on the Declarations.

### Option 5—Combined Loss Benefits

If this option is selected by payment of premium, **we** will pay the benefits described in Options 1, 2, 3, and 4 above. However, total benefits payable under this option are limited to:

   a)  the aggregate limit shown on the Declarations for this option; or

   b)  three years from the date of the accident;

whichever occurs first.

Option 5 is subject to the following conditions:

   a)  within 18 months after the date of the accident, it must be determined with reasonable medical probability that future medical expenses will be incurred as a result of the injury.

   b)  in no event will benefits be paid beyond three years from the date of the accident.

   c)  there is no monthly dollar maximum for Income Loss Benefits.

   d)  the maximum Accidental Death Benefit payable is $25,000.

   e)  the maximum Funeral Benefit payable is $2,500.

   f)  benefits under d) and e) are only payable if death occurs within two years of the date of the accident.

### Option 6—Excess Medical Benefits

If this option is selected by payment of premium, **we** will pay the Excess Medical Benefits for an **insured** who suffers accidental **bodily injury** from a covered accident. Excess Medical Benefits are reasonable expenses for **necessary medical treatment and rehabilitative services**. **We** will pay such expenses in excess of $100,000 but not to exceed one million dollars. **We** will not pay Excess Medical Benefits to an **insured** who is not eligible for Option 1—Medical Benefits under this policy.

**Our** liability to one person in one accident is $50,000 per year. Subject to this limit for any one person in any one year, **our** aggregate limit for any one person is one million dollars for any one accident.  During the first 18 months of eligibility, **we** shall approve payments for an **insured** without regard to the $50,000 per year limit. For purposes of this option, the first 18 months of eligibility begins when the **insured** has incurred $100,000 of eligible **necessary medical treatment and rehabilitative services** expenses.

**Nationwide®**
is on your side

If the **insured** is covered by Option 5—Combined Loss Benefits package (or a similar auto benefits package with another insurer), applicable Medical Benefit limits greater than $100,000 in such package shall be excess over any sums paid or payable under Excess Medical Benefits.

**Coverage exclusions**

**We** will not pay First Party Benefits in certain circumstances, as follows:

1. The **policyholder** and **relatives** are not covered for **bodily injury** arising out of the maintenance or use of a **motor vehicle** that the **policyholder** owns that is not an insured **motor vehicle**. An insured **motor vehicle** is one on which there are First Party Benefits and to which the Auto bodily injury liability coverage in this policy applies.

2. There is no coverage for **bodily injury** to a **relative** arising out of the maintenance or use of a **motor vehicle** owned by such **relative** which is not insured for First Party Benefits and Auto bodily injury liability coverage under this or any other policy.

3. There is no coverage for anyone while **occupying** a:
   a) motorcycle;
   b) motor-driven cycle;
   c) motorized pedalcycle, or similar type vehicles; or
   d) a recreational vehicle not intended for highway use.

4. There is no coverage for anyone, other than the **policyholder** or a **relative**, who knowingly converts a **motor vehicle**.

5. There is no coverage for anyone injured by **your auto** while it is unoccupied and parked so as not to cause unreasonable risk of injury.

6. There is no coverage for use of any **motor vehicle** by an **insured**:
   a) to carry persons or property for a fee or compensation; or
   b) on a regular basis for retail or wholesale delivery, including but not limited to pizza, magazine, newspaper and mail delivery.

   Exclusion 6.a) does not apply to **motor vehicles** used in the shared-expense car pools.

7. There is no coverage for anyone who is the owner of a currently registered **motor vehicle** and who does not have financial responsibility. Financial responsibility means the type of financial responsibility that was self-certified to the Department of Transportation to obtain the registration.

8. **We** will not pay any benefits to or for anyone who injures themselves:
   a) or another intentionally, including an attempt to intentionally injure themselves or another;
   b) while committing a felony; or
   c) while seeking to elude lawful apprehension or arrest by a law enforcement official.

9. There is no coverage for loss sustained by any person as a direct result of loading or unloading any **motor vehicle**, except while **occupying** the **motor vehicle**.

10. There is no coverage for **bodily injury** caused by or resulting from an act of war, including insurrection, rebellion or revolution.

11. There is no coverage for **bodily injury** caused by or resulting from:
    a) nuclear hazard meaning any:
       (1) nuclear reaction;
       (2) nuclear discharge;
       (3) radiation; or
       (4) radioactive contamination;


**Nationwide®**
is on your side

b) discharge of a biological weapon resulting in biological contamination;

whether controlled or uncontrolled or however caused, or as a consequence of any of these.

12. There is no coverage for expenses, charges or costs arising directly or indirectly from **bodily injury** caused by or resulting from the inhalation of, ingestion of, contact with, exposure to, existence of or presence of any fungi, algae, lichens, slime, mold, bacteria, wet or dry rot and any scents or by-products of these organisms, however produced. Fungi as used above include, but are not limited to any type or form of fungus, yeasts, mold, mildew, mycotoxins, spores, rust, smuts or fleshy fungi such as mushrooms, puffballs and coral fungi.

13. There is no coverage for **bodily injury** arising out of the ownership, operation, maintenance or use of any **motor vehicle**:

a) while used in an organized or prearranged competitive event, including but not limited to:

(1) racing contest or event; or

(2) speed contest or event; or

(3) in practice or preparation for any racing or speed contest or event.

b) while used in **performance testing** that is done on a closed road, or a race track, or a testing facility environment where the **insured** is not competing.

**Performance testing** is when an **insured** uses any **motor vehicle** to:

(1) test its performance in speed, handling; or

(2) test or practice driver skills.

**Performance testing** does not apply to student-driver training activities an **insured** participates in to obtain that person's state issued learners permit or drivers license. **Performance testing** also does not apply to driver training activities an **insured** participates in to complete that person's state sanctioned courses in motor vehicle accident prevention, defensive driving, or driver improvement.

14. There is no coverage from the use of any **motor vehicle** which any **insured**:

a) uses without a reasonable belief of being entitled to do so;

b) has stolen; or

c)  knows to have been stolen.

An **insured** shall not be held to have a reasonable belief of being entitled to operate a **motor vehicle** if that person's license has been suspended, revoked, or never issued.

This exclusion does not apply to the use of **your auto** by:

a) **you**;

b) a **relative**; or

c) a business partner, employee, or agent of **you** or a **relative**.

### Limits and conditions of payment

Limits apply as stated in the attached Declarations. However, the insuring of more than one person or vehicle under this First Party Benefits coverage does not increase the limit of coverage to any one person in any one accident. In no event will any **insured** be entitled to more than the highest limit applicable to any one **motor vehicle** under this or any other policy. The following conditions apply to the relationship of this coverage to other insurance or benefits that may be available:

### *Priorities of policies*

**We** will pay First Party Benefits in accordance with the order of priorities set forth by law. **We** will not pay if there is other insurance at a higher level of priority, even if the limits of that


insurance have been paid. The highest priority level listed below is the FIRST level which provides benefits for a named insured. The priority order is:

**FIRST—** For a named insured on any policy, the policy on which that person is the named insured.

**SECOND—** For a **relative**, the policy covering the **relative** as an **insured**.

**THIRD—** For the occupants of an insured **motor vehicle**, the policy on that **motor vehicle**.

**FOURTH—** For a person who is not the occupant of a **motor vehicle**, the policy on any **motor vehicle** involved in the accident.

### *No duplication of benefits; other insurance*

In any occurrence where other similar auto insurance or self-insurance of equal priority to that provided in this coverage is available and the claim is first presented to **us**, **we** will process and pay the claim as if wholly responsible up to the limits of **our** policy. The total limits available from all such insurance will be considered not to exceed the highest limits available from any one source of coverage.

In no instance may an **insured** or legal representative recover duplicate benefits from the same elements of loss under this and other similar auto insurance or self-insurance.

### *Workers' compensation reduction*

There is no coverage for **bodily injury** occurring during the course and scope of employment if workers' compensation benefits are payable or available for the **bodily injury**. Any amount payable to anyone under this coverage will only be in excess of and not in duplication of any valid and collectible workers' compensation benefit.

### Insured persons' duties

The **insured**, or someone on the **insured's** behalf, will report any accident to **us** in writing as soon as practicable. This report will identify the injured and give reasonably obtainable information about the time, place and circumstances of the accident.

As soon as practicable, the **insured** or someone on the **insured's** behalf will submit written proof of claim to **us**, under oath if required. This proof will include detailed information about the nature and extent of **bodily injury**, treatment and rehabilitation received and contemplated, and anything else that may help **us** determine what benefits are payable in what amounts.

The injured person must grant **us** authorization, if **we** request it, to obtain copies of medical, income and income tax reports and records.

Injured persons must submit to examinations by company-selected physicians as often as **the company** reasonably requires. The injured person must submit to examination under oath as often as reasonably requested by **us**.

## Uninsured motorists — bodily injury

### Additional definitions applicable to this coverage

*"Uninsured motor vehicle"* — See definition in Coverage agreement section.

### Coverage agreement

*You and a relative*
**We** will pay compensatory damages, including derivative claims, which are due by law to **you** or a **relative** from the owner or driver of an **uninsured motor vehicle** because of **bodily injury** suffered by **you** or a **relative**. Damages must result from an accident arising out of the:

1. ownership;

2. maintenance; or

3. use;

of the **uninsured motor vehicle**.

Coverage for **you** or a **relative** under this policy also extends to replacement automobiles and to newly acquired automobiles. If, however, the newly acquired automobile does not replace **your auto**, **you** must report the acquisition of the vehicle to **us** for this extension of coverage to apply.

*Other persons*
**We** will also pay compensatory damages , including derivative claims, which are due by law to other persons from the owner or driver of an **uninsured motor vehicle** because of **bodily injury** suffered while **occupying**:

1. **Your auto**.

2. A **motor vehicle you** do not own, while it is used as a temporary substitute for **your auto**. **Your auto** must be out of use because of:

   a) breakdown;     c) servicing; or
   b) repair;        d) loss.

*Recovery*
1. Before recovery, **we** and any injured party seeking protection under this coverage must agree on two points:

   a) whether there is a legal right to recover damages from the owner or driver of an **uninsured motor vehicle**; and if so,

   b) the amount of such damages.

2. Any judgment against the uninsured will be binding on **us** only if it has **our** written consent.

3. The injured party shall provide notice of an uninsured motorist claim within two years after the date of the accident. If the injured party fails to provide such notice, and this failure precludes **our** ability to subrogate against liable parties, coverage may be denied as provided in Insured persons' duties No. 2 below.

4. Where multiple policies apply, payment shall be made in the following order of priority:

   a) a policy covering a **motor vehicle** occupied by the injured person at the time of the accident.

   b) a policy covering a **motor vehicle** not involved in the accident with respect to which the injured person is an **insured**.

5. Where multiple sources of equal priority apply, the **insured** against whom a claim is asserted first under the priorities set forth in 4. above shall process and pay the claim as if wholly responsible.  **We** are thereafter entitled to recover contribution pro rata from the other insurer for the benefits paid and the cost of processing the claim.

*Definition*

1. An **uninsured motor vehicle** is:

   a) one for which there is no bodily injury liability bond or insurance at the time of the accident.

   b) one for which the insuring company denies coverage or becomes insolvent.

   c) an unidentified **motor vehicle** which causes **bodily injury** to an **insured** by physical contact with:

   (1) such **insured**; or

   (2) a vehicle the **insured** is **occupying**.

   The driver and the owner of the unidentified vehicle must be unknown. A report must be made to the police within 24 hours and us within 30 days, or as soon as practicable. It must state that the insured has a legal action due to the accident. It must include facts to support the action. We may inspect any vehicle the insured was occupying.

2. **We** will not consider as an **uninsured motor vehicle**:

   a) a **motor vehicle** for which there is liability insurance or self-insurance applicable at the time of the accident;

   b) any vehicle in use as a residence or premises;

   c) any equipment or vehicle designed for use mainly off public roads;

   d) any **motor vehicle** insured under the Auto liability coverage of this policy; nor

   e) any **motor vehicle** furnished for the regular use of **you**, a resident, or a **relative**.

**Coverage exclusions**

This coverage does not apply to:

1. Any **motor vehicle** while used:

   a) to carry persons or property for a fee or compensation; or

   b) on a regular basis for retail or wholesale delivery, including but not limited to pizza, magazine, newspaper and mail delivery.

   Exclusion 1.a) does not apply to **motor vehicles** used in shared-expense car pools.

2. Any **motor vehicle** which any **insured**:

   a) uses without a reasonable belief of being entitled to do so;

   b) has stolen; or

   c) knows to have been stolen.

   An **insured** shall not be held to have a reasonable belief of being entitled to operate a **motor vehicle** if that person's license has been suspended, revoked, or never issued.

   This exclusion does not apply to the use of **your auto** by:

   a) **you**;

   b) a **relative**; or

   c) a business partner, employee, or agent of **you** or a **relative**.

3. Any of the following:

   a) judgments;

   b) costs;

   c) attorneys fees; or

   d) claims;

   for punitive or exemplary damages.

4. Directly or indirectly benefit any insurer or self-insurer under any disability benefits, or similar law with the exception of a workers' compensation law.



**Nationwide®**
is on your side

5. **Bodily injury** suffered while **occupying** a **motor vehicle** owned by **you** or a **relative** but not insured for Uninsured motorists coverage under this policy; nor to **bodily injury** from being hit by any such **motor vehicle**.

6. **Non-economic loss** of any **insured** who has elected or has deemed to have elected "Limited Tort" in accordance with the Pennsylvania Motor Vehicle Financial Responsibility Law.

7. **Bodily injury** of any **insured** if the **insured** settles, without **our** written consent, with a liable party.

8. **Bodily injury** suffered while **occupying** a **motor vehicle**:
   a) while used in an organized or prearranged competitive event, including but not limited to:
      (1) racing contest or event; or
      (2) speed contest or event; or
      (3) in practice or preparation for any racing or speed contest or event.
   b) while used in **performance testing** that is done on a closed road, or a race track, or a testing facility environment where the **insured** is not competing.

      **Performance testing** is when an **insured** uses any **motor vehicle** to:
      (1) test its performance in speed, handling; or
      (2) test or practice driver skills.

      **Performance testing** does not apply to student-driver training activities an **insured** participates in to obtain that person's state issued learners permit or drivers license. **Performance testing** also does not apply to driver training activities an **insured** participates in to complete that person's state sanctioned courses in motor vehicle accident prevention, defensive driving, or driver improvement.

9. **Bodily injury** arising directly or indirectly from the inhalation of, ingestion of, contact with, exposure to, existence of or presence of any fungi, algae, lichens, slime, mold, bacteria, wet or dry rot and any scents or by-products of these organisms, however produced. Fungi as used above include, but are not limited to any type or form of fungus, yeasts, mold, mildew, mycotoxins, spores, rust, smuts or fleshy fungi such as mushrooms, puffballs and coral fungi.

10. **Bodily injury** suffered while **occupying** a **motor vehicle**:
    a) owned by;
    b) furnished to; or
    c) available for the regular use of;

    **you** or a **relative**, but not insured for Auto liability coverage under this policy.  It also does not apply to **bodily injury** from being hit by any such **motor vehicle**.

11. **Bodily injury** suffered while engaged in the transportation or exchange of any illegal substance, or in connection with any criminal trade or transaction.  This exclusion applies to the operator or occupant of a **motor vehicle** so involved, and also to an **insured** so engaged as a pedestrian.

**Insured persons' duties**
1. The **insured** must:
   a) submit written proof of the claim to **us** as soon as practicable. It must be under oath, if required.  It must include details of:
      (1) the nature and extent of injuries;
      (2) treatment; and
      (3) any other facts which could affect the amount of payment.
   b) provide all facts of the accident and the names of all witnesses.


c) submit to oral examinations under oath as often as **we** require with good reason.

d) sign an authorization giving **us** access to the **insured's** first party medical file.

e) be examined by doctors, including doctors examining the **insured** for rehabilitation purposes, vocational specialists, dentists or other health care providers chosen by **us** as often as **we** require with good reason. Expenses incurred at **our** request will be paid by **us**.  At **our** request, the injured person or such person's legal representative must promptly authorize **us** to:

   (1)   speak with any doctor, dentist, or other health care provider who has provided treatment;

   (2)   read all medical history and reports of the injury;

   (3)   obtain copies of wage and medical reports and records;

   (4)   obtain copies of all medical, dental, and other health care bills as they are incurred; and

   (5)   speak with any employer regarding a wage loss claim.

Failure to do the above precludes recovery under this coverage.

2.  **We** require the **insured** to file suit against any and all liable parties to preserve and protect **our** subrogation rights. Failure to do so precludes recovery under this coverage.

3.  Where an **insured** brings legal action against another party for **bodily injury**, copies of any legal papers served in such action must be sent to **us** at once.

4.  The **insured** must:

   a) obtain **our** written consent to:

      (1)   settle any legal action brought against any liable party; or

      (2)   release any liable party.

   b) preserve and protect **our** right to subrogate against any liable party.

   Failure to do the above precludes recovery under this coverage.

**Our right to recovery**
This applies to the extent of any payment **we** make under this coverage.

1.  **We** will have first right to any amount the **insured** receives from any liable party.  The **insured** must:

   a) hold in trust for **us** his right to recover against any such party;

   b) do whatever is proper to secure such rights, and do nothing to prejudice them;

   c) furnish **us** all papers in any suit the **insured** files;

   d) do whatever is necessary to recover for **us** payments **we** have made under this coverage; and

   e) repay **us** out of any recovery for any payments **we** have made and any expenses **we** have incurred in the action.

2.  **Our** payment of a claim may result from the insolvency of an insurer.  If so, **we** have the right to recover from the insurer, but not its insured.

**Limits and conditions of payment**

***Amounts payable for uninsured motorists—bodily injury losses***
**Our** obligation to pay Uninsured motorists—bodily injury losses is limited to the amounts per person and per occurrence stated in the policy Declarations. The following conditions apply to these limits:

1.  The limit shown:

   a) for Uninsured motorists—bodily injury for any one person is for all covered damages, including all derivative claims, claimed by anyone arising out of and due to **bodily**



**Nationwide®**
is on your side

Case 2:20-cv-01322-ER   Document 10   Filed 03/26/20   Page 65 of 163

UNINSURED MOTORISTS

Page U5

**injury** to one person as a result of one occurrence.

The per-person limit is the total amount available when one person sustains **bodily injury**, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims, or any other claims made by anyone arising out of **bodily injury**, including death, to one person as a result of one occurrence.

b) for **bodily injury** for each occurrence is the total limit of **our** liability for all covered damages when two or more persons sustain **bodily injury**, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims, or any other claims arising out of **bodily injury**, including death, to two or more persons as a result of one occurrence. This total limit is subject to the limit for any one person.

2. Coverage applies as stated in the Declarations. The insuring of more than one person or vehicle under this policy does not increase **our** Uninsured motorists payment limits. In no event will any **insured** be entitled to more than the highest per-person limit applicable to any one **motor vehicle** under this policy or any other policy issued by **us**. However, if **your** Declarations show **you** have elected "Uninsured motorists—bodily injury Stacked" coverage, the sum of limits for **your autos** apply to **you** or a **relative** as stated in the Declarations.

3. The limit of liability under this coverage is reduced by any amount paid to the same person for the same accident under the Auto liability coverage of this policy.

4. **You** must comply with the terms of the policy before **you** may sue **us**. Suit filed against **us** must be brought in the county and state where the **insured** lived at the time of the accident. In the event of a judgment against **us** for Uninsured motorist benefits, including any award for Pa. R.C.P. No 238 delay damages, the **insured** cannot recover more than the applicable per person limit provided by the policy.

### *Other insurance*
1. If there is other insurance for **bodily injury** suffered by an **insured** while **occupying** a **motor vehicle** other than **your auto**, **our** coverage is excess over any other collectible:

   a) insurance;

   b) self insurance;

   c) proceeds from a governmental entity;

   d) sources of recovery other than workers' compensation benefits.

2. Except as stated above, if there is other insurance similar to this coverage under any other policy, **we** will be liable for only **our** share of the loss. **Our** share is **our** proportion of the total insurance limits for the loss.

3. If more than one policy applies, the total limits applicable will be considered not to exceed the highest limit amount of any one of them.

4. When the Declarations show **you** have elected "Uninsured motorists—bodily injury Stacked" coverage, the total limits applicable will be considered not to exceed the highest limit amount of any one of them for an **insured** other than **you** or a **relative**.

### *Duplicate payment*
**We** will make no duplicate payment to or for any **insured** for the same element of loss.

## Underinsured motorists—bodily injury

### Additional definition applicable to this coverage

*"Underinsured motor vehicle" — See definition in Coverage agreement section.*

### Coverage agreement

*You and a relative*
**We** will pay compensatory damages, including derivative claims, which are due by law to **you** or a **relative** from the owner or driver of an **underinsured motor vehicle** because of **bodily injury** suffered by **you** or a **relative**. Damages must result from an accident arising out of the:

1. ownership;

2. maintenance; or

3. use;

of the **underinsured motor vehicle**.

Coverage for **you** or a **relative** under this policy also extends to replacement automobiles and to newly acquired automobiles. If, however, the newly acquired automobile does not replace **your auto**, **you** must report the acquisition of the vehicle to **us** for this extension of coverage to apply.

*Other persons*
**We** will also pay compensatory damages , including derivative claims, which are due by law to other persons from the owner or driver of an **underinsured motor vehicle** because of **bodily injury** suffered while **occupying**:

1. **Your auto**.

2. A **motor vehicle you** do not own, while it is used as a temporary substitute for **your auto**. **Your auto** must be out of use because of:

   a) breakdown;    c) servicing; or

   b) repair;    d) loss.

*Recovery*
1. Before recovery, **we** and any injured party seeking protection under this coverage must agree on two points:

   a) whether there is a legal right to recover damages from the owner or driver of an **underinsured motor vehicle**; and if so,

   b) the amount of such damages.

2. Any judgment against the underinsured will be binding on **us** only if it has **our** written consent.

3. The injured party shall provide notice of an underinsured motorist claim within two years after the date of the accident. If the injured party fails to provide such notice, and this failure precludes **our** ability to subrogate against liable parties, coverage may be denied as provided in Insured persons' duties No. 2 below.

4. Where multiple policies apply, payment shall be made in the following order of priority:

   a) a policy covering a **motor vehicle** occupied by the injured person at the time of the accident.

   b) a policy covering a **motor vehicle** not involved in the accident with respect to which the injured person is an **insured**.

5. Where multiple sources of equal priority apply, the **insured** against whom a claim is asserted first under the priorities set forth in 4. above shall process and pay the claim as if wholly responsible.  **We** are thereafter entitled to recover contribution pro rata from the other insurer for the benefits paid and the cost of processing the claim.



**Nationwide®**
is on your side

*Definition*

1. An **underinsured motor vehicle** is a **motor vehicle** for which bodily injury liability coverage, bonds or insurance are in effect. However, their total amount is insufficient to pay the damages an **insured** is entitled to recover. **We** will pay damages that exceed such total amount.

2. **We** will not consider as an **underinsured motor vehicle**:

   a) a **motor vehicle** for which there is sufficient liability insurance or self-insurance applicable at the time of the accident to pay loses and damages;

   b) any vehicle in use as a residence or premises;

   c) any equipment or vehicle designed for use mainly off public roads;

   d) any **motor vehicle** insured under the Auto liability coverage of this policy; nor

   e) any **motor vehicle** furnished for the regular use of **you**, a resident, or a **relative**.

**Coverage exclusions**

This coverage does not apply to:

1. Any **motor vehicle** while used:

   a) to carry persons or property for a fee or compensation; or

   b) on a regular basis for retail or wholesale delivery, including but not limited to pizza, magazine, newspaper and mail delivery.

   Exclusion 1.a) does not apply to **motor vehicles** used in shared-expense car pools.

2. Any **motor vehicle** which any **insured**:

   a) uses without a reasonable belief of being entitled to do so;

   b) has stolen; or

   c) knows to have been stolen.

   An **insured** shall not be held to have a reasonable belief of being entitled to operate a **motor vehicle** if that person's license has been suspended, revoked, or never issued.

   This exclusion does not apply to the use of **your auto** by:

   a) **you**;

   b) a **relative**; or

   a business partner, employee, or agent of **you** or a **relative**.

3. Any of the following:

   a) judgments;

   b) costs;

   c) attorneys fees; or

   d) claims;

   for punitive or exemplary damages.

