```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA


Salvatore Sylvester, et al.,      :    CIVIL ACTION
                                  :    NO. 20-1322
          Plaintiffs,             :
                                  :
     v.                           :
                                  :
Depositors Insurance Company      :
et al.,                           :
                                  :
          Defendants.             :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                     August 21, 2020


## I.    INTRODUCTION

Plaintiffs bring a putative class action alleging one count of breach of contract because Defendants, in paying Plaintiffs' claims of total loss resulting from motor vehicle collisions, did not pay for fees associated with replacing a vehicle in Pennsylvania. But the insurance policies at issue do not promise to pay for the replacement of the damaged vehicle. Thus, the motion to dismiss will be granted.

## II.   BACKGROUND

Depositors Insurance Company, Nationwide Property & Casualty Insurance Company, and Nationwide Mutual Insurance Company provide passenger auto insurance to Salvatore Sylvester,

Alicia Edwards-Gutzman, and Eunice Hill, respectively. Plaintiffs were involved in motor vehicle collisions and their cars were determined by Defendants to be total losses. Defendants paid Plaintiffs' claims for the total losses of their vehicles, but these payments did not include the fees associated with replacing a car (such as title fees). The parties estimate that these fees, which a person replacing a car in Pennsylvania must pay, amount to about $105. Plaintiffs do not plead that they incurred these fees by replacing their cars.

The three insurance policies at issue are almost identical. They all provide that the insurer will pay for "loss" to the covered vehicle.[1] They all limit liability to "the actual cash value" of the vehicle.[2] And they all refer to payment for loss as separate and distinct from replacing the vehicle.[3]

---

[1] Sylvester's policy says, "We will pay for direct and accidental loss to 'your covered auto' or any 'non-owned auto', including their equipment, minus any applicable deductible shown in the Declarations." Edwards-Gutzman's and Hill's policies say, "We will pay for loss to your auto caused by collision or upset."

[2] Sylvester's policy says, "Our limit of liability for loss will be the lesser of the: 1. Actual cash value of the stolen or damaged property; or 2. Amount necessary to repair or replace the property with other property of like kind and quality." Edwards-Gutzman's and Hill's policies say, "The limit of our coverage is the actual cash value of your auto or its damaged parts at the time of loss. To determine actual cash value, we will consider: 1. fair market value; 2. age; 3. condition of the property; and 4. betterment."

[3] Sylvester's policy says, "We may pay for loss in money or repair or replace the damaged or stolen property." Edwards-Gutzman's and Hill's policies say, "At our option, we may: 1. pay you directly for a loss; 2. pay to repair or replace your auto or its damaged parts with the parts made by or for the original equipment manufacturers or parts made by non-original equipment manufacturers or with like kind and quality parts including but not limited to salvage and refurbished parts; 3. return stolen property at our expense and pay for any damage."

Plaintiffs brought suit on behalf of themselves and all others similarly situated, alleging that Defendants owe them the replacement fees under the policies. Defendants now move to dismiss, arguing that Plaintiffs do not have standing and that Plaintiffs fail to state a claim.

## III. LEGAL STANDARD

### A.   <u>Standing</u>

To challenge a plaintiff's standing to sue, a defendant may move to dismiss "pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." <u>Ballentine v. United States</u>, 486 F.3d 806, 810 (3d Cir. 2007) (citing <u>St. Thomas-St. John Hotel & Tourism Ass'n v. Gov't of the U.S. Virgin Islands</u>, 218 F.3d 232, 240 (3d Cir. 2000)). The standard of review for a 12(b)(1) motion depends on "whether a Rule 12(b)(1) motion presents a 'facial' attack or a 'factual' attack on the claim at issue." <u>Constitution Party of Pennsylvania v. Aichele</u>, 757 F.3d 347, 357 (3d Cir. 2014). When the attack is a facial attack, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." <u>Id.</u> at 358 (quoting <u>In re Schering Plough Corp. Intron/Temodar Consumer Class Action</u>, 678 F.3d 235, 243 (3d Cir. 2012)). When the attack is a factual attack, "the District Court may look beyond the pleadings to ascertain the facts" relevant to jurisdiction. <u>Id.</u> And to

determine whether the motion is a facial attack or a factual attack, the Court looks to whether the motion challenges the pleadings or instead challenges the facts beyond the pleadings. Kamal v. J. Crew Grp., Inc., 918 F.3d 102, 109 (3d Cir. 2019).

