```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SALVATORE SYLVESTER, et al.,    :    CIVIL ACTION
                                :    NO. 20-1322
        Plaintiffs,             :
                                :
    v.                          :
                                :
DEPOSITORS INSURANCE CO., et al,:
                                :
        Defendants.             :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                           August 19, 2021

**I. INTRODUCTION**

Plaintiffs brought a putative class action alleging one count of breach of contract because Defendants, in paying Plaintiffs' claims of total loss resulting from motor vehicle collisions, did not compensate them for fees associated with replacing a vehicle in Pennsylvania. After a hearing, the Court granted Defendants' Motion to Dismiss, dismissing Plaintiffs' claims with prejudice. Plaintiffs now move to alter this judgment and to amend their complaint. For the reasons set forth below, the Court will grant the motion to alter the judgment as it pertains to Plaintiff Sylvester and will grant him leave to amend. However, the Court will deny the motion as it pertains to Plaintiffs Edwards-Gutzman and Hill and consequently will not grant them leave to amend.

## II. BACKGROUND

Defendants Depositors Insurance Company, Nationwide Property & Casualty Insurance Company, and Nationwide Mutual Insurance Company provided passenger auto insurance to Plaintiffs Salvatore Sylvester, Alicia Edwards-Gutzman, and Eunice Hill, respectively. Sylvester's policy is covered by Defendant Depositors (hereinafter, the "Depositors policy"), while Edwards-Gutzman and Hill's policies are covered by the Nationwide Defendants (hereinafter, the "Nationwide policies"). Plaintiffs were involved in motor vehicle collisions and their cars were determined by Defendants to be total losses. Defendants allegedly paid Plaintiffs' claims for the total losses of their vehicles, but these payments did not include the fees associated with replacing a car (such as title fees). The parties estimate that these fees, which a person replacing a car in Pennsylvania must pay, amount to about $105.

Plaintiffs brought suit on behalf of themselves and all others similarly situated, alleging that Defendants owed them the replacement fees for which they were not compensated under the policies. Defendants moved to dismiss, arguing that Plaintiffs did not have standing and that Plaintiffs failed to state a claim.

The Court granted Defendants' Motion to Dismiss, finding that although Plaintiffs had standing, the Complaint failed on

the merits because the insurance policies clearly and unambiguously provided that the insurers must pay for the loss to the vehicle, not the replacement cost or the "actual cash value." Thus, Plaintiffs' claims were dismissed with prejudice. Plaintiffs now move to alter this judgment and to amend their complaint.

**III. LEGAL STANDARD**

Plaintiffs move pursuant to Federal Rules of Civil Procedure 59(e) and 15(a). Rule 59(e) permits the filing of a "motion to alter or amend a judgment" "no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Rule 15(a) sets forth when and how a party may amend their pleading. Fed. R. Civ. P. 15(a).

The Third Circuit treats Rule 59 motions and motions for reconsideration as functional equivalents. Pitts v. United States, No. CR 10-703, 2015 WL 9244285, at *4 (E.D. Pa. Dec. 17, 2015) (Robreno, J.) (quoting Venen v. Sweet, 758 F.2d 117, 122 (3d Cir. 1985)). A Rule 59(e) motion to alter or amend the judgment "must rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence [not available previously]; [or] (3) the need to correct clear error [of law] or prevent manifest injustice." Id. (alterations in original) (quoting N. River Ins. Co. v. CIGNA

Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). Such motions "should be granted sparingly and may not be used to rehash arguments which have already been briefed by the parties and considered and decided by the Court." Id. (quoting PBI Performance Prods., Inc. v. NorFab Corp., 514 F. Supp. 2d 732, 743-44 (E.D. Pa. 2007)). "A litigant that fails in its first attempt to persuade a court to adopt its position may not use a motion for reconsideration either to attempt a new approach or correct mistakes it made in its previous one." PBI Performance Prods., 514 F. Supp. 2d at 744.

Where a Rule 59(e) motion is brought together with a Rule 15(a) motion, "the Rule 15 and 59 inquiries turn on the same factors," which "include undue delay, bad faith, prejudice, or futility." Burtch v. Milberg Factors, Inc., 662 F.3d 212, 230-31 (3d Cir. 2011) (quoting Adams Golf, Inc. Sec. Litig., 381 F.3d 267, 260 (3d Cir. 2004)). As relevant here, futility "means that the complaint, as amended, would fail to state a claim upon which relief could be granted." Id. at 231 (quoting Great Western Mining & Min. Co. v. Rothschild LLP, 615 F.3d 159, 175 (3d Cir. 2010)).

