UNITED COMMONWEALTHS DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SALVATORE SYLVESTER,<br>on behalf of himself and all others<br>similarly situated,<br><br>                            Plaintiff,<br><br>      v.<br><br>DEPOSITORS INSURANCE COMPANY,<br><br>                            Defendant. | Civil Action No. 20-cv-1322-ER<br><br>Class Action |

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Salvatore Sylvester ("Sylvester" or "Plaintiff"), on behalf of himself and on behalf of all others similarly situated, files this Amended Class Action Complaint against Depositors Insurance Company ("Depositors" or "Defendant") and in support states:

## NATURE OF THE ACTION

1. This is a class action lawsuit by Plaintiff, the named insured under an automobile policy issued by Defendant for private passenger auto physical damage including comprehensive and collision coverage, which requires Defendant to pay to repair or replace the damaged vehicle or parts thereof, with a limitation on liability of "Actual Cash Value" or "ACV."

2. When damage to an insured vehicle exceeds the estimated value of that vehicle (referred to in the insurance industry as a "total loss"), Defendant invokes the limitation of liability and chooses to pay ACV rather than the higher cost to repair or replace the vehicle. The ACV of a vehicle includes mandatory fees required to replace the vehicle, namely title fees, registration

1

fees, and inspection/safety fees ("Mandatory Fees").

3. Defendant is a private passenger auto insurance carrier operating in Pennsylvania. One of the coverages Defendant offers is comprehensive and collision coverage. Upon information and belief, Defendant systematically underpaid not just Plaintiff, but thousands of other putative class members ("Class Members") amounts Defendant owed for total-loss vehicles insured with comprehensive and collision coverage.

4. This lawsuit is brought by the Plaintiff, on behalf of himself and on behalf of all other similarly situated insureds, who suffered damages due to Defendant's practice of refusing to include Mandatory Fees in total-loss payment, notwithstanding Defendant's promise to pay to replace the damaged vehicle and notwithstanding that Defendant's policy does not exclude Mandatory Fees.

5. Venue is proper in this Court because a substantial portion of the acts and course of conduct give rise to the claims alleged occurred within this district.

## THE PARTIES

6. At all times material hereto, Plaintiff Sylvester was a citizen of the Commonwealth of Pennsylvania and resides in Lackawanna County.

7. t all times material hereto, Depositors is and was a foreign corporation located in the Commonwealth of Iowa, incorporated in Iowa and with its principal place of business in Iowa, and authorized to transact insurance in the Commonwealth of Pennsylvania.

## FACTUAL ALLEGATIONS

8. In its policy of insurance, Defendant's standardized policy language promises to pay for loss to insureds vehicles by paying to repair or replace the damaged property.

9. Defendant's standardized policy language is present in every auto policy issued by Defendant in Pennsylvania during the relevant time period.

## THE POLICIES

10. Plaintiff Sylvester and other Depositors insureds are insured under a Policy with materially identical language. **Exhibit A** ("Policy"). The Depositors Policy requires payment of Mandatory Fees.

11. The Policy promises to pay for loss by paying to repair or replace the damaged property. Ex. A at AA 001P (10-05), pg. 10 of 13 (Payment for Loss provision).

12. Under the Payment for Loss provision, Defendant must take one of two actions after an insured vehicle suffers a "loss"; it must either (1) pay for the loss in money, or (2) repair or replace the damaged property.

13. If the vehicle cannot be repaired to its pre-loss condition—and thus Defendant cannot pay for loss through repair of the vehicle—or if Defendant chooses not to pay to repair the vehicle for economic reasons, Defendant is obligated to pay to replace the vehicle.

14. The cost to replace a vehicle in Pennsylvania includes Mandatory Fees, as set forth below. Mandatory Fees are not merely reasonably necessary to replace a vehicle in Pennsylvania, they are mandatory and unavoidable.

15. Mandatory Fees are not an exclusion in the Policy, nor does the Policy limit liability such that Mandatory Fees are excluded.

16. As required in Pennsylvania, Plaintiff's total-loss vehicle was legally titled, registered, and inspected and the fees to do so were paid.

17. Prior to the loss, Plaintiff was not facing a requirement to re-pay the previously paid fees to continue legally owning and operating his insured vehicles.