4. Directly or indirectly benefit any insurer or self-insurer under any disability benefits, or similar law with the exception of a workers' compensation law.

5. **Bodily injury** suffered while **occupying** a **motor vehicle** owned by **you** or a **relative** but not insured for Underinsured motorists coverage under this policy; nor to **bodily injury** from being hit by any such **motor vehicle**.

6. **Non-economic loss** of any **insured** who has elected or has deemed to have elected "Limited Tort" in accordance with the Pennsylvania Motor Vehicle Financial Responsibility Law.

7. **Bodily injury** of any **insured** if the **insured** settles, without **our** written consent, with a liable party.


8. **Bodily injury** suffered while **occupying** a **motor vehicle**:

   a) while used in an organized or prearranged competitive event, including but not limited to:

   (1) racing contest or event; or

   (2) speed contest or event; or

   (3) in practice or preparation for any racing or speed contest or event.

   b) while used in **performance testing** that is done on a closed road, or a race track, or a testing facility environment where the **insured** is not competing.

   **Performance testing** is when an **insured** uses any **motor vehicle** to:

   (1) test its performance in speed, handling; or

   (2) test or practice driver skills.

   **Performance testing** does not apply to student-driver training activities an **insured** participates in to obtain that person's state issued learners permit or drivers license. **Performance testing** also does not apply to driver training activities an **insured** participates in to complete that person's state sanctioned courses in motor vehicle accident prevention, defensive driving, or driver improvement.

9. **Bodily injury** arising directly or indirectly from the inhalation of, ingestion of, contact with, exposure to, existence of or presence of any fungi, algae, lichens, slime, mold, bacteria, wet or dry rot and any scents or by-products of these organisms, however produced. Fungi as used above include, but are not limited to any type or form of fungus, yeasts, mold, mildew, mycotoxins, spores, rust, smuts or fleshy fungi such as mushrooms, puffballs and coral fungi.

10. **Bodily injury** suffered while **occupying** a **motor vehicle**:

    a) owned by;

    b) furnished to; or

    c) available for the regular use of;

    **you** or a **relative**, but not insured for Auto liability coverage under this policy.  It also does not apply to **bodily injury** from being hit by any such **motor vehicle**.

11. **Bodily injury** suffered while engaged in the transportation or exchange of any illegal substance, or in connection with any criminal trade or transaction.  This exclusion applies to the operator or occupant of a **motor vehicle** so involved, and also to an **insured** so engaged as a pedestrian.

**Insured persons' duties**

1. The **insured** must:

   a) submit written proof of the claim to **us** as soon as practicable. It must be under oath, if required.  It must include details of:

   (1) the nature and extent of injuries;

   (2) treatment; and

   (3) any other facts which could affect the amount of payment.

   b) provide all facts of the accident and the names of all witnesses.

   c) submit to oral examinations under oath as often as **we** require with good reason.

   d) sign an authorization giving **us** access to the **insured's** first party medical file.

   e) be examined by doctors, including doctors examining the **insured** for rehabilitation purposes, vocational specialists, dentists or other health care providers chosen by **us** as often as **we** require with good reason. Expenses incurred at **our** request will be paid by **us**.  At **our** request, the injured person or such person's legal representative must promptly authorize **us** to:

   (1) speak with any doctor, dentist, or other health care provider who has provided treatment;



    (2)  read all medical history and reports of the injury;

    (3)  obtain copies of wage and medical reports and records;

    (4)  obtain copies of all medical, dental, and other health care bills as they are incurred; and

    (5)  speak with any employer regarding a wage loss claim.

Failure to do the above precludes recovery under this coverage.

2.  **We** require the **insured** to file suit against any and all liable parties to preserve and protect **our** subrogation rights. Failure to do so precludes recovery under this coverage.

3.  Where an **insured** brings legal action against another party for **bodily injury**, copies of any legal papers served in such action must be sent to **us** at once.

4.  The **insured** must:

    a)  obtain **our** written consent to:

        (1)  settle any legal action brought against any liable party; or

        (2)  release any liable party.

    b)  preserve and protect **our** right to subrogate against any liable party.

Failure to do the above precludes recovery under this coverage.

***Our right to recovery***
This applies to the extent of any payment **we** make under this coverage.

1.  **We** will have first right to any amount the **insured** receives from any liable party.  The **insured** must:

    a)  hold in trust for **us** his right to recover against any such party;

    b)  do whatever is proper to secure such rights, and do nothing to prejudice them;

    c)  furnish **us** all papers in any suit the **insured** files;

    d)  do whatever is necessary to recover for **us** payments **we** have made under this coverage; and

    e)  repay **us** out of any recovery for any payments **we** have made and any expenses **we** have incurred in the action.

2.  **Our** payment of a claim may result from the insolvency of an insurer.  If so, **we** have the right to recover from the insurer, but not its insured.

**Limits and conditions of payment**

***Amounts payable for Underinsured motorists—bodily injury losses***
**Our** obligation to pay Underinsured motorists—bodily injury losses is limited to the amounts per person and per occurrence stated in the policy Declarations. The following conditions apply to these limits:

1.  The limit shown:

    a)  for Underinsured motorists—bodily injury for any one person is for all covered damages, including all derivative claims, claimed by anyone arising out of and due to **bodily injury** to one person as a result of one occurrence.

    The per-person limit is the total amount available when one person sustains **bodily injury**, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims, or any other claims made by anyone arising out of **bodily injury**, including death, to one person as a result of one occurrence.

    b)  for **bodily injury** for each occurrence is the total limit of **our** liability for all covered damages when two or more persons sustain **bodily injury**, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims, or any other claims arising out of **bodily injury**, including death, to



two or more persons as a result of one occurrence. This total limit is subject to the limit for any one person.

2. Coverage applies as stated in the Declarations. The insuring of more than one person or vehicle under this policy does not increase **our** Underinsured motorists payment limits. In no event will any **insured** be entitled to more than the highest per-person limit applicable to any one **motor vehicle** under this policy or any other policy issued by **us**. However, if **your** Declarations show **you** have elected "Underinsured motorists—bodily injury Stacked" coverage, the sum of limits for **your autos** apply to **you** or a **relative** as stated in the Declarations.

3. The limit of liability under this coverage is reduced by any amount paid to the same person for the same accident under the Auto liability coverage of this policy.

4. No payment will be made until the limits of all other bodily injury liability insurance and bonds that apply have been exhausted by payments or judgments.

5. An **insured** who recovers damages for an uninsured motorists claim cannot recover damages for an underinsured motorists claim for the same accident.

6. **You** must comply with the terms of the policy before **you** may sue **us**. Suit filed against **us** must be brought in the county and state where the **insured** lived at the time of the accident. In the event of a judgment against **us** for Underinsured motorist benefits, including any award for Pa. R.C.P. No 238 delay damages , the **insured** cannot recover more than the applicable per person limit provided by the policy.

*Other insurance*
1. If there is other insurance for **bodily injury** suffered by an **insured** while **occupying** a **motor vehicle** other than **your auto**, **our** coverage is excess over any other collectible:

   a) insurance;

   b) self insurance;

   c) proceeds from a governmental entity;

   d) sources of recovery other than workers' compensation benefits.

2. Except as stated above, if there is other insurance similar to this coverage under any other policy, **we** will be liable for only **our** share of the loss. **Our** share is **our** proportion of the total insurance limits for the loss.

3. If more than one policy applies, the total limits applicable will be considered not to exceed the highest limit amount of any one of them.

4. When the Declarations show you have elected "Underinsured motorists—bodily injury Stacked" coverage, the total limits applicable will be considered not to exceed the highest limit amount of any one of them for an **insured** other than **you** or a **relative**.

*Duplicate payment*
**We** will make no duplicate payment to or for any **insured** for the same element of loss.

**Nationwide®**
is on your side

## General policy conditions

**We**, **you**, and anyone insured by this policy are bound by and must comply with all the terms, conditions and obligations of the policy. The following are policy conditions:

1. **How your policy may be changed**
   a) Any terms of this policy which may be in conflict with statutes of the state in which the policy is issued are hereby amended to conform.
   b) Any **insured** will automatically have the benefit of any extension or broadening of coverage in this policy, as of the effective date of the change, provided it does not require more premium.
   c) A waiver of any part or condition of this policy must be in writing by **us** to be valid.
   d) No other changes may be made in the terms of this policy except by endorsement or policy revision.
   e) The premium for each coverage is based on information in **our** possession. Any change or correction in this information will allow **us** to make an adjustment of the premium as of the date the change is effective.
   f) The **policyholder** has a duty to notify **us** as soon as possible of any change which may affect the premium or the risk under this policy. This includes, but is not limited to, changes in:
      (1) the principal garaging address of the insured vehicle(s), which must be reported to **us** within 30 days of the date the address change becomes effective;
      (2) drivers;
      (3) use of the insured vehicle(s);
      (4) desired coverages, **deductibles**, or limits; or
      (5) ownership.

2. **Optional payment of premium in installments**
   The **policyholder** may pay the premium for this policy in installments, under terms and conditions approved where required by the Insurance Department. For each separate installment payment there is an installment service charge. **Your** agent can provide more information.

3. **Renewal**
   This policy is written for the period of time shown on the Declarations. **We** will renew it for successive policy periods, subject to the following conditions:
   a) Renewal will be in accordance with policy forms, rules, rates, fees, and rating plans in use by **us** at the time.
   b) All premiums, premium installment payments, and fees must be paid when due, whether payable directly to **us** or through any premium finance plan.
   c) Prior to the expiration of a policy term for which premium has been paid, **we** will mail a notice to the **policyholder** for the premium required to renew or maintain the policy in effect. **We** will mail this notice to the address last known to **us**.

4. **Non-renewal**
   a) At the end of each 12-month period after the first effective date of the policy or any coverage, **we** will have the right to refuse to renew the entire policy or any of its coverages.
   b) If **we** elect not to renew, **we** will mail or deliver written notice to the **policyholder** 60 days in advance of the date **our** action will take effect.  Mailing of this notice to the last known address or delivery of it to the **policyholder** will be considered proof of notice.
   c) For non-payment of renewal premium, coverage will terminate at the end of the last policy period for which premium was paid.

5. **Cancellation during policy period**
   a) Any named insured may cancel this policy or any of its coverages orally or by written notice to **us** of the future date of cancellation desired. However, If an organization is



listed exclusively as the named insured, as shown in the Declarations for this policy, the sole proprietor, majority shareholder or majority member of an organization, or general partner of a family limited partnership may cancel this policy or any of its coverages.  Such action will be binding on any **insured**. **We** will calculate any returned premium according to the rules, rates, fees and forms in effect and on file if required, for **our** use in **your** state.

b) Up to the time this policy or any coverage has been in effect less than 60 days, **we** may cancel for any reason allowed by law. **We** may cancel by mailing notice to the **policyholder** 15 days prior to the effective date of cancellation. While the date **we** mail this notice must be within the 60 days, the effective date of cancellation need not be.

c) After any coverage of this policy has been in force 60 days, **our** right to cancel such coverage during the policy period is limited.

   (1) **We** may cancel during an annual policy period for any of the following reasons:

      (a) if premiums, premium installment payments, and fees are not  paid when due, whether payable directly to **us** or through any premium finance plan.

      (b) if the driver's license or **motor vehicle** registration of any named insured has been suspended or revoked during the policy period;

      (c) if it is determined that any **insured** has concealed a material fact, has made a material allegation contrary to fact, or has made a misrepresentation of a material fact and that such concealment, allegation or misrepresentation was material to the acceptance of the risk by **us**.

   (2) **We** must mail notice to the **policyholder**:

      (a) 15 days in advance of termination for nonpayment of premium.

      (b) 15 days in advance of termination for loss of license or of **motor vehicle** registration.

      (c) 60 days in advance of termination for concealment or misrepresentation.

d) In any case of cancellation by **us** under items b) and c) above, **our** mailing of notice to the **policyholder's** last known address will constitute proof of notice as of the date **we** mail it. **We** will retain premium for days covered during the policy period.

e) Premium refund, if any due, will be made as soon as practicable after the date of cancellation. Mailing or delivery of **our** check will constitute tender of refund.

## 6. Assignability

No interest in this policy can be transferred without **our** written consent. However, if the **policyholder** dies, coverage will stay in force for the rest of the policy period for:

a) anyone having proper temporary custody of **your auto**; and

b) the appointed legal representative.

## 7. Dividends

The **policyholder** is entitled to any dividends which are declared by the Board of Directors and are applicable to coverages in this policy.

## 8. If you become bankrupt

Bankruptcy or insolvency of any **insured** will not relieve **us** of any obligation under the terms of this policy.

## 9. Fraud and misrepresentation

a) THIS POLICY WAS ISSUED IN RELIANCE ON THE INFORMATION **YOU** PROVIDED AT THE TIME OF **YOUR** APPLICATION FOR INSURANCE COVERAGE. WITHIN THE FIRST 60 DAYS THIS POLICY HAS BEEN IN EFFECT, **WE** MAY RESCIND COVERAGE UNDER THIS POLICY, DENY COVERAGE UNDER THIS POLICY, OR, AT **OUR** ELECTION, ASSERT ANY OTHER REMEDY AVAILABLE UNDER APPLICABLE LAW, IF **YOU** OR ANY INSURED PERSON SEEKING COVERAGE UNDER THIS POLICY, KNOWINGLY, OR UNKNOWINGLY CONCEALED, MISREPRESENTED OR OMITTED ANY MATERIAL FACT OR ENGAGED IN FRAUDULENT CONDUCT AT THE TIME THE APPLICATION WAS MADE OR AT ANY TIME DURING THE POLICY PERIOD.



**Nationwide®**
is on your side

b) AFTER THE FIRST 60 DAYS THIS POLICY HAS BEEN IN EFFECT, AND IF:

   (1) **YOU** OR ANY INSURED PERSON SEEKING COVERAGE UNDER THIS POLICY KNOWINGLY MISREPRESENTED OR OMITTED ANY MATERIAL FACT; AND

   (2) SUCH MISREPRESENTATION OR OMISSION COULD NOT HAVE REASONABLY BEEN DISCOVERED BY **US** IN LESS THAN 60 DAYS; AND

   (3) THE UNDISCLOSED INFORMATION WOULD HAVE PROMPTED **US** TO REFUSE ACCEPTANCE OF THE RISK;

   **WE** MAY VOID COVERAGE UNDER THIS POLICY, DENY COVERAGE UNDER THIS POLICY, OR, AT **OUR** ELECTION, ASSERT ANY OTHER REMEDY AVAILABLE UNDER APPLICABLE LAW.

   IF **WE** VOID COVERAGE UNDER THIS POLICY, THIS SHALL NOT AFFECT THE LIABILITY COVERAGE OF THIS POLICY.

c) **WE** DO NOT PROVIDE COVERAGE TO ANY **INSURED** UNDER THIS POLICY WHEN **YOU** OR ANY OTHER PERSON OR ORGANIZATION SEEKING COVERAGE OR PAYMENT UNDER THE POLICY HAS CONCEALED OR MISREPRESENTED ANY MATERIAL FACT OR ENGAGED IN FRAUDULENT CONDUCT IN CONNECTION WITH THE FILING OR SETTLEMENT OF ANY CLAIM UNDER THIS POLICY.

d) NO PERSON OR ORGANIZATION WHO ENGAGES IN FRAUDULENT CONDUCT IN CONNECTION WITH THE APPLICATION PROCESS, AN ACCIDENT OR FILING A CLAIM, OR ENGAGES IN ANY MATERIAL MISREPRESENTATION REGARDING THE ISSUANCE OF THIS POLICY SHALL BE ENTITLED TO RECEIVE ANY PAYMENT UNDER THIS POLICY AT ANY TIME.

## 10. Legal action limitations

No legal action may be brought against **the company** concerning any of the coverages provided in this policy until the **insured** has fully complied with all terms of the policy.

Under the Auto liability coverages of this policy, no legal action may be brought against **the company** until judgment against the **insured** has been finally determined after trial. This policy does not give anyone the right to make **us** a party to any action to determine the liability of an **insured**.

Under the Uninsured motorists—bodily injury or Underinsured motorists—bodily injury coverage of this policy, any legal action  against **us** must begin within a certain time period. The proper papers for any action must be filed, within the time limit allowed by law:

a) for death actions if the claim involves death of an **insured**; or

b) for bodily injury actions if the claim involves injury to an **insured** but not death.

## 11. Subrogation

**We** have the right of subrogation under the:

a) Physical damage;

b) Auto liability;

c) Uninsured motorists—bodily injury; and

d) Underinsured motorists—bodily injury;

coverages in this policy and its endorsements.  This means that after paying a loss to **you** or others under this policy, **we** will have the **insured's** right to sue for or otherwise recover such loss from anyone else who may be held liable.  Also, **we** may require reimbursement from the **insured** out of any settlement or judgment that duplicates **our** payments. These provisions will be applied in accordance with state law.  Any **insured** will sign such papers, and do whatever else is necessary to transfer these rights to **us**, and will do nothing to prejudice them.


If payment of a claim under Uninsured motorists coverage or Underinsured motorists coverage arises out of the insolvency of an insurer, **we** will have right of recovery against the insurer or its receiver, but not its insured.

**We** are not entitled to recovery under Uninsured motorists or Underinsured motorists coverage until the **insured** has been fully compensated for damages.

**12. Non-sufficient funds and late payment charges**
**The company** reserves the right to impose a fee for any premium payment that is unable to be processed due to non-sufficient funds, or if there are non-sufficient funds in an account that is being utilized for electronic funds transfer (EFT) payments, or if the premium is not paid by the due date. This is under the terms and conditions approved where required by the Department of Insurance.

If the initial premium payment for this policy is unable to be processed due to non-sufficient funds as indicated above, **we** reserve the right to void the policy back to the date of inception. When **we** void the policy, **we** will not be liable for any claims which occurred during the policy period. This includes any claims reported to **us** prior to receiving notice of the non-sufficient funds payment.

**13. Applicable contract law**
The contract law of the state where the policy was issued governs the interpretation of this contract, except for the Mutual policy conditions and proxy, which shall be governed by the insuring company's state of domicile.

**14. Interest rate**
If a court determines that interest on judgment, decree, or order for payment of money is required by law on amounts due and payable under the policy to an **insured**, or if it is otherwise determined by **us** that **you** are entitled to interest on a payment from **us**, it will be paid at the rate of two percent per annum, unless another rate is required by law.

**15. Joint and individual interests**
If there is more than one person who is a named insured as shown in the Declarations for this policy, any such person may cancel or change this policy. However, if an organization is listed exclusively as the named insured, as shown in the Declarations for this policy, the sole proprietor, majority shareholder or majority member of an organization, or general partner of a family limited partnership may cancel or change this policy. Such action will be binding on any **insured**.

## Mutual policy conditions and proxy
(Applicable only to policies issued by Nationwide Mutual Insurance Company - Nationwide Mutual Fire Insurance Company.)

If this policy is issued by Nationwide Mutual Insurance Company or Nationwide Mutual Fire Insurance Company, the **policyholder** is a member of **the company** issuing the policy while this or any other policy issued by one of these two companies is in force. While a member, the **policyholder** is entitled to one vote only - regardless of the number of policies issued to the **policyholder** - either in person or by proxy at meetings of members of said company.

By accepting this policy of insurance, the member appoints the Chairman of the Board of Directors of **the company**, with full power of substitution, to be the member's proxy, and such individual is authorized and empowered to vote on behalf of the member on all matters presented for vote at any membership meeting of **the company**. The proxy will continue in force for the full duration of this policy or any renewal thereof issued by **the company** to the member. This proxy may be revoked at any time by providing written notice of such revocation to: Secretary, Nationwide Mutual Insurance Company/Nationwide Mutual Fire Insurance Company, Attention: Proxy Revocation, One Nationwide Plaza, Columbus, Ohio 43215. The member may also revoke this proxy in person at any meeting of the members by so announcing in the open meeting before any vote is taken or the proxy authority is exercised.

**Nationwide®**
is on your side

This proxy granted to the Chairman of the Board of **the company** will be superseded by any other valid proxy presented to the Secretary of **the company** in accordance with the Amended and Restated Bylaws of **the company** under Article II, Section 7.

The annual meeting of members of Nationwide Mutual Insurance Company will be held at the Home Office at Columbus, Ohio, at 10 a.m. on the first Thursday of April. The annual meeting of members of Nationwide Mutual Fire Insurance Company will be held at the Home Office at Columbus, Ohio, at 9:30 a.m. on the first Thursday of April. If the Board of Directors of either of the above companies should elect to change the time or place of meeting, that company will mail notice of the change to the **policyholder** at the address last known to it. **The company** will mail this notice at least 10 days in advance of the meeting date.

This policy is non-assessable, meaning that the **policyholder** is not subject to any assessment beyond the premiums the above companies require for each policy term.

**IN WITNESS WHEREOF:** The company listed in the Declarations has caused this policy to be signed and countersigned as may be required by a duly authorized representative of the company.



**President**

**Secretary**

**Nationwide®**
is on your side

Nationwide Insurance Companies/Home Office:  Columbus, Ohio  43215-2220
**Nationwide Mutual Insurance Company • Nationwide Mutual Fire Insurance Company •**
**Nationwide Property & Casualty Insurance Company • Nationwide General Insurance Company**

**Endorsement 3417**



# *Total Loss Deductible Waiver Endorsement*

**Please attach this important addition to your auto policy.**

Coverage is subject to all terms and conditions of the policy, except as changed by this endorsement.

With this endorsement, Physical Damage (Comprehensive and Collision Coverages) is amended to provide a total **loss deductible** waiver.

## Total Loss Deductible Waiver

In the event of a total **loss** to **your auto, our** payment will not be reduced by the **deductible** amount as shown in the Declarations.

This endorsement applies as stated in the policy Declarations.

This endorsement is issued by the company shown in the Declarations as the issuing company.

**Nationwide Mutual Insurance Company and Affiliated Companies**
**One Nationwide Plaza  Columbus, OH  43215-2220**
**Hearing or Voice Impaired:  1-800-622-2421 (TTY only)**
**nationwide.com**

Nationwide, the Nationwide N and Eagle and Nationwide is on your side are service marks of
Nationwide Mutual Insurance Company.  © 2015 Nationwide

**Endorsement 3536A**

**Nationwide** is on your side

# *Vanishing Deductible*

**Please attach this important addition to your auto policy.**

Coverage is subject to all terms and conditions of the policy, except as changed by this endorsement. With this endorsement, **your** policy's Physical Damage (Comprehensive and Collision Coverages) is amended as follows:

## ADDITIONAL DEFINITIONS APPLICABLE TO THESE COVERAGES

"VANISHING DEDUCTIBLE" means a dollar amount that serves to reduce the Physical Damage **deductibles** on this policy.

### Vanishing Deductible

In the event of a covered **loss** that occurs more than 30 days after the initial inception of this endorsement, **we** will reduce any Physical Damage coverage **deductible** by the **vanishing deductible** credit amount as shown in the Declarations. **Your** policy can earn a **deductible** credit amount up to a maximum of $500.

The **vanishing deductible** credit amount applied will not be greater than the applicable Physical Damage coverage **deductible**. There is no cash value earned.

**Your vanishing deductible** cannot be applied to any other policy issued by **us.**

This endorsement applies as stated in the policy Declarations.

This endorsement is issued by the company shown in the Declarations as the issuing company.

**Nationwide Mutual Insurance Company and Affiliated Companies**
**One Nationwide Plaza  Columbus, OH  43215-2220**
**nationwide.com**

Nationwide, the Nationwide N and Eagle and Nationwide is on your side are service marks of Nationwide Mutual Insurance Company.  © 2015 Nationwide

© 2012, 2010 Nationwide Mutual Insurance Company, All Rights Reserved

V-3536-A



**Amendatory endorsement — Benefits (Pennsylvania)**

**Please attach this important addition to your policy.**

The Policy is amended to include the following language:

Coverage is subject to all terms and conditions of the policy, except as changed by this endorsement.

The following terms, as defined, apply to this endorsement:

"NATIONWIDE" means the company issuing this policy as listed in the Declarations and all affiliated companies.

"PARTICIPANT" means the individual natural person identified as the first named insured in the Declarations.

The "PROGRAM ADMINISTRATOR" means American Express Travel Related Services Company Inc.

The "Reward Program" means the Plenti rewards program operated by the **Program Administrator**.