**B.   Failure to State a Claim**

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (internal quotation marks removed). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

## IV.  DISCUSSION

The motion to dismiss will be granted because the language in the policies is clear and unambiguous that Defendants have a duty to pay for the loss to the auto in the case of a collision, and they do not have a duty to pay the replacement costs.

## A.  **Standing**

The motion is a facial attack on the facts as asserted in the pleadings. As a threshold matter, Plaintiffs have standing because they have an interest in the $105 that they allege

Defendants owe them to cover fees for replacing their cars. Defendants argue that the complaint does not allege that Plaintiffs incurred the fees associated with replacing their cars. But whether these fees were incurred is irrelevant because a breach of contract claim accrued as soon as Defendants paid the total loss claim without including the replacement fees. And this accrual of the breach of contract claim gives Plaintiffs standing to sue.

To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)).[4] The injury in fact element requires the plaintiff to "show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. (quoting Lujan, 504 U.S. at 560).

An interest in damages resulting from a breach of contract is sufficient to confer standing to sue to recover those damages. In general, when the injury alleged "has a close

---

[4] Defendant only challenges the injury in fact element. The other elements of standing are met: the injury alleged, i.e., the loss of $105, is traceable to Defendants' failure to include replacement fees and is redressable by a judgment awarding each plaintiff $105.

relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," this supports a finding that the injury satisfies the injury in fact requirement. Id. (citing Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 775– 777 (2000)). And "[m]onetary harm is a classic form of injury-in-fact." Danvers Motor Co. v. Ford Motor Co., 432 F.3d 286, 293 (3d Cir. 2005). Thus, a plaintiff seeking to recover money she lost due to the breach of a contract to which she was a party has standing because monetary injuries ordinarily constitute an injury in fact and there is a common law basis for recovery for an injury arising from a breach of contract. See Takeda Pharm. U.S.A., Inc. v. Spireas, 400 F. Supp. 3d 185, 205 (E.D. Pa. 2019) ("With respect to breach of contract cases, a party is 'aggrieved' and therefore has standing to bring a breach of contract claim only if they are a party to the contract at issue." (quoting ECN Financial, LLC v. Chapman, No. 17-2842, 2018 WL 623679, at *3 (E.D. Pa. Jan. 30, 2018))).

Defendants argue that the alleged injury is too speculative to be an injury in fact because the complaint fails to allege that Plaintiffs have purchased replacement cars and incurred the replacement fees. But this argument fails because the injury is not the financial burden of having to pay replacement fees; rather, the injury is receiving a lower payment than what is

owed for a total loss under the policies.[5] Defendants in essence assert that Plaintiffs must purchase a replacement car before being entitled to the full amount of the insurance benefit, but this is not a condition in the agreement.[6]

In sum, Plaintiffs have adequately alleged that they suffered concrete injuries in that Defendants did not pay them what they are owed under the insurance policies.[7]

**B.**   **Merits**

Plaintiffs fail to state a claim because the policies unambiguously provide that the insurers must pay for the loss to the vehicle, not the replacement cost or the "actual cash value." And even if the collision results in a total loss, by the plain meaning of the terms of the contract, Defendants are not obligated to pay for the replacement of the vehicle. Thus, there is no plausible breach of contract claim.

---

[5] See Mills v. Foremost Ins. Co., 511 F.3d 1300, 1307 (11th Cir. 2008) ("The complaint alleges that the Millses had a mobile home, that Foremost issued an insurance policy covering hurricane damage to the mobile home, that a hurricane damaged the Millses' mobile home, that the Millses made a claim under the Policy for those damages, and that Foremost paid less on the claim than the Millses contend they are owed. Thus, the Millses clearly had standing to sue for damages under the Policy.")

[6] See Gilderman v. State Farm Ins. Co., 649 A.2d 941, 945 (Pa. Super. Ct. 1994) (rejecting arguments that the insurer does not need to pay replacement costs before they are incurred by the insured).

[7] To the extent Defendants argue that Plaintiffs lack standing because they are not owed replacement costs under the policies, this is not a standing argument but is instead a merits argument. See Mills, 511 F.3d at 1307 ("Whether the Withheld Payments were covered by the Policy is an issue of whether the Millses' complaint fails to state a claim for relief under the Policy-not a standing issue.").