## IV. DISCUSSION

### A. Proposed Amendments

4

First, Plaintiffs would like to amend their complaint to explicitly make two allegations which they claim were implicitly made in their first complaint: (1) that Defendants are contractually obligated to pay to repair or replace their vehicles, and (2) that the amount of the loss exceeds the limit of liability, which is the actual cash value ("ACV"), and therefore Defendants purportedly have an obligation to pay for ACV, which allegedly includes the fees associated with replacing a car (such as title fees). However, these allegations directly contradict the Court's previous findings, so it would be futile for the Court to rehash these arguments. See Memorandum 17, 19-20, ECF No. 38.

**B. Judicial Estoppel**

Second, Plaintiffs argue that Defendants (without specifying which ones) should be estopped from arguing that their policies do not require payment of ACV in the event of a total loss because of a statement Nationwide made in a motion for summary judgment in a 2008 case in this Court. In Aquila, Sr. v. Nationwide Mutual Insurance Co., No. 07-CV-2696 (E.D. Pa. 2008), Nationwide stated that "[f]or a total loss, the [Nationwide] policy requires the payment of the Actual Cash Value of an insured vehicle, which is determined according to the vehicle's age, condition, and fair market value." Nationwide's Mot. Summ. J. 21, ECF No. 75.

5

The doctrine of judicial estoppel "seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding." Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996) (quoting Scarano v. Cent. R. Co. of N.J., 203 F.2d 510, 513 (3d Cir. 1953)). "It is not intended to eliminate all inconsistencies, however slight or inadvertent; rather, it is designed to prevent litigants from 'playing "fast and loose with the courts."'" Id. "The basic principle . . . is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." Id. (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4477 (1981)). The doctrine can be applied in subsequent proceedings with different parties. Id. at 360-61.

Aquila is inapposite here. The case did not concern replacement car fees, but rather issues of libel, slander, bad faith, and undervaluation of a stolen vehicle, none of which are at issue here. Additionally, the statement in Nationwide's motion for summary judgment in Aquila was not disputed in relation to the merits of that case; thus, the Court cannot say that it allowed Nationwide to gain an advantage in litigation in that case. See Ryan Operations, 81 F.3d at 358.

6

Even if the Court could classify Nationwide's prior statement as an "inconsistent advantage," judicial estoppel only applies when the inconsistency is "attributable to intentional wrongdoing," i.e., made in bad faith. See id. at 362 (citing Chaveriat v. Williams Pipe Line Co., 11 F.3d 1420, 1428 (7th Cir. 1993)). No such allegation or evidence is presented here. Thus, judicial estoppel is not applicable in this case.

**C. Clear Error**

Lastly, Plaintiffs argue that to the extent the Court's prior Memorandum holds that Defendants owe neither the cost to repair or replace the damaged property nor the property's ACV, the holding is clear error. More specifically, Plaintiffs argue it is clear that the parties intended to provide for payment of ACV in the event of a total loss, for several reasons. First, Plaintiffs make a trade usage argument by alleging that "total loss," in insurance industry parlance, automatically means ACV is owed. Plaintiffs also allege that Defendants publish on their website that ACV is owed in the event of a total loss. Additionally, Plaintiffs allege that their settlement letters demonstrate that the parties intended "total loss" to mean ACV. Those settlement letters state: "We declared your [car] a total loss. . . . Enclosed is our total loss evaluation detailing the settlement amount. We calculated the Actual Cash Value Settlement using Certified Collateral Corporation's (CCC) market

7

research system." The letters then calculate the ACV and provide specific instructions on how to accept the settlements. Finally, Plaintiffs argue that Defendants explicitly informed Plaintiffs that the amount owed for a total loss was the vehicle's ACV.

In its prior ruling, the Court held, after determining that the language in the policies is clear and unambiguous, that Defendants only have a duty to pay for the loss to the auto in the case of a collision that results in a total loss of the auto. For the reasons explained below, this finding was clear error, and amendment of the Complaint would not be futile as it relates to the Depositors policy. However, amendment of the Complaint would still be futile in relation to the Nationwide policies.

   1. **<u>Depositors Policy</u>**

The Depositors policy, which is applicable to Plaintiff Sylvester, states as follows: "We will pay for direct and accidental loss to 'your covered auto' or any 'non-owned auto', including their equipment, minus any applicable deductible shown in the Declarations." Pls.' Suppl. Brief Ex. 1A, at 8, ECF No. 44-1. The Court agrees that its prior Memorandum constituted clear error by interpreting the definition of "loss" to encompass a "total loss" and holding that it was clear and unambiguous that ACV is not owed in the event of a total loss. Although the Memorandum discusses coverage of "loss" at length,

the relevant issue here is the coverage of a "total loss." The Depositors policy does not define "total loss" like it does "loss," which makes this case distinguishable from Coleman v. Garrison Property and Casualty Insurance Co., No. 19-cv-1745, 2019 WL 3554184 (N.D. Ill. July 31, 2019) a case decided under Illinois law that was relied on for support in the Court's prior Memorandum.