18. As set forth below, after Plaintiff's vehicle sustained damage, Defendant did not pay to repair the damage to the vehicle. As such, because of the loss, Plaintiff lost the previously paid registration and was required to pay a fee to transfer registration to replace his vehicle. To

maintain legal title on a vehicle for which Plaintiff had previously paid, Plaintiff was required to once again pay a fee to transfer title in order to replace the vehicle.

19. Because Defendant promised to pay to replace the damaged vehicle, which includes Mandatory Fees, and did not pay the Mandatory Fees, Defendant breached the Payment for Loss promise.

20. Defendant's liability to pay to repair or replace the damage is not limitless. Instead, the Policies limit Defendant's liability for loss to ACV.

21. When calculating ACV, the Policy allows Defendant to deduct for "depreciation and condition of the vehicle . . . in the event of a total loss." Ex. A at AA 001P (10-05), pg. 10 of 13.

22. In Pennsylvania, ACV equates to the full replacement cost of insured property without reductions for or consideration of depreciation, betterment, market value, etc. Absent any other limiting language, ACV is the full costs to replace under Pennsylvania law. Defendant's Payment for Loss promise is to pay the costs to replace (if Defendant cannot pay to repair the damage).

23. However, insurers are permitted to explicitly include in policies that ACV includes consideration of other factors, or to specifically define ACV otherwise. Unsurprisingly, given ACV is a *limit* on Defendant's liability to pay the full cost to replace the damage, the Policies include language rendering ACV less than full replacement cost.

24. The Defendant's Policy does not specifically define ACV—but it does allow Defendant to deduct for depreciation and condition "in the event of a total loss." The Policy does not otherwise define "total loss," but by allowing Defendant to calculate ACV by accounting for depreciation and condition "in the event of a total loss," the Policy clearly indicates that Defendant invokes the limitation of liability and pays ACV "in the event of a total loss."

25. In basic framework, Defendant's Policy is consistent with virtually all auto policies, in that the policies promise to repair or replace the damaged property, with a limitation on liability of ACV. As set forth above, the promise to pay means if a vehicle sustains repairable damage, Defendant must merely pay the repair costs. If damage is unrepairable—and thus Defendant cannot pay for loss by paying to repair the damage—then Defendant must pay to replace the vehicle. Here, the amount necessary to pay for the loss by repairing or replacing the damage exceeded the pre-loss ACV.

26. By limiting its liability to pay to replace the vehicle to ACV, however, Defendant is not obligated to pay the original amount paid on the vehicle, or the original MSRP, etc. Nor is Defendant obligated to pay for a new vehicle, or a vehicle in better condition than the insured vehicle prior to the loss. Instead, Defendant can deduct from the full replacement cost to account for age, depreciation, condition, etc.

27. Limiting liability to ACV also prevents Defendant from being obligated to pay to repair damage even where the cost to repair is disproportionate to the value of the vehicle. Obviously, if damage is not repairable at all, Defendant is required to pay to replace the vehicle (limited to ACV). However, damage might very well be repairable, but the cost to do so might not make economic sense. By limiting liability to ACV, Defendant ensures that it is not obligated to pay to repair damage where it makes no economic sense to do so given the value of the vehicle.

28. In the insurance industry, where insurers pay the cost to repair a vehicle to its pre-loss condition, the loss is called a "partial loss." Where insurers pay to replace the vehicle (the liability that is limited to ACV), the loss is called a "total loss."

29. If the amount of loss is higher than the upper limit of Defendant's liability to pay, Defendant is not required to pay the full amount of loss—instead, Defendant is only obligated to pay the limit of its liability, ACV, which in the insurance industry is termed a "total loss."

30. Unless a limitation on liability applies, Defendant owes the full amount of loss—the cost to repair or replace the damaged vehicle. If Defendant declines to pay to repair the vehicle, the vehicle is considered a "total loss." As to Plaintiff and all putative Class Members' claims, Defendant declined to pay to repair the vehicle. Thus, Defendant must pay to replace the vehicle. The cost to replace a vehicle includes Mandatory Fees, which are reasonably necessary costs to replace a vehicle in Pennsylvania. Because it did not pay Mandatory Fees, Defendant breached the Policy.

31. If the ACV limitation on liability applies, Defendant still breached the Policy. The ACV of an insured vehicle is the cost to replace the vehicle, with a deduction for depreciation and betterment. If ACV can be invoked, Defendant breach the Policy by failing to pay ACV. If the cost to repair or replace the loss is less than ACV, then Defendant breach the Policy by refusing to pay to repair the vehicle while simultaneously refusing to pay to replace the vehicle.