**Nationwide** will provide the **participant** the opportunity to participate in the **Reward Program**. The **participant** will have the option of receiving benefits within the **Reward Program** on the basis of premiums paid and may, at any time during which they are a **participant**, elect to either participate or not participate in the **Reward Program**.

A **participant** who voluntarily elects to enroll in the **Reward Program** and provides their **Reward Program** membership number to **Nationwide** will receive **Reward Program** points in relation to their policy premium. **Nationwide** will not accept **Reward Program** points as payment of insurance premiums. **Reward Program** terms and conditions will apply and the **Program Administrator** will apply such terms and conditions at its sole discretion.

**Nationwide** may also periodically make special offers to award **Reward Program** points to **Reward Program** members who complete an insurance quote for this policy. Such points will only be awarded if the **Reward Program** member provides their **Reward Program** identifier at the time of the quote, fully completes the quote for the promoted insurance product, meets the product's eligibility requirements as necessary to complete the quote, and accurately provides all information and consents necessary to complete the insurance quote process. **Nationwide** will typically notify the **Reward Program** and the **Reward Program** member of an award of promotional points within approximately 48 hours after the promotional quote is completed. Promotional offers will be available for a limited time. Any other terms of the promotional offers will be identified on the offer.

Additional information and the specific terms of the **Reward Program** are available at www.nationwide.com and www.plenti.com or by phoning Plenti at 1-855-753-6841, Monday through Saturday, 9am - 9pm ET. A list of available offers can be found at www.nationwide.com/plenti-terms.jsp. Benefits may be modified or discontinued at the discretion of **Nationwide** and/or the **Program Administrator**.

This endorsement applies as stated in the policy Declarations.

This endorsement is issued by the company shown in the Declarations as the issuing company.

**Cas. 6813-A**

*Nationwide, the Nationwide N and Eagle and Nationwide is on your side are service marks of Nationwide Mutual Insurance Company. ©2015 Nationwide*



## Endorsement 3590 — Amendatory endorsement

**Please attach this important addition to your auto policy.**

With this endorsement, the policy is amended as follows:

**Uninsured motorists — bodily injury**

**Coverage exclusions**
Exclusion 5. is deleted and replaced by the following:

5. **Bodily injury** suffered while **occupying** a **motor vehicle** owned by **you** or a **relative** but not insured for Uninsured motorists coverage under this policy; nor to **bodily injury** from being hit by any such **motor vehicle**. If **you** purchased 'Uninsured motorists — bodily injury Stacked' coverage, this exclusion does not apply to **bodily injury** suffered while **occupying** or struck by a **motor vehicle** owned by **you** or a **relative** that is insured for Uninsured motorists coverage under any policy issued by **us** or any affiliated company.

**Underinsured motorists — bodily injury**

**Coverage exclusions**
Exclusion 5. is deleted and replaced by the following:

5. **Bodily injury** suffered while **occupying** a **motor vehicle** owned by **you** or a **relative** but not insured for Underinsured motorists coverage under this policy; nor to **bodily injury** from being hit by any such **motor vehicle**. If **you** purchased 'Underinsured motorists — bodily injury Stacked' coverage, this exclusion does not apply to **bodily injury** suffered while **occupying** or struck by a **motor vehicle** owned by **you** or a **relative** that is insured for Underinsured motorists coverage under any policy issued by **us** or any affiliated company.

This endorsement applies as stated in the policy Declarations.

This endorsement is issued by the company shown in the Declarations as the issuing company.

**V-3590**

©2015 Nationwide Mutual Insurance Company, All Rights Reserved / Nationwide Mutual Insurance Company and Affiliated Companies / One Nationwide Plaza Columbus, OH 43215
Nationwide, the Nationwide N and Eagle and Nationwide is on your side are service marks of Nationwide Mutual Insurance Company. ©2015 Nationwide



## Endorsement 3573 — Loss of use — rental days plus (Pennsylvania)

**Please attach this important addition to your auto policy.**

Coverage is subject to all terms and conditions of the policy, except as changed by this endorsement.

*Additional definitions applicable to these coverages*

"COLLISION REPAIR SERVICE PROGRAM" means **our** current designated network of repair facilities that have agreed with **us** to provide guaranteed vehicle related repair services to **our** customers.

"GLASS PROGRAM" means **our** designated vendors and/or network of glass repairers that have agreed with **us** to provide guaranteed vehicle glass services to **our** customers.

"RENTAL PROGRAM PROVIDER" means **our** designated vendors or network of vendors that have agreed with **us** to provide rental vehicles to **our** customers.

Loss of use auto rental expense coverage is subject to the provisions of the policy that apply to the Comprehensive and/or Collision coverages. The most **we** will pay under Loss of use auto rental expense coverage for all Covered expenses incurred by all persons as a result of one accident is shown in the Declarations. Coverage applies only if this endorsement was in effect at the time of a covered Comprehensive or Collision **loss**.

Any expense payable under Loss of use auto rental expense coverage shall be reduced to the extent it is payable under the Comprehensive or Collision coverages of the policy.

Rental days plus auto rental expense is subject to the provisions of the policy that apply to the Comprehensive and/or Collision coverages. When **you** utilize Rental days plus auto rental expense coverage, **your** maximum daily limit stated in the Declarations continues until **your auto** is repaired including a reasonable time thereafter. In the event **your auto** is determined to be a total **loss** after repairs have begun at a **Collision repair service program** facility, coverage continues for a reasonable amount of time after a total **loss** settlement is agreed to, not to exceed 30 days after the offer of the total **loss** settlement. Coverage applies only if this endorsement was in effect at the time of a covered Comprehensive or Collision **loss**.

Any expense payable under Rental days plus auto rental expense coverage shall be reduced to the extent it is payable under the Comprehensive or Collision coverages of the policy.

COVERED EXPENSES are either:

1. **Loss of use auto rental expense**

   **We** will pay **you** for auto rental expense incurred by **you** or a **relative** if unable to use **your auto** because of a covered Comprehensive or Collision **loss**.

   Auto rental expense is the cost of renting one vehicle from a rental agency or a licensed garage. Subject to the coverage limit, reimbursement is limited to a maximum daily payment. The coverage limit and daily payment amounts are shown in the Declarations. This expense must be incurred within a certain time period. It begins when **your auto** cannot be operated due to a covered **loss**; or if **your auto** can be operated, when left at a shop for agreed repairs. It continues:

   a) for 30 consecutive days; or

   b) until **your auto** is repaired or a reasonable time thereafter; or

   c) for a reasonable amount of time after a total **loss** settlement is agreed to;

   whichever comes first.

   Included in this expense is the reimbursement of any **deductible you** are required to pay

**V-3573**



**us** as a result of a covered **loss** that occurs while in a rental auto due to a covered Comprehensive or Collision **loss**.

Also included in this expense is reimbursement of certain expenses incurred by **you** or a **relative** if unable to use **your auto** because of a covered Comprehensive or Collision **loss**. This **loss** must occur more than 50 miles from **your** home residence.  The expenses covered are:

a) commercial transportation fares for an **insured** to continue to his/her destination or home residence.

b) extra meals and lodging needed because the covered **loss** to **your auto** causes a delay en route.  The expenses must be incurred between the time of **loss** and the arrival of the **insured** at **your** residence or destination or by the end of the fifth day, whichever occurs first.

c) extra meals, lodging, and commercial transportation costs incurred by **you** or a person **you** choose to drive **your auto** from the place of repair to **your** destination or home residence.

2. **Rental days plus auto rental expense**

**We** will pay **you** for auto rental expense incurred by **you** or a **relative** if unable to use **your auto** because of a covered Comprehensive or Collision **loss** when **we** determine **your auto** is repairable and **you** agree to use a repair facility and glass vendor, as applicable, that participates in **our Collision repair service program** or **our Glass program** and use a rental vehicle provided by **our Rental program provider**.  This coverage begins when **your auto** cannot be operated due to a covered **loss**.  If **your auto** can be operated, coverage begins when left at **our Collision repair service program** or **Glass program** vendor's facility for agreed repairs.  In the event **your auto** is determined to be a total **loss** after repairs have begun, coverage continues for a reasonable amount of time after a total **loss** settlement is agreed to, not to exceed 30 days after the offer of the total **loss** settlement.

When **you** use Rental days plus auto rental expense **we** will reimburse any **deductible**, up to the Loss of use — rental days plus per accident limit stated in the Declarations, that **you** are required to pay **us** as a result of a covered **loss** that occurs while in a rental auto due to a covered Comprehensive or Collision **loss**.

**We** will further reimburse **you** from the Loss of use — rental days plus per accident limit for certain expenses incurred by **you** or a **relative** if unable to use **your auto** because of a covered Comprehensive or Collision **loss**.  This **loss** must occur more than 50 miles from **your** home residence.  The expenses covered are:

a) commercial transportation fares for an **insured** to continue to his/her destination or home residence.

b) extra meals and lodging needed when the covered **loss** to **your auto** causes a delay en route.  The expenses must be incurred between the time of **loss** and the arrival of the **insured** at **your** residence or destination or by the end of the fifth day, whichever occurs first.

c) extra meals, lodging, and commercial transportation costs incurred by **you** or a person **you** choose to drive **your auto** from the place of repair to **your** destination or home residence.

This endorsement applies as stated in the policy Declarations.

This endorsement is issued by the company shown in the Declarations as the issuing company.

**V-3573**

©2011 Nationwide Mutual Insurance Company, All Rights Reserved / Nationwide Mutual Insurance Company and Affiliated Companies / One Nationwide Plaza Columbus, OH 43215
Nationwide, the Nationwide N and Eagle and Nationwide is on your side are service marks of Nationwide Mutual Insurance Company. © 2015 Nationwide

Exhibit 2

# EXHIBIT 2

# Certification

I, (Brett Sutton)

As a duly authorized Nationwide Insurance associate entrusted with oversight of the system of record from which this copy was produced, based upon information and belief; certify under the penalty of perjury that this attached copy of the Declaration pages on policy number **PPDM0053153540 (9/10/16)** was made at or near the time of certification, as part of regularly conducted business activities, and is a true and accurate copy of the official record kept as part of regular business activities**.**

Date:    January 8, 2020

Signature

_Brett Sutton_

_____Brett Sutton_____
Printed Name

__Processor, Imaging_____
Job Title

**Nationwide®**
is on your side

**AGENCY - 37 - 33579**
ASSUREDPARTNERS OF NEW JERSEY
WILKES BARRE PA  18702
570-819-2000

DEPOSITORS INSURANCE COMPANY
1100 LOCUST ST DEPT 1100
DES MOINES IA  50391-1100

D-001707      000101
SYLVESTER,  SALVATORE
SYLVESTER,  BEVERLY
1544  SUMMIT  LAKE  RD
CLARKS  SUMMIT  PA  18411-9103

**PERSONAL AUTO POLICY NUMBER**
PPDM0053153540-1
**ACCOUNT NUMBER**
5893421485

Thank you for continuing your policy with Allied Insurance!  Allied is committed to providing you high quality insurance protection and *On Your Side*® service – service that is second to none.  Read below to learn more about valuable features that can give you even more peace of mind when you're on the road.

For billing questions or to report a claim, please call 800-282-1446 from anywhere in the U.S.

Our associates are available to assist you 24 hours a day, seven days a week.

**Information about your policy:**

- Privacy Statement Procedures:  We value you as a customer and respect your right to privacy. Please see the enclosed Privacy Statement and Procedures Notice directly following this page for additional information.
- ID cards:  Proof of Insurance cards are attached at the back of this packet. Remove at the perforations and place in each auto.
- Special Notices:  These notices, when included, indicate specific details regarding your policy.
- Coverage and Endorsement forms:  These forms provide policy and coverage information.
- Billing:  Any premiums that are unpaid will be billed separately. Payment should be made based on the billing notices you receive, not from the information in this policy.

If you have any questions about your policy, need to make changes, or want to learn more about how we can further serve your personal insurance needs, please contact your Allied agent. In addition, you may also review your policy and payment history online at alliedinsurance.com. This personalized website is tailored to your individual needs, providing easy access to your policy information every day, 24 hours a day.

Thank you for being a valued Allied policyholder!

**On Your Side® Rewards**
We are pleased to offer you several optional features available under our *On Your Side* Rewards program.  Available to use immediately, these features prevent rate increases from accidents and tickets, out-of-pocket deductible expenses, and also allow your rewards to grow each year.  Best of all, you can design the program to be personalized to you.  For more information on this program and your eligibility, please contact your Allied Agent.

***Changes made to your policy...***
MISCELLANEOUS RATING CHANGE

**JL0031 (12-08)**

## DISCOUNTS AND SPECIAL RATING INFORMATION

Your premium shown on the declarations page reflects savings because you qualified for these discounts or special rating.

| | |
|---|---|
| Agency Loyalty Discount | Good Student |
| Anti-Theft Device | Passive Restraint Discount |
| Accident Free | Safe Driver Discount |
| Resident Student | |

## DRIVERS AND AUTOS CURRENTLY SHOWN FOR YOUR POLICY . . . .

Please advise immediately if this listing is incorrect.

| DRIVER NAME | DOB | MARITAL STATUS | SEX | DL NUMBER |
|---|---|---|---|---|
| SYLVESTER, SALVATORE | 06/13/52 | M | M | 16046103 |
| SYLVESTER, BEVERLY | 03/26/50 | M | F | 14015855 |
| SYLVESTER, ANTHONY | 07/26/96 | S | M | 31297612 |

**AUTO**

05  SUBA          PLEASURE

JL0031 (12-08)

DIRECT BILL        16132                                                                                1458

# Allied Insurance Privacy Statement

**Thank you for choosing Allied Insurance**
Our privacy statement explains how we collect, use, share, and protect your personal information.  So just how do we protect your privacy?  In a nutshell, we respect your right to privacy and promise to treat your personal information responsibly.  It's as simple as that.  Here's how.

**Confidentiality and security**
We follow all data security laws.  We protect your information by using physical, technical, and procedural safeguards.  We limit access to your information to those who need it to do their jobs.  Our business partners are legally bound to use your information for permissible purposes.

**Collecting and using your personal information**
We collect information about you when you ask about or buy one of our products or services.  The information comes from your application, business transactions with us, consumer reports, and publicly available sources.  Please know that we only use that information to sell, service, or market products to you.

We may collect the following types of information:
- Name, address, and Social Security number
- Assets and income
- Property address and value
- Account and policy information
- Credit reports and other consumer report information
- Family member and beneficiary information
- Public information

**Sharing your information for business purposes**
We share your information with other Nationwide companies and business partners.  When you buy a product, we may share your personal information for everyday business purposes.  Some examples include mailing your statements or processing transactions that you request.  You cannot opt out of these.  We also share your information with your agent or producer.  They use your personal information to manage your policy or account.  We may also share your personal information as federal and state law requires.

**Sharing your information for marketing purposes**
We don't sell your information to anyone – period.  Because you are a customer of both us and an independent broker or agent, we have chosen not to share your personal information with anyone, except to service your product.  So there's no reason for you to opt out.  If we change our policy, we'll tell you and give you the opportunity to opt out before we share your information.

**Using your medical information**
We sometimes collect medical information.  We may use this medical information for a product or service you're interested in, to pay a claim, or to provide a service.  We may share this medical information for these business purposes if required or permitted by law.  But we wont' use it for marketing purposes unless you give us permission.



**Accessing your information**

You can always ask us for a copy of your personal information.  Please send your privacy inquiry to the address below and have your signature notarized.  This is for your protection so we may prove your identity.  We don't charge a fee for giving you a copy of your information now, but we may charge a small fee in the future.

You can call your agent to change your personal information. But we can't update information that other companies, like credit agencies, provide to us.  So you'll need to contact these other companies to change and correct your information.

Send your privacy inquiries to the address below.  Please include your name, address, and policy number.  If you know it, include your agent's name and number.

> Nationwide Insurance
> Attn:  Customer Relations – Privacy
> One Nationwide Plaza, 3-04-101
> Columbus, OH 43215

**A parting word …**

These are our privacy practices.  They apply to all current, joint, and former clients of Allied Insurance.  They also apply to the affiliates and subsidiaries that offer auto, home, property, life insurance, banking services and investments.  This includes the following companies:

Allied Property and Casualty Insurance Company
AMCO Insurance Company
Depositors Insurance Company
Nationwide Mutual Insurance Company
Nationwide Agribusiness Insurance Company
Colonial County Mutual Insurance Company
Nationwide Insurance Company of America
Nationwide Affinity Insurance Company of America
Nationwide Sales Solution, Inc.
Crestbrook Insurance Company
Nationwide Insurance Company of Florida

IN0263 (11-12)

★ ★ ★ ★ ★ ★      IMPORTANT INSURANCE INFORMATION      ★ ★ ★ ★ ★ ★

## Motor Vehicle Accident and Violation Information and/or Consumer Credit Information

Information necessary to update your records relative to motor vehicle accident and violation information and/or Consumer Credit Information comes from these sources:

− Our own files relative to accidents while insured with us.

− Support organizations that provide information from other sources, such as State Motor Vehicle Records.

If we obtain information from support organizations, you have the right to review such information and to request that any incorrect information be corrected, amended or deleted.  You may contact this firm directly or submit a request in writing within 60 days for a copy of the report.

For Motor Vehicle Violation Information contact:

**Explore Information Services, LLC**
**P.O.BOX 21636**
**Saint Paul, MN 55121**
**Telephone Nos.: 1-888-888-0236**
**www.exploredata.com**

**LexisNexis Consumer Center**
**P.O. Box 105108**
**Atlanta, GA 30348**
**Telephone Nos.: 1-800-456-6004**
**www.consumerdisclosure.com**

For Motor Vehicle Accident Information contact:

**C.L.U.E. National Consumer Service Center**
**LexisNexis Risk Solutions Inc.**
**P.O. Box 105108**
**Atlanta, GA 30348**
**Telephone Nos.: 1-800-456-6004**
**www.consumerdisclosure.com**

For Consumer Credit Information contact:

**TransUnion Consumer Relations Center**
**2 Baldwin Place, P.O.Box 1000**
**Chester, PA 19022**
**Telephone Nos.: 1-800-888-4213**
**transunion.com/myoptions**

Your credit report will only be ordered at the start of your policy with   **Allied**      unless you request an update. You may request a new credit-based insurance score once each year to be used to rate your policy. To request an updated insurance score, please contact us at  **1-800-282-1446** .

★★★★★★★ IMPORTANT INSURANCE INFORMATION ★★★★★★★

## Automobile Insurance Merit Rating Plan Information

At Allied, we believe in rewarding you as your driving record improves.  Our research shows that often drivers who have had accidents or violations, or who lack driving experience, have a higher future accident potential than other drivers.  As a result, insurers generally charge higher premiums to policyholders who have driving violations or "at-fault" type accidents.  If your driving record is free from accidents or violations, you will pay a lower premium.  The following information explains this in detail:

### Violations and At-Fault Accidents

Certain violations or at-fault accidents resulting in injury, death or damage to property will result in a surcharge to your premium.  This applies to the following coverages: Bodily Injury Liability, Property Damage Liability, Medical Benefits, Combined Loss Benefits, Comprehensive and Collision Coverages.

The surcharge level is based on the number of violation points, the number of chargeable accidents in an experience period, and the amount of "time since the latest occurrence" for each.

When an accident and minor violation occur at the same time, only the accident will be surcharged.  When an accident and a minor violation occur at the same time and the accident does not meet the chargeable accident definition, the accident surcharge will be applied for the remainder of the surcharge period and the violation surcharge will be removed.  When an accident and a major violation occur at the same time, only the major violation will be surcharged.

### Experience Period

An experience period is the time period in which a chargeable accident or violation is counted.

This is determined as follows:

- New Business – 35 months ending in the policy effective date.
- Renewal – 35 months ending 45 days prior to the semi-annual due date of the policy.

### Violation Points

Violation points are assigned as follows:

- No points are assigned for the conviction of one minor violation within 35 months.
- One point is assigned for the conviction of a second minor violation within 35 months.  One additional point is assigned for the conviction of each subsequent minor violation within 35 months.
- Five points are assigned for the first conviction of a major violation and five additional points are assigned for the conviction of each subsequent major violation within 35 months.  Major violations are defined as follows:
  - Driving or accompanying a driver with a learner's permit while intoxicated or under the influence of drugs, OR
  - Failure to submit to a chemical test, OR
  - Failure to stop and report when involved in an accident, OR
  - Falsification of an accident report, OR
  - Homicide or assault arising out of the operation of a motor vehicle, OR
  - Driving while licensed or vehicle registration is suspended or revoked, OR
  - Permitting unlicensed person to operate a motor vehicle, OR
  - Committing a felony with a motor vehicle, OR
  - Involved in racing or a highway speed contest, OR
  - Fleeing or attempting to elude a police officer with an auto, OR
  - Reckless operation of a motor vehicle, OR
  - Misrepresenting, loaning or falsification of a driver's license, license plate or registration, OR
  - Operating a motor vehicle without owner's permission, OR

- o   Illegal transportation of hazard materials or explosives, OR
- o   Illegal transportation of liquor or narcotics for sale, OR
- o   Speeding convictions resulting in suspension/revocation, OR
- o   Operating or permitting operation of an uninsured motor vehicle, OR
- o   Other serious violations, except those identified under Section 1535 of the Vehicle Code.

| Number of Total Violation Points | Surcharge Factor based on Time Since Last Violation | | |
|---|---|---|---|
| | 0 – 12 Months | >12 – 24 Months | >24 – 35 Months |
| 0 | 0.00 | 0.00 | 0.00 |
| 1 | 0.37 | 0.28 | 0.20 |
| 2 | 0.67 | 0.57 | 0.47 |
| 3 | 0.97 | 0.85 | 0.74 |
| 4 | 1.26 | 1.14 | 1.01 |
| 5 | 1.56 | 1.42 | 1.28 |
| 6 | 1.86 | 1.70 | 1.55 |
| 7 | 2.16 | 1.99 | 1.82 |
| 8 | 2.46 | 2.27 | 2.09 |
| 9 | 2.75 | 2.56 | 2.36 |
| 10 | 3.05 | 2.84 | 2.63 |
| 11 | 3.35 | 3.12 | 2.90 |
| Each Additional Point | +0.30 | +0.28 | +0.27 |

**Accidents**

- New Business – An accident is chargeable if the insured driver was involved in an accident involving Bodily Injury, Death or Collision which was $1,550 in excess of any self-insured retention or deductible.
  - The first chargeable accident assigned to a driver will not result in any surcharge if:
    - o   The policyholder has purchased Accident Forgiveness feature;
    - o   The accident occurred while the Accident Forgiveness feature was active; and
    - o   There are no other chargeable accidents currently being forgiven from a prior application of Accident Forgiveness associated with any driver assigned to the policy in the prior thirty-five months.
    - o   During the time period an accident is being forgiven, the Accident Forgiveness feature must remain on the policy.
- Renewal – Accidents that were chargeable when the policy was written as new business will also be considered chargeable if still within the experience period.
  - An accident is chargeable if the insured driver was in an accident involving Bodily Injury, Death or Collision which was $1,550 in excess of any self-insured retention or deductible.
  - The first chargeable accident assigned to a driver will not result in any surcharge if:
    - o   The policyholder has purchased Accident Forgiveness feature;
    - o   The accident occurred while the Accident Forgiveness feature was active; and
    - o   There are no other chargeable accidents currently being forgiven from a prior application of Accident Forgiveness associated with any driver assigned to the policy in the prior thirty-five months.
    - o   During the time period an accident is being forgiven, the Accident Forgiveness feature must remain on the policy.
- Accidents will not be counted if it can be demonstrated that the insured was:
  - Lawfully parked, OR
  - Fully reimbursed by, or on behalf of, a person responsible for the accident or has judgment against such person, OR

**IN 0787 (07-14)**

- Struck in the rear by another vehicle, and has not been convicted of a moving traffic violation in connection with the accident, OR

- Hit by a "hit-and-run" driver if the accident is reported to the proper authorities within 24 hours, OR

- Not convicted of a moving traffic violation in connection with the accident but the operator of the other automobile involved in such accident was convicted of a moving violation, OR

- Involved in an accident resulting in damage by contact with animal or fowl, OR

- Involved in an accident resulting in physical damage, limited to and caused by flying gravel, missiles or falling objects, OR

- Involved in an accident while in the pursuit of official duties as a law enforcement officer, fire fighter, or operator of an emergency vehicle or ambulance, OR

- Involved in an accident which the responsible party was protected by sovereign immunity, OR

- Involved in an accident which occurred more than 35 months prior to the inception of the insurance policy.