1.   <u>The Obligation Under the Contract</u>

The contract does not create an obligation for Defendants to pay the replacement costs. Instead, Defendants must pay for the damage or financial detriment to the vehicles resulting from a collision.

Under Pennsylvania law, a breach of contract claim requires the plaintiff to prove "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." <u>Ware v. Rodale Press, Inc.</u>, 322 F.3d 218, 225 (3d Cir. 2003) (alteration in original) (quoting <u>CoreStates Bank, N.A. v. Cutillo</u>, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

The Court interprets an insurance policy using contract interpretation principles: the Court aims "to ascertain the parties' intentions as manifested by the policy's terms." <u>Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.</u>, 908 A.2d 888, 897 (Pa. 2006) (citing <u>401 Fourth St., Inc. v. Inv'rs Ins. Grp.</u>, 879 A.2d 166, 171 (Pa. 2005)). And "all provisions in the agreement will be construed together and each will be given effect." <u>LJL Transp., Inc. v. Pilot Air Freight Corp.</u>, 599 Pa. 546, 559–60 (Pa. 2009). The Court "will not interpret one provision of a contract in a manner which results in another portion being annulled." <u>Id.</u> In ascertaining the intention of the parties, "a clear and unambiguous contract

provision must be given its plain meaning." <u>Eichelman v.</u>
<u>Nationwide Ins. Co.</u>, 711 A.2d 1006, 1008 (Pa. 1998) (citing
<u>Antanovich v. Allstate Ins. Co.</u>, 488 A.2d 571, 575 (Pa. 1985)).

It is true that in accordance with the doctrine of <u>contra</u>
<u>proferentem</u>, "[w]here a provision of a policy is ambiguous, the
policy provision is to be construed in favor of the insured and
against the insurer, the drafter of the agreement." <u>Prudential</u>
<u>Prop. & Cas. Ins. Co. v. Sartno</u>, 903 A.2d 1170, 1174 (Pa. 2006)
(quoting <u>Standard Venetian Blind Co. v. Am. Empire Ins. Co.</u>, 469
A.2d 563, 566 (Pa. 1983)). That being said, <u>contra proferentem</u>
does not apply when the provision is unambiguous, and "[c]ourts
do not resort to forced construction in order to fasten
liability upon an insured which, by the terms of the policy, it
has not assumed." <u>Penn-Air, Inc. v. Indem. Ins. Co. of N. Am.</u>,
269 A.2d 19, 22 (Pa. 1970) (citation omitted). Thus, the policy
is construed in favor of the insured only where it is ambiguous
in that "it is reasonably susceptible of different constructions
and capable of being understood in more than one sense." <u>Madison</u>
<u>Const. Co. v. Harleysville Mut. Ins. Co.</u>, 735 A.2d 100, 106 (Pa.
1999) (quoting <u>Hutchison v. Sunbeam Coal Co.</u>, 519 A.2d 385, 390
(Pa. 1986)).

Here, the language of the policies is clear and
unambiguous, and, therefore, the principle of <u>contra proferentem</u>
does not apply in this case. Under the policies, Defendants must

10

pay for the loss, or damage, to the auto, not pay for the replacement of the auto. The plain meaning of loss is the "diminution of value" or the "financial detriment caused by . . . an insured property's damage." <u>Loss</u>, Black's Law Dictionary (10th ed. 2014). Consistent with this meaning, throughout the policies there are references to "the damaged auto," and the policies define loss as "damage" or noneconomic loss as "detriment."[8] Further, reading loss to auto to mean replacement would render null the provisions in the agreements that make a distinction between payment for loss and replacement of the vehicle. Thus, reading the agreements as wholes, they are only reasonably susceptible of one construction: the parties intended to contract to insure the cars for any damage or diminution in value that resulted from a collision, and not for replacement of the cars in the event of a collision.[9]

Therefore, Plaintiffs do not state a plausible breach of contract claim in that there is no duty to pay replacement costs for Defendants to have breached such a duty under the contract.

---

[8] Sylvester's policy says, "'Noneconomic loss' means pain and suffering and other nonmonetary detriment." Edwards-Gutzman's and Hill's policies say, "'LOSS' means direct, physical and accidental loss or damage to your auto."
[9] Plaintiffs do not make an argument based on the promise of paying for loss to the vehicle. Instead, all their arguments assert that the relevant promise is to pay actual cash value. But as discussed below, this is not the promise in the policy.