In Coleman, the insurance policy at issue insured the plaintiff's auto for "loss" to the auto and contained a limit of liability of "actual cash value." Id. at *1. The court held that the defendant did not have to pay actual cash value because "the policy states that the 'actual cash value' of a comparable vehicle is the limit on Defendants' liability—not the amount that Defendants promised to pay her." Id. at *2. However, the policy at issue in Coleman defined loss as "direct and accidental damage," which "includes a total loss, but does not include any damages other than the cost to repair or replace." Id.

In contrast, the Depositors policy simply says it will cover "loss," which is also defined as "direct and accidental damage," but it does not state that "total loss" is included in that coverage. Since "total loss" is not explicitly provided for in the policies, the issue becomes whether the parties intended for a total loss to have the same coverage as a "loss" or to

9

have different coverage. Given that (1) many policies implicitly distinguish between the two by incorporating state laws that address total loss payments[1] or explicitly distinguish between the two,[2] and (2) the term is given a distinct meaning in the insurance industry,[3] it is not clear and unambiguous that the parties intended for "loss" to also encompass "total loss," particularly when the contract is read as a whole.[4] Thus, it was clear error for the Court to interpret coverage for "loss" as automatically including coverage for a "total loss."

However, Depositors argues that even if ACV was the appropriate amount to pay for a total loss, amendment of the Complaint would be futile because there are multiple reasons why the policy is clear that ACV does not include replacement fees. First, it argues that since the policy specifies the limit of liability as actual cash value of "the stolen or damaged

---

[1]   See, e.g., Sigler v. Geico Cas. Co., 967 F.3d 658, 661 (7th Cir. 2020) ("The Illinois Administrative Code provides that when an auto insurer determines that an insured vehicle is a total loss as a result of a collision, the insurer may elect to either replace the insured vehicle or pay a cash settlement." (citing Ill. Admin. Code tit. 50, § 919.80(c)(1)-(2))).
[2]   See, e.g., Coleman, 2019 WL 3554184, at *2 (the policy defined loss as "direct and accidental damage," which "includes a total loss, but does not include any damages other than the cost to repair or replace"); Rogers v. Harleysville Ins., No. 289 MDA 2016, 2016 WL 4952110, at *4 (Pa. Super. Ct. Sept. 13, 2016) ("The clear unambiguous language of the commercial auto policy provides that in the event of a total loss, Appellee would provide Appellant with the actual cash value of the covered auto. . . .").
[3]   See Couch on Insurance § 175:42 (3d ed. 2020) (defining "total loss" as a situation in which a car "cannot be restored by repairs to the condition and value it had prior to the collision").
[4]   For example, the Depositors policy does not distinguish between total loss and loss in the coverage section, but then states in the "Limit of Liability" section that "[a]n adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss." Pls.' Suppl. Brief Ex. 1A, at 10, ECF No. 44-1.

property," Sylvester is only entitled to the value of the totaled vehicle, and not replacement fees. But as explained by the court in Wilkerson v. American Family Insurance Co., where the plaintiff had a similar limitation on liability ("ACV of the damaged vehicle"), ACV could mean either (1) "the fair market value of the property at the time of the loss" or (2) "the replacement cost of the vehicle less depreciation for age and condition." No. 19-cv-2425, 2020 WL 5891971, at *4 (N.D. Ohio, Oct. 5, 2020) (emphasis added). If it means the latter, then replacement fees such as title and regulatory fees might be included. Thus, reference to ACV of Sylvester's vehicle is not dispositive, since ACV may be interpreted to mean replacement cost of those vehicles.[5]

Depositors also argues that since the Depositors policy states that the "limit of liability for loss will be the lesser

---

[5] The Court acknowledges that dicta in its prior Memorandum stated as follows: "To be sure, under Pennsylvania law, 'where a policy promises "actual cash value," the insured is entitled to replacement cost.' Kane v. State Farm Fire & Cas. Co., 841 A.2d 1038, 1046 (Pa. Super. Ct. 2003) (citing Fedas v. Insurance Co. of the State of Pa., 151 A. 285 (Pa. 1930))." To clarify, there are really two issues in this case: (1) what Defendants promised to pay in the event of a "total loss," and (2) if the correct answer is ACV, does ACV include replacement fees? The Court did not fully address the second issue because it assumed that total loss was included in the coverage provision providing for loss. If the Court had more fully addressed the second issue, it would have explained that the cited cases in the dicta above interpret ACV in the context of homeowners, dwelling, or commercial property insurance, and it is not clear that Pennsylvania courts would hold similarly in the case of automobile insurance. See Williams-Diggins v. Permanent Gen. Assurance Corp., 157 N.E.3d 220, 226 (Ohio Ct. App. 2020) (explaining that homeowners/commercial property insurance policies "are not persuasive because they do not address sales tax and title and transfer fees in the context of a total loss vehicle insured by a [private passenger auto] insurance policy").