32. Defendant explicitly asserted to Plaintiff that ACV was the relevant amount owed after his total loss and purported to properly pay ACV. Attached as **Exhibit B** is the total-loss letter provided by Defendant to Plaintiff, which represents that ACV is the amount owed and purported to pay the proper ACV amount. Moreover, Defendant specifically instructs its adjusters and employees to represent to insureds that ACV is what is owed and what is being paid when a "total-loss" occurs.

33. Under the policy and applicable Commonwealth law, ACV has consistently been interpreted to include replacement costs, but taking into account (if expressly asserted in the Policy) factors such as depreciation, market value, condition etc. Under the policy, Defendant is obligated to pay Mandatory Fees, which are mandatory and unavoidable, and thus certainly reasonably necessary to replace a vehicle in the Commonwealth of Pennsylvania.

34. Plaintiff does not contest Defendant's refusal to pay to repair the damage to the

6

vehicle, nor Defendant's determination of the amount of loss nor that Defendant's liability for the amount of loss was limited to ACV. Plaintiff does not contest Defendant's appraisal of the underlying base and adjusted vehicle values, nor Defendant's calculation of sales tax. Plaintiff alleges merely that Mandatory Fees are reasonably necessary costs to replace a vehicle in Pennsylvania, and thus encompassed within Defendant's promise to pay to replace the damaged vehicle, and encompassed within the pre-loss ACV of the vehicle.

**Plaintiff's Total Loss**

35. At all times material hereto, Plaintiff Sylvester owned a 2005 Subaru Legacy Sedan, which was legally titled and registered for which fees were paid.

36. At all times material hereto, the vehicle was insured under a policy issued by Defendant. *See* Exh. A.

37. On or about September 10, 2016, the vehicle sustained damage. As a result of the accident, Sylvester filed a claim for property damage with Defendant, claim number 750256-GD.

38. Following the filing of Sylvester's claim, Depositors, through third- party vendor CCC Information Services, Inc. ("CCC"), determined that total value amount was $4,018.78. *See* **Exhibit C** at 2 (Market Valuation Report).

39. No amount for Mandatory Fees was included in the amount listed in the Market Valuation Report. *See id.* at 2. Instead the Report noted that the total value may not reflect the settlement amount because items such as "license and fees" were not taken into account, and may need to be taken into account prior to final determination of the settlement amount. *See id.* at 3.

40. Depositor then determined the total settlement amount to be $4,018.78 and issued a final payment in that amount. *See* **Exhibit B** (Settlement Breakdown).

41. Depositor's payment of $4,018.78 did not include amounts for Mandatory Fees, which must be paid to replace any vehicle in the Commonwealth of Pennsylvania.

42. Upon information and belief, Depositors, pursuant to a standard and uniform business practice, never includes Mandatory Fees in total-loss claim payments, notwithstanding its contractual obligation to pay to replace the damaged vehicle, up to the ACV limitation on liability. Both the cost to replace and ACV includes Mandatory Fees.

Report).

43. Vehicles are required to be legally titled, registered, and inspected to be legally owned, used, and operated in the Commonwealth of Pennsylvania. Pennsylvania imposes fees on such transactions, including a title fees of $55.00 or $81.00 (depending if lien is recorded), a registration transfer fee of $9.00, county fees up to $5.00, Commonwealth Safety Certificate of Inspection Program Certificate Fee ("Safety Inspection Sticker") of $8.00, and a PA Emission Inspection Program Management Fee ("Emissions Inspection Sticker") of $1.57. Such fees are reasonably necessary to replace a vehicle in Pennsylvania.

44. Defendant breached its Policy with Plaintiff by failing to pay any amount for Mandatory Fees fee when it paid what it purported to be the ACV associated with the total loss of the vehicle.

45. If no limitation on liability applies, Defendant breached its Policy with Plaintiff by failing to pay to replace the damaged vehicle. If the ACV limitation on liability applies, Defendant breached its Policy with Plaintiff by failing to pay the ACV of the vehicles.

46. Plaintiff paid all premiums owed and otherwise satisfied all conditions precedent such that his insurance policy was in effect and operational at the time of the accident.