Payments under the Bodily Injury, Property Damage, and/or Collision coverage will not be chargeable if there are valid grounds for recovery of 60 percent or more of the amount paid through subrogation or from a settlement or judgement against the individual responsible for the accident.

| Number of Chargeable Accidents | Surcharge Factor based on Time Since Latest Accident became Chargeable | | | | | |
|---|---|---|---|---|---|---|
| | 0 – 12 Months | | >12 – 24 Months | | >24 – 35 Months | |
| | Accident Forgiveness Applies | Accident Forgiveness Does Not Apply | Accident Forgiveness Applies | Accident Forgiveness Does Not Apply | Accident Forgiveness Applies | Accident Forgiveness Does Not Apply |
| 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1 | 0.00 | 0.58 | 0.00 | 0.49 | 0.00 | 0.41 |
| 2 | 0.58 | 1.35 | 0.49 | 1.23 | 0.41 | 1.11 |
| 3 | 1.35 | 2.45 | 1.23 | 2.28 | 1.11 | 2.10 |
| 4 | 2.45 | 3.74 | 2.28 | 3.51 | 2.10 | 3.27 |
| Each Additional | + 1.29 | +1.29 | +1.23 | +1.23 | +1.17 | +1.17 |

**Your policy premium includes a surcharge of $ 384.70  for the accident(s) and/or violation(s) listed below:**

**01/26/15    ACCIDENT OVER THRESHOLD**                                  **SYLVESTER, ANTHONY**

**IN 0787 (07-14)**                                                                        **Page 3 of 3**

IN 0788 (09-07)

★ ★ ★ ★ ★ ★ ★    IMPORTANT INSURANCE INFORMATION    ★ ★ ★ ★ ★ ★ ★

**NOTICE OF AVAILABILITY**

Under the laws of the Commonwealth of Pennsylvania, Insurers are required to remind policyholders at every renewal about the availability of two alternatives of full tort insurance and limited tort insurance, and of premium discounts. (Title 75 Section 1791.1 Subsection (b) and (c) of the Pennsylvania Consolidated Statutes).

**TORT OPTIONS**

The laws of the Commonwealth of Pennsylvania give you the right to choose either of the following two tort options:

A.  "Limited Tort" Option – "This form of insurance limits your right and the right of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of Insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of "serious injury" as set forth in the policy, or unless one of several other exceptions noted in the policy applies."

B   "Full Tort" Option – "This form of insurance allows you to maintain an unrestricted right for yourself and other members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering and other nonmonetary damages as a result of injuries caused by other drivers."

If you wish to change the tort option that currently applies to your policy, you must notify your agent, broker or company and request and complete the appropriate form.

**YOUR TORT OPTION**

The tort option that currently applies to your policy is shown on the Auto Policy Declarations. The "Limited Tort" option is provided at a lesser premium than the "Full Tort" option.

**DEFINITION OF SERIOUS INJURY AND EXCEPTIONS**

"SERIOUS INJURY" means a personal injury resulting in death, serious impairment of body functions or permanent serious disfigurement.

**EXCEPTIONS**

A named insured or relative remains eligible to seek noneconomic loss if the sustained injury:

1. Is a serious injury.
2. results as the consequence of the fault of another person who:

    a.  is convicted, or accepts Accelerated Rehabilitative Disposition (ARD) for driving under the influence of alcohol or a controlled substance in the accident;

    b.  is operating a motor vehicle registered in another state;

    c.  intends to injure himself or another person, provided that an individual does not intentionally injure himself or another person merely because his act or failure to act is intentional or done with his realization that it creates a grave risk of causing injury or the act or omission causing the injury is for the purpose of averting bodily harm to himself or another person; or

    d.  has not maintained financial responsibility as required by the Pennsylvania Motor Vehicle Financial Responsibility Law. However, this exception, (2) (d), shall not affect the insured's limitation to recover noneconomic loss under and Uninsured and Underinsured Motorist Coverages provided by this or any other policy.

**IN 0788 (09-07)**

3. is the basis for a claim against a person in the business of designing, manufacturing, repairing, servicing or otherwise maintaining motor vehicles arising out of a defect in such motor vehicle which is caused by or not corrected by an act or omission in the course of such business, other than a defect in a motor vehicle which operated by such business.

4. occurs while occupying a motor vehicle other than a private passenger motor vehicle.

**PREMIUM DISCOUNTS**

Premium may be reduced for the installation of certain safety devices in a motor vehicle or for successful completion of a driver improvement course.

- PASSIVE RESTRAINT DEVICES – Discounts are applies to First Party Benefit premiums for passive seatbelts, one airbag on the operator's side of the vehicle, or full front set airbags.
- PASSIVE ANTITHEFT DEVICES – Any item or system installed in an automobile which is activated automatically when the operator turns the ignition to the off position and which is designed to prevent unauthorized use.  This does not include an ignition interlock provided as a standard antitheft device by the original automobile manufacturer.  A discount applies to comprehensive coverage.
- DRIVER IMPROVEMENT COURSE – A discount applies to Bodily Injury, Property Damage, Comprehensive, Collision, Medical Benefits, Loss of Income, Accidental Death, Excess Medical Benefits, Funeral Benefits, Combined Loss Benefits, Uninsured Motorists, Underinsured Motorists, Towing and Labor Costs, Loss of Use, and Citizens Band Radios and Similar Equipment premiums, if all named insureds meet the necessary criteria.

  They must:

  1) be 55 years of age or older;

  2) submit proof of successful completion of a motor vehicle driver improvement course meeting the standards of the Pennsylvania Department of Transportation.

The discount shall apply for three years, after which the course must be repeated, and proof of successful completion must be again submitted.

The discount shall not apply if:

1) the course was required by a court or other government entity resulting from a traffic violation;

2) in the three years following course completion and named insured;

   a. is involved in a chargeable accident

   b. is convicted of a moving violation as defined in Pennsylvania statute Title 75, section 1535.

   c. is convicted of, or accepts Accelerated Rehabilitative Disposition for, driving under the influence of alcohol or any controlled substance.

The discount does not apply to motorcycles, recreational vehicles, truck campers, trailers, or restricted use antiques and classics automobiles.

**ASSISTANCE**

If you have any questions or need any help in selecting the protection you want, believe you qualify for discounts or wish to discuss your insurance program, your Allied Agent will be able to assist you.

Please keep this information with your policy should you need it later.

Thank you for choosing Allied.

PPDM0053153540-1          05/11/16                    INSURED COPY                                            44      1466

# ★ ★ ★ ★ ★ ★IMPORTANT INSURANCE INFORMATION★ ★ ★ ★ ★ ★

## MINIMUM LIMIT FORM

### BASIC MINIMUM COVERAGE AND PREMIUM FOR THE LIMITED TORT OPTION

| Bodily Injury Liability | **$15,000** | per person/ | **$30,000** | per accident |
|---|---|---|---|---|
| Property Damage | **$5,000** | per accident | | |
| Medical | **$5,000** | | | |

The laws of the Commonwealth of Pennsylvania, as enacted by the General Assembly, only require that you purchase liability and first party medical benefit coverage.  Any additional coverages or coverages in excess of the limits required by law are provided only at your request as enhancements to basic coverages. The premium amounts displayed below are based upon a semi-annual policy term.

| VEHICLE NO. | YEAR | MAKE | MODEL | BODILY INJURY PREMIUM | PROPERTY DAMAGE PREMIUM | MEDICAL BENEFITS PREMIUM |
|---|---|---|---|---|---|---|
| 1 | 2005 | SUBA | 4 DO | $64.83 | $97.50 | $31.40 |

Fraud Warning Notice

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties

IN1474 (08-15)

★ ★ ★ ★ ★ ★     **IMPORTANT INSURANCE INFORMATION**     ★ ★ ★ ★ ★ ★

**Uninsured/Underinsured Motorist Coverage Revision**

Thank you for choosing us to help protect what's important to you. We value your business and want to update you on some recent changes to your policy.

**What's Changing**

Please be advised that, if applicable to your policy, the following endorsements have been revised:

AA0419 - Underinsured Motorist Coverage – Pennsylvania (Stacked)
AA0423 - Uninsured Motorist Coverage – Pennsylvania (Stacked)

The exclusionary language under Exclusion A. as it relates to a motor vehicle owned by you or a "family member" that is insured for Uninsured (or Underinsured) Motorists coverage under any policy issued by us or any affiliated company has been revised.

**What you need to do**

To understand how the change(s) apply to your current coverage, we recommend you:

- Read your policy, including the Policy Declarations and any applicable policy endorsement
- Replace outdated information with any new materials that may be enclosed
- Keep this notice with your insurance policy

**For help when you need it**

We appreciate your business and look forward to continuing to serve you. If you have any questions about the changes, or would like to learn about additional coverage options, please contact your agent or member care representative. Contact information can be found on your policy declarations page or cover letter.

DEPOSITORS INSURANCE COMPANY
1100 LOCUST ST DEPT 1100
DES MOINES IA  50391-1100
1-800-282-1446

**PERSONAL AUTO POLICY**

| AGENCY 016 | ASSUREDPARTNERS OF NEW JERSEY WILKES BARRE PA  18702-6952 |
|---|---|

| POLICY NUMBER |
|---|
| **PPDM0053153540-1** |
| ACCOUNT NUMBER |
| **5893421485** |

**DECLARATIONS OFFER TO RENEW:** If we receive the renewal premium when due, your policy will be renewed for the Policy Period shown on these Declarations.
NOTICE OF EXPIRATION:  If we do not receive the renewal premium when due, your policy will expire effective 07/10/16 12:01 A.M. Standard Time.

| Policy Period |
|---|
| From:  **07/10/16**   To:   **07/10/17** |
| 12:01 A.M. Standard Time |
| Effective Date of Change |

NAMED INSURED AND ADDRESS

SYLVESTER, SALVATORE
SYLVESTER, BEVERLY
1544 SUMMIT LAKE RD
CLARKS SUMMIT PA 18411-9103

## COVERAGE AND LIMITS OF LIABILITY (In Dollars)
Coverage is provided where a premium or limit of liability is shown for coverage.

| VEHICLE | BODILY INJURY | | PROPERTY DAMAGE | MEDICAL PAYMENTS | PERSONAL INJURY PROTECTION | | UNINSURED MOTORISTS | | | UNDERINSURED MOTORISTS | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | EACH PERSON | EACH ACCIDENT | EACH ACCIDENT | SEE FORM AA0551B | OPTION | | EACH PERSON | EACH ACCIDENT | | EACH PERSON | EACH ACCIDENT |
| 1 | 100,000 | 300,000 | 100,000 | | | | 100,000 | 300,000 | | 100,000 | 300,000 |

| VEHICLE | DAMAGE TO YOUR VEHICLE | | | ROADSIDE ASSISTANCE BY POLICY | RENT RE TRN EXP PER DAY/ MAXIMUM | ACPEE COVRGE | TORT OPTION | |
|---|---|---|---|---|---|---|---|---|
| | Other Than Collision Loss | Collision Loss | | | | | | |
| | Actual Cash Value Minus Deductible | | | | | | | |
| 1 | 250 | 500 | | PLUS 100 MILES | 30/ 900 | | FUL | |

## PREMIUMS (In Dollars)

| VEH | BODILY INJURY | PROPERTY DAMAGE | MEDICAL PAYMENTS | PERSONAL INJURY PROTECTION | UNINSURED MOTORISTS | UNDER-INSURED MOTORISTS | DAMAGE TO YOUR VEHICLE | | ROADSIDE ASSISTANCE BY POLICY | RENT RE TRN EXP |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Other Than Collision Loss | Collision Loss | | |
| 1 | 307.32 | 230.50 | 354.56 | | 34.10 | 216.16 | 113.32 | 369.06 | 40.00 | 22.30 |
| 1 | | | | ACPEE COVRGE | | | | | | |

| VEH | Total Premium Each Vehicle | Other Miscellaneous Endorsements Requiring Premium: | | Sub-Total | $ | **1,687.32** |
|---|---|---|---|---|---|---|
| | | No. | $ | Other Endorsements/Fees | $ | |
| | | | $ | | $ | |
| 1 | 1,647.32 | | $ | Full Term Premium | $ | **1,687.32** |
| | | | $ | Add'l Premium | $ | |
| | | | | Return Premium | $ | |

**Not a bill. Your bill is sent separately.**
Page 1 of 2

**CONTINUATION DECLARATIONS**
Countersigned by - Authorized Representative

**IF OTHER THAN COLLISION LOSS AND COLLISION LOSS IS SELECTED ABOVE THEN COLLISION DAMAGE TO RENTAL VEHICLE IS AVAILABLE**

DIRECT BILL          16132

13102 (08-04) 34

44    1469

## DESCRIPTION OF VEHICLE

| V E H | Year | Trade Name | Body Type and Model | Identification Number | Cost/New | Max Value | HP | CC's | Class |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 2005 | SUBA | 4 DOOR | 4S3BL616157213432 | | | | | 2SM19OPSST01 |

## ALTERNATE GARAGING LOCATIONS

| V E H | Year | Make | Body Type and Model | Address |
|---|---|---|---|---|
| 1 | 2005 | SUBA | LEGACY 2.5 | |

## ENDORSEMENTS

Endorsements forming a part of this policy: IN0000 (0409) IN0263 (1112) IN0611 (0401) IN0787 (0714) IN0788 (0907) IN1219 (0112) IN1474 (0815) IN2402 (1005) AA0001A (1111) AA0001P (1005) AA0008PA (0608) AA0151 (1014) AA0308 (1005) AA0419 (0815) AA0423 (0815) AA0551 (0811) AA0551B (1005) AA0553 (1005) AA1418 (0808) AA1429 (0711)

## ADDITIONAL POLICY COVERAGE

| | PREMIUM |
|---|---|
| **Accident Forgiveness Feature**    **Currently Eligible to Use** | **Included** |

Loss Payee:

13102 (08-92) 34

1470

AA 0419 (08-15)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## UNDERINSURED MOTORISTS COVERAGE – PENNSYLVANIA (STACKED)

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

**INSURING AGREEMENT**

**A.** We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":

**1.** Sustained by an "insured"; and

**2.** Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle".

We will pay under this coverage only if **1.** or **2.** below applies:

**1.** The limits of liability under any bodily injury liability bonds or policies applicable to the "underinsured motor vehicle" have been exhausted by payment of judgments or settlements; or

**2.** A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle" and we:

**a.** Have been given prompt written notice of such tentative settlement; and

**b.** Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

No judgment for damages arising out of a suit brought against the owner or operator of an "underinsured motor vehicle" is binding on us unless we:

**1.** Received reasonable notice of the pendency of the suit resulting in the judgment; and

**2.** Had a reasonable opportunity to protect our interests in the suit.

**B.** "Insured" as used in this endorsement means:

**1.** You or any "family member".

**2.** Any other person "occupying" "your covered auto".

**3.** Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in **1.** or **2.** above.

**C.** "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for "bodily injury" under that bond or policy to an "insured" is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

However, "underinsured motor vehicle" does not include any vehicle or equipment:

**1.** For which liability coverage is provided under Part **A** of this policy.

**2.** Operated on rails or crawler treads.

**3.** Designed mainly for use off public roads while not on public roads.

**4.** While located for use as a residence or premises.

**EXCLUSIONS**

**A.** We do not provide Underinsured Motorists Coverage for "bodily injury" sustained:

**1.** By you while "occupying", or when struck by, any motor vehicle you own which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

**2.** By a "family member":

**a.** Who owns an auto, while "occupying", or when struck by, any motor vehicle owned by you or any "family member" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

**b.** Who does not own an auto, while "occupying", or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

This exclusion **(A.)** does not apply to "bodily injury" suffered while "occupying" or struck by a motor vehicle owned by you or a "family member" that is insured for Underinsured Motorists coverage under any policy issued by us or any affiliated company.

AA 0419 (08-15)

Page 1 of 3

**B**. We do not provide Underinsured Motorists Coverage for "bodily injury" sustained by any "insured":

   **1**. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This Exclusion **(B.1.)** does not apply to a share-the-expense car pool.

   **2**. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion **(B.2.)** does not apply to a "family member" using "your covered auto" which is owned by you.

**C**. We do not provide Underinsured Motorists Coverage for "noneconomic loss" sustained by any "insured" to whom the limited tort alternative applies, resulting from "bodily injury" caused by an accident involving an "underinsured motor vehicle", unless the "bodily injury" sustained is a "serious injury".

   This Exclusion **(C.)** does not apply if that "insured" is injured while "occupying" a motor vehicle insured under a commercial motor vehicle insurance policy.

**D**. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any disability benefits, or similar law except a workers' compensation law.

**E**. We do not provide Underinsured Motorists Coverage for punitive or exemplary damages.

**LIMIT OF LIABILITY**

**A**. If "bodily injury" is sustained in an accident by you or any "family member":

   **1**. Our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any such accident is the sum of the limits of liability shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage.

   **2**. Subject to the maximum limit for each person described in **A.1.** above, our maximum limit of liability for all damages arising out of "bodily injury" resulting from any one accident is the sum of the limits of liability shown in the Schedule or in the Declarations for each accident for Underinsured Motorists Coverage.

   **3**. Subject to the maximum limits of liability set forth in **A.1.** and **A.2.** above, the most we will pay for "bodily injury" sustained in such accident by an "insured" other than you or any "family member" is the each person or each accident limit of liability shown in the

Schedule or in the Declarations applicable to the vehicle that the "insured" was "occupying" at the time of the accident.

The maximum limit of liability is the most we will pay regardless of the number of:

   **1**. "Insureds";

   **2**. Claims made;

   **3**. Vehicles or premiums shown in the Schedule or in the Declarations; or

   **4**. Vehicles involved in the accident

**B**. If "bodily injury" is sustained by any "insured" other than you or any "family member" in an accident in which neither you nor any "family member" sustain "bodily injury", the limit of liability shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. This is the most we will pay regardless of the number of:

   **1**. "Insureds";

   **2**. Claims made;

   **3**. Vehicles or premiums shown in the Schedule or in the Declarations; or

   **4**. Vehicles involved in the accident.

**C**. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part **A,** Part **B** or Part **C** of this policy.

**D**. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

**E**. We will not pay for any element of loss if a person is entitled to receive payment for the same element of under any disability benefits, or similar law except a workers' compensation law.

**OTHER INSURANCE**

If there is other applicable insurance available under more than one policy or provision of coverage that is similar to the insurance provided by this endorsement:

The following priorities of recovery apply:

AA 0419 (08-15)

| First | The Underinsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident". |
| Second | The policy affording Underinsured Motorists Coverage to the "insured" as a named insured or family member. |

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

**ADDITIONAL DUTIES**

A person seeking Underinsured Motorists Coverage must also promptly:

1.  Send us copies of the legal papers if a suit is brought; and

2.  Notify us in writing of a tentative settlement between the "insured" and the insurer of the "underinsured motor vehicle" and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "underinsured motor vehicle".

**PART F – GENERAL PROVISIONS**

Part **F** is amended as follows:

A.  The following is added to the **Our Right To Recover Payment** Provision:

**OUR RIGHT TO RECOVER PAYMENT**

Our rights do not apply under Paragraph **A.** with respect to Underinsured Motorists Coverage if we:

1.  Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle"; and

2.  Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

1.  That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and

2.  We also have a right to recover the advanced payment.

B.  The following is added to the **Two Or More Auto Policies** Provision:

**TWO OR MORE AUTO POLICIES**

1.  This provision does not apply to Underinsured Motorists Coverage.

2.  No one will be entitled to receive duplicate payments for the same elements of loss under Underinsured Motorists Coverage.

Includes copyrighted material of ISO Properties, Inc., with its permission.
© ISO Properties, Inc., 2012

AA 0423 (08-15)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## UNINSURED MOTORISTS COVERAGE – PENNSYLVANIA (STACKED)

**I.** **Part C – Uninsured Motorists Coverage** is replaced by the following:

### INSURING AGREEMENT

**A.** We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

**1.** Sustained by an "insured"; and

**2.** Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

No judgment for damages arising out of a suit brought against the owner or operator of an "uninsured motor vehicle" is binding on us unless we:

**1.** Received reasonable notice of the pendency of the suit resulting in the judgment; and

**2.** Had a reasonable opportunity to protect our interests in the suit.

**B.** "Insured" as used in this endorsement means:

**1.** You or any "family member".

**2.** Any other person "occupying" "your covered auto".

**3.** Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

**C.** "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

**1.** To which no bodily injury liability bond or policy applies at the time of the accident.

**2.** Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in "bodily injury" without hitting:

**a.** You or any "family member";

**b.** A vehicle which you or any "family member" are "occupying"; or

**c.** "Your covered auto".

If there is no contact with the hit-and-run vehicle, the facts of the accident must be proved.

**3.** To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

**a.** Denies coverage; or

**b.** Is or becomes:

**(1)** Insolvent within six years of the date of the accident; or

**(2)** Involved in insolvency proceedings.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

**1.** Owned by or furnished for the regular use of you or any "family member".

**2.** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

**3.** Operated on rails or crawler treads.

**4.** Designed mainly for use off public roads while not on public roads.

**5.** While located for use as a residence or premises.

### EXCLUSIONS

**A.** We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:

**1.** By you while "occupying", or when struck by, any motor vehicle you own which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

**2.** By a "family member":

**a.** Who owns an auto, while "occupying", or when struck by, any motor vehicle owned by you or any "family member" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

**b.** Who does not own an auto, while "occupying", or when struck by, any motor vehicle you own which is

IN 0004T (12-15)

★ ★ ★ ★ ★ ★ ★   IMPORTANT INSURANCE INFORMATION   ★ ★ ★ ★ ★ ★ ★

**IMPORTANT NOTICE**

To obtain information or make a complaint:

You may contact your Allied agent. You can find your agent's name on your Declarations page.

You may call Allied's toll-free telephone number for information or to make a complaint:

**1-800-282-1446**

You may also write to Allied:

For all Claims, write to:

> P.O. Box 182172
> Columbus, OH 43218-2172

For personal auto and homeowners policy questions, write to:

> P.O. Box 8379
> Canton, OH 44711-8379

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints:

**1-800-252-3439**

You may write the Texas Department of Insurance:

> P.O. Box 149104
> Austin, TX 78714-9104
> Fax # (512) 490-1007
> Web:-http://www.tdi.texas.gov
> E-mail: ConsumerProtection@tdi.texas.gov

To obtain information relating to residential property insurance and personal automobile insurance, you may visit:

**www.helpinsure.com**

**PREMIUM OR CLAIM DISPUTES:** Should you have a dispute concerning your premium or about a claim you should contact the agent or Allied first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document.

**AVISO IMPORTANTE**

Para obtener informacion o para someter una queja:

Puede comunicarse con su agente. El nombre de su agente se encuentra en la primera pagina de su poliza.

Usted puede llamar al numero de telefono gratis de Allied's para informacion o para someter una queja al:

**1-800-282-1446**

Usted tambien puede escribir a Allied:

Para todos las preguntas sobre reclamos, escribe a:

> P.O. Box 182172
> Columbus, OH 43218-2172

Para los personales des auto y casa los preguntas sobre su policas de Segundo, escribe a esta direcion:

> P.O. Box 8379
> Canton, OH 44711-8379

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

**1-800-252-3439**

Puede escribir al Departamento de Seguros de Texas:

> P.O. Box 149104
> Austin, TX 78714-9104
> Fax # (512) 490-1007
> Web:-http://www.tdi.texas.gov
> E-mail: ConsumerProtection@tdi.texas.gov

Para obtener relacionar de información al seguro inmobiliario residencial y el seguro de automóviles personal, usted puede visitar:

**www.helpinsure.com**

**DISPUTAS SOBRE PRIMAS O RECLAMOS:** Si tiene una disputa concertiente a su prima o a un reclamo, debe comunicarse con el agente o Allied primero. Si no se resuelve la disputa, puede entonces comunicarse con el Departamento de Seguros de Texas:

**UNA ESTE AVISO A SU POLIZA:** Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

IN 0004T  (12-15)                                                          **Page 1 of 1**

AA 0423 (08-15)

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part **A** or Part **B** of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

D. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible. This includes all payments made to an "insured's" attorney either directly or as part of the payment made to the "insured".

E. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any disability benefits, or similar law except a workers' compensation law.