        2.   The Limitation of Liability

Plaintiffs' argument that they are owed replacement costs
due to the "actual cash value" language in the policies mistakes
the limitation of liability for an affirmative obligation to
pay.

Plaintiffs argue that they are owed "actual cash value"
under the contract, but this "misconstrues a limitation on
liability as a promise to pay." Sigler v. GEICO Cas. Co., 967
F.3d 658, 662 (7th Cir. 2020). To be sure, under Pennsylvania
law, "where a policy promises 'actual cash value,' the insured
is entitled to replacement cost." Kane v. State Farm Fire & Cas.
Co., 841 A.2d 1038, 1046 (Pa. Super. Ct. 2003) (citing Fedas v.
Insurance Co. of the State of Pa., 151 A. 285 (Pa. 1930)). But
the policies here do not promise actual cash value, they promise
payment for loss to auto. And the actual cash value is only a
limit of liability.

A limit of liability is not an affirmative obligation to
pay. As a general matter, "[i]nsurance policies typically begin
with a basic grant of coverage—a section explaining the losses
that the insurer will cover—followed by an itemization of
exclusions, limitations on the insurer's liability, conditions,
and (sometimes) exceptions to exclusions." Sigler, 967 F.3d at
661. And it is well-settled that the grant of coverage, i.e.,
the promise to pay, is separate and distinct from the limitation

                            12

of liability or any other exclusions from the promise to pay.
See 12 Steven Plitt et al., Couch on Insurance § 175:2 (3d ed.
2020) ("The [amount the insured is entitled to recover] is
itself separable into the component issues of (a) how much of
the factual 'loss' does the policy obligate the insurer to
compensate?; and (b) from that amount, what items or costs
should be deducted?").[10] Indeed, Pennsylvania law recognizes that
the "affirmative grant of coverage" is separate and distinct
from the "applicability of any exclusions or limitations on
coverage." Koppers Co. v. Aetna Cas. & Sur. Co., 98 F.3d 1440,
1446 (3d Cir. 1996) (citations omitted).[11]

It is the affirmative grant of coverage, i.e., the promise
to pay, that determines in the first instance the amount the
insurer must pay the insured—the limit merely operates as a cap
on this amount. In Coleman v. Garrison Prop. & Cas. Ins. Co., a
case decided under Illinois law, the insurance policy at issue
insured the plaintiff's auto for "loss" to the auto and
contained a limit of liability of "actual cash value." No. 19-
cv-1745, 2019 WL 3554184, at *1 (N.D. Ill. July 31, 2019). The
court held that the defendant did not have to pay actual cash

---

[10] See also 1A Steven Plitt et al., Couch on Insurance § 17:1 (3d ed. 2020)
(listing the "designation of the amount of the insurance" and the "defined
limits" as separate elements in an insurance contract).
[11] See also Vrabel v. Scholler, 85 A.2d 858, 861 (Pa. 1952) ("In the absence
of contrary or modifying provisions in a statute, the liability of an insurer
and the extent of the loss under a policy of automobile liability insurance
must be determined, measured and limited by the terms of the contract.").

value because "the policy states, that the 'actual cash value' of a comparable vehicle is the limit on Defendants' liability— not the amount that Defendants promised to pay her." Id. at *2. On the other hand, in Sos v. State Farm Mut. Auto. Ins. Co., a case decided under Florida law, the insurance policy at issue provided that if there was a total loss to the auto, the defendant must pay actual cash value or replace the vehicle. 396 F. Supp. 3d 1074, 1077 (M.D. Fla. 2019). There, the court held that the defendant had to pay actual cash value, which included sales tax and fees, as a result of the promise to pay. Id. at 1079, 1081.

This case is like Coleman and unlike Sos in that the insurance policies here do not promise to pay actual cash value; instead, the term "actual cash value" here only operates as a limit. Because Defendants are obligated to pay for loss, not the actual cash value, by the plain and unambiguous terms of the contract, they do not have to pay the costs and fees associated with replacing the vehicles. As the Seventh Circuit recently noted when holding that a plaintiff making a similar argument was misconstruing the terms of the contract, the liability limit "simply describes the most that [an insurer] will pay in the event of a covered loss." Sigler, 967 F.3d at 662.[12]

---

[12] Plaintiffs argue that Sigler and Coleman are distinguishable from this case in that those cases involved Illinois statutes and regulations that are different from Pennsylvania statutes and regulations. While it is true that

3.  The Total Loss

Plaintiffs' argument that a total loss requires a payment
of actual cash value misses the mark. Instead, a total loss
under these policies requires payment for the full value of the
vehicle, not actual cash value or replacement costs.