11

of the: 1. Actual cash value of the stolen or damaged property; or 2. Amount necessary to repair or replace the property with other property of like kind and quality," Defs.' Suppl. Brief Ex. 5, at 10, ECF No. 45, including replacement fees in ACV would negate any difference between the two options and render the second option a nullity. This would not be true, however, if the Court finds that ACV is defined as the second option above, i.e., replacement cost of the vehicle less depreciation for age and condition. See Sos v. State Farm Mut. Auto. Ins. Co., No. 17-cv-890-Orl-40LRH, 2020 WL 5534483, at *5 n.6 (M.D. Fla. July 8, 2020) (explaining that "replacement cost" and ACV defined as "replacement cost less depreciation" are not superfluous because "[r]eplacement cost does not account for depreciation, whereas actual cash value does. But both amounts include sales tax and title transfer fees").

Under these circumstances, it was clear error to find that the language in the Depositors policy is clear and unambiguous that Depositors only has a duty to pay for the loss to the auto in the case of a collision that results in a total loss to the auto. Additionally, allowing Sylvester to amend the Complaint would not be futile, so Plaintiff Sylvester will be granted leave to amend to argue that he had a separate oral and/or written contract with Depositors concerning the total loss of his car, and/or that it was necessarily implied in his contract

12

that Depositors would pay ACV in the event of a total loss, see, e.g., Hart v. Arnold, 884 A.2d 316, 333 (Pa. Super. Ct. 2005) ("In the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made . . . ." (quoting Slater v. Pearle Vision Ctr., Inc., 576 A.2d 676, 679 (1988))).

### 2. Nationwide Policies

Even if the Court were to find that the language in the Nationwide policies (which apply to Plaintiffs Hill and Edwards-Gutzman) is not clear and unambiguous as to whether ACV is owed in the event of a total loss, amendment would be futile because the language in the policies is clear and unambiguous that Nationwide does not have a duty to pay replacement fees if ACV is owed.

ACV is unambiguously defined in the Nationwide policies as follows: "To determine actual cash value, we will consider: 1. fair market value; 2. age; 3. condition of the property; and 4. betterment." Defs.' Suppl. Brief 6, ECF No. 45. As support for the argument that this definition excludes replacement fees, Nationwide cites to Davis v. Progressive Advanced Insurance Co., where Magistrate Judge Rice found that the definition of ACV was unambiguous and did not include replacement fees in a policy

13

that limited liability to "the lower of 1) the ACV, which is determined by the vehicle's market value, age, and condition, of the damaged vehicle, or 2) the cost of replacing the damaged vehicle." No. 19-5726, 2021 WL 534463, at *2 (E.D. Pa. Feb. 12, 2021). Plaintiffs Hill and Edwards-Gutzman argue that the phrase "we will consider" creates a material difference between the two cases, and that the phrase connotes a list of factors to consider in determining ACV, rather than a definition of ACV. Regardless, the fact remains that the list of factors is unambiguously exclusive and does not include replacement fees as a factor in determining ACV.

Under Pennsylvania law, "expressio unius est exclusio alterius is a common and accepted method of contract interpretation." Marion Ctr. Area Sch. Dist. v. Marion Ctr. Area Educ. Ass'n, 982 A.2d 1041, 1046 (Pa. Commw. Ct. 2009). "This principle means that the expression of one thing implies the exclusion of another thing not mentioned." Id. at 1044 n.2. Here, replacement fees are not included in the list of factors to consider in determining ACV, and there is no language indicating that the list is not exhaustive (e.g., "such as"). Thus, common principles of contract interpretation demonstrate that replacement fees are not included as a factor when determining ACV under the Nationwide policies.

Under these circumstances, it would be futile for Plaintiffs Hill and Edwards-Gutzman to amend the Complaint, and the motion to alter the judgment will be denied as to them.

## V. CONCLUSION

For all of the aforementioned reasons, the Court will grant the motion to alter the judgment as it pertains to Sylvester and will grant Sylvester leave to amend. However, the Court will deny the motion as it pertains to Edwards-Gutzman and Hill and will not grant them leave to amend. An appropriate order follows.