47. The Policy do not exclude title fees, registration fees, county fees, safety and emissions inspection fees from the cost to replace the damaged vehicle, nor does any provision defer or condition payment of Mandatory Fees for any purpose whatsoever.

48. According to Defendant's policy, insureds are owed the same amount whether or not they replace the vehicle at all. Insureds are owed the same amount whether or not they paid (or how

8

much they paid) for the total-loss vehicle. Instead, in exchange for the premiums paid by the insureds, Defendant promised to pay a predictable amount irrespective of payments related to either the total-loss vehicle or the replacement vehicle (if any).

49. Alternatively, if the amounts paid on the insured vehicle prior to the loss is relevant to coverage, Plaintiff's vehicle was properly and legally titled, registered, and inspected, for which the mandatory fees were paid.

50. Defendant declines to include Mandatory Fees in making total-loss payments to total-loss insureds, thereby breaching its contracts with insureds.

51. Defendant's policy promises that, if Defendant does not pay to repair the vehicle to its pre-loss condition, Defendant will pay the cost reasonably necessary to replace the insured vehicle. If the ACV limitation on liability applies, such costs can be adjusted based on depreciation and condition.

52. When Defendant declines to pay to repair the vehicle to its pre-loss condition, Defendant's payments are adjusted based on the aforementioned factors. The only clause permitting such reductions is the ACV limitation. If ACV is not or cannot be invoked, such reductions constitute additional breaches of contract. Defendant did not pay the original cost of the vehicles and did not pay MSRP nor sales tax calculated as a percentage thereof.

## CLASS ALLEGATIONS

53. Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

54. Plaintiff brings this action as class representative, on behalf of himself and all other persons or entities similarly situated, more specifically defined as follows:

> All insureds, under any Pennsylvania policy issued by Depositors Insurance Company, covering a vehicle with private- passenger auto physical damage coverage for comprehensive or collision loss, who made a first-party property damage claim that Defendant determined to be a

9

covered claim and chose not to pay to repair the vehicle, within four years prior to the date on which this lawsuit was filed through the date of any certification order.

55. The prerequisites to class certification are met in that the members of the class are so numerous that joiner of all members is impractical. Upon information and belief, there are thousands potential Class Members.

56. Plaintiff's claims are typical to those of all class members because members of the class are similarly affected by Defendant's failure to include Mandatory Fees in making the total loss claim payment. The material and relevant policy terms for each class member are substantially identical to the terms of Plaintiff's policy.

57. Plaintiff's interests are coincident with and not antagonistic to those of other class members, nor is Plaintiff subject to any unique defenses.

58. Plaintiff's claims raise questions of law and fact common to all members of the class, within the meaning of Fed. R. Civ. P. 23(a)(2), and they predominate over any questions affecting only individual Class Members within the meaning of Fed. R. Civ. P. 23(b)(3).

59. Common questions include, but are not limited to, the following: (a) whether, if Defendant chooses not to pay to repair the vehicle to its pre-loss condition, Defendant ia obligated to include Mandatory Fees in making payment for Plaintiff's and the class member's claims pursuant to standard and materially identical policy language; and (b) whether Defendant breached its insurance contracts with Plaintiff and the class members by choosing not to pay to repair the vehicle, but nevertheless failing to include Mandatory Fees in making total-loss claim payments.

60. Because the governing policy language is substantively identical and because Defendant chose not to pay to repair the vehicle as to each and every Class Members' claim, there are no individual issues precluding a finding of predominance. Resolution of the central question in this litigation—whether Defendant must pay Mandatory Fees in making payment on total-loss claims—will resolve

virtually the entirety of each Class Members' claim in a single stroke.

63. Plaintiff and his counsel will fairly and adequately protect and represent the interests of each member of the class.


62. Plaintiff is committed to the vigorous prosecution of this action and retained competent counsel experienced in prosecuting and defending class actions. Plaintiff's counsel has successfully litigated other class action cases similar to that here, where insurers breached contracts with insureds by failing to include sales tax and/or total loss fees after total losses.