**OTHER INSURANCE**

If there is other applicable insurance available under more than one policy or provision of coverage that is similar to the insurance provided under this endorsement:

The following priorities of recovery apply:

| First | The Uninsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the accident. |
|---|---|
| Second | The policy affording Uninsured Motorists Coverage to the "insured" as a named insured or family member. |

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

**II. Part F – General Provisions**

The following is added to the **Two Or More Auto Policies** Provision of Part **F**:

**TWO OR MORE AUTO POLICIES**

1. This provision does not apply to Uninsured Motorists Coverage.

2. No one will be entitled to receive duplicate payments for the same elements of loss under Uninsured Motorists Coverage.

Includes copyrighted material of ISO Properties, Inc., with its permission.
© ISO Properties, Inc., 2012

AA 0551B (10-05)

# FIRST PARTY BENEFITS COVERAGE SCHEDULE

POLICY NUMBER:   **PPDM0053153540-1**          AGENT NAME:   **ASSUREDPARTNERS OF NEW JERSEY**
POLICY EFFECTIVE DATE:  **07/10/16**          AGENT NUMBER:  **33579**

NAME:  **SYLVESTER, SALVATORE**
ADDRESS:  **1544 SUMMIT LAKE RD**

| VEH NO. | VEH YEAR | VEH MAKE | OPT 1 LIMIT | OPT 2 LIMIT | OPT 3 LIMIT | OPT 4 LIMIT | OPT 5 LIMIT | OPT 6 LIMIT | VEH PREMIUM |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 2005 | SUBA | 100,000 | 50,000 | 10,000 | 2,500 | | Y | 354.56 |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

**OPTION 1 –** MEDICAL BENEFIT

**OPTION 2 –** INCOME LOSS BENEFIT

**OPTION 3 –** ACCIDENTAL DEATH BENEFIT

**OPTION 4 –** FUNERAL BENEFIT

**OPTION 5 –** COMBINED LOSS BENEFITS

**OPTION 6 –** EXCESS MEDICAL BENEFITS

**SEE ENDORSEMENT AA0551 FOR COMPLETE COVERAGE DESCRIPTIONS**

**INSURANCE IDENTIFICATION CARDS**
**PLEASE KEEP A CARD IN EACH VEHICLE**
**DO NOT USE IF YOUR POLICY OR COVERAGE IS NOT IN FORCE**

**PERSONAL INSURANCE**
**SERVICE CARDS FOR**
**YOUR WALLET OR PURSE**

---

**PENNSYLVANIA FINANCIAL RESPONSIBILITY**
**INSURANCE IDENTIFICATION CARD**

**DEPOSITORS INSURANCE COMPANY**
1100 LOCUST ST DEPT 1100
DES MOINES IA  50391-1100

Policy No.     **PPDM0053153540-1**
Account No.  **5893421485**

(800)282-1446
**NAIC140-42587**

**SYLVESTER, SALVATORE**
**SYLVESTER, BEVERLY**
**1544 SUMMIT LAKE RD**
**CLARKS SUMMIT PA 18411-9103**

Policy Period: **07/10/16**  to  **07/10/17**          This Card effective:  **07/10/16**

Not Valid More Than One Year From Effective Date.

Veh:     **1   05   SUBA**                         **4S3BL616157213432**

**ASSUREDPARTNERS OF NEW JERSEY**

**WILKES BARRE PA  18702-6952**

Nationwide
is on your side

ASSUREDPARTNERS OF NEW JERSEY
WILKES BARRE PA  18702-6952
INSURED     SYLVESTER, SALVATORE
                    SYLVESTER, BEVERLY
POLICY NUMBER     PPDM0053153540-1
ACCOUNT NUMBER   5893421485
Customer Service:     1-570-819-2000
Billing & Claims:      1-800-282-1446

---

**PENNSYLVANIA FINANCIAL RESPONSIBILITY**
**INSURANCE IDENTIFICATION CARD**

**DEPOSITORS INSURANCE COMPANY**
1100 LOCUST ST DEPT 1100
DES MOINES IA  50391-1100

Policy No.     **PPDM0053153540-1**
Account No.  **5893421485**

(800)282-1446
**NAIC140-42587**

**SYLVESTER, SALVATORE**
**SYLVESTER, BEVERLY**
**1544 SUMMIT LAKE RD**
**CLARKS SUMMIT PA 18411-9103**

Policy Period: **07/10/16**  to  **07/10/17**          This Card effective:  **07/10/16**

Not Valid More Than One Year From Effective Date.

Veh:

**VOID**

**ASSUREDPARTNERS OF NEW JERSEY**

**WILKES BARRE PA  18702-6952**

Nationwide
is on your side

ASSUREDPARTNERS OF NEW JERSEY
WILKES BARRE PA  18702-6952
INSURED     SYLVESTER, SALVATORE
                    SYLVESTER, BEVERLY
POLICY NUMBER     PPDM0053153540-1
ACCOUNT NUMBER   5893421485
Customer Service:     1-570-819-2000
Billing & Claims:      1-800-282-1446

---

**IMPORTANT NOTICE REGARDING YOUR FINANCIAL RESPONSIBILITY INSURANCE IDENTIFICATION CARD**

Your insurance company is required by Pennsylvania law to send you an ID Card.  The card shows that an insurance policy has been issued for the vehicle(s) described satisfying the financial responsibility requirements of the law.

If you lose the card, contact your insurance company or agent for a replacement.

The ID Card information may be used for vehicle registration and replacing license plates.  If your liability insurance policy is not in effect, the ID Card is no longer valid.

You are required to maintain financial responsibility on your vehicle.  It is against Pennsylvania law to use the ID card fraudulently such as using the card as proof of financial responsibility after the insurance policy is terminated.

**THIS CARD MUST BE CARRIED FOR PRESENTATION ON DEMAND**
**KEEP THIS CARD IN THE INSURED VEHICLE**

**WARNING:** Any owner or registrant of a motor vehicle who drives or permits a motor vehicle to be driven in Pennsylvania without the required financial responsibility may have his or her registration suspended or revoked.

**NOTE - THIS CARD IS REQUIRED WHEN:**

1. You are involved in an auto accident.
2. You are convicted of a traffic offense other than a parking offense that requires a court appearance.
3. You are stopped for violating any provision of the Vehicle Code (75 Pa.C.S.) and requested to produce it by a police officer.

You must provide a copy of this card to the Department of Transportation when you request restoration of your operating privilege and/or registration privilege which was previously suspended or revoked.

**IN CASE OF ACCIDENT:** Report all accidents to your Agent/Company and to the police as soon as possible.  Obtain the following information:

1. Name and address of each driver, passenger and witness.
2. Name of Insurance Company and policy number for each vehicle involved.

**THIS CARD MUST BE CARRIED FOR PRESENTATION ON DEMAND**
**KEEP THIS CARD IN THE INSURED VEHICLE**

**WARNING:** Any owner or registrant of a motor vehicle who drives or permits a motor vehicle to be driven in Pennsylvania without the required financial responsibility may have his or her registration suspended or revoked.

**NOTE - THIS CARD IS REQUIRED WHEN:**

1. You are involved in an auto accident.
2. You are convicted of a traffic offense other than a parking offense that requires a court appearance.
3. You are stopped for violating any provision of the Vehicle Code (75 Pa.C.S.) and requested to produce it by a police officer.

You must provide a copy of this card to the Department of Transportation when you request restoration of your operating privilege and/or registration privilege which was previously suspended or revoked.

**IN CASE OF ACCIDENT:** Report all accidents to your Agent/Company and to the police as soon as possible.  Obtain the following information:

1. Name and address of each driver, passenger and witness.
2. Name of Insurance Company and policy number for each vehicle involved.

IN WITNESS WHEREOF, the company listed in the Declarations has caused this policy to be signed by its President and Secretary, and countersigned as may be required on the Declarations page by a duly authorized representative of the company.

**President – Gary A. Douglas**
Nationwide Agribusiness Insurance Company

**President – David G. Arango**
Nationwide Assurance Company

**President – Mark A. Pizzi**
Nationwide Affinity Insurance Company of America
Nationwide General Insurance Company
Nationwide Mutual Fire Insurance Company
Nationwide Mutual Insurance Company
Nationwide Property and Casualty Insurance
Company

**President – W. Kim Austen**
ALLIED Property and Casualty Insurance Company
AMCO Insurance Company
Crestbrook Insurance Company
Depositors Insurance Company
Nationwide Insurance Company of America

**President – Lisa E. Gobber**
Nationwide Insurance Company of Florida

**Secretary – Robert W. Horner, III**
ALLIED Property and Casualty Insurance Company
AMCO Insurance Company
Crestbrook Insurance Company
Depositors Insurance Company
Nationwide Affinity Insurance Company of America
Nationwide Agribusiness Insurance Company
Nationwide Assurance Company
Nationwide General Insurance Company
Nationwide Indemnity Company
Nationwide Insurance Company of America
Nationwide Insurance Company of Florida
Nationwide Mutual Fire Insurance Company
Nationwide Mutual Insurance Company
Nationwide Property and Casualty Insurance
Company

**President – David A. Bano**
Nationwide Indemnity Company

Nationwide, the Nationwide framemark, and On Your Side are service marks of Nationwide Mutual Insurance Company.
© 2011 Nationwide Mutual Insurance Company.

**AA 0001P (10-05)**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERSONAL AUTO POLICY

---

### AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

---

### DEFINITIONS

**A**. Throughout this policy, "you" and "your" refer to:

**1**. The "named insured" shown in the Declarations; and

**2**. The spouse if a resident of the same household.

If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse will be considered "you" and "your" under this policy but only until the earlier of:

**1**. The end of 90 days following the spouse's change of residency;

**2**. The effective date of another policy listing the spouse as a named insured; or

**3**. The end of the policy period.

**B**. "We", "us" and "our" refer to the Company providing this insurance.

**C**. For purposes of this policy, a private passenger type auto, pickup or van shall be deemed to be owned by a person if leased:

**1**. Under a written agreement to that person; and

**2**. For a continuous period of at least 6 months.

Other words and phrases are defined. They are in quotation marks when used.

**D**. "Bodily injury" means bodily harm, sickness or disease, including death that results.

**E**. "Business" includes trade, profession or occupation.

**F**. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

**G**. "Occupying" means:

**1**. In;

**2**. Upon; or

**3**. Getting in, on, out or off.

**H**. "Property damage" means physical injury to, destruction of or loss of use of tangible property.

**I**. "Trailer" means a vehicle designed to be pulled by a:

**1**. Private passenger auto; or

**2**. Pickup or van.

It also means a farm wagon or farm implement while towed by a vehicle listed in **1.** or **2.** above.

**J**. "Your covered auto" means:

**1**. Any vehicle shown in the Declarations.

**2**. A "newly acquired auto".

**3**. Any "trailer" you own.

**4**. Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

**a**. Breakdown;

**b**. Repair;

**c**. Servicing;

**d**. Loss; or

**e**. Destruction.

This Provision **(J.4.)** does not apply to Coverage For Damage To Your Auto.

**K**. "Newly acquired auto":

**1**. "Newly acquired auto" means any of the following types of vehicles you become the owner of during the policy period:

**a**. A private passenger auto; or

**b**. A pickup or van, for which no other insurance policy provides coverage, that:

**(1)** Has a Gross Vehicle Weight Rating of 10,000 lbs. or less; and

**(2)** Is not used for the delivery or transportation of goods and materials unless such use is:

**(a)** Incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or

**(b)** For farming or ranching.

**2.** Coverage for a "newly acquired auto" is provided as described below. If you ask us to insure a "newly acquired auto" after a specified time period described below has elapsed, any coverage we provide for a "newly acquired auto" will begin at the time you request the coverage.

**a.** For any coverage provided in this policy except Coverage For Damage To Your Auto, a "newly acquired auto" will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner. However, for this coverage to apply to a "newly acquired auto" which is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 14 days after you become the owner.

If a "newly acquired auto" replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

**b.** Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

**(1)** 14 days after you become the owner if the Declarations indicate that Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the

broadest coverage we now provide for any auto shown in the Declarations.

**(2)** Four days after you become the owner if the Declarations do not indicate that Collision Coverage applies to at least one auto. If you comply with the 4 day requirement and a loss occurred before you asked us to insure the "newly acquired auto", a Collision deductible of $500 will apply.

**c.** Other Than Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

**(1)** 14 days after you become the owner if the Declarations indicate that Other Than Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

**(2)** Four days after you become the owner if the Declarations do not indicate that Other Than Collision Coverage applies to at least one auto. If you comply with the 4 day requirement and a loss occurred before you asked us to insure the "newly acquired auto", an Other Than Collision deductible of $500 will apply.

---

## PART A – LIABILITY COVERAGE

**INSURING AGREEMENT**

**A.** We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the "insured". We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or

settlements. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

**B.** "Insured" as used in this Part means:

**1.** You or any "family member" for the ownership, maintenance or use of any auto or "trailer".

**2.** Any person using "your covered auto".

**3.** For "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of a

person for whom coverage is afforded under this Part.

4. For any auto or "trailer", other than "your covered auto", any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This Provision (B.4.) applies only if the person or organization does not own or hire the auto or "trailer".

## SUPPLEMENTARY PAYMENTS

We will pay on behalf of an "insured":

1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

4. Up to $200 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

5. Other reasonable expenses incurred at our request.

These payments will not reduce the limit of liability.

## EXCLUSIONS

A. We do not provide Liability Coverage for any "insured":

1. Who intentionally causes "bodily injury" or "property damage".

2. For "property damage" to property owned or being transported by that "insured".

3. For "property damage" to property:

   a. Rented to;

   b. Used by; or

   c. In the care of;

   that "insured".

   This Exclusion (A.3.) does not apply to "property damage" to a residence or private garage.

4. For "bodily injury" to an employee of that "insured" during the course of employment. This Exclusion (A.4.) does not apply to "bodily injury" to a domestic employee

unless workers' compensation benefits are required or available for that domestic employee.

5. For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This Exclusion (A.5.) does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the "business" of:

   a. Selling;

   b. Repairing;

   c. Servicing;

   d. Storing; or

   e. Parking;

   vehicles designed for use mainly on public highways. This includes road testing and delivery. This Exclusion (A.6.) does not apply to the ownership, maintenance or use of "your covered auto" by:

   a. You;

   b. Any "family member"; or

   c. Any partner, agent or employee of you or any "family member".

7. Maintaining or using any vehicle while that "insured" is employed or otherwise engaged in any "business" (other than farming or ranching) not described in Exclusion A.6.

   This Exclusion (A.7.) does not apply to the maintenance or use of a:

   a. Private passenger auto;

   b. Pickup or van; or

   c. "Trailer" used with a vehicle described in a. or b. above.

8. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (A.8.) does not apply to a "family member" using "your covered auto" which is owned by you.

9. For "bodily injury" or "property damage" for which that "insured":

   a. Is an insured under a nuclear energy liability policy; or

   b. Would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

   A nuclear energy liability policy is a policy issued by any of the following or their successors:

a.  Nuclear Energy Liability Insurance Association;

b.  Mutual Atomic Energy Liability Underwriters; or

c.  Nuclear Insurance Association of Canada.

**B**.  We do not provide Liability Coverage for the ownership, maintenance or use of:

1.  Any vehicle which:

a.  Has fewer than four wheels; or

b.  Is designed mainly for use off public roads.

This Exclusion **(B.1.)** does not apply:

a.  While such vehicle is being used by an "insured" in a medical emergency;

b.  To any "trailer"; or

c.  To any non-owned golf cart.

2.  Any vehicle, other than "your covered auto", which is:

a.  Owned by you; or

b.  Furnished or available for your regular use.

3.  Any vehicle, other than "your covered auto", which is:

a.  Owned by any "family member"; or

b.  Furnished or available for the regular use of any "family member".

However, this Exclusion **(B.3.)** does not apply to you while you are maintaining or "occupying" any vehicle which is:

a.  Owned by a "family member"; or

b.  Furnished or available for the regular use of a "family member".

4.  Any vehicle, located inside a facility designed for racing, for the purpose of:

a.  Competing in; or

b.  Practicing or preparing for;

any prearranged or organized racing or speed contest.

## LIMIT OF LIABILITY

**A**.  The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each

accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

The limit of liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident.

This is the most we will pay regardless of the number of:

1.  "Insureds";

2.  Claims made;

3.  Vehicles or premiums shown in the Declarations; or

4.  Vehicles involved in the auto accident.

B.  No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1.  Part **B** or Part **C** of this policy; or

2.  Any Underinsured Motorists Coverage provided by this policy.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

**A**.  If the state or province has:

1.  A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2.  A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

**B**.  No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own, including any

AA 0001P (10-05)

vehicle while used as a temporary substitute for "your covered auto", shall be excess over any other collectible insurance.

---

## PART B – MEDICAL PAYMENTS COVERAGE

**INSURING AGREEMENT**

**A.** We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury":

  **1.** Caused by accident; and

  **2.** Sustained by an "insured".

We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

**B.** "Insured" as used in this Part means:

  **1.** You or any "family member":

    **a**. While "occupying"; or

    **b**. As a pedestrian when struck by;

    a motor vehicle designed for use mainly on public roads or a trailer of any type.

  **2.** Any other person while "occupying" "your covered auto".

**EXCLUSIONS**

We do not provide Medical Payments Coverage for any "insured" for "bodily injury":

  **1.** Sustained while "occupying" any motorized vehicle having fewer than four wheels.

  **2.** Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This Exclusion **(2.)** does not apply to a share-the-expense car pool.

  **3.** Sustained while "occupying" any vehicle located for use as a residence or premises.

  **4.** Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury".

  **5.** Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

    **a**. Owned by you; or

    **b**. Furnished or available for your regular use.

  **6.** Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

    **a**. Owned by any "family member"; or

    **b**. Furnished or available for the regular use of any "family member".

However, this Exclusion **(6.)** does not apply to you.

  **7.** Sustained while "occupying" a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion **(7.)** does not apply to a "family member" using "your covered auto" which is owned by you.

  **8.** Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured". This Exclusion **(8.)** does not apply to "bodily injury" sustained while "occupying" a:

    **a**. Private passenger auto;

    **b**. Pickup or van; or

    **c**. "Trailer" used with a vehicle described in a. or b. above.

  **9.** Caused by or as a consequence of:

    **a**. Discharge of a nuclear weapon (even if accidental);

    **b**. War (declared or undeclared);

    **c**. Civil war;

    **d**. Insurrection; or

    **e**. Rebellion or revolution.

  **10.** From or as a consequence of the following, whether controlled or uncontrolled or however caused:

    **a**. Nuclear reaction;

    **b**. Radiation; or

    **c**. Radioactive contamination.

  **11.** Sustained while "occupying" any vehicle located inside a facility designed for racing, for the purpose of:

    **a**. Competing in; or

    **b**. Practicing or preparing for;

    any prearranged or organized racing or speed contest.

**LIMIT OF LIABILITY**

**A.** The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

  **1.** "Insureds";

AA 0001P (10-05)

**2.** Claims made;

**3.** Vehicles or premiums shown in the Declarations; or

**4.** Vehicles involved in the accident.

**B.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

**1.** Part **A** or Part **C** of this policy; or

**2.** Any Underinsured Motorists Coverage provided by this policy.

**OTHER INSURANCE**

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

---

## PART C – UNINSURED MOTORISTS COVERAGE

**INSURING AGREEMENT**

**A.** We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

**1.** Sustained by an "insured"; and

**2.** Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

**B.** "Insured" as used in this Part means:

**1.** You or any "family member".

**2.** Any other person "occupying" "your covered auto".

**3.** Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in **1.** or **2.** above.

**C.** "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

**1.** To which no bodily injury liability bond or policy applies at the time of the accident.

**2.** To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.

**3.** Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

**a.** You or any "family member";

**b.** A vehicle which you or any "family member" are "occupying"; or

**c.** "Your covered auto".

**4.** To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

**a.** Denies coverage; or

**b.** Is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

**1.** Owned by or furnished or available for the regular use of you or any "family member".

**2.** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

**3.** Owned by any governmental unit or agency.

**4.** Operated on rails or crawler treads.

**5.** Designed mainly for use off public roads while not on public roads.

**6.** While located for use as a residence or premises.

**EXCLUSIONS**

**A.** We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:

**1.** By an "insured" while "occupying", or when struck by, any motor vehicle owned by that "insured" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

**2.** By any "family member" while "occupying", or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

**B.** We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any "insured":

1. If that "insured" or the legal representative settles the "bodily injury" claim and such settlement prejudices our right to recover payment.

2. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This Exclusion **(B.2.)** does not apply to a share-the-expense car pool.

3. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion **(B.3.)** does not apply to a "family member" using "your covered auto" which is owned by you.

**C**. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

**D**. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

**A**. The limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

**B**. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part **A** or Part **B** of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

**C**. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

**D**. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

## OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy:

1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

2. Any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any collectible insurance providing such coverage on a primary basis.

3. If the coverage under this policy is provided:

   **a**. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

   **b**. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

## ARBITRATION

**A**. If we and an "insured" do not agree:

1. Whether that "insured" is legally entitled to recover damages; or

2. As to the amount of damages which are recoverable by that "insured";

from the owner or operator of an "uninsured motor vehicle", then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

AA 0001P (10-05)

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

**B.** Each party will:

**1.** Pay the expenses it incurs; and

**2.** Bear the expenses of the third arbitrator equally.

**C.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision

agreed to by at least two of the arbitrators will be binding as to:

**1.** Whether the "insured" is legally entitled to recover damages; and

**2.** The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

---

## PART D – COVERAGE FOR DAMAGE TO YOUR AUTO

**INSURING AGREEMENT**

**A.** We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto", including their equipment, minus any applicable deductible shown in the Declarations. If loss to more than one "your covered auto" or "non-owned auto" results from the same "collision", only the highest applicable deductible will apply. We will pay for loss to "your covered auto" caused by:

**1.** Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

**2.** "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a "non-owned auto", we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

**B.** "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object.

Loss caused by the following is considered other than "collision":

**1.** Missiles or falling objects;

**2.** Fire;

**3.** Theft or larceny;

**4.** Explosion or earthquake;

**5.** Windstorm;

**6.** Hail, water or flood;

**7.** Malicious mischief or vandalism;

**8.** Riot or civil commotion;

**9.** Contact with bird or animal; or

**10.** Breakage of glass.

If breakage of glass is caused by a "collision", you may elect to have it considered a loss caused by "collision".

**C.** "Non-owned auto" means:

**1.** Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member"; or

**2.** Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

**a.** Breakdown;

**b.** Repair;

**c.** Servicing;

**d.** Loss; or

**e.** Destruction.

**TRANSPORTATION EXPENSES**

**A.** In addition, we will pay, without application of a deductible, up to a maximum of $600 for:

**1.** Temporary transportation expenses not exceeding $20 per day incurred by you in the event of a loss to "your covered auto". We will pay for such expenses if the loss is caused by:

**a.** Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

**b.** "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

**2.** Expenses for which you become legally responsible in the event of loss to a "non-owned auto". We will pay for such expenses if the loss is caused by:

**a.** Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for any "your covered auto".

**b.** "Collision" only if the Declarations indicate that Collision Coverage is provided for any "your covered auto".

However, the most we will pay for any expenses for loss of use is $20 per day.

**B.** Subject to the provisions of Paragraph **A.**, if the loss is caused by:

**1.** A total theft of "your covered auto" or a "non-owned auto", we will pay only expenses incurred during the period:

**a.** Beginning 48 hours after the theft; and

**b.** Ending when "your covered auto" or the "non-owned auto" is returned to use or we pay for its loss.

**2.** Other than theft of a "your covered auto" or a "non-owned auto", we will pay only expenses beginning when the auto is withdrawn from use for more than 24 hours.

Our payment will be limited to that period of time reasonably required to repair or replace the "your covered auto" or the "non-owned auto".

**EXCLUSIONS**

We will not pay for:

**1.** Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used as a public or livery conveyance. This Exclusion **(1.)** does not apply to a share-the-expense car pool.

**2.** Damage due and confined to:

**a.** Wear and tear;

**b.** Freezing;

**c.** Mechanical or electrical breakdown or failure; or

**d.** Road damage to tires.

This Exclusion **(2.)** does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto".