In Pennsylvania, under an insurance policy that provides
coverage for loss or damage to the auto and limits liability to
actual cash value or the cost to repair or replace the auto,
"the insurance carrier is liable to pay the lowest sum which
will properly and completely repair the damaged car," when the
auto can be repaired. Gambale v. Allstate Ins. Co., 228 A.2d 58,
60 (Pa. Super. Ct. 1967). And under the same policy, when "the
automobile was so badly shattered by the collision that it was
impossible to restore it by repairs and replacements to the
condition it was in just before the accident," the insurer
liable for the amount of the loss instead of the cost to repair.

---

those cases also held that dismissal of the claims was appropriate based on
Illinois-specific statutes and regulations, the cases unequivocally hold
that, as a matter of basic contract and insurance law, the limit of liability
does not create an obligation to pay. See Sigler v. GEICO Cas. Co., 967 F.3d
658, 662 (7th Cir. 2020) ("This argument misconstrues a limitation on
liability as a promise to pay."); Coleman v. Garrison Prop. & Cas. Ins. Co.,
No. 19-cv-1745, 2020 WL 489527, at *3 (N.D. Ill. Jan. 30, 2020) ("There is
simply no language in the policy that says, 'in the event of a total loss,
Defendants will pay the actual cash value of the vehicle' or anything to that
effect. Plaintiff cannot conjure that term out of thin air."). Therefore,
these cases are applicable here to the extent they instruct that Defendants
are not obligated to pay the limit of liability.

Karp v. Fidelity-Phenix Fire Ins. Co., 4 A.2d 529, 532 (Pa. Super. Ct. 1939).[13]

     In the case of a total loss, like in the situation where it is not feasible to repair the vehicle, the insurer, under a policy that promises to pay for the loss, is liable for the value of the loss, and the value of the loss in a total loss is the full value of the vehicle.[14] Indeed, Judge Elliott of the Superior Court has noted that "where the cost to repair a vehicle is greater than that vehicle's book value, the vehicle is considered a total loss, and the insured receives only the book value of the car." London v. Ins. Placement Facility of Pennsylvania, 703 A.2d 45, 59-60 (Pa. Super. Ct. 1997) (Elliott, J., concurring).[15]

---

[13] Accord 12 Steven Plitt et al., Couch on Insurance § 175:42 (3d ed. 2020) ("An automobile collision policy provision that the limit of liability 'shall not exceed actual cash value, or if the loss is a part thereof the actual cash value of such part, at the time of loss, nor what it would then cost to repair or replace the property' means that if the car cannot be restored by repairs to the condition and value it had prior to the collision and is thus a 'total loss,' the insured is entitled to the actual cash value measured by the difference in market value immediately before and after the collision, but if the car can be repaired, the insured is entitled to no more than what it would then cost to repair the car.").

[14] See 12 Steven Plitt et al., Couch on Insurance § 177:2 (3d ed. 2020) ("However, where a vehicle covered under a collision policy was damaged beyond repair, the proper measure of damages was the purchase price depreciated by the period of use based upon a four-year life expectancy, as against the insurer's contention that the vehicle was subjected to excessive use and that depreciation should be calculated on the basis of a cost per mile for each mile that the vehicle had been driven.").

[15] See also Rogers v. Harleysville Ins., No. 289 MDA 2016, 2016 WL 4952110, at *4 (Pa. Super. Ct. Sept. 13, 2016) ("The clear unambiguous language of the commercial auto policy provides that in the event of a total loss, Appellee would provide Appellant with the actual cash value of the covered auto. . . . Therefore, based on the insurance policy's clear and unambiguous language, Appellant failed to prove either that Appellee breached the terms of the

16

While some insurance policies may provide that the insurer will pay replacement costs, the policies at issue here provide that the Defendants will pay the financial detriment or damages resulting from the collision. An insurance policy may provide for payment of replacement costs in the event of a total loss, which "would permit plaintiff to replace old property with new property." Compagnie des Bauxites de Guinee v. Three Rivers Ins. Co., No. 04-cv-393, 2007 WL 1656253, at *8 (W.D. Pa. June 7, 2007). The insurance policies here do not so provide. Instead, as discussed above, the policies here provide that Defendants will pay for the loss to the auto, which they define as the detriment or damage to the auto resulting from the collision.[16] Therefore, in the case of a total loss, these insurance policies do not obligate Defendants to pay replacement costs, but rather they must pay the full value of the vehicles.