63. Pursuant to Rule 23(b)(3), a class action is superior to any other available methods for a fair and efficient adjudication of the controversy because, among other reasons, it is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Furthermore, because the damages suffered by individual Class Members are relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

64. The issues related to Plaintiff's claims do not vary from the issues relating to the claims of the other members of the classes such that a class action provides a more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

65. The relevant Policy provisions for each Class Member are the same. The relevant law relating to the interpretation and application of those Policy provisions for each Class Member is the same. There is the potential for inconsistent or varying adjudications concerning individual Class Members. Without a single adjudication as to the application of relevant law to the relevant policy provisions, different courts may reach different conclusions relating to the same legal and factual issues.

## COUNT I
## CLAIM FOR BREACH OF CONTRACT

66. Paragraphs 1-65 are hereby incorporated by reference.

67. This count is brought by Plaintiff individually and on behalf of the Class Members.

68. Plaintiff was a party to respective insurance policies with Defendant as described herein. All Class Members were parties to an insurance contract with Defendant containing materially identical terms.

69. The interpretation of Plaintiff's and all Class Members' insurance policies is governed by Pennsylvania law.

70. Plaintiff and all Class Members made a claim determined by Defendant to be a covered first-party claim under the insurance policy. As to the claims submitted by Plaintiff and all Class Members, Defendant chose not to pay to repair the vehicle. Thus, Defendant was obligated to pay to replace the damaged vehicle (subject to a limitation on such liability of ACV).

71. Defendant, by paying the total-loss claim, determined that Plaintiff and each Class Member complied with the terms of their insurance contracts, and fulfilled all of their duties and conditions under their respective insurance policies for each to be paid on his or her total loss.

72. Pursuant to the aforementioned uniform contractual provisions, Plaintiff and every Class Member were owed Mandatory Fees, which are costs reasonably necessary to replace any vehicle in Pennsylvania. Mandatory Fees are included in the ACV of the insured vehicles.

73. Defendant refused to include Mandatory Fees owed under the insurance Policy in making the total-loss payment on the claims submitted by Plaintiff and every Class Member. Such failure breached Defendant's obligation to pay to replace the damaged vehicles and/or Defendant's obligation to pay the vehicles' ACV.

74. Defendant's failure to provide the promised coverage constitutes a material breach of

contract with Plaintiff and every Class Member.

75. As a result of said breaches, Plaintiff and the class members are entitled to sums representing the benefits owed for Mandatory Fees, as well as costs, prejudgment and post judgment interest, and other relief as is appropriate.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, on behalf of himself and on behalf of the putative Class, demands relief and judgment as follows:

1. For an Order certifying this action as a Class Action on behalf of the Class described above;

2. For an award of compensatory damages for the Class in amounts owed by Defendant;

3. For all other damages according to proof;

4. For an award of attorney's fees and expenses as appropriate pursuant to applicable law;

5. For costs of suit incurred herein;

6. For pre- and post-judgment interests on any amounts awarded; and

7. For other and further forms of relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

    Respectfully submitted,

*/s/ Ed Normand*
**NORMAND PLLC**
Edmund A. Normand *(pro hac vice)*
Jacob L. Phillips *(pro hac vice)*
3165 McCrory Place, Suite 175
Orlando, FL 32803
T: 407-603-6031
Ed@normandpllc.com
Jacob.phillips@normandpllc.com
Jonathan Shub (PA Bar ID 53965)
Kevin Laukaitis (PA Bar ID 321670)

>134 Kings Highway E., 2nd Floor
>Haddonfield, NJ 08033
>T: 856-772-7200
>jshub@shublawyers.com
>klaukaitis@shublawyers.com
>
>**EDELSBERG LAW, PA**
>Scott Edelsberg, Esq. *(pro hac vice to be filed)*
>20900 NE 30th Avenue, #417
>Aventura, FL 33180
>T: 305-975-3320
>scott@edelsberglaw.com
>
>**SHAMIS & GENTILE, P.A.**
>Andrew J. Shamis *(pro hac vice to be filed)*
>14 NE 1st Ave., Suite 1205
>Miami, FL 33132
>T: 305-479-2299
>efilings@shamisgentile.com
>
>**DAPEER LAW, P.A.**
>Rachel Dapeer, Esq. *(pro hac vice to be filed)*
>300 S. Biscayne Blvd, #2704
>Miami, FL 33131
>T: 305-610-5223
>rachel@dapeer.com
>
>*Attorneys for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of September 2021, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system and transmitted via electronic mail to all attorneys of record.

>*/s/ Ed Normand*
>Edmund A. Normand *(pro hac vice)*