**3.** Loss due to or as a consequence of:

**a.** Radioactive contamination;

**b.** Discharge of any nuclear weapon (even if accidental);

**c.** War (declared or undeclared);

**d.** Civil war;

**e.** Insurrection; or

**f.** Rebellion or revolution.

**4.** Loss to any electronic equipment that reproduces, receives or transmits audio, visual or data signals. This includes but is not limited to:

**a.** Radios and stereos;

**b.** Tape decks;

**c.** Compact disk systems;

**d.** Navigation systems;

**e.** Internet access systems;

**f.** Personal computers;

**g.** Video entertainment systems;

**h.** Telephones;

**i.** Televisions;

**j.** Two-way mobile radios;

**k.** Scanners; or

**l.** Citizens band radios.

This Exclusion **(4.)** does not apply to electronic equipment that is permanently installed in "your covered auto" or any "non-owned auto".

**5.** Loss to tapes, records, disks or other media used with equipment described in Exclusion **4**.

**6.** A total loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by governmental or civil authorities.

This Exclusion **(6.)** does not apply to the interests of Loss Payees in "your covered auto".

**7.** Loss to:

**a.** A "trailer", camper body, or motor home, which is not shown in the Declarations; or

**b.** Facilities or equipment used with such "trailer", camper body or motor home. Facilities or equipment include but are not limited to:

**(1)** Cooking, dining, plumbing or refrigeration facilities;

**(2)** Awnings or cabanas; or

**(3)** Any other facilities or equipment used with a "trailer", camper body, or motor home.

This Exclusion **(7.)** does not apply to a:

    **a.** "Trailer", and its facilities or equipment, which you do not own; or

    **b.** "Trailer", camper body, or the facilities or equipment in or attached to the "trailer" or camper body, which you:

        **(1)** Acquire during the policy period; and

        **(2)** Ask us to insure within 14 days after you become the owner.

**8.** Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

**9.** Loss to equipment designed or used for the detection or location of radar or laser.

**10.** Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

    **a.** Special carpeting or insulation;

    **b.** Furniture or bars;

    **c.** Height-extending roofs; or

    **d.** Custom murals, paintings or other decals or graphics.

This Exclusion **(10.)** does not apply to a cap, cover or bedliner in or upon any "your covered auto" which is a pickup.

**11.** Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

    **a.** Selling;

    **b.** Repairing;

    **c.** Servicing;

    **d.** Storing; or

    **e.** Parking;

vehicles designed for use on public highways. This includes road testing and delivery.

**12.** Loss to "your covered auto" or any "non-owned auto", located inside a facility designed for racing, for the purpose of:

    **a.** Competing in; or

    **b.** Practicing or preparing for;

any prearranged or organized racing or speed contest.

**13.** Loss to, or loss of use of, a "non-owned auto" rented by:

    **a.** You; or

    **b.** Any "family member";

if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that "family member", pursuant to the provisions of any applicable rental agreement or state law.

**LIMIT OF LIABILITY**

**A.** Our limit of liability for loss will be the lesser of the:

    **1.** Actual cash value of the stolen or damaged property; or

    **2.** Amount necessary to repair or replace the property with other property of like kind and quality.

However, the most we will pay for loss to:

    **1.** Any "non-owned auto" which is a trailer is $1500.

    **2.** Electronic equipment that reproduces, receives or transmits audio, visual or data signals, which is permanently installed in the auto in locations not used by the auto manufacturer for installation of such equipment, is $1,000.

**B.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

**C.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**PAYMENT OF LOSS**

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

    **1.** You; or

    **2.** The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

**NO BENEFIT TO BAILEE**

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

**OTHER SOURCES OF RECOVERY**

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be

excess over any other collectible source of recovery including, but not limited to:

**1.** Any coverage provided by the owner of the "non-owned auto";

**2.** Any other applicable physical damage insurance;

**3.** Any other source of recovery applicable to the loss.

**APPRAISAL**

**A.** If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two

appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**1.** Pay its chosen appraiser; and

**2.** Bear the expenses of the appraisal and umpire equally.

**B.** We do not waive any of our rights under this policy by agreeing to an appraisal.

---

## PART E – DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us:

**A.** We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

**B.** A person seeking any coverage must:

**1.** Cooperate with us in the investigation, settlement or defense of any claim or suit.

**2.** Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

**3.** Submit, as often as we reasonably require:

**a.** To physical exams by physicians we select. We will pay for these exams.

**b.** To examination under oath and subscribe the same.

**4.** Authorize us to obtain:

**a.** Medical reports; and

**b.** Other pertinent records.

**5.** Submit a proof of loss when required by us.

**C.** A person seeking Uninsured Motorists Coverage must also:

**1.** Promptly notify the police if a hit-and-run driver is involved.

**2.** Promptly send us copies of the legal papers if a suit is brought.

**D.** A person seeking Coverage For Damage To Your Auto must also:

**1.** Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.

**2.** Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.

**3.** Permit us to inspect and appraise the damaged property before its repair or disposal.

---

## PART F – GENERAL PROVISIONS

**BANKRUPTCY**

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

**CHANGES**

**A.** This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

**B.** If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

**1.** The number, type or use classification of insured vehicles;

**2.** Operators using insured vehicles;

**3.** The place of principal garaging of insured vehicles;

**4.** Coverage, deductible or limits.

If a change resulting from **A.** or **B.** requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

**C.** If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will

automatically apply to your policy as of the date we implement the change in your state. This Paragraph **(C.)** does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

**1.** A subsequent edition of your policy; or

**2.** An Amendatory Endorsement.

**FRAUD**

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

**LEGAL ACTION AGAINST US**

**A.** No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part **A,** no legal action may be brought against us until:

**1.** We agree in writing that the "insured" has an obligation to pay; or

**2.** The amount of that obligation has been finally determined by judgment after trial.

**B.** No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured".

**OUR RIGHT TO RECOVER PAYMENT**

**A.** If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

**1.** Whatever is necessary to enable us to exercise our rights; and

**2.** Nothing after loss to prejudice them.

However, our rights in this Paragraph **(A.)** do not apply under Part **D,** against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

**B.** If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

**1.** Hold in trust for us the proceeds of the recovery; and

**2.** Reimburse us to the extent of our payment.

**POLICY PERIOD AND TERRITORY**

**A.** This policy applies only to accidents and losses which occur:

**1.** During the policy period as shown in the Declarations; and

**2.** Within the policy territory.

**B.** The policy territory is:

**1.** The United States of America, its territories or possessions;

**2.** Puerto Rico; or

**3.** Canada.

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

**TERMINATION**

**A. Cancellation**

This policy may be cancelled during the policy period as follows:

**1.** The named insured shown in the Declarations may cancel by:

**a.** Returning this policy to us; or

**b.** Giving us advance written notice of the date cancellation is to take effect.

**2.** We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

**a.** At least 10 days notice:

**(1)** If cancellation is for nonpayment of premium; or

**(2)** If notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

**b.** At least 20 days notice in all other cases.

**3.** After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

**a.** For nonpayment of premium; or

**b.** If your driver's license or that of:

**(1)** Any driver who lives with you; or

**(2)** Any driver who customarily uses "your covered auto";

has been suspended or revoked. This must have occurred:

**(1)** During the policy period; or

**(2)** Since the last anniversary of the original effective date if the policy period is other than 1 year; or

**c.** If the policy was obtained through material misrepresentation.

**B**. **Nonrenewal**

If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 20 days before the end of the policy period. Subject to this notice requirement, if the policy period is:

**1.** Less than 6 months, we will have the right not to renew or continue this policy every 6 months, beginning 6 months after its original effective date.

**2.** 6 months or longer, but less than one year, we will have the right not to renew or continue this policy at the end of the policy period.

**3.** 1 year or longer, we will have the right not to renew or continue this policy at each anniversary of its original effective date.

**C.** **Automatic Termination**

If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance

**D.** **Other Termination Provisions**

**1.** We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

**2.** If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if

any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

**2.** If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

**3.** The effective date of cancellation stated in the notice shall become the end of the policy period.

**TRANSFER OF YOUR INTEREST IN THIS POLICY**

**A.** Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

**1.** The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

**2.** The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto".

**B.** Coverage will only be provided until the end of the policy period.

**TWO OR MORE AUTO POLICIES**

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Includes copyrighted material of ISO Properties, Inc., with its permission.
© ISO Properties, Inc., 2003

## ALLIED EXTRA COVERAGES

Coverage is subject to all terms and conditions of the policy, except as changed by this endorsement.

When you have in effect a Homeowners Insurance Policy or Farm Property Coverage Form issued by an affiliated company of Nationwide Mutual Insurance Company (Nationwide) or an affiliated company of Allied Property and Casualty Insurance Company (Allied) that covers your "residence premises" or "dwelling", as defined in the Nationwide or Allied policy, Allied Extra Coverages will apply in accordance with the following provisions:

**Emergency Lockout Coverage**

We will reimburse you up to $150 for reasonable expense incurred for the services needed to gain entry into "your covered auto" or your "residence premises" or your "dwelling" subject to these conditions:

1.  Your key (including electronic entry device) has been lost, stolen, disabled, or locked in "your covered auto" or "residence premises" or "dwelling" and you are unable to enter such auto , residence premises or dwelling; or

2.  Your key (including electronic entry device) has been lost or stolen and you have changed the locks to prevent an unauthorized entry.

Original copies of receipts for services must be provided before reimbursement is payable.

For the purposes of this coverage:

"Your covered auto" shall mean any auto described in the Declarations for which a premium charged indicates either Part A – LIABILITY COVERAGE or Part D – COVERAGE FOR DAMAGE TO YOUR COVERED AUTO applies.

"Residence Premises" and "Dwelling" shall mean the dwelling insured under your Homeowners Insurance Policy or Farm Property Coverage Form.

**Special Deductible Provision**

In the event of a covered loss, the following Special Deductible Provisions will apply:

1.  When the "residence premises" or "dwelling", as defined in your Homeowners Insurance Policy or your Farm Property Coverage Form, is a total fire loss, as determined by us, the "residence premises" or "dwelling" deductible will be waived, up to $5000; or

2.  If the same event results in a covered loss to two or more Allied or Nationwide policies insuring:

    a.  "your covered auto" under your Personal Auto Policy;

    b.  property covered under your Homeowners Insurance Policy;

    c.  a recreational vehicle covered under your Recreational Vehicle Policy;

    d.  a watercraft covered under your Pleasure Boatowners Insurance Policy; or

    e.  Farm policy covering the "dwelling", as defined in your Farm Property Coverage Form;

    the highest deductible applicable shall apply once to all covered losses.  We will adjust each loss separately under the policies, including the application of any deductible.  If the combined loss or damage exceeds the higher of the applicable deductibles, we will then reimburse you for the lesser deductible amount.

    This provision applies only if the combined loss or damage exceeds the higher of the applicable deductibles.

    The application of this provision shall not serve to reduce your recovery to less than the amount you would have received under individual policies or other deductible provisions.

    For the purpose of this coverage "your covered auto" shall mean any auto described in the Declarations for which a premium charge indicates Part D – COVERAGE FOR DAMAGE TO YOUR COVERED AUTO applies.

AA 0008PA (06-08)

**Air Bag Replacement Coverage**

We will pay for reasonable expenses incurred in replacing an air bag in "your covered auto" that deploys without the auto being involved in a loss.

For the purpose of this coverage "your covered auto" shall mean any auto described in the Declarations for which a premium charge indicates Part D – COVERAGE FOR DAMAGE TO YOUR COVERED AUTO applies.

This coverage applies only if you submit proper receipts for expenses claimed under this coverage.

Unless otherwise stated above, all provisions of the policies apply.

AA 0151 (10-14)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
**AMENDMENT OF POLICY PROVISIONS – PENNSYLVANIA**

**DEFINITIONS**

The **DEFINITIONS** section is amended as follows:

Throughout the policy, "minimum limits" refers to the following limits of liability as required by Pennsylvania law, to be provided under a policy of automobile liability insurance:

**1.** $15,000 for each person, subject to $30,000 for each accident, with respect to "bodily injury"; and

**2.** $5,000 for each accident with respect to "property damage".

Item **A.2.** is replaced by the following:

**2.** The spouse if a resident of the same household.

The term spouse includes a:

**a.** Husband or wife; or

**b.** If unmarried, a:

**(1)** Civil partner by Civil Union or Registered Domestic Partnership filed and recognized by the state; or

**(2)** "Domestic partner".

If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse will be considered "you" and "your" under this policy but only until the earlier of:

**1.** The end of 90 days following the spouse's change of residency;

**2.** The effective date of another policy listing the spouse as a named insured; or

**3.** The end of the policy period.

Item **K.1.** is replaced by the following:

**1.** "Newly acquired auto" means any of the following types of vehicles you become the owner of during the policy period:

**a.** A private passenger auto; or

**b.** A pickup or van, for which no other insurance policy provides coverage, that:

**(1)** Has a Gross Vehicle Weight Rating not exceeding 9,000 lbs.; and

**(2)** Is not principally used in any "business" other than farming or ranching.

Item **L.** is added:

**L.** "Noneconomic loss" means pain and suffering and other nonmonetary detriment.

Item **M.** is added:

**M.** "Serious injury" means an injury resulting in death, serious impairment of body function or permanent serious disfigurement.

Item **N.** is added as follows:

**N.** "Performance testing" is when an "insured" uses any vehicle to:

**1.** test its performance in speed, handling; or

**2.** test or practice driver skills.

"Performance testing" does not apply to student-driver training activities an insured participates in to obtain that person's state issued learner's permit or driver's license. "Performance testing" also does not apply to driver training activities an insured participates in to complete that person's state sanctioned courses in motor vehicle accident prevention, defensive driving, or driver improvement.

Item **O.** is added:

**O.** "Domestic Partner" means a person living with you and sharing a common domestic life and whose relationship resembles a mutually exclusive partnership such as that of a marriage, and:

**1.** is at least 18 years of age and capable of entering into a legal contract;

**2.** is not a relative; and

**3.** shares with you financial interdependence and a common residence.

Evidence of such includes, but is not limited to:

**a.** Joint domestic responsibility for the maintenance of the household.

**b.** Having joint financial obligations, resources, or assets.

**c.** Documents such as a driver's license, tax returns, or bills showing a common address for both parties.

**d.** Both parties receiving mail at the same address.

**e.** A declaration of domestic partnership with that person or similar declaration about that person with an employer or government entity.

A "domestic partner" does not include more than one person, a roommate or housemate whether sharing expenses equally or not, or one who pays rent to the named insured.

## Part A – LIABILITY COVERAGE

Part **A** is amended as follows:

Paragraph **A**. of the **INSURING AGREEMENT** is replaced by the following:

> **A.** We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

Under **EXCLUSIONS**, item **A.5.** is replaced by the following:

> **5.** For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used:
>
> > **a.** to carry persons or property for a fee or compensation; or
> >
> > **b.** on a regular basis for retail or wholesale delivery, including but not limited to pizza, magazine, newspaper, and mail delivery.
>
> This Exclusion **(A.5.)** does not apply to:
>
> > **a.** A share-the-expense car pool; or
> >
> > **b.** Liability arising out of the activities of a registered family day care provider.

Under **EXCLUSIONS**, item **B.4.** is replaced by the following:

> **4.** Any vehicle:
>
> > **a.** while used in an organized or prearranged competitive event, including but not limited to:
> >
> > > **(1)** racing contest or event; or
> > >
> > > **(2)** speed contest or event; or
> > >
> > > **(3)** in practice or preparation for any racing or speed contest or event.
> >
> > **b.** while used in "performance testing" that is done on a closed road, or a race track, or a testing    facility environment where the "insured" is not competing.

Item 6. is added to the **SUPPLEMENTARY PAYMENTS** provision:

> We will pay on behalf of an "insured":
>
> > **6.** Prejudgment interest awarded against the "insured" on the part of the judgment we pay. Any prejudgment interest awarded against the "insured" is subject to the applicable Pennsylvania Rules of Civil Procedure.

## PART B – MEDICAL PAYMENTS COVERAGE

Part **B** is amended as follows:

Under **EXCLUSIONS**, item **2.** is replaced by the following:

> **2.** Sustained while "occupying" "your covered" auto when it is being used:
>
> > **a.** to carry persons or property for a fee or compensation; or
> >
> > **b.** on a regular basis for retail or wholesale delivery, including but not limited to pizza, magazine, newspaper, and mail delivery.
>
> This Exclusion **(2.)** does not apply to motor vehicles used in share-the-expense car pools.

Under **EXCLUSIONS**, item **11.** is replaced by the following:

> **11.** Sustained while "occupying" any vehicle in any activity while:
>
> > **a.** used in an organized or prearranged competitive event, including but not limited to:
> >
> > > **(1)** racing contest or event; or
> > >
> > > **(2)** speed contest or event; or
> > >
> > > **(3)** in practice or preparation for any racing or speed contest or event.
> >
> > **b.** used in "performance testing" that is done on a closed road, or a race track, or a testing facility environment where the "insured" is not competing.

## Part D – COVERAGE FOR DAMAGE TO YOUR AUTO

Part D is amended as follows:

The following is added to Paragraph B. of the **INSURING AGREEMENT**:

For damage to "your covered auto's" windshield, we may offer to have it repaired in lieu of replacement.  We will not apply a deductible for

**AA 0151 (10-14)**

the repair of the windshield. This coverage only applies if "collision" or other than "collision" is shown on the Declarations as applicable to that vehicle.

Under **EXCLUSIONS**, item **1.** is replaced with the following:

1.  Loss to "your covered auto" while used:

    **a.**  to carry persons or property for a fee or compensation; or

    **b.**  on a regular basis for retail or wholesale delivery, including but not limited to pizza, magazine, newspaper, and mail delivery.

    Exclusion **1.** does not apply to motor vehicles used in shared-expense car pools.

Under **EXCLUSIONS**, item **12.** is replaced with the following:

12.  Loss to "your covered auto" or any "non-owned auto", arising out of the use of a vehicle in any of the following:

    **a.**  while used in an organized or prearranged competitive event, including but not limited to:

        **(1)**  racing contest or event; or

        **(2)**  speed contest or event; or

        **(3)**  in practice or preparation for any racing or speed contest or event.

    **b.**  while used in "performance testing" that is done on a closed road, or a race track, or a testing facility environment where the "insured" is not competing.

**Part E – DUTIES AFTER AN ACCIDENT OR LOSS**

Part **E** is replaced by the following:

If an accident or loss occurs, the following must be done for the terms of the policy to apply:

**A.**  We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

**B.**  A person seeking any coverage must:

    **1.**  Cooperate with us in the investigation, settlement or defense of any claim or suit.

    **2.**  Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

    **3.**  Submit, as often as we reasonably require:

        **a.**  To physical exams by physicians we select. We will pay for these exams.

        **b.**  To examination under oath and subscribe the same.

    **4.**  Authorize us to obtain:

        **a.**  Medical reports; and

        **b.**  Other pertinent records.

    **5.**  Submit a proof of loss when required by us.

**C.**  A person seeking Uninsured Motorists Coverage must also:

    **1.**  Promptly notify the police if a hit-and-run driver is involved.

    **2.**  Promptly send us copies of the legal papers if a suit is brought.

**D.**  A person seeking Coverage For Damage To Your Auto must also:

    **1.**  Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.

    **2.**  Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.

    **3.**  Permit us to inspect and appraise the damaged property before its repair or disposal.

**Part F – GENERAL PROVISIONS**

Part **F** is amended as follows:

Paragraph **B.** of the **OUR RIGHT TO RECOVER PAYMENT** provision is replaced by the following:

**B.**  If we make a payment under this policy, and the person to or for whom payment is made recovers damages from another, that person shall:

    **1.**  Hold in trust for us the proceeds of the recovery; and

    **2.**  Reimburse us to the extent of our payment less reasonable attorneys' fees, costs and expenses incurred by that person in collecting our share of the recovery.

The **TERMINATION** Provision is replaced by the following:

**TERMINATION**

1.  **Cancellation**

    This policy may be cancelled during the policy period as follows:

    **a.**  The named insured shown in the Declarations may cancel by:

        **(1)**  Returning this policy to us; or

**(2)** Giving us advance written notice of the date cancellation is to take effect.

**b**. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

**(1)** At least 15 days notice of cancellation:

**(a)** If notice is effective within the first 60 days this policy is in effect and this is not a renewal or continuation policy;

**(b)** For nonpayment of premium; or

**(c)** If the driver's license of the named insured shown in the Declarations has been suspended or revoked after the effective date if this policy has been in effect less than one year; or if the policy has been in effect longer than one year, since the last anniversary of the original effective date; or

**(2)** At least 60 days notice if the policy was obtained through material misrepresentation.

Our right to cancel this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

**2. Nonrenewal**

If we decide not to renew or continue this policy, we will mail to the named insured shown in the Declarations at the address shown in this policy:

**a**. At least 15 days notice before the end of the policy period:

**(1)** For nonpayment of premium; or

**(2)** If the driver's license of the named insured shown in the Declarations has been suspended or revoked after the effective date if this policy has been in effect less than one year; or if the policy has been in effect longer than one year, since the last anniversary of the original effective date.

**b**. At least 60 days notice before the end of the policy period in all other cases.

However, our right to nonrenew this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

**3. Automatic Termination**

If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

**4. Other Termination Provisions**

**a**. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

**b**. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

**c**. The effective date of cancellation stated in the notice shall become the end of the policy period.

The following provisions are added:

**CONSTITUTIONALITY CLAUSE**
The premium for, and the coverages of, this policy have been established in reliance upon the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law. In the event a court, from which there is no appeal, declares or enters a judgment the effect of which is to render the provisions of such statute invalid or unenforceable in whole or in part, we will have the right to recompute the premium payable for the policy and void or amend the provisions of the policy, subject to the approval of the Insurance Commissioner.

**DIVIDENDS**
The first named insured is entitled to any dividends which are declared by the Board of Directors and are applicable to coverages in this policy.

Includes copyrighted material of ISO Properties, Inc., with its permission.
© ISO Properties, Inc., 2004

AA0308 (10-05)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## COVERAGE FOR DAMAGE TO YOUR AUTO
## (MAXIMUM LIMIT OF LIABILITY)

**SCHEDULE**

| Description of Vehicle | Limit of Liability | | Premium | |
| --- | --- | --- | --- | --- |
| | **Collision** | **Other Than Collision** | **Collision** | **Other Than Collision** |
| | $_____ **Less**<br>$_____ **Ded.** | $_____ **Less**<br>$_____ **Ded.** | $_____ | $_____ |
| | $_____ **Less**<br>$_____ **Ded.** | $_____ **Less**<br>$_____ **Ded.** | $_____ | $_____ |
| | $_____ **Less**<br>$_____ **Ded.** | $_____ **Less**<br>$_____ **Ded.** | $_____ | $_____ |

**NOTICE**
**The amount shown in the Schedule or in the Declarations is not necessarily the amount you will receive at the time of loss or damage for the described property. PLEASE refer to the Limit of Liability provision below.**

With respect to the Coverage(s) shown as applicable to a vehicle described in the Schedule or in the Declarations, the Limit of Liability provision in Part **D** is replaced by the following:

**LIMIT OF LIABILITY**

**A**. Our limit of liability for loss will be the lesser of the:

   **1**. Amount shown in the Schedule or in the Declarations.

   **2**. Actual cash value of the stolen or damaged property; or

   **3**. Amount necessary to repair or replace the property with other property of like kind and quality.

Our payment for loss will be reduced by any applicable deductible shown in the Schedule or in the Declarations. If loss to more than one "your covered auto" results from the same "collision", only the highest applicable deductible will apply.

**B**. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

**C**. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Includes copyrighted material of ISO Properties, Inc., with its permission.
© ISO Properties, Inc., 1993

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## FIRST PARTY BENEFITS COVERAGE – PENNSYLVANIA

With respect to coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

### I. DEFINITIONS

The Definitions section is amended as follows:

**A.** "The Act" refers to the Pennsylvania Motor Vehicle Financial Responsibility Law.

**B.** The following definitions are replaced:

  **1.** "Bodily injury" means accidental bodily harm to a person and that person's resulting illness, disease or death.

  **2.** "Your covered auto" means a "motor vehicle":

    **a.** To which Part **A** of this policy applies and for which a specific premium is charged; and

    **b.** For which First Party Benefits Coverage required by the Act is maintained.

**C.** The following definition is added:

"Motor vehicle" means a self-propelled vehicle operated or designed for use upon public roads. However, "motor vehicle" does not include a vehicle operated:

  **1.** By muscular power; or

  **2.** On rails or tracks.

**D.** "Insured" as used in this endorsement means:

  **1.** You or any "family member".

  **2.** Any other person while:

    **a.** "Occupying" "your covered auto"; or

    **b.** Not "occupying" a "motor vehicle" if injured as a result of an accident in Pennsylvania involving "your covered auto".