In arguing that a total loss requires a payment of actual cash value, Plaintiffs contend that when there is a total loss, the limit of liability becomes the obligation to pay. This argument is largely unsubstantiated. According to Plaintiffs, the reason there is no case law on this point is because it "is an obvious-enough point that courts generally spend little time

_____

policy or acted in bad faith by refusing to reimburse Appellant for the replacement cost of the van, and instead offering him its cash value.").
[16] Sylvester's policy says, "'Noneconomic loss' means pain and suffering and other nonmonetary detriment." Edwards-Gutzman's and Hill's policies say, "'LOSS' means direct, physical and accidental loss or damage to your auto."

explaining <u>why</u> the limit of liability is owed in the event of a
'total' loss."  Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss
Class Action Compl. 9, ECF No. 16.

The only case Plaintiffs point to in support of this
argument does not stand for the broad proposition that whenever
there is a total loss the limit of liability becomes the
obligation to pay. Plaintiffs cite <u>Bastian v. United Servs.</u>
<u>Auto. Ass'n</u>, where the insurance policy provided for payment for
"loss" to the covered auto, defined loss to include "the cost to
repair or replace," and included a limit of liability to "actual
cash value." 150 F. Supp. 3d 1284, 1288–89 (M.D. Fla. 2015). The
court held that, based on the terms of that policy, the insurer
had to pay costs and fees associated with replacing a vehicle,
i.e., the actual cash value, because the insurer promised to pay
for replacement. <u>Id.</u> at 1290. It reasoned that given the promise
to pay for a replacement, "a covered vehicle [that is] declared
a total loss under the Policy—meaning that 'the cost to repair
it would be greater than its actual cash value minus its salvage
value after loss'—[] would [] obligate[] [the insurer] to pay
its coverage limits—the actual cash value of the covered vehicle
less the deductible." <u>Id.</u>

Thus, <u>Bastian</u> does not stand for the broad proposition that
a total loss requires a payment of the limit of liability.
Instead, <u>Bastian</u> stands for the proposition that the insurer

must pay the limit in the event of a total loss when the affirmative obligation to pay is greater than or equal to the limit of liability. Indeed, it is only when the amount of the affirmative obligation to pay exceeds the limit of liability that the "limitation of the insured's liability [becomes] the test or measure of damages which the insured is entitled to recover." Gambale, 228 A.2d at 60.[17] Therefore, Bastian is inapposite in that here there is no express promise to pay for the replacement costs and there is no definition of loss that includes the cost of repairing or replacing such that the affirmative obligation to pay exceeds the limit of liability.

    4.  Futility

    Plaintiffs also argue that if the Court finds that Defendants do not owe the actual cash value, Plaintiffs can amend their complaint to allege that they are owed the full cost to repair the vehicles.

    Generally, "[t]he court should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(3). But a court may deny leave to amend a complaint if it finds "undue delay, bad faith, dilatory motive, prejudice, [or]

---

[17] See 12 Steven Plitt et al., Couch on Insurance § 175:36 (3d ed. 2020) ("This type of provision limits the insurer's liability and fixes the maximum recovery that can be had under the policy. . . . Where the correct measure of damages is the actual cash value of property at time of loss but not exceeding cost of repair or replacement, if the cost of replacement is less than actual cash value, the cost of replacement is the proper recovery.").

futility." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted," under "the same standard of legal sufficiency as applies under Rule 12(b)(6)." Id. (citing Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996)).

Plaintiffs' argument for leave to amend presents a false dichotomy. Defendants are not bound to choose between paying the replacement cost or the cost to repair. Instead, the policies impose a duty on Defendants to pay for the value that was lost to the vehicle in the collision. And when it is a total loss, that means paying the full value of the vehicle, which does not include the replacement costs. The insurance policies do not provide that Defendants will pay for the replacement costs. Thus, Plaintiffs' proposed amendment will fail to state a claim, and the complaint will be dismissed with prejudice.

## V.    CONCLUSION

For the reasons stated above, the motion to dismiss will be granted. An appropriate Order follows.