If "your covered auto" is parked and unoccupied it is not a "motor vehicle" involved in an accident unless it is parked in a manner which creates an unreasonable risk of injury.

### II. FIRST PARTY BENEFITS COVERAGE

### INSURING AGREEMENT

### A. BASIC FIRST PARTY BENEFIT

We will pay, in accordance with the Act, the Basic First Party Benefit to or for an "insured" who sustains "bodily injury". The "bodily injury" must be caused by an accident arising out of the maintenance or use of a "motor vehicle".

Subject to the limit shown in the Schedule or Declarations, the Basic First Party Benefit consists of:

Medical expenses. Reasonable and necessary medical expenses incurred for an "insured's":

**1.** Care;

**2.** Recovery; or

**3.** Rehabilitation.

This includes remedial care and treatment rendered in accordance with a recognized religious method of healing.

Medical expenses will be paid if incurred within 18 months from the date of the accident causing "bodily injury". However, if within 18 months from the date of the accident, it can be determined with reasonable medical probability that additional expenses may be incurred after this period, the 18 month time limit will not apply to the payment of the additional medical expenses.

### B. ADDED FIRST PARTY BENEFITS

If the Schedule or Declarations indicates that Added First Party Benefits apply, we will pay Added First Party Benefits instead of the Basic First Party Benefit to or for an "insured" who sustains "bodily injury". The "bodily injury" must be caused by an accident arising out of the maintenance or use of a "motor vehicle". These benefits are subject to the provisions of the Act.

**AA0551 (08-11)**

Subject to the limits shown in the Schedule or Declarations, Added First Party Benefits consist of the following:

**1.** Medical expenses as described in the Basic First Party Benefit.

**2.** Work loss.

    **a.** Loss of income. Up to 80% of gross income actually lost by an "insured" as a result of the accident.

    **b.** Reasonable expenses actually incurred to reduce loss of income by hiring:

        **(1)** Special help, thereby enabling an "insured" to work; or

        **(2)** A substitute to perform the work a self-employed "insured" would have performed.

    However, work loss does not include:

    **a.** Loss of expected income or expenses incurred for services performed after the death of an "insured"; or

    **b.** Any loss of income, or expenses incurred for services performed, during the first 5 working days the "insured" did not work due to "bodily injury".

**3.** Funeral expenses. Funeral or burial expenses actually incurred if "bodily injury" causes an "insured's" death within 24 months from the date of the accident.

**4.** Accidental death. A death benefit paid if "bodily injury" causes the death of you or any "family member" within 24 months from the date of the accident.

We will pay accidental death to the executor or administrator of the deceased "insured's" estate. If there is no executor or administrator, the benefit shall be paid to:

    **a.** The deceased "insured's" surviving spouse; or

    **b.** If there is no surviving spouse, the deceased "insured's" surviving children; or

    **c.** If there is no surviving spouse or children, to the deceased "insured's" estate.

**C.  COMBINATION FIRST PARTY BENEFITS**

If the Schedule or Declarations indicates that Combination First Party Benefits apply, we will pay Combination First Party Benefits instead of the Basic First Party Benefit to or for an "insured" who sustains "bodily injury". The "bodily injury" must be caused by an accident arising out of the maintenance or use of a "motor vehicle". These benefits are subject to the provisions of the Act.

Subject to the limits shown in the Schedule or Declarations, Combination First Party Benefits consist of the following, as described in the Basic First Party Benefit and Added First Party Benefits:

**1.** Medical expenses.

**2.** Work loss.

**3.** Funeral expenses.

**4.** Accidental death.

**EXCLUSIONS**

**A.** We do not provide First Party Benefits Coverage for "bodily injury" sustained by any "insured":

**1.** While intentionally causing or attempting to cause "bodily injury" to himself or any other person. We will not pay accidental death on behalf of that "insured".

**2.** While committing a felony.

**3.** While seeking to elude lawful apprehension or arrest by a law enforcement official.

**4.** While maintaining or using a "motor vehicle" knowingly converted by that "insured". This exclusion **(A.4.)** does not apply to:

    **a.** You; or

    **b.** Any "family member".

**5.** Who is the owner of a currently registered motor vehicle and who does not have financial responsibility. Financial responsibility means the type of financial responsibility that was self-certified to the Department of Transportation to obtain the registration.

**6.** Maintaining or using a "motor vehicle" while located for use as a residence or premises.

**7.** While "occupying" a:

    **a.** Recreational vehicle designed for use off public roads; or

AA0551 (08-11)

**b**. Motorcycle, moped or similar-type vehicle.

**B**. We do not provide First Party Benefits Coverage for "bodily injury":

**1**. Sustained by a pedestrian if the accident occurs outside of Pennsylvania. This exclusion **(B.1.)** does not apply to:

**a**. You; or

**b**. Any "family member".

**2**. Caused by or as a consequence of:

**a**. Discharge of a nuclear weapon (even if accidental);

**b**. War (declared or undeclared);

**c**. Civil war;

**d**. Insurrection; or

**e**. Rebellion or revolution.

**3**. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

**a**. Nuclear reaction;

**b**. Radiation; or

**c**. Radioactive contamination.

**LIMIT OF LIABILITY**

**A**. The limits of liability shown in the Schedule or Declarations for the first party benefits that apply are the most we will pay to or for each "insured" as the result of any one accident, regardless of the number of:

**1**. Claims made;

**2**. Vehicles or premiums shown in the Declarations;

**3**. Vehicles involved in the accident; or

**4**. Insurers providing first party benefits.

**B**. If Combination First Party Benefits are afforded, we will make available at least the minimum limit required by the Act for the Basic First Party Benefit. This provision (B.) will not change our maximum limit of liability.

**C**. Any amounts payable under this coverage shall be excess over any amounts:

**1**. Paid;

**2**. Payable; or

**3**. Required to be provided;

to an "insured" under any workers' compensation law or similar law.

**PRIORITIES OF POLICIES**

**A**. We will pay first party benefits in accordance with the order of priorities set forth by the Act.  We will not pay if there is another insurer at a higher level of priority. The First category listed below is the highest level of priority and the Fourth category is the lowest level of priority. The priority order is:

| | |
|---|---|
| **First** | The insurer providing benefits to the "insured" as a named insured. |
| **Second** | The insurer providing benefits to the "insured" as a family member who is not a named insured under another policy providing coverage under the Act. |
| **Third** | The insurer of the "motor vehicle" which the "insured" is "occupying" at the time of the accident. |
| **Fourth** | The insurer of any "motor vehicle" involved in the accident if the "insured" is not: |

**a**. "Occupying" a "motor vehicle"; and

**b**. Provided first party benefits under any other automobile policy.

An unoccupied parked "motor vehicle" is not a "motor vehicle" involved in an accident unless it is parked in a manner which creates an unreasonable risk of injury.

**B**. If 2 or more policies have equal priority within the highest applicable priority level:

**1**. The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible. The insurer is then entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim. If such contribution is sought among insurers under the **Fourth** priority, proration shall be based on the number of involved motor vehicles.

**2**. If we are the insurer against whom the claim is first made, our payment to or for an "insured" will not exceed the applicable limit of liability for First Party Benefits Coverage shown in the Schedule or Declarations.

**3**. The maximum recovery under all policies will not exceed the amount

**AA0551 (08-11)**

payable under the policy with the highest limit of liability.

**NON-DUPLICATION OF BENEFITS**

No one will be entitled to recover duplicate payments for the same elements of loss under this or any other similar insurance including self-insurance.

**III. PART F – GENERAL PROVISIONS**

Part **F** is amended as follows:

The Our Right To Recover Payment provision does not apply.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Includes copyrighted material of ISO Properties, Inc., with its permission.
© ISO Properties, Inc., 1992

AA 0553 (10-05)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXTRAORDINARY MEDICAL BENEFITS COVERAGE – PENNSYLVANIA

With respect to coverage provided by this endorsement, the provisions of the First Party Benefits Coverage – Pennsylvania endorsement apply unless modified by this endorsement.

**LIMITED BENEFITS**

**THIS ENDORSEMENT PROVIDES COVERAGE ONLY FOR MEDICAL EXPENSES.**

**WARNING**

**YOU SHOULD BE AWARE THAT EXTRAORDINARY MEDICAL BENEFITS COVERAGE DOES NOT APPLY TO THE FIRST $100,000 OF MEDICAL EXPENSES INCURRED BY AN "INSURED". YOU CAN AVOID HAVING TO PAY SOME OF YOUR OWN MEDICAL BILLS BY PURCHASING ADDED FIRST PARTY BENEFITS COVERAGE WITH A $100,000 LIMIT OF LIABILITY FOR MEDICAL EXPENSES.**

### SCHEDULE

| Benefit | Limit of Liability |
|---|---|
| Medical Expenses | $_____ |

**I.   EXTRAORDINARY MEDICAL BENEFITS COVERAGE**

**INSURING AGREEMENT**

We will pay, in accordance with the Act, extraordinary medical benefits to or for an "insured" who sustains "bodily injury". The "bodily injury" must be caused by an accident arising out of the maintenance or use of a "motor vehicle".

Subject to the limit shown in the Schedule or Declarations, extraordinary medical benefits consist of:

Medical expenses. Reasonable and necessary medical expenses incurred for an "insured's":

**1.**   Care;

**2.**   Recovery; or

**3.**   Rehabilitation.

This includes remedial care and treatment rendered in accordance with a recognized method of healing.

Regardless of whether you have purchased Basic, Added or Combination First Party Benefits Coverage under this policy, we will pay extraordinary medical benefits only after $100,000 of medical expenses has been incurred by any one "insured" as a result of any one accident.

**EXCLUSIONS**

The following exclusion is added:

We do not provide Extraordinary Medical Benefits Coverage for the first $100,000 of medical expenses incurred by an "insured" as a result of an accident.

**LIMIT OF LIABILITY**

**A.**   The limit of liability shown in the Schedule or Declarations for Extraordinary Medical Benefits Coverage is the most we will pay to or for each "insured" as the result of any one accident, regardless of the number of:

**1.**   Claims made;

**2.**   Vehicles or premiums shown in the Declarations;

**3.**   Vehicles involved in the accident; or

**4.**   Insurers providing extraordinary medical benefits.

Extraordinary medical benefits are subject to an annual limit of $50,000 for each "insured". However, this limit does not apply to medical expenses incurred within 18 months from the date the "insured" incurs $100,000 of medical expenses as a result of the accident.

**B.**   Any amounts payable under this coverage shall be excess over any amounts available to an "insured" for medical expenses under Basic, Added or Combination First Party Benefits Coverage.

**C.**   If an "insured" is eligible for benefits under both this coverage and the Catastrophic Loss Trust Fund, the total recovery under Extraordinary Medical Benefits Coverage and the Catastrophic Loss Trust Fund combined shall not exceed $1,000,000. In no event will the amount payable under Extraordinary Medical Benefits Coverage exceed the limit of liability shown in the Schedule or Declarations.

AA 0553 (10-05)

**D.** Any amounts payable under this coverage shall be excess over any amount:

   **1.** Paid;

   **2.** Payable; or

   **3.** Required to be provided;

   to an "insured" under any workers' compensation law or similar law.

**II. PART E – DUTIES AFTER AN ACCIDENT OR LOSS**

The following is added to Part E:

A person seeking Extraordinary Medical Benefits Coverage must submit proof, when required by us, that at least $100,000 of medical expenses has been incurred as the result of any one accident by an "insured".

**III. PART F – GENERAL PROVISIONS**

The following is added to Part **F:**

**STRUCTURED SETTLEMENTS**

If payment of medical expenses in the form of a structured settlement will be:

   **1.** Cost effective for us; and

   **2.** In the best interest of an "insured";

we and the "insured" may make an agreement, about the timing and amount of payments under this coverage, which is mutually satisfactory. This agreement may include annuities or other long-term payment arrangements.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Includes copyrighted material of ISO Properties, Inc., with its permission.
© ISO Properties, Inc., 1992

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ROADSIDE ASSISTANCE COVERAGE

The policy is amended to provide Roadside Assistance Coverage.

Coverage is subject to all terms and conditions of the policy, except as changed by this endorsement.

**DEFINITIONS**

The Definitions section is amended as follows:

1. "Roadside Assistance Representative" means our contracted vendor that will provide roadside assistance of a disabled vehicle for you or any "family member".

2. "Private Passenger Auto" means any of the following types of vehicles:

    a.  Four wheel automobile for private passenger use;

    b.  Four wheel van; or

    c.  Pick up truck having either four or six wheels.

**Insuring Agreement**

**ROADSIDE ASSISTANCE COVERAGE**

In the event that "your covered auto" or any "private passenger auto" you or any "family member" are "occupying" becomes disabled:

1.  Our "roadside assistance representative" will provide towing service; or

2.  We will reimburse you for towing service;

to a location of your choice from the location of disablement subject to the mileage limit shown in the Declarations.

In addition, the following emergency roadside services are covered:

1.  Extraction if stuck on or immediately next to a public road;
2.  Delivery of supplies, including oil, water, other fluids and fuel;
3.  Service to the battery;
4.  Changing or inflating of flat tires; and
5.  Lockout service, up to $100.

If any covered services are not performed by our "roadside assistance representative", we will only reimburse for reasonable and customary charges, as determined by us.  Receipts for any of these services must be provided to us for consideration of payment.

This endorsement does not cover the cost of supplies, replacement parts, fluids other than two gallons of fuel, or any labor performed at a service or repair facility.  A subsequent tow for the same disablement (including from a service station, garage, repair shop, or any other location) is also not covered.

**TRIP INTERRUPTION EXPENSE**

If you carry Roadside Assistance Plus coverage, as shown in the Declarations, we will repay you certain personal trip interruption expenses. Coverage will apply in the event any "private passenger auto" you or any "family member" are "occupying" becomes disabled at least 100 miles from your home residence. The expenses covered are:

1. Meals (excluding alcohol) and lodging needed when the disablement causes a delay en route; and
2. Commercial transportation fares for you or any "family member" to continue to the intended destination or home residence.

These expenses must be incurred between the time of disablement and arrival at your residence or destination or within 72 hours, whichever comes first.  We will pay up to a maximum of $500 for covered trip interruption expenses, based on your submitted receipts, not to exceed $100 per day for dining and lodging.

**AA 1418 (08-08)**

**Limit of Liability**

**LOSS SETTLEMENT**

1. If "your covered auto" is covered by us under **PART D – COVERAGE FOR DAMAGE TO YOUR AUTO**, and is disabled as a result of a covered loss, payment will be made under **PART D – COVERAGE FOR DAMAGE TO YOUR AUTO**.  In the event the cost of damages and the tow of "your covered auto" are below your deductible, payment for the tow will be made under this endorsement.

2. No deductible applies to Roadside Assistance Coverage.

**OTHER INSURANCE**

Any coverage provided under this endorsement will be excess over any other insurance or other sources of recovery. However, if we provide coverage under any other endorsements attached to your policy, the coverage provided by this endorsement will be primary.

**DUPLICATE PAYMENT**

We will make no duplicate payment to or for any insured for the same element of loss.

This endorsement applies as stated in the policy Declarations.

This endorsement is issued by the company shown in the Declarations as the issuing company.

AA 1429 (07-11)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
## RENTAL REIMBURSEMENT/TRANSPORTATION EXPENSES – RENTAL DAYS PLUS

The provisions and exclusions that apply to Part D also apply to this endorsement except as changed by this endorsement.

**ADDITIONAL DEFINITIONS APPLICABLE TO THESE COVERAGES**

1. "Collision Repair Service Program" means our current designated network of repair facilities that have agreed with us to provide guaranteed vehicle related repair services to our customers.

2. "Glass Program" means our designated vendors and/or network of glass repairers that have agreed with us to provide guaranteed vehicle glass services to our customers.

3. "Rental Program Provider" means our designated vendors or network of vendors that have agreed with us to provide rental vehicles to our customers.

**Insuring Agreement**

**COVERED EXPENSES are either:**

1. **Rental Reimbursement/Transportation Expenses**

   A. When there is a loss to one of "your covered autos" for which the Declarations indicates Rental Reimbursement/Transportation Expenses Coverage applies, we will reimburse you for expenses you incur to rent a substitute auto. This coverage applies only if:

      1. The auto is withdrawn from use for more than 24 hours, and

      2. The loss is caused by "collision", or covered under Part D of this policy.

      However, this coverage does not apply when there is a total theft of the auto.

      Our payment will be limited to that period of time reasonably required to repair or replace the auto. We will pay up to the amount shown in the Declarations as applicable to that vehicle.

   B. The Transportation Expenses provision of Part D is replaced by the following:

      In addition, we will pay up to the amount shown in the Declarations as applicable to that vehicle for transportation expenses incurred by you. This applies only in the event of the total theft of "your covered auto". We will pay only transportation expenses incurred during the period:

      1. Beginning 48 hours after the theft; and

      2. Ending when "your covered auto" is returned to use or we pay for its loss.

2. **Rental Days Plus Auto Rental Expense**

   A. When there is a loss to one of "your covered autos" for which the Declarations indicates Rental Reimbursement/Transportation Expenses Coverage applies, we will reimburse you for expenses you incur to rent a substitute auto. This coverage is subject to the daily maximum limit shown in the Declarations and applies only if:

      1. The auto is withdrawn from use for more than 24 hours, and

      2. The loss is caused by "collision", or covered under Part D of this policy, and

      3. You agree to use a repair facility and glass vendor, as applicable, that participates in our "Collision Repair Service Program" or our "Glass Program", and

      4. Use a rental vehicle provided by our "Rental Program Provider".

      In the event "your covered auto" is determined to be a total loss after repairs have begun, coverage continues for a reasonable amount of time after a total loss settlement is agreed to, not to exceed 30 days after the offer of the total loss settlement.

   B. The Transportation Expenses provision of Part D is replaced by the following:

      In addition, we will pay up to the amount shown in the Declarations as applicable to that vehicle for transportation expenses incurred by you. This applies only in the event of the total theft of "your covered auto". We will pay only transportation expenses incurred during the period:

      1. Beginning 48 hours after the theft; and

      2. Ending when "your covered auto" is returned to use or we pay for its loss.

Includes copyrighted material of ISO Properties, Inc., with its permission.
© ISO Properties, Inc., 1986

**Endorsement Text Information**

| Endorsement Number » IN0611   Edition Date » 0401   Version Number » 00 |
| --- |

```
             IMPORTANT INSURANCE INFORMATION
           NOTICE - PAYMENT FOR AFTERMARKET PARTS
Physical  Damage  coverage,  when provided under this policy, includes
payment for aftermarket parts.   Any  warranties  applicable  to  these
replacement parts are provided by the manufacturer or distributor of
these  parts  rather  than  the  manufacturer  of  your vehicle.  If you
choose to repair the vehicle using more expensive original equipment
manufacturer (OEM) parts  when  aftermarket  parts  are  available,  you
may pay the difference.
NOTE:   This  notice does not apply to covered autos with the Special
Physical Damage Coverage endorsement.  This optional endorsement will
provide damage estimates for "your covered auto"  based  on  available
new  parts  from the original equipment manufacturer.   Please contact
your agents for details.
The above notice  provides  no  coverage  and  it  does  not  replace  any
provisions of your policy.
IN 0611 (04-01)
```

IN 2402 (10-05)

★★★★★★★   IMPORTANT INSURANCE INFORMATION   ★★★★★★★

**PENNSYLVANIA INSURANCE CONSULTATION SERVICES EXEMPTION ACT—NOTICE**

An Insurance Company, its agents, employees or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss.  These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1.  surveys;

2.  consultation or advice; or

3.  inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of an act or omission by any person in the furnishing of or failure to furnish these services.

The Act does not apply:

1.  if the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2.  to consultation services required to be performed under a written service contract not related to the insurance policy; or

3.  if any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice or gross negligence.

IN 2402 (10-05)                                                                                                Page 1 of 1

Exhibit 3

# EXHIBIT 3

2019 WL 3554184
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

Malaika COLEMAN, individually and on
behalf of all others similarly situated, Plaintiff,

v.

GARRISON PROPERTY & CASUALTY
INSURANCE CO. and United Services
Automobile Association, Defendants.

No. 19 C 1745
|
Signed 07/31/2019

**Attorneys and Law Firms**

Adam J. Levitt, Daniel R. Ferri, DiCello Levitt & Casey LLC,
Chicago, IL, Andrew John Shamis, Pro Hac Vice, Shamis &
Gentile, PA, Miami, FL, Edmund A. Normand, Pro Hac Vice,
Jacob L. Phillips, Pro Hac Vice, Normand PLLC, Orlando,
FL, for Plaintiff.

Jay Williams, Kirstie Ann Brenson, Paula Marie Ketcham,
Schiff Hardin LLP, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

Virginia M. Kendall, United States District Judge

**\*1** Defendants Garrison Property & Casualty Insurance
Co. ("Garrison") and United Service Automobile Association
("USAA") (together, "Defendants") move to dismiss the
complaint under Rule 12(b)(6) for failure to state valid breach
of contract claims. For the reasons stated below, the Court
grants Defendants' Motion to Dismiss [Dkt. 20].

## BACKGROUND

Plaintiff Malaika Coleman brings this action individually and
on behalf of two classes against her car insurance provider.
Plaintiff totaled her car and sought reimbursement from her
insurer. She alleges she was harmed because her insurer did
not include the costs of sales tax and title transfer fees in the
reimbursement. Plaintiff alleges that Defendants' failure to
pay those costs is a breach of her insurance agreement. (Dkt.

1 ¶¶ 1-5.) Plaintiff's two-count complaint includes a breach
of contract claim against each Defendant. (*Id.* ¶¶ 62-82.)
Defendants move to dismiss Plaintiff's individual claims only
and note that the "putative class claims are not at issue" in the
motion. (Dkt. 21 at 4.)

Plaintiff had car insurance through Defendants for her 2006
Chrysler 300. (Dkt. 1 ¶¶ 26, 42.) On September 7, 2018,
Plaintiff was involved in an accident while driving her car and
filed a property damage claim with Defendant Garrison. (*Id.* ¶
43.) Defendants determined that Plaintiff's car was a total loss
with a base value of $3,466.00. (*Id.* ¶ 44.) Defendants paid
Plaintiff that amount plus a $25 license/tag transfer fee, but
did not pay her the costs of sales tax ($216.25) or title transfer
fees ($95). (*Id.* ¶¶ 47-49.)

Plaintiff's USAA insurance policy provides that Defendants
will pay for each "loss" to a covered auto. (*Id.* ¶ 26; *see
also* Dkt. 1-1 at 26.) The policy defines "loss" as "direct
and accidental damage," which "includes a total loss, but
does not include any damages other than the cost to repair
or replace." (*Id.* ¶ 28; *see also* Dkt. 1-1 at 25.) The limit
of USAA's liability for loss is "the actual cash value of the
vehicle," which the policy defines as "the amount it would
cost, at the time of loss, to buy a comparable vehicle." (*Id.* ¶¶
29-30; *see also* Dkt. 1-1 at 25.) The policy does not define
"actual cash value" as excluding the costs of sales taxes or
title fees. (*Id.* ¶ 32.) Plaintiff alleges that Defendants breached
their agreement by not including the costs of sales tax or title
transfer fees in the "actual cash value" payment for her total
loss. (*Id.* ¶¶ 37-38, 50.)

## STANDARD OF REVIEW

"To survive a motion to dismiss under 12(b)(6), a complaint
must 'state a claim to relief that is plausible on its face.'
" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th
Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.
544, 570 (2007)). "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S.
662, 678 (2009)). "[I]t is not enough for a complaint to avoid
foreclosing possible bases for relief; it must actually suggest
that the plaintiff has a right to relief ... by providing allegations
that 'raise a right to relief above the speculative level.' "
*E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777

(7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555) (emphasis in original).

**\*2** The Court construes the complaint and attached exhibits "in the light most favorable to the nonmoving party, accept[s] well-pleaded facts as true, and draw[s] all inferences in her favor." *Reynolds*, 623 F.3d at 1146. "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 566 U.S. at 678). "Where an exhibit and the complaint conflict, the exhibit typically controls." *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). "A court is not bound by the party's characterization of an exhibit and may independently examine and form its own opinions about the document." *Id.*

### DISCUSSION

Defendants argue that Plaintiff's breach of contract claims fail because Defendants are not obligated to pay Plaintiff's sales tax and title fees. Defendants argue that nothing in the policy requires them to pay those costs and that they are not required to do so as a matter of Illinois law.

### I. Plaintiff's Insurance Policy

To succeed on her breach of contract claims, Plaintiff must demonstrate 1) the existence of a valid contract, 2) that she substantially performed her obligations, 3) that defendant breached, and 4) resulting damages. *Dual-Temp of Ill., Inc. v. Hench Control, Inc.*, 821 F.3d 866, 869 (7th Cir. 2016). "A breach can only exist where a party fails to carry out a term, promise, or condition of a contract." *Officemax, Inc. v. NHS Human Servs., Inc.*, No. 16 C 9111, 2017 WL 1022078, at \*2 (N.D. Ill. March 15, 2017) (citations omitted). The only element at issue in Defendants' motion is whether Plaintiff adequately pleaded a breach.

Plaintiff argues that Defendants promised to pay her the "actual cash value" for her totaled car, which she argues includes sales tax and title transfer fees. The only policy provision Plaintiff cites to support her theory is the one defining "actual cash value" as "the amount it would cost, at the time of loss, to buy a comparable vehicle." (Dkt. 1 ¶ 37; *see also* Dkt. 25 at 4.) Plaintiff alleges that sales tax and title fees are "necessary and mandatory vehicle replacement costs in the State of Illinois," citing the relevant Illinois statutes (*see*

Dkt. 1 ¶ 34), and concludes that because those taxes and fees are "necessary and mandatory," they must be included in the policy's definition of "the amount it would cost ... to buy a comparable vehicle."

Defendants argue that "actual cash value" is not the relevant provision, because it is the limit of their liability, not the amount they promised to pay. And even if Defendants are required to pay Plaintiff the "actual cash value," they argue that the policy does not include sales tax and title transfer fees in that amount.

Defendants are correct on both accounts. First, Plaintiff puts too much emphasis on the definition of "actual cash value" in the policy. As Defendants point out, the policy states, that the "actual cash value" of a comparable vehicle is the limit on Defendants' liability—not the amount that Defendants promised to pay her. (*See* Dkt. 1-1 at 38-39) ("Our limit of liability under Comprehensive Coverage and Collision Coverage [in the event of total loss to Plaintiff's vehicle] is the actual cash value of the vehicle"). Indeed, Plaintiff alleges as much. (*See* Dkt. 1 ¶ 29) ("The [policy] represents that the limit of [Defendants'] liability for loss ... is 'the actual cash value of the vehicle' "). Defendants actually promised to pay Plaintiff "for loss caused by collision," (*see* Dkt. 1-1 at 26), which Plaintiff alleges as well. (*See* Dkt. 1 ¶ 29) (alleging the policy provides that "Defendants will pay for each 'loss' to a 'covered auto.' ") And "loss" means "direct and accidental damage," which "includes a total loss, but does not include any damages other than the cost to repair or replace." (Dkt. 1-1 at 25; *see also* Dkt. 1 ¶ 25.) Plaintiff does not point to any provision in the policy that requires Defendants to pay the "actual cash value" of her car for a total loss—that term is clearly defined as the limit of Defendants' liability, not an amount they are obligated to pay. Nor does she point to any provision that defines "loss" or "total loss" to include sales tax and transfer fees.

**\*3** Second, even if Defendants were obligated to pay Plaintiff the "actual cash value" of her car, her theory still would not hold water. Plaintiff's argument boils down to whether the policy's definition of "actual cash value" as "the amount it would cost, at the time of loss, to buy a comparable vehicle" includes sales tax and title transfer fees. Plaintiff claims it does; Defendants disagree. Plaintiff alleges that sales tax and title transfer fees are "necessary and mandatory" in Illinois, and argues they are included in her "vehicle replacement costs"—in other words, they are costs she incurs in order to replace her vehicle. But the policy does not define

"actual cash value" as the amount it would cost Plaintiff to "replace" her vehicle—*i.e.*, to buy a comparable vehicle with clear title or a comparable vehicle plus sales tax. Instead, the policy defines "actual cash value" as "the amount it would cost, at the time of loss, to *buy*"—not replace—"*a comparable vehicle.*" The definition goes on to state that a comparable vehicle "is one of the same make, model, model year, body type, and options with substantially similar mileage and physical condition." (Dkt. 1-1 at 25.) The definition is thus limited to the purchase price of the vehicle itself and does not include attendant "replacement costs" like sales tax, title fees, registration fees, or the like. Nothing in the plain language of the policy provisions Plaintiff cites as the basis for her claims can reasonably be construed as an express promise to pay sales tax and title fees, and Plaintiff does not point to any other provisions in the policy that Defendants breached.

A recent case from the Central District of Illinois is instructive. The facts are largely identical—a putative class sued their car insurer for failing to include sales tax, title transfer fees, and tag transfer fees in reimbursement for total loss—and the plaintiff made many of the same arguments. *See Sigler v. GEICO Cas. Co.*, 18 C 1446, 2019 WL 2130137 (C.D. Ill. May 15, 2019). The relevant contract language in *Sigler* is different than the language here in one aspect —"actual cash value" was defined as "the replacement cost of the auto," rather than "the amount it would cost ... to buy a comparable vehicle." *Compare Sigler*, 2019 WL 2130137, at *1, and* Dkt. 1-1 at 25. Still, the *Sigler* court concluded that "the replacement cost of the auto" did not include the taxes and fees unless plaintiff could show that he actually incurred those costs, which he could not. *Id.* at *3 ("Nothing in the plain langu[age] of the policy can reasonably be construed as an express promise to insureds that they will be reimbursed for sales tax, title transfer fees, and tag transfer fees without first incurring such costs.... The fact that actual cash value is defined, in part, as 'the replacement cost' in the policy, does not entitle [plaintiff] to a theoretical reimbursement.") Though the language in the contract here, standing alone, could be construed to require reimbursement for costs that have not actually been incurred ("actual cash value" being defined as "the amount it *would* cost, at the time of loss, to buy a comparable vehicle"), as explained above, Plaintiff does not plead facts showing that Defendants promised to pay her the "actual cash value" of her car.

Plaintiff cites cases where other courts have found "actual cash value" to include additional replacement costs like sales taxes and title fees. But those cases are nonbinding and largely

inapposite. In two cases, Florida courts found that "actual cash value" included sales tax and title transfer fees, but the policies at issue in those cases defined "actual cash value" as "the replacement cost of the auto" or "insured vehicle." *Jones v. GEICO Gen. Ins. Co.*, No 17 C 891, 2019 WL 3254207, at *1 (M.D. Fla. July 19, 2019); *Roth v. GEICO Gen. Ins. Co.*, No. 16-62942, 2018 WL 3412852, at *4 (S.D. Fla. June 14, 2018). Another Florida court found that "actual cash value" defined, like here, as the "cost ... to buy a comparable vehicle" included sales tax, but the court based its holding in part on two factors not present here—the insurer's "long history of paying sales taxes on total losses, along with title and licensing fees" and Eleventh Circuit precedent holding that state and local taxes are part of the costs of replacing an item. *See Bastian v. United Servs. Auto. Assoc.*, 150 F. Supp. 3d 1284, 1289-90 (M.D. Fla. 2015).

## II. Illinois Insurance Regulations

Defendants also argue that Plaintiff's claims fail as a matter of Illinois law. Part 919 of the Illinois insurance regulations provides that in the event of total loss, car insurers who elect to pay a cash settlement are required to "reimburse the insured for the applicable sales taxes and transfer and title fees incurred," but only if "the insured has purchased or leased a vehicle" within 30 days of receiving the cash settlement. Ill. Admin. Code tit. 50, § 919.80(c)(3)(A)(i). It further provides that "if the insured cannot substantiate such purchase and the payment of such taxes and fees" by submitting appropriate documentation, the insurer "shall not be required to reimburse the insured for the sales taxes or transfer or title fees." *Id.* It also provides that the insurer "may directly pay the required amounts of sales taxes and transfer and title fees to the insured at the time of settlement." *Id.*

 **\*4** Defendants argue that the policy incorporates these regulations and that they are not required to pay Plaintiff the taxes or fees because she did not allege that she purchased or leased a vehicle within 30 days of receiving the settlement and thus did not comply with the regulation's requirements. Plaintiff argues that Section 919.80 is a red herring because her claims are based solely on the language of the policy and not on Defendants having violated this regulation. For purposes of this motion, Section 919.80 is a wash. Even if Defendants are correct that the policy incorporates Section 919.80, the regulation provides two possible options for insureds to receive reimbursement for the taxes and fees at issue, but neither option applies here. Plaintiff does not allege that she purchased or leased a vehicle within 30 days of receiving the cash settlement, so Defendants are not required

to reimburse her for the taxes and fees under the first option. *See also Sigler*, 2019 WL 2130137, at *3 (the obligation to pay such taxes and fees "only arises for insurers after cash settlements when the insured has purchased or leased a vehicle") (citing Ill. Admin. Code tit. 50, § 919.80(c)(3)(A) (i)). Under option two, insurers "may" pay the taxes and fees at the time of settlement, but as explained above, Plaintiff has not shown any language in the policy that requires Defendants to do so.

## CONCLUSION

Because Plaintiff has not pleaded a necessary element of her breach of contract claims, the Complaint, including both the individual and putative class claims, is dismissed without prejudice. *See Weismueller v. Kosobucki*, 513 F.3d 784, 786 (7th Cir. 2008) (If "the named plaintiff's claim becomes moot before the class is certified, the suit must be dismissed because no one besides the plaintiff has a legally protected interest in the litigation"); *see also Sigler*, 2019 WL 2130137, at *4.

**All Citations**

Slip Copy, 2019 WL 3554184

---

Exhibit 4

# EXHIBIT 4



FILED

**IN THE COURT OF COMMON PLEAS**
**LAKE COUNTY, OHIO**

2020 FEB -4  AM 8:01

MAUREEN G. KELLY
LAKE CO. CLERK OF COURT

| | | |
|---|---|---|
| MARCIA HINES | ) | **CASE NO.   19CV001233** |
| Plaintiff(s) | ) | |
| | ) | **JUDGE EUGENE A. LUCCI** |
| vs. | ) | |
| | ) | <u>**ORDER GRANTING MOTION**</u> |
| | ) | <u>**TO DISMISS**</u> |
| **VICTORIA FIRE & CASUALTY** | ) | |
| **COMPANY** | ) | |
| | ) | |
| Defendant(s) | ) | |

{¶1}    The court has considered: (1) the defendant's motion to dismiss, filed October 7, 2019; (2) the plaintiff's brief in opposition, filed October 31, 2019; (3) the defendant's reply, filed November 15, 2019; (4) the plaintiff's notice of supplemental authority, filed January 13, 2020; (5) the plaintiff's notice of supplemental authority, filed January 15, 2020; and (6) the defendant's response to the plaintiff's notices of supplemental authority, filed January 21, 2020.

{¶2}    The plaintiff's complaint alleges that the defendant insured a vehicle that she owned which was involved in an accident that was a total loss. The complaint further alleges that the defendant compensated her for the vehicle, but failed to include any amount for vehicle title and registration fees, thereby breaching the insurance policy. The complaint seeks compensatory damages, declaratory judgment, and to certify a class of similarly situated insureds who were not paid for title and registration fees.

### LACK OF SUBJECT MATTER JURISDICTION

{¶3}    The defendant's motion to dismiss argues that the plaintiff lacks standing to bring a breach of contract action because the complaint does not allege injury or damages. Additionally, the defendant argues that the plaintiff lacks standing to bring a declaratory judgment action because she fails to allege the existence of an actual controversy.  The defendant seeks dismissal on this basis pursuant to Civ. R. 12(B)(1).

{¶4}    "There is no provision in Civil Rule 12(B)(1) for dismissal for lack of standing or capacity to sue." *Wells Fargo Bank, N.A. v. Elliot*, 5th Dist. Delaware No. 13 CAE 03 0012, 2013-Ohio-3690,  2013WL4678366,  ¶13. "[N]either  standing  nor  capacity  to  sue challenges the subject matter jurisdiction of a court...." *Washington Mut. Bank v. Beatley*,

10th Dist. Franklin No. 06AP-1189, 2008-Ohio-1679, 2008WL928424, ¶10; *see also Citibank v. Eckmeyer*, 11th Dist. Portage No. 2008-P-0069, 2009-Ohio-2435, 2009WL1452614, ¶24.

{¶5}     Accordingly, the defendant's motion to dismiss pursuant Civ.R. 12(B)(1) is not well-taken.

## FAILURE TO STATE A CLAIM

{¶6}     The defendant's motion to dismiss further argues that the plaintiff's complaint fails to state a claim because the defendant has no obligation to pay vehicle title and registration fees.

{¶7}     A complaint should not be dismissed for failure to state a claim upon which relief may be granted, unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *O'Brien v. University Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975), quoting *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99 (1957). Further, in considering a motion to dismiss for failure to state a claim, the court "must presume that all factual allegations are true and make all reasonable inferences in favor of the nonmoving party." *York v. Ohio State Highway Patrol*, 60 Ohio St.3d 143, 144, 573 N.E.2d 1063 (1991), quoting *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988).

{¶8}     The pertinent portion of the insurance policy at issue in this matter provides that coverage under the policy is limited to the actual cash value of the automobile. The plaintiff argues that actual cash value is not defined in the policy and is therefore ambiguous.

{¶9}     When interpreting an insurance contract, courts look at the contract as a whole and give the policy's language its plain meaning unless another meaning is clearly apparent from the contents of the policy. *Ohio Northern University v. Charles Construction Service, Inc.*, 155 Ohio St.3d 197, 199, 120 N.E.3d 762, 766, 2018-Ohio-4057, ¶11. The policy at issue here states that in determining actual cash value, the defendant would consider fair market value, age, and the condition of the property at the time of loss. Thus, taken as a whole, the policy does define actual cash value and is not ambiguous.

{¶10}   The plaintiff also argues that the policy should be interpreted to include the payment of title and registration fees, as this is part of the plaintiff's loss. The policy does not explicitly provide for the payment of title and registration fees. Further, fair market value

is generally understood to mean "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market...." *Black's Law Dictionary* (11ᵗʰ ed. 2019). Title and registration fees are not included in the common understanding of fair market value. Title and registration fees are costs associated with the ownership of a vehicle and do not affect the value of the vehicle, as they are not part of the price the seller is willing to accept for the vehicle. Therefore, the court finds that the policy did not require the defendant to pay title and registration fees.

{¶11}   The plaintiff further argues that Ohio Adm. Code 3901-1-54 requires the payment of title and registration fees because it provides for the payment of the actual cost to purchase a comparable vehicle. The plaintiff argues that the actual cost includes title and registration fees.

{¶12}   When interpreting a statute, the court must consider the language used and determine the legislative intent. *Dundics v. Eric Petroleum Corporation*, 155 Ohio St.3d 192, 120 N.E.3d 758, 2018-Ohio-3826, ¶7. "A court must give effect to all parts of a statute and consider, in context, all of the words used, giving effect to the overall statutory scheme. These maxims apply equally to administrative regulations." *Union Twp.-Clermont Cty., C.I.C., Inc. v. Lamping*, 31 N.E.3d 116, 2015-Ohio-1092 (12ᵗʰ Dist.), ¶ 24.

{¶13}   Ohio Adm. Code 3901-1-54(H)(7) provides in pertinent part that "[i]n settlement of claimants' automobile total losses on the basis of actual cash value or replacement of the automobile with another of like kind and quality, an insurer which elects to offer a cash settlement to claimant shall base the offer upon the actual cost to purchase a comparable automobile less any applicable deductible amount contained in the policy...." It further requires the insurer to reimburse the claimant for applicable sales taxes if the claimant purchases a replacement vehicle within thirty days. Ohio Adm. Code 3901-1-54(H)(7)(f). The regulation does not contain a provision requiring the insurer to pay title and registration fees. Had the administrative agency intended to include title and registration fees as part of the actual cost of the vehicle, it could have so stated. In fact, it did explicitly state so in another provision. Where an insurer elects to provide a replacement vehicle, rather than the actual cash value, Ohio Adm. Code 3901-1-54(H)(6)(c) requires the insurer to "[p]ay all applicable taxes, license fees, and other fees incident to transfer of evidence of ownership of the automobile...." This evidences an intent to exclude those costs where, as in this case,

the insurer elects to offer the actual cash value of the vehicle rather than a replacement vehicle. Therefore, the court finds that the Ohio Administrative Code did not require the defendant to pay title and registration fees.

{¶14}  For these reasons, the court finds that, presuming that all the factual allegations in the complaint are true and making all reasonable inferences in favor of the plaintiff, the plaintiff can prove no set of facts in support of her claim that would entitle her to relief.

{¶15}  Accordingly, the motion to dismiss is well-taken and is hereby granted. The plaintiff's complaint is hereby dismissed at the plaintiff's cost.

{¶16}  **IT IS SO ORDERED**.

**EUGENE A. LUCCI, JUDGE**

c:   Stuart E. Scott, Esq., Attorney for Plaintiff
     Gregory R. Farkas, Esq. & Mark L. Hanover, Esq, Attorneys for Defendant

I CERTIFY THIS TO BE A TRUE COPY OF
THE RECORDS ON FILE IN THE LAKE
COUNTY CLERK OF COURTS OFFICE.
_____ DEPUTY
MAUREEN G. KELLY, CLERK OF COURTS

FINAL APPEALABLE ORDER
Clerk to serve pursuant
To Civ.R. 58(B)

# MAUREEN G. KELLY
## CLERK OF COMMON PLEAS COURT
## CLERK OF 11TH DISTRICT COURT OF APPEALS
## 25 N. PARK PLACE
## PAINESVILLE, OHIO 44077

### CASE NO. 19CV001233

TO:    GREGORY R FARKAS
       FRANTZ WARD LLP
       2200 PUBLIC SQUARE, SUITE 300
       CLEVELAND, OH 44114

## NOTICE OF FINAL APPEALABLE ORDER
### MARCIA HINES INDIVIDUALLY vs . VICTORIA FIRE & CASUALTY COMPANY

On **FEB 4,2020** a Judgment Entry or Order was signed by a Judge of the Court of Common

Pleas and filed in the above captioned case.

This **NOTICE** is being sent by the Clerk of Courts in compliance with state statute.

**NOTE:** The Clerk of Courts cannot advise you of the amount of time for appeal nor interpret

the intent of this Notice.  For further information or clarification please contact your attorney.

### MAUREEN G. KELLY
### LAKE COUNTY CLERK OF COURTS

STUART E. SCOTT ESQ    0064834 SPANGENBERG SHIBLEY & LIBER LLP 1001 LAKESIDE AVE.
EAST, SUITE 1700  CLEVELAND OH 44114

Exhibit 5

# EXHIBIT 5



109350563

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

LINDSET WILLIAMS DIGGINS
    Plaintiff

Case No: CV-19-912705

Judge: JOHN P O'DONNELL

PERMANENT GENERAL ASSURANCE
CORPORATION OF OHIO
    Defendant

## JOURNAL ENTRY

THE PLAINTIFF HAD A POLICY WITH THE DEFENDANT WHEREIN THE DEFENDANT AGREED TO COVER PHYSICAL
DAMAGE TO THE PLAINTIFF'S VEHICLE SUBJECT TO THE FOLLOWING LIMITATION:

"FOR A LOSS COVERED UNDER THIS PART IV, WE WILL NOT PAY MORE THAN OUR LIMIT OF LIABILITY, WHICH IS
THE LESSER OF: A) THE ACTUAL CASH VALUE, AT THE TIME OF THE LOSS, OF THE DAMAGED OR STOLEN AUTO .
. .; B) THE AMOUNT NECESSARY TO REPAIR PHYSICAL DAMAGE TO THE AUTO. . .; OR C) THE AMOUNT
NECESSARY TO REPLACE THE DAMAGED OR STOLEN AUTO . . ."

THERE IS NO DISPUTE THAT, AFTER THE PLAINTIFF'S LOSS, ACTUAL CASH VALUE (WITH OR WITHOUT SALES
TAX AND TITLE FEES) WAS LESS THAN THE REPAIR OR REPLACEMENT VALUE, THUS ACTUAL CASH VALUE WAS
THE PROPER MEASURE OF THE INSURANCE COMPANY'S LIABILITY TO THE PLAINTIFF UNDER THE CONTRACT.

THE CONTRACT DEFINES ACTUAL CASH VALUE AS THE FAIR MARKET VALUE OF THE PROPERTY. IN TURN, FAIR
MARKET VALUE IS ORDINARILY DEFINED AS THE PRICE THAT A WILLING BUYER WOULD PAY AND A WILLING
SELLER ACCEPT. THAT AMOUNT DOES NOT INCLUDE SALES TAXES AND FEES, AND NOWHERE IN THE
CONTRACT DOES THE DEFENDANT PROMISE TO PAY SALES TAXES AND FEES IN THE EVENT THE PLAINTIFF,
AFTER ACCEPTING AN ACTUAL CASH VALUE PAYMENT, DECIDES TO REPLACE THE DAMAGED VEHICLE.

ACCORDINGLY, THE COMPLAINT DOES NOT STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED AND THE
DEFENDANT'S MAY 15, 2019, MOTION TO DISMISS THE COMPLAINT IS GRANTED.

_Jon P Donnel_

_____

Judge Signature              06/28/2019

06/28/2019

Exhibit 6

# EXHIBIT 6

PA Bulletin No. 11-23-2019 (PA INS BUL), 2019 WL 6255525 (PA INS BUL)
PA Bulletin November 23, 2019
PENNSYLVANIA INSURANCE BULLETINS AND RELATED MATERIALS
BULLETINS

Bulletin 11-23-2019 (#3)
November 23, 2019

FROM: Jessica K. Altman
Insurance Commissioner
DATE: November 23, 2019
RE: LIST OF APPROVED GUIDE SOURCE METHOD VENDORS AS OF OCTOBER 28, 2019

[49 Pa.B. 7060]

Under the authority of the Motor Vehicle Physical Damage Appraiser Act (63 P.S. §§ 851--863), the Insurance Commissioner lists guide source providers approved to calculate the replacement value of total loss or unrecovered vehicles under 31 Pa. Code § 62.3(e)(1)(i) (relating to applicable standards for appraisal).

A listing of approved guide source method providers will be published annually in the Pennsylvania Bulletin. In the interim, an updated listing will be available on the Insurance Department's web site at www.insurance.pa.gov. Requests for this information may also be submitted to the Insurance Department, Bureau of Consumer Services, (877) 881-6388, fax (717) 787-8585, ra-insresponse@pa.gov.

APPROVED GUIDE SOURCE VENDORS

Accurate ACV, LLC

221 East 11th Street

Kansas City, MO 64106

(816) 291-4818

www.accuacv.com

Audatex (formerly ADP Claims Solution Group, Inc.)

15030 Avenue of Science, Suite 100

San Diego, CA 92128

(800) 237-4968

www.audatex.com

Autobid, Inc.

10965 Lowell, Suite 1007

Overland Park, KS 66210

(913) 825-4800

www.autobid.com

Automobile Red Book (including the Older Used Car Publication)

Price Digests

9800 Metcalf Avenue

Overland Park, KS 66212

(800) 654-6776

www.pricedigests.com

CARFAX Banking & Insurance Group

5860 Trinity Parkway, Suite 600

Centreville, VA 20120

(800) 789-6232, Ext. 4297

www.CarfaxBIG.com

CCC Information Services, Inc.

222 Merchandise Mart Plaza, Suite 900

Chicago, IL 60654-1105

Case 2:20-cv-01322-ER Document 10 Filed 03/26/20 Page 162 of 163

(800) 621-8070

www.cccis.com

DCI Solution

P.O. Box 9186

Rapid City, SD 57709

(855) 324-5465

www.dcisolution.com

Mitchell International, Inc.

6220 Greenwich Drive

San Diego, CA 92122

(900) 238-9111

www.mitchell.com

NADA Official Used Car Guide (including the Older Used Car Publication)

8400 Westpark Drive

McLean, VA 22102

(800) 544-6232

www.nada.com/b2b

Vehicle Valuation Services

1 South 450 Summit Avenue

Suite 185

WESTLAW © 2020 Thomson Reuters. No claim to original U.S. Government Works. 3

Case 2:20-cv-01322-ER   Document 10   Filed 03/26/20   Page 163 of 163

Oakbrook Terrace, IL 60181

(888) 475-9975

**\*2**

www.vvsi.com

---

**End of Document**                                                   © 2020 Thomson Reuters. No claim to original U.S. Government